# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MONROE COLEMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-2255 (RMC) |
| | ) | |
| HARLEY LAPPINS, | ) | |
| DIRECTOR, FEDERAL BUREAU OF PRISONS, et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' RENEWED MOTION FOR
## SUMMARY JUDGMENT

COMES Now, the Federal Bureau of Prisons and the U.S. Department of Justice (Federal Defendants), through the United States Attorney for the District of Columbia, in response to the Court's Memorandum and Order dated July 3, 2007. *[Docket #20]*.

The Court's Order of July 3, 2007, stated, "The Court ultimately may determine that the BOP's decision to provide a Glomar response is proper.  However, based on the current record, the Court cannot reach this conclusion."  The Court permitted the Bureau of Prisons to file a renewed summary judgment motion with respect to the BOP's Glomar response.

The Federal Defendants respectfully renew their motion for the Court to enter summary judgment in favor of the Federal Defendants on the remaining Glomar response.

Respectfully submitted,

___/s /_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


__/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4818
Washington, D.C.  20530
(202) 514-7236

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MONROE COLEMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-2255 (RMC) |
| | ) | |
| HARLEY LAPPINS, | ) | |
| DIRECTOR, FEDERAL BUREAU OF PRISONS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The BOP provided the Plaintiff with a "Glomar" response- refusing to confirm or to deny the existence of any records, *See* Phillinni v. CIA, 546 F.2d 1009 (D.C. Cir.1976), and also asserted that the records, if they exist, would be exempt from disclosure pursuant to Exemption 7(C) of the Freedom of Information Act. That exemption permits an agency to withhold "information compiled for law enforcement purposes" when producing that information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. Section 552(b)(7)(C).

### ARGUMENT

**A.    Law Enforcement Records**

The disciplinary records sought by the Plaintiff, if they exist, are deemed law enforcement records by the BOP.  Employees of the Federal Bureau of Prisons, with the exception of the Public Health Service, independent contractors, and non-law enforcement vested employees, are

deemed federal law enforcement officials[1]. These employees possess federal law enforcement

responsibilities related to the security and orderly operation of the federal prison system.

*[Walasinski Decl. ¶¶7-8]*.

Within the operational structure of the Federal Bureau of Prisons, ("BOP"), the agency

has authored a specific Program Statement addressing investigations undertaken by the agency

for misconduct or "discipline." Program Statement 3420.09, entitled *Standards of Employee*

*Conduct* addresses BOP staff conduct and investigations into allegations of staff misconduct,

including criminal misconduct and discipline. *[Walasinski Decl. ¶9 & Attachment "A"]*. The

Program Statement states:

> "Official Investigation. Includes, but is not limited to, investigations conducted by the
> Federal Bureau of Investigation, Office of the Inspector General, Office of Professional
> Responsibility, Office of Internal Affairs, Office of Personnel Management, Special
> Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity
> Investigator or any other employee the CEO authorizes or orders to conduct an
> investigation."

The Program Statement also references criminal matters.

> "Criminal Matters. Involvement with a federal, state or local law enforcement agency, or
> with inmates as defined by this section, or with state and local inmates.

Therefore, "disciplinary records" sought by the Plaintiff fall under the umbrella of

documents generated pursuant to this Program Statement.

Applying the Program Statement to the allegations asserted and documents sought in the

Plaintiff's Complaint and subsequent pleadings, would warrant an official investigation. The

investigation(s) would be conducted pursuant to the Program Statement to determine if criminal

---

[1]Records sought by the Plaintiff pertain to a staff member assigned to a BOP facility.
This person is considered employed in a federal law enforcement position within the BOP.

2

or civil statutes, or administrative regulation(s) were violated.   This in turn places the investigations, reports, and disciplinary actions, if warranted, into the law enforcement category of records.

Examples of allegations presented by the Plaintiff which may warrant investigation include the *Opposition Motion to Defendant's Motion to Dismiss.* Specifically on page #4, " . . . misbehavior and misconduct were considered a security violation[2]." Plaintiff also asserted in his *Opposition Motion to Defendant's Motion to Dismiss,* page #4, ". . . places a threat on the prison and jeopardizes the life of inmates along with public safety." Plaintiff's Complaint states on page #3, ". . . was involved in other wrongful and improper acts that led to her being placed under another investigation (which plaintiff filed sexual harassment complaint on _____) for violating Bureau of Prisons procedure Section 3420.09 based on involvement with inmate(s) other than her husband."[3]

Clearly, Plaintiff's allegations, as asserted in his pleadings, would warrant investigation, pursuant to the BOP's Program Statement. *[Walasinski Decl. ¶19]*. Depending on the outcome of an official/law enforcement investigation, the investigation may warrant criminal charges, civil fines/remedies and/or administrative charges. *[Walasinski Decl. ¶18]*.  Plaintiff is seeking a law enforcement record, if it exists, from the BOP as it relates to the request for any disciplinary files or investigations of the former BOP employee.

---

[2]Security violations are of great concern to the BOP since the BOP is charged with the safety and security of the general public, staff and inmates in prison operations.

[3]This articulates a potential criminal violation of 18 U.S.C. § 2243(b).

Within the framework of the Freedom of Information Act, the "law" to be enforced within the meaning of "law enforcement purposes" includes both civil[4] and criminal statutes as well as those statutes authorizing administrative proceedings[5].

These records, if they exist, would be maintained as investigatory files and/or disciplinary files and outline the facts, witnesses, law, and regulations, relied upon to either sustain or deny charges of criminal, civil or administrative misconduct.  These records, if they exist, would be maintained by either the Office of Internal Affairs ("OIA"), the Office of the Special Investigative Agent ("SIS or "SIA"), or the Office of Inspector General ("OIG") as well as criminal, civil, and administrative enforcement agencies such as the United States Attorney's Office or the Office of Personnel Management.  *[Walasinski Decl. ¶22]*. Therefore, the disciplinary records and investigatory records sought, if they exist, are indeed law enforcement records as defined by the Freedom of Information Act.

**B.       Unwarranted Invasion of Personal Privacy**

The Freedom of Information Reform Act ("FOIRA")of 1986 or 1986 FOIA amendments, except for Exemptions 7(B) & 7(E), altered the requirement that an agency demonstrate that disclosure "would" cause the harm, to the lesser standard that disclosure "could reasonably be expected to" cause a specific harm.

Exemption 7 (C)   provides for protection for personal information in law enforcement records.  Exemption 7(C) provides  protection for law enforcement information the disclosure of

---

[4]Rugiero v. U.S. Dept. Of Justice, 257 F.3d 54, 550 (6th Cir. 2001); Morley v. CIA, 2006 WL 2806561 at 14; Envtl. Prot. Servs. v. EPA, 364 F.Supp.2d (D.D.C. 2006); Martinez v. EEOC, 2004 WL 2359895.

[5]Jefferson, 284 F.3d at 178; Hildalgo v. Bureau of Prisons, 2002 WL 1997999.

which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

There is a clear danger in providing a federal prisoner with personal information, contained in an official/law enforcement investigation, of an individual charged with a statutory law enforcement duty to hold the prisoner in custody.  *[Walasinski Decl. ¶25]*. A federal prisoner in possession of private information contained in an official/law enforcement investigation related to his custodian is in a position to blackmail the employee concerning the investigation or any materials generated during the investigation. *[Walasinski Decl. ¶26]*.

The federal prisoner could obtain personal information related to the employee such as social security numbers, addresses, family members' names and locations, children, etc. The prisoner then might use this information to discredit the employee and make the employee less effective in handling his law enforcement duties even if the employee is exonerated of wrongdoing. *[Walasinski Decl. ¶¶27-28]*.

Even if a BOP employee resigns his position, the material is no less sensitive and private. A former employee still has the same concerns related to identity theft, retaliation, safety of family and self, as well as related to a prisoner's desire for revenge while the employee is still with BOP.  *[Walasinski Decl. ¶¶29-31]*.

Whether dealing with a current or former BOP employee, the disclosure of private information generated during an official/law enforcement investigation warrants and justifies a *Glomar* response.  Clearly, in the context of a federal prisoner seeking a law enforcement investigation of his current or former custodian, such a disclosure could reasonably be expected to cause the specific harms outlined above, and additional harms not specifically listed.

**C.     Glomar was Appropriate Response**

The "neither confirm nor deny response" employed by the Defendants in this case is in no way novel; it has been approved by this Court and others in instances where even to acknowledge the existence of responsive records poses a threat of harm[6].  Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 757 (1989)[7].

As the Seventh Circuit has noted with concern in its examination of this type of response, "[M]erely acknowledging that a certain record exists can provide valuable information to requesters." Antonelli v. FBI, 721 F.2d 615,618 (7th Cir. 1983), cert. denied, 467 U.S. 1210 (1984).

Under the exemption[8], a "Glomar" response may be issued if speaking directly even to

---

[6]Such a response finds support in the case of Phillippi v. Central Intelligence Agency, 546 F.2d 1009, 1010-1012 (D.C. Cir. 1976), and is often referred to as a "Glomar" response, after the ship referred to in the Phillippi decision. In Phillippi, the requester sought information regarding the "Hughes Glomar Explorer," a supposed merchant vessel, and the CIA refused to confirm or deny whether it had any relationship with the vessel on the grounds that to do so could compromise national security (Exemption 1) or could divulge information pertaining to intelligence sources and methods (Exemption 3). Id. at l010-1012.

[7](Justice Department advised it held no record of any financial crime regarding subject of request "but continued to refuse to confirm or deny whether it had any information concerning nonfinancial crimes."); Beck v. Department of Justice, 997 F .2d at 1492; Dunkelberger v. Department of Justice, 906 F.2d 779,780,782 (D.C. Cir. 1990); Nation Magazine v. United States Customs Service, 71 F .3d at 896 ("[T]o the extent any information contained in investigatory files would reveal the identities of  individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure under SafeCard"); see also Students Against Genocide v. Department of State, 257 F.3d 828,834 (D.C. Cir. 2001) (recognizing continued acceptance of the "Glomar" response where an acknowledgment that records exist would provide the requester with the very information the exemption is designed to protect) (citing Nation Magazine v. United States Customs Service, 71 F.3d at 894 n. 8).

[8]5 U.S.C. § 552(b)(7) (C).

the existence of the records would associate the individual named in the request with criminal activity[9].

Although in most cases a court must balance the public interest in disclosure against the personal privacy interests of the individual who is the subject of the FOIA request in an individualized fashion, "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." Reporters Committee, 489 U.S. at 776.

In Reporters Committee, the Supreme Court concluded that "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." Id. at 780[10]. This privacy interest does not disappear just because the public already may be aware that the individual has been the subject of a law enforcement investigation. See Reporters Committee, 489 U.S. at 762-63.

A FOIA request is analogous to the one made in Reporters Committee, when it is clear that the request will not contribute significantly to public understanding of the operations or activities of the government, and seeks law enforcement information on individuals. In these circumstances, the court need not undertake a balancing test or order an in camera inspection before it decides that the documents are exempt from disclosure. McNamera v. U.S. Dept. of Justice, 974 F.Supp. 946, 953 (W.D. Tex. 1997).

Additionally, exemption 7 (C) allows an agency to withhold "investigatory records

---

[9]See, e.g., Reporters Committee, 489 U.S. at 757, Nation Magazine, 71 F.3d at 893.

[10]See also Nation Magazine, 71 F.3d at 894; Perrone v. FBI, 908 F.Supp. 24,26 (D.D.C.1995).

compiled for law enforcement purposes, or information which if written would be contained in such records, but only to the extent that the production of such records or information would constitute an unwarranted invasion of personal privacy."[11]   The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure.[12]   Under the exemption, a "Glomar" response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity.[13]

As outlined above, the records sought, staff disciplinary records/investigations, are law enforcement records as defined by the BOP's policy.  There is a clear unwarranted invasion of personal privacy related to these investigatory files, if they exist.  Merely acknowledging the existence of these records, in a prison setting, provides the necessary information an inmate needs to discredit and dishonor a federal law enforcement official.  Clearly, the privacy interest at stake outweighs the public's interest in disclosure.

---

[11]5 U.S.C. § 552(b)(7)( C).

[12]Reporters Committee, 489 U.S. at 776; Davis v. United States Dept. of Justice, 968 F.2d 1276, 1281 (D.C.Cir.1992).

[13]See, e.g., Reporters Committee,489 U.S. at 757, (refusal to confirm or deny whether FBI had rap sheets on named individual); Beck v. United States Dept. of Justice, 997 F .2d 1489, 1491-92 (D.C.Cir.1993) (refusal to confirm or deny whether Department of Justice Office of Professional Responsibility had records of complaints against named agent); Dunkelberger v. United States Dept. of Justice, 906 F.2d 779, 780 (D.C.Cir.1990) (refusal to confirm or deny whether FBI has records on administrative disciplinary action against named agent).

Plaintiff's request is for law enforcement records which, even if their existence alone is confirmed, are destined to be used to discredit personally an individual employee of the BOP. The FOIA has created privacy protections via the FOIA exemptions to protect an individual's personal privacy. In this case, Glomar best protects the individual, by neither confirming or denying the existence of potentially harmful law enforcement records.

## **CONCLUSION**

The Federal Defendants have provided declarations and documents outside the scope of the initial pleadings in this complaint, and renew their motion for summary judgment.  The Federal Defendants respectfully request the Court to grant the renewed motion for summary judgment in their favor, pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

___/s_/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


___/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2007, a copy of the foregoing Renewed Motion for Summary Judgment thereof was mailed, postage prepaid, to Plaintiff, Monroe Coleman, 01723-016, United States Penitentiary, Terre Haute, P.O. Box 12015, Terre Haute, IN., 47801.


_____//_____
ALEXANDER D. SHOAIBI
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,            )
                             )
            PLAINTIFF,        )
v.                           )
                             )    Civil Action No. 06-2255(RMC)
HARLEY LAPPIN,               )
Director,                    )
Bureau of Prisons, el al.,)

## DECLARATION OF KEVIN J. WALASINSKI

1.    I, KEVIN J. WALASINSKI, hereby declare and state as follows:

2.    I am currently employed by the United States Government as a Senior Attorney at the Consolidated Legal Center, Lexington, Kentucky, ("CLC Lexington"), a position I have held since July 2001.  Prior to this assignment, I was the Attorney-Advisor at the Federal Correctional Institution, Milan, Michigan, a position I held from June 1994 to July 2001.  From July 1991 to June 1994, I served as the Attorney-Advisor at the United States Penitentiary, Marion, Illinois.  From August 1990 until July 1991, I served as an Attorney-Advisor for the Office of General Counsel for the Federal Bureau of Prisons, Central Office, Washington, D.C.

3.    Pursuant to the Court's Order dated July 3, 2007, concerning the determination the BOP's decision to provide a *Glomar* response for the agency's disciplinary records pertaining to a former BOP employee are law enforcement records within the scope of Exemption 7, I am providing the following additional information.

4.    The Freedom of Information Reform Act ("FOIRA")of 1986 or 1986 FOIA amendments, modified the threshold requirement of Exemption 7 in several distinct respects by deleting the word "investigatory" and adding the words "or information" such that Exemption 7 protections are now available to all records or information complied for law enforcement purposes.

5.    The FOIRA, except for Exemptions 7(B) & 7(E) altered the requirement that an agency demonstrate that disclosure "would" cause the harm, to the lesser standard that disclosure "could reasonably be expected to" cause a specific harm.

7.    Employees of the Federal Bureau of Prisons, which the exception of the Public Health Service, independent contractors, and non-law enforcement vested employees, are deemed federal law enforcement officials.

8.    These employees possess federal law enforcement responsibilities related to the security and orderly operation of the federal prison system.

9.    Within the operational structure of the Federal Bureau of Prisons, ("BOP"), the agency has authored a specific Program Statement which addresses investigations undertaken by the agency for misconduct or "discipline". Program Statement 3420.09, entitled *Standards of Employee Conduct* addresses BOP staff conduct and investigations into allegations of staff misconduct, including criminal misconduct and discipline.

10.    The BOP authored Program Statement 3420.09, entitled *Standards of Employee Conduct* which addresses BOP staff conduct and investigations into staff misconduct, including criminal misconduct. **See Attachment "A"; Program Statement 3420.09).**

11.    Page 5 of the Program Statement states:  h.  <u>Official Investigation</u>.  Includes, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Professional Responsibility, Office of Internal Affairs, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity Investigator or any other employee the CEO authorizes or orders to conduct an investigation. **See Attachment "A"; Program Statement 3420.09, page #5).**

12. The Program Statement also refers to criminal matters.

c. <u>Criminal Matters</u>.  Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, or with state and local inmates. **See Attachment "A";** **Program Statement 3420.09, page #4)**.

13.  The allegations presented in the Plaintiff's Complaint would potentially warrant an official investigation pursuant to this Program Statement to determine if criminal or civil statutes, or administrative regulation(s) were violated.

14.  Indeed, the Plaintiff's own "Opposition Motion to Defendant's Motion to Dismiss", specifically states on page #4, ". . .misbehavior and misconduct were considered a security violation."

15.  Plaintiff also asserted in his "Opposition Motion to Defendant's Motion to Dismiss" page #4, ". . . places a threat on the prison and jeopardizes the life of inmates along with public safety."

16.  Plaintiff's Complaint states on page #3, ". . . was involved in other wrongful and improper acts that led to her being placed under another investigation (which plaintiff filed sexual harassment complaint on _____) for violating Bureau of Prisons procedure Section 3420.09 based on involvement with inmate(s) other than her husband."

17.   Plaintiff's Complaint articulates allegations which would require an official investigation pursuant to the above Program Statement.

18.   Depending on the outcome of an official/law enforcement investigation(s), the investigation(s) may warrant criminal charges, civil fines/remedies and/or administrative charges.

19.   Clearly, Plaintiff is seeking a law enforcement record from the BOP as it relates to the request for any disciplinary files or investigations of the former BOP employee.

20.   Within the framework of the Freedom of Information Act, the "law" to be enforced within the meaning of "law enforcement purposes" includes both civil and criminal statutes as well as those statutes authorizing administrative proceedings.

21.   These records, if they exist, would be maintained as investigatory files and outline the facts, witnesses, law, and regulations, relied upon to either sustain or deny charges of criminal, civil or administrative misconduct.

22.   These records, if they exist, would be maintained by either the Office of Internal Affairs ("OIA"), the Office of the Special Investigative Agent ("SIS or "SIA"), or the Office of Inspector General ("OIG") as well as criminal, civil, and administrative enforcement agencies such as the United States Attorney's Office or the Office of Personnel Management.

23.   Therefore, the disciplinary records sought, if they exist, are indeed law enforcement records as defined by the Freedom of Information Act.

24.   Exemption 7 ( C)provides for protection for personal information in law enforcement records.  Exemption 7( C) provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

25.   There is a clear danger in providing a federal prisoner with personal information, contained in an official/law enforcement investigation, of an individual charged with a statutory law enforcement duty to hold the prisoner in custody.

26.   A federal prisoner in possession of private information contained in an official/law enforcement investigation related to his custodian is in a position to black mail the employee concerning the investigation or any materials generated during the investigation.

27.   The federal prisoner may obtain personal information related to the employee such as social security numbers, addresses, family members names and locations, children, etc.

28.   The prisoner may use this information to discredit the employee and make the employee less effective in handling their law enforcement duties even if the employee is exonerated of wrongdoing.

29.   Even if a BOP employee resigns their position, the material is no less sensitive and private.

30.   A former employee still has the same concerns related to identity theft, retaliation, safety of family and self, and concerns related to a prisoner's desire for revenge while the individual was employed by the BOP.

31.   Whether a current or former BOP employee, the disclosure of private information generated during an official/law enforcement investigation warrants and justifies a *Glomar* response.

32.   Clearly, in the context of a federal prisoner, seeking a law enforcement investigation of his current or former custodian, such a disclosure could reasonably be expected to cause the specific harms outlined above, and additional harms not specifically listed.

33.   I certify that the above cited documents are true and accurate copies of the records maintained by the Bureau of Prisons.

Attachment A:  Program Statement 3420.09.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this __2__ day of August 2007.



Kevin J. Walasinski, Senior Attorney
Consolidated Legal Center
Federal Bureau of Prisons
Lexington, Kentucky 40511

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 3420.09
**CHANGE NOTICE NUMBER:** 3420.09
**DATE:** 2/5/99

1. <u>PURPOSE AND SCOPE</u>. To revise the Standards of Employee Conduct.

2. <u>SUMMARY OF CHANGES</u>. The changes include expanding the time frames for personal use of government property as well as removing some limitations on outside employment.

The change in Attachment A modifies the definition of "reckoning period" to conform with the Department of Justice Order pertaining to disciplinary and adverse actions and added an addition offense (#54), "Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report."

Additionally, the Request for Outside Employment forms have been removed as attachments. These forms may now be located in the forms area of BOPDOCS.

There are also various formatting changes, including conversion to WordPerfect 6.1, which caused some pagination changes. The sections changed are marked by asterisks. These changes can be found on pages 5, 6, 8, 15, 18, and 19.

3. <u>ACTION</u>. All Wardens shall ensure each employee receives and signs for receipt of the revised pages.

File this Change Notice in front of the Program Statement on Standards of Employee Conduct.

/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 3420.09
**DATE:** 2/5/99
**SUBJECT:** Standards of Employee Conduct

1. <u>PURPOSE AND SCOPE</u>.  To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

- employee conduct and responsibility,
- ethics in matters involving conflicts of interest,
- post-employment restrictions,
- procurement integrity issues,
- attorney ethics, and
- outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act.  Such employees are subject to certain standards and prohibitions -- some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization.  Contractors and volunteers working in Bureau facilities also are expected to conduct themselves by these standards.  This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment.  It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program
are:

a.  Employees will conduct themselves in a manner that creates
and maintains respect for the Bureau of Prisons, the Department
of Justice, and the U.S. Government.

b.  Employees will avoid situations which involve conflicts of
interest with their employment.

c.  Employees will comply with restrictions on employment
outside the Bureau and after employment with the Bureau.

d.  Employees will conform with procurement integrity
regulations.

e.  Employees will uphold the ethical rules governing their
professions.

f. Employees will immediately report any violation, or apparent
violation, of standards of conduct to their Chief Executive
Officer (CEO) or another appropriate authority.

g.  Employees who fail to conduct themselves in accordance with
these standards will be subject to appropriate sanctions.

3.  <u>DIRECTIVES AFFECTED</u>

a.  <u>Directive Rescinded</u>

PS 3420.08     Standards of Employee Conduct and
               Responsibility  (3/7/96)

b.  <u>Directives Referenced</u>

PS 3735.04     Drug Free Workplace Program (6/30/97)
PS 5510.09     Searching, Detaining, or Arresting Persons
               Other Than Inmates (3/6/98)
PS 5840.03     Staff Correspondence About Inmates (3/4/93)

18 U.S.C. § 201       Bribery; Illegal Gratuities
18 U.S.C. § 203       Representational Issues
18 U.S.C. § 205       Representational Issues
18 U.S.C. § 207       Post-Employment Statute
18 U.S.C. § 208       Conflict of Interest Statute
18 U.S.C. § 2241-45   Sexual Abuse
41 U.S.C. § 423       Procurement Integrity Act

| 5 CFR § 2635 | Standards of Ethical Conduct for Employees of the Executive Branch (8/7/92) |
| 5 CFR § 2637 | Post-Employment (12/30/93) |
| 5 CFR § 2641 | Post-Employment (1/28/92) |
| 28 CFR § 50.15 | Representation of Federal Employees Sued, Subpoenaed or Charged in Their Individual Capacities (4/9/90) |
| 28 CFR § 500.1 | Contraband |
| Executive Orders 12674 and 12731 | Prescribing Standards of Ethical Conduct |
| DOJ Order 1735.1 | Procedures for Complying with Uniform Standards and Other Ethics Requirements (9/17/92) |
| ABA Model Rule 1.11 | Successive Government and Private Employment Rules for Lawyers (2/7/87) |
| ABA Model Rule 1.6 | Confidentiality of Information (8/2/83) |

4. <u>STANDARDS REFERENCED</u>

a. American Correctional Association, 3rd Edition, Standards for Adult Correctional Institutions: 3-4048, 3-4067.

b. American Correctional Association, 3rd Edition, Standards for Adult Local Detention Facilities: 3-ALDF-1C-23.

c. American Correctional Association, 2nd Edition, Standards for Administration of Correctional Agencies: 2-CO-1C-04, 2-CO-1C-20, 2-CO-1C-24.

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1A-23.

5. <u>GENERAL REFERENCES</u>. The Standards of Ethical Conduct for Employees of the Executive Branch, found at 5 CFR Part 2635, sets forth ethical standards, statutory provisions, and other matters governing the conduct of federal employees. Various resolutions, messages, memoranda, and Executive Orders are included, as are requirements for informing employees and the authority for regulating their conduct.

PS 3420.09
2/5/99
Page 4

6.  <u>DEFINITIONS</u>.  For the purposes of this Program Statement, the following definitions apply:

a.  <u>Chief Executive Officer (CEO)</u>.  The Warden at institutions, the Director at Staff Training Centers, the Community Corrections Manager at community corrections offices, the Regional Director at the regional offices, and the Assistant Director of each division at the Central Office.

b.  <u>Conflict of Interest</u>.  A conflict between public interests and the private interests of the individual involved.

c.  <u>Criminal Matters</u>.  Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, or with state and local inmates.

d.  <u>During the Conduct of a Procurement</u>.  The time between the beginning and end of a procurement.  The conduct of a procurement begins on the earliest date an authorized official directs that a specific action be taken to initiate a procurement.  These actions include:

- Drafting a specification or a statement of work;
- Reviewing and approving a specification;
- Computing requirements or a purchase request;
- Preparing or issuing a solicitation;
- Evaluating bids or proposals;
- Selecting sources;
- Conducting negotiations; or
- Reviewing and approving the award of a contract or contract modification.

The conduct of a procurement ends with the award or modification of a contract or the cancellation of the procurement.

e.  <u>Employment</u>.  Any form of employment or business relationship, compensated or uncompensated, involving the provision of personal services by the employee, whether to be undertaken at the same time as or subsequent to current federal employment.  It includes, but is not limited to, personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

f.  <u>Inmate</u>.  Any person found guilty of committing a felony or misdemeanor and who has been placed in Bureau custody or under supervision of a federal court.  This includes individuals participating in home-monitoring programs, parole, probation, halfway house placement, pretrial and non-sentenced inmates,

detainees, and inmates with state sentences under federal supervision.

g.  Former Inmate.  Any inmate for whom less than one year has elapsed since their release from Bureau custody or supervision of a federal court.

h.  Official Investigation.  Includes, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Professional Responsibility, Office of Internal Affairs, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity Investigator or any other employee the CEO authorizes or orders to conduct an investigation.

i.  Negotiations.  Discussion or communication with another person, or such person's agent or intermediary, mutually conducted with a view toward reaching an agreement regarding possible employment with that person.

j.  Participate.  To take action as an employee through decision, approval, disapproval, recommendation, rendering of advice, or investigation.

k.  Particular Matter.  Matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons.  The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

l.  Procurement Official.  Any officer or employee of an agency who has participated personally and substantially in any of the activities involved "during the conduct of a procurement."  This definition includes acting as a procuring contracting officer, the source selection authority, a member of the source selection evaluation board, or the chief of a financial or technical evaluation team in a procurement in which that contractor was selected for award of a contract in excess of $10,000,000.

This definition also includes serving as a program manager, deputy program manager, or administrative contracting officer, and extends to officials who personally make the decision to award a contract, task order, or delivery order, establish overhead or other rates, approve the issuance of contract

PS 3420.09
2/5/99
Page 6

payments, or decide to pay or settle a claim, in excess of
$10,000,000.  (See definition "during the conduct of a
procurement.")

7.  PUBLICATION AND INTERPRETATION

   a.  The CEO of each facility has the primary responsibility for
ensuring that the Standards of Employee Conduct are provided and
made known to each employee, contractor and volunteer.

   b.  Only actions made in reliance on advice received from the
Ethics Officer, or his or her designees, may be protected from
disciplinary action.  When an employee's conduct violates a
criminal statute, however, reliance on the advice of an ethics
official cannot ensure the employee will not be prosecuted, but
may be used as a factor in making this determination.

   c.  Each new employee, contractor, and volunteer shall receive
and sign for this Program Statement at the time of appointment.
In addition, all employees, contractors, and volunteers shall
receive and sign for any updated versions of this Program
Statement when issued.  The responsibility for ensuring that
employees, contractors and volunteers receive and sign for this
Program Statement shall be delegated in the following manner:

   ■  Human Resource Managers shall be responsible for
   employees;
   ■  Department heads who oversee a contractor shall be
   responsible for that contractor;
   ■  Employee Development Managers shall be responsible for
   volunteers.

   All receipts are to be filed on the left side of the Official
Personnel Folder.

   d.  Employee Development Managers shall ensure that supervisors
and employees receive annual training on their responsibilities
under these regulations and policies.

8.  GENERAL POLICY.  Employees of the Bureau are governed by the
regulations published in 5 CFR Part 2635.  While this Program
Statement expounds on those regulations to clarify their
application in the Bureau, it does not and cannot specify every
incident which would violate the Standards of Conduct.  In
general, the Bureau expects its employees to conduct themselves
in such a manner that their activities both on and off duty will
not discredit themselves or the agency.

Employees shall:

   a.   Conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

   b.   Not abuse their position by giving any false impression of having arrest authority through use of Bureau credentials or otherwise.   Bureau employees may only arrest in their official capacity in very limited circumstances as permitted by 18 U.S.C. § 3050 or other authority officially granted to them, such as U.S. Marshal deputation.

   c.   Avoid any action which might result in, or create the appearance of, adversely affecting the confidence of the public in the integrity of the U.S. Government.

   d.   Avoid conflicts of interest in matters that affect their financial interests.

   e.   Comply with post-employment restrictions.

   f.   Conform with procurement integrity regulations.

   g.   Uphold the ethical rules governing their professions including complying with applicable licensing authority rules, except when they conflict with federal law.

   h.   Follow special rules to avoid conflicts of interest when seeking employment outside the Bureau.

   i.   Immediately report to their CEOs, or other appropriate authorities, such as the Office of Internal Affairs or the Inspector General's Office, any violation or apparent violation of these standards.

   Failure by employees to follow these regulations or this policy could result in appropriate disciplinary action, up to and including removal (see Attachment A).

9.   <u>PERSONAL CONDUCT</u>.   It is essential to the orderly running of any Bureau facility that employees conduct themselves professionally.   The following are some types of behavior that cannot be tolerated in the Bureau.

   a.   <u>Alcohol/Narcotics</u>.   The use of illegal drugs or narcotics or the abuse of any drug or narcotic is strictly prohibited at any time.   Use of alcoholic beverages or being under the influence of alcohol while on duty or immediately prior to

reporting for duty, is prohibited.  Employees shall be subject to
disciplinary action if found to possess a .02 blood alcohol
content level or greater while on duty.

   b.  <u>Sexual Relationships/Contact With Inmates</u>.  Employees may
not allow themselves to show partiality toward, or become
emotionally, physically, sexually, or financially involved with
inmates, former inmates, or the families of inmates or former
inmates.  Chaplains, psychologists, and psychiatrists may
continue a previously established therapeutic relationship with a
former inmate in accordance with their respective codes of
professional conduct and responsibility.

   (1)  An employee may not engage in, or allow another person
to engage in, sexual behavior with an inmate.  Regardless of
whether force is used, or threatened, there is never any such
thing as "consensual" sex between staff and inmates.

   (2)  Title 18, U.S. Code Chapter 109A provides penalties of
up to life imprisonment for sexual abuse of inmates where force
is used or threatened.  "Sexual contact" is defined as the
intentional touching of "the genitalia, anus, groin, breast,
inner thigh, or buttocks."  Penetration is not required to
support a conviction for sexual contact.  All allegations of
sexual abuse shall be thoroughly investigated and, when
appropriate, referred to authorities for prosecution.

   (3)  Employees are subject to administrative action, up to
and including removal, for any inappropriate contact or
relationship with inmates, regardless of whether such contact
constitutes a prosecutable crime.  Physical contact is not
required to subject an employee to sanctions for sexual
misconduct.

   c.  <u>Additional Conduct Issues</u>.  An employee may not offer or
give to an inmate or a former inmate or any member of his or her
family, or to any person known to be associated with an inmate or
former inmate, any article, favor, or service, which is not
authorized in the performance of the employee's duties.  Neither
shall an employee accept any gift, personal service, or favor
from an inmate or former inmate, or from anyone known to be
associated with or related to an inmate or former inmate.  This
prohibition includes becoming involved with families or
associates of inmates.  If such contact occurs, it must be
reported using the procedure in subsection c(5).

   (1)  An employee may not show favoritism or give
preferential treatment to one inmate, or a group of inmates, over
another.

PS 3420.09
2/5/99
Page 9

(2)   An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3)   An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4)   An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others.  Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5)   An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including employees whose relatives are inmates or former inmates) must report the contact, in writing, to the CEO as soon as practicable.  This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment.  The employee will then be instructed as to the appropriate course of action.

(6)   Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7)   Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10.  <u>RESPONSIVENESS</u>

a.   Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents.  Therefore, employees are required to remain fully alert and attentive during duty hours.

b.   Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

c.   Employees are to obey the orders of their superiors at all times.  In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

PS 3420.09
2/5/99
Page 10

11.  <u>ILLEGAL ACTIVITIES</u>.  Illegal activities on the part of any employee, in addition to being unlawful, reflect on the integrity of the Bureau and betray the trust and confidence placed in it by the public.  It is expected that employees shall obey, not only the letter of the law, but also the spirit of the law while engaged in personal or official activities.  Should an employee be charged with, arrested for, or convicted of any felony or misdemeanor, that employee must immediately inform and provide a written report to the CEO.  Traffic violations resulting in fines under $150 shall be exempt from the reporting requirement.

12.  <u>INTRODUCTION OF CONTRABAND</u>.  The introduction of contraband into or upon the grounds of any federal penal or correctional institution, or taking or attempting to take therefrom, anything whatsoever without the Warden's knowledge and consent, is prohibited.  Pursuant to 28 CFR § 500.1(h), contraband is defined as any material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution.  Contraband includes, but is not limited to, the following:

- letters,
- stamps,
- money,
- tools,
- weapons,
- paper,
- food,
- implements,
- writing material,
- messages,
- instruments,
- alcoholic beverages,
- drugs,
- photographic equipment,
- computer software,
- recording devices,
- cellular phones, etc.

13.  <u>OFFICIAL INVESTIGATION</u>

  a.  Every employee is required to report to management immediately any violation or attempted violation of any law or regulation and any act or omission by any person which could result in a breach of institution security.

  b.  It is not Bureau policy to routinely search employees or their property; however, when the CEO has a reasonable suspicion to suspect that an employee is in possession of contraband items

which, if introduced, could endanger the safety of staff or
inmates or the security of the institution, the CEO may authorize
the search of an employee or his or her personal property.
Searches may also be authorized when the CEO has a reasonable
suspicion that an employee is transporting contraband.  Other
circumstances may warrant an order by the CEO to randomly search
employees or any person or their property when entering or
leaving the institution.

  c.  During the course of an official investigation, employees
are to cooperate fully by providing all pertinent information
which they may have.  Full cooperation requires truthfully
responding to all questions and providing a signed affidavit, if
requested.  Any employee who fails to cooperate fully or who
hinders an investigation is subject to disciplinary action, up to
and including removal.

14.  <u>JUST DEBTS</u>.  Failure on the part of any employee, without
good reason and in a proper and timely manner, to honor debts
acknowledged by him or her to be valid or reduced to judgment by
a court, or to adhere to satisfactory arrangements for the
settlement thereof, may be cause for disciplinary action.
Depending on the circumstances, an employee who receives a
legally valid garnishment order may be subject to disciplinary
action.

15.  <u>CONFIDENTIALITY</u>.  Employees of the Bureau have access to
official information ranging from personal data concerning staff
and inmates to information involving security.  Because of the
varying degrees of sensitivity of such information, it may be
disclosed or released only as required in the performance of an
employee's duties or upon specific authorization from someone
with the authority to release official information.
The only persons authorized to release official information are:

  ■  in the Central Office, the Director, or designee;
  ■  in a Regional Office, the Regional Director, or designee;
  ■  in other locations, the CEO, or designee.

The above shall not be construed as a reason to deny authorized
persons access to official records and files.  The Bureau has an
obligation to supply official information in response to requests
from organizations or individuals upon determining that such
individuals are properly identified and acting in an official
capacity.  To ensure the proper use of official information, the
following rules of conduct are established:

PS 3420.09
2/5/99
Page 12

a.  Employees shall verify the identification and authority of individuals requesting access to information prior to giving or discussing records, personnel files, or other official information.

b.  Employees may not deny authorized persons access to official information.

c.  Employees may not use, or release for use, official information for private purposes unless that information is available to the general public.

d.  Employees may not remove information from files or make copies of records or documents, except in accordance with established procedures or upon proper authorization.

e.  Employees may not make statements or release official information which could breach the security of the institution or unduly endanger any person.

f.  Former employees may be granted access only to information available to the general public and may have no greater standing than the general public, irrespective of their past employment and any associations developed in the course of such employment.

16.  <u>GOVERNMENT PROPERTY</u>.  Government property is to be used for authorized purposes only.

a.  <u>Authorized Purposes</u>.  Authorized purposes includes personal use of Government office equipment such as computers, printers, fax machines, telephones, copiers, and calculators.  Use may not involve more than merely negligible cost to the Government.

b.  <u>Negligible Cost</u>.  Negligible cost to the Government includes the cost of electricity, ink, and ordinary wear and tear.  Employees shall provide their own paper.

c.  <u>Personal Use</u>.  Personal use of Government property may take place before or after official working hours or during non-paid meal breaks, provided such use does not adversely affect the performance of official duties by the employee or the Bureau, with the following exception:

<u>Telephones</u>.  Employees may place a personal call on a Government telephone during official working hours if the call:

- does not adversely affect the performance of official duties by the employee or the Bureau;
- is of reasonable duration and frequency;

- could not reasonably have been made at another time; and
- is within the employee's local commuting area.

d. <u>Fitness Equipment</u>.  Employees may use Government-owned fitness equipment during breaks if such equipment is intended exclusively for employee use.

e. <u>Existing Prohibitions</u>.  This rule does not override already existing prohibitions on use of Government property, including those rules established by a supervisor for business reasons.

17.  <u>CREDENTIALS</u>.  Bureau of Prisons credentials, identification cards, Government drivers licenses, or badges may not be used to coerce, intimidate, or deceive others or to obtain any privilege or article not otherwise authorized in the performance of official duties.

a.  Employees may not obtain or use identification badges issued by other sources which give the appearance of being an official Bureau or law enforcement credential.

b.  Employees may not use credentials or otherwise represent themselves as Department of Justice personnel to obtain a gun permit to be used in their unofficial capacity.

c.  Employees may use credentials to prove Government employment for purposes of permissible discounts offered to a broad class of Government employees.

18.  <u>OUTSIDE EMPLOYMENT</u>

a.  There are limitations as to the type of outside employment an employee may obtain.  Employees may not:

- engage in any outside employment or activity that involves criminal matters, although the Director reserves the authority to approve uncompensated correctional work on a case-by-case basis;

- engage in any outside employment which would require the use of a firearm, except for military reserve duty; or

- testify as an expert witness in any legal proceeding, with or without compensation, in which the Bureau does not have an interest.

PS 3420.09
2/5/99
Page 14

b.  Any employee who wishes to engage in employment outside the Bureau must obtain prior written approval for each activity using BP-S543.033 or BP-S166.033.  Employment includes compensated speaking, writing, and teaching.  Outside employment, including self-employment, must not result in, or create the appearance of, a  conflict of interest with official duties or tend to impair the employee's mental or physical capacity to perform official duties and responsibilities.  Written approval must be resubmitted when there is a change of duty station.

c.  Any employee who wishes to serve as an officer or director of any organization, whether it is compensated or uncompensated, must also complete an outside employment request form.  Employees who perform voluntary service involving church, employee's club, credit union, or union activities, which do not conflict with their official duties or with the mission of the Federal Bureau of Prisons, will be exempted from the requirement to request approval for these activities.

d.  An employee may not have a direct or indirect financial interest that could be affected by the performance or nonperformance of his or her Government duties and responsibilities.

e.  Certain professional employees are prohibited from engaging in the private practice of their professions.  Exceptions may be granted, however, in accordance with subsection (1).  Professional employees who wish to engage in outside employment **not** within their profession should follow instructions provided in subsection (2) and should complete BP-S166.033.  For the purpose of this subsection, teaching, writing, and speaking are not considered practicing within one's profession.

(1)  <u>Employment in Certain Professions</u>.  Persons currently employed by the Bureau in the professions listed below who would like to work **within** that profession during off-duty hours must have the approval of his or her immediate supervisor, CEO, Regional Director, and the Director:

- Architect
- Attorney
- Chaplain
- Doctor
- Psychologist

The Bureau Ethics Officer shall review each request to ensure that there are no conflicts of interest.

PS 3420.09
2/5/99
Page 15

Attorneys who seek to practice law outside of the Bureau must also refer to Section 19, Rules for Attorneys.

The form entitled "Request for Approval for Outside Employment Within One's Profession" (BP-S543.033) must be completed with all appropriate signatures affixed before the employee may engage in the outside practice of his or her profession.  The form requires such basic information as the name of the employee, the employee's job title, grade, institution and a brief description of the outside employment contemplated.  The brief description, at a minimum, should include:

- a summary of the duties to be performed,
- the work address of the employer,
- the hours of employment, and
- any information deemed relevant to support the request.

Failure to provide the required information could result in delays in processing or a denial of the request.

(2)  <u>Other Outside Employment</u>.  Any other employee who wishes to engage in outside employment must obtain prior approval from his or her supervisor and CEO by initiating a Request for Approval for Outside Employment.  Forms may be found on BOPDOCS.

(3) <u>Change of Outside Employment</u>.  Any approval granted for outside employment is specific to the particular position referenced in the application and approval.  Any employee who wishes to change outside employment, (e.g., to work for a different company, accept a different position with the same company, etc.), must submit a new request form, and receive approval before doing so.

(4) <u>One-Time Review of Outside Employment</u>.  All employees who have received approval for outside employment prior to the effective date of this Program Statement must submit a new request form by December 31, 1998.  Request for Outside Employment forms may be found on BOPDOCS.  This requirement applies even if the employee is still in the same outside position for which approval had previously been granted. The purpose of this one-time review is to ensure compliance with the Supplemental Standards Of Ethical Conduct For Employees Of The Department Of Justice (5 CFR Part 3801).

PS 3420.09
2/5/99
Page 16

19.  RULES FOR ATTORNEYS

   a.  Approval of Exceptions.  Attorneys for the Bureau may not
practice law on behalf of any other person or entity, for
compensation, without the written approval of the Deputy Attorney
General.  Bureau attorneys, however, may perform uncompensated
legal practice outside the Bureau if:

   - the work does not violate 18 U.S.C. §§ 203 and 205,
   - the General Counsel has approved the request, and
   - the work does not involve criminal matters.

   b.  Confidentiality.  Only under limited circumstances shall
the attorney/client privilege of confidentiality apply to
communications with a Bureau employee.

   c.  Successive Government and Private Employment

   (1)  A former Bureau attorney may not represent a private
client in connection with a matter in which the attorney
participated personally and substantially as a public officer.
In such a case, the attorney's firm may continue representation
in the matter only if the attorney is screened from any
participation in the matter in which he or she participated in
personally and is apportioned no part of the fee therefrom.

   (2)  A Bureau attorney who came from private practice may
not participate in a matter before the Bureau in which the
attorney participated personally and substantially while in
private practice.  Like any Bureau employee, an attorney may not
negotiate for private employment with any party involved in a
Bureau matter in which the attorney is participating in
personally and substantially.

   d.  Other Duties.  In addition to the ethical rules attorneys
must follow, the duties of a Bureau attorney are further defined
by federal regulations and Bureau policy.

20.  CONFLICTS OF INTEREST.  Bureau employees should avoid
situations where their official actions affect or appear to
affect their private interests, financial or non-financial.

   a.  Prohibitions.  Employees are prohibited from taking
official action on matters that affect the financial interests
of:

   - The employee, a spouse, minor child, or a general
     partner of an employee;

PS 3420.09
2/5/99
Page 17

- An organization where the employee is an officer, director, trustee, partner or employee; or
- An organization the employee is negotiating with for future employment.

b.  Waivers

(1)  The Director may grant an individual waiver if the interest is found not to be so substantial as to affect the employee's service to the Bureau.

(2)  Employee's holdings in mutual funds are exempt if the employee's share is no more than one percent of the total assets of the fund.

(3)  An employee with a conflict of interest may ask to have himself or herself recused from the matter, sell the asset, or resign.

(4)  An employee must seek written authorization prior to participating in a matter which could lead a reasonable person to question the employee's impartiality, even if there is not a statutory conflict of interest.

(5)  Procurement officials must refer to Section 23, Procurement Integrity.

21.  SEEKING OTHER EMPLOYMENT.  Any Bureau employee who wishes to seek employment with persons who otherwise would be affected by the performance or nonperformance of the employee's official duties are required to disqualify themselves from participation in any particular matter that will have a direct and predictable effect on the financial interests of the person with whom he or she is negotiating.

When an employee is not actually negotiating for employment, but lacks impartiality in dealing with a prospective employer, the employee should disqualify himself or herself.  A Bureau employee who is aware of, or should be aware of, the need to disqualify himself or herself from participation in a particular matter must contact his or her supervisor and request, in writing, to be removed from the matter.

22.  POST-EMPLOYMENT.  The Office of Government Ethics, in accordance with statutes, has issued post-employment restrictions for federal employees who leave federal service.  There is a general restriction on the representation of parties in matters related to their federal employment.  This regulation is not designed to bar an individual from accepting employment with any

PS 3420.09
2/5/99
Page 18

private or public employer after his or her service at the
Bureau, but certain acts that are detrimental to public
confidence in Government are prohibited.

a.  Lifetime Prohibition.  All former Bureau employees are
prohibited from representing another party before the Government
on a particular matter involving specific parties in which they
participated personally and substantially while working for the
Government.  This prohibition does not apply to an appearance or
communication involving purely social contacts, a request for
publicly available documents, or a request for purely factual
information or the supplying of such information.  This
restriction is found at 18 U.S.C. § 207(a)(1).

b.  Two-Year Prohibition.  After leaving the Bureau, a former
employee is restricted from acting as a representative on a
particular matter for which the employee had official
responsibility, rather than personal participation.  The
restriction applies if the former employee knew, or reasonably
should have known, that the matter was pending under his or her
official responsibility during his or her last year of Government
service.  This restriction is found at 18 U.S.C. § 207(a)(2).

c.  One-Year Prohibition.  Former senior level employees are
restricted from lobbying the Bureau, on behalf of another person
on a matter in which that person seeks official action, for one
year.  This ban only applies to Executive Schedule or SES level 5
and 6 employees.  The purpose of this restriction is to allow for
a period of adjustment for incoming senior employees of an agency
and to diminish any appearance that Government decisions might be
affected by the improper influence of a former senior employee.
This restriction is found at 18 U.S.C. § 207(c).

23.  PROCUREMENT INTEGRITY.  During the conduct of a procurement,
a procurement official is prohibited from knowingly, directly or
indirectly, soliciting or accepting any promise of future
employment or business from any officer, employee,
representative, agent, or consultant of a competing contractor.
This prohibition includes engaging in any discussion of future
employment or business opportunity.  This restriction is found in
the Procurement Integrity Act, 41 U.S.C. § 423.  Any procurement
official who participates personally and substantially in a
procurement in excess of $100,000 (the simplified acquisition
threshold) and who is contacted concerning employment by a person
who is a bidder or offerer in such procurement must promptly
report the contact in writing both to the employee's supervisor
as well as to the Ethics Officer.

PS 3420.09
2/5/99
Page 19

a. <u>Recusal To Discuss Employment</u>.  In certain instances, a
procurement official may obtain permission to withdraw from
further participation in a procurement to discuss future
employment with a competing contractor.  An eligible procurement
official may, in accordance with specific procedures in the
regulations, request authorization to be recused from
participation in the procurement.  A procurement official is not
eligible for recusal if, during the period beginning with the
issuance of a procurement solicitation and ending with the award
of a contract, he or she has participated personally and
substantially in the evaluation of bids or proposals, the
selection of sources, or the conduct of negotiations.

An individual may not commence discussions with a competing
contractor until he or she has received written approval of the
recusal request from his or her supervisor.  Rejection of a
recusal request is not an adverse personnel action.

b. <u>Post-Employment Restrictions For Procurement Officials</u>.
The Procurement Integrity Act places restrictions on employees
involved in procurement who leave federal service.  A former
procurement official cannot, for one year after his or her last
personal and substantial involvement in a procurement in excess
of $10,000,000 accept compensation from such contractor as an
employee, officer, director, or consultant.  This does not
prohibit former procurement officials from accepting compensation
from any division or affiliate of a contractor that does not
produce the same or similar products or services for which the
employee contracted while a government employee.


                              /s/
                         Kathleen Hawk Sawyer
                         Director

<u>Standard Schedule of Disciplinary Offenses and Penalties</u>

1.  This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed.  The offenses listed are not inclusive of all offenses.

2.  Ordinarily, penalties imposed should be within the range of penalties provided for an offense.  In aggravated cases, a penalty outside the range of penalties may be imposed.  For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties.  When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3.  The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty.  The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal.  While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal.  This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons.  For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4.  Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5.  Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6.  The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

7.  Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8.  Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 1. Unexcused or unauthorized absence of 8 hours or less. | Unauthorized absence of 8 hours or less, tardiness, leaving the job without permission. | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 6 months. |
| 2. Unexcused or unauthorized absence of between 1 and 5 consecutive workdays. | Unauthorized absence of 8 to 40 hours. | 1-day to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 1 year. |
| 3. Excessive unauthorized absence. | Unauthorized absence of more than 5 consecutive workdays. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 4. Careless workmanship or negligence resulting in spoilage or waste of materials or delay in work production. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 5. Failure or delay in carrying out orders, work assignments, or instructions of superiors. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 6. Loafing, wasting time, sleeping on the job, or inattention to duty. | Potential danger to safety of persons and/or actual damage to property is considered in determining severity of the penalty, as is potential or actual adverse impact on government operation. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 7. Insubordination. | Disobedience to constituted authorities, or refusal to carry out a proper order from any supervisor or other official having responsibility for the work of the employee. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 8. Disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another, engaging in dangerous horseplay. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 9. Disrespectful conduct, use of insulting, abusive or obscene language to or about others. | Includes verbal abuse of inmates, ex-inmates, their families or friends. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 10. Reporting for duty or being under the influence of intoxicants or other drugs; unauthorized possession of intoxicants or drugs on government or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | 30-day suspension to removal. | 2 years. |
| 11. Failure to follow orders during an emergency situation. | Potential danger to safety and/or damage to property is a primary consideration in determining severity of the penalty. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 12. Failure to respond immediately to an emergency situation. | Potential danger to safety of persons and/or damage to property is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 13. Failure to observe safety precautions. | To include: (1) precautions for personal safety; (2) posted rules; (3) signs; (4) written or oral safety instructions, or failure to use protective clothing and equipment. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 14. Endangering the safety of or causing injury to staff, inmates or others through carelessness or failure to follow instructions. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 15. Giving an inmate an order which could be hazardous to health and safety. | Potential danger to safety of persons and/or actual damage to property is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 16. Unauthorized possession or use of, loss of, or damage to government property or property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 17. Willful use or authorization of use of a U.S. government owned or leased motor vehicle or aircraft for other than an official purpose. | 31 U.S.C. Section 1349 provides for a minimum 30-day suspension. | 30-day suspension to removal. | 45-day suspension to removal. | Removal. | 2 years. |
| 18. Theft or attempted theft or misappropriation of government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 19. Conversion of government funds or funds in government custody to personal use. | Includes, but is not limited to, travel advances, imprest funds, amounts received as collections and inmate funds. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 20. Malicious damage to government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 21. Gambling or unlawful betting on government-owned or leased premises. | | Official reprimand to 10-day suspension. | 10-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 22. Promotion of gambling on government-owned or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 23. Physical abuse of an inmate. | In determining the severity of the penalty, the circumstances of the incident (were the employee's actions totally unwarranted) should be given more consideration than the presence or absence of physical injury. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 24. Loss of temper in the presence of inmates, former inmates, their families or friends. | Potential of creating a disturbance is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 25. Receiving or soliciting gifts, favors, or bribes in connection with official duties. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 26. Acceptance of any gift or favor from an inmate or former inmate. | Value of gift or favor and the reasons for accepting are primary considerations in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 27. Giving or offering an unauthorized article or favor to any inmate, their families or friends. | Value of article or favor and the reasons for giving are primary considerations in determining the severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 28. Preferential treatment of inmates. | Potential or actual negative reaction of other inmates is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 29. Improper relationship with inmates, former inmates, their families or friends. | Degree of involvement is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 30. Aiding or abetting inmate violation or attempted violation of any law, rule, regulation or commission of any prohibited act. | Degree of aid and seriousness of violation is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 31. Failure to report to management any violation or attempted violation of unprofessional contacts with inmates, former inmates, their families or friends. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 32. Falsification, mis-statement, exaggeration or concealment of mate-rial fact in connection with employment, promo-tion, travel voucher, any record, investiga-tion or other proper proceeding. | Includes, but is not limited to, the de-struction of records to conceal facts, and a concealed con-flict of in-terest in the performance of official du-ties. | Official reprimand to removal. | 14-day sus-pension to removal. | Removal. | 2 years. |
| 33. Refusal or failure to cooperate in any official U.S. govern-ment inquiry or inves-tigation, including a refusal to answer work-related questions or attempting to influence others involved in the inquiry. | Includes ad-ministrative or criminal investigation, grievance in-quiry, EEO investigation, and any other administrative inquiry. | Official reprimand to removal. | 14-day sus-pension to removal. | Removal. | 2 years. |
| 34. Refusal to undergo a search of person or property. | | Removal. | Removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 35. Criminal, dishonest, infamous, or notoriously disgraceful conduct. | Includes conduct on or off duty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 36. Conduct which could lead others to question an employee's impartiality. | Includes, but is not limited to, a financial, sexual, or emotional relationship with a subordinate in a supervisor's chain of command. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 37. Discrimination in official action against an employee or applicant because of race, religion, sex, national origin, age, handicapping condition, sexual orientation or any reprisal action taken against an employee for filing a discrimination complaint. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 38. Use of Department of Justice identification for other than authorized purposes. | Example: Use to coerce, intimidate, or deceive (Includes ID cards, badges, and other Bureau credentials.) | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 39. Intentional violations of rules governing searches and seizures. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 40. Reckless disregard of rules governing searches and seizures. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 1 year. |
| 41. Negligent violations of rules governing searches and seizures. | | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 1 year. |
| 42. Unauthorized dissemination of official information. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 43. Use of official information for private purposes. | Potential personal gain is a primary consideration in determining severity of the penalty. | Official reprimand. | 14-day suspension to removal. | Removal. | 2 years. |
| 44. Unauthorized removal of records or documents. | Consequences of loss, or breach of security is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 45. Release of information which could breach the security of the institution. | Consequences or potential consequences is a primary consideration in determining severity of the penalty. | 3-day suspension to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 46. Improper denial of official information to an authorized official. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 47. Breach of facility security. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 48. Failure to report any breach or possible breach of facility security. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 49. Trafficking contraband. | Nature of article and degree of involvement are primary considerations in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 50. Engaging in outside employment without approval. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

Case 1:06-cv-02255-RMC    Document 26-2    Filed 08/30/2007    Page 45 of 46

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 51. Failure to honor just debts without good cause. | A just financial obligation is one acknowledged by the employee, reduced to judgment by a court or arranged by settlement. | Official reprimand. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 2 years. |
| 52. Failure to report arrest. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 53. Misconduct off the job. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| * 54. Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report. | Offense includes failure to report violation of Program Statement, government ethics regulations, EEO laws and criminal laws. In particular, supervisors or managers must report sexual harassment observed by or reported to them. No retaliation can be taken against staff or inmates who report any such violations. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years.* |