UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Let this be filed*
*R M Colly* [signature]

MONROE L. COLEMAN,
          Plaintiff,

          v.                          Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
          Defendants.

OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT
MOTION RULE 56
AND
PLAINTIFF'S STATEMENT OF GENUINE ISSUES
PURSUANT TO FRCP 56


As required by Local Rule 56, plaintiff contends that genuine
issues of material fact exist and disputes the following allegations
contained in defendants' statement of uncontroverted/Summary Judgment:

1.    Plaintiff make known the defendants' disciplinary report
      was mailed and received by him which he was already served
      a copy prior to filing this complaint, which that copy does
      not relieves the defendants of it obligation to provide the
      requested information against former Bureau of Prisons (hereafter
"BOP") employee Mrs. Kimberly Moore who was involved in a relationship
with a co-worker while still married to BOP employee Mr. Moore.

2.    Plaintiff asserts a) the agency cannot say, show, or deny
      former BOP employee Mrs. Kimberly Moore was terminated in

good standards with the BOP; b) Nor can the defendants assert

that Mrs. Kimberly Moore actions did not violate BOPs' Program

Statement 3420.09; and c) Defendant cannot assert plaintiff

received the disciplinary without "retaliation".

<div align="center">Other Genuine Issues</div>

1.   Plaintiff seeks only the removal of that erroneous disciplinary
     report he received for witnessing a white woman indulging
     in cuddling and kissing a co-worker other than her husband
     on the job.

2.   It is requested to see whether co-worker Mr. Burke made any
     statement to investigating authorities concerning the misconduct
     of Mrs. Kimberly Moore.

3.   It is requested to see whether other co-workers made any
     statements  regarding the relationship Mrs. Kimberly Moore
     and Mr. Burke shared, as well as Mrs. Kimberly Moore involvement
     in other wrongful conduct on and off the BOPs' job.

See Wiley v. U.S., 20 F.3d 222,226(6th Cir. 1994); FRCP 56(e);

Maljack Prods., Inc. v. Goodtimes Home Video Corp., 81 F.3d 881,888

(9th Cir. 1996); North Bridge Assocs., 22 F.3d at 1206; See Moro

v. Shell Oil Co., 91 F.3d 872,874-75(7th Cir. 1996).

The defendant has not proven the word "adulteress" regarding

Mrs. Kimberly Moore was a prison threat short of establishing

a reason why said investigation of Mrs. Kimberly Moore is being

withheld from viewing.  Any and all investigations pertaining

to Mrs. Kimberly Moore will refute reason to remove that disciplinary

report from plaintiff's prison jacket.

## GLOMAR OPPOSITION

The court is guided by a standard of reasonableness. While there is no requirement that an agency search be perfect, the search must be conducted in good faith using methods that are likely to produce the information requested if it exists.

The information sought that was held back by defendant must be reveal for public information showing society that the wrongful conduct of Mrs. Kimberly Moore and that an investigation into her misconduct did occur. Also, the public needs to know whether Mrs. Kimberly Moore can be trusted in the future with any other job without breach of contract or duty.

To release such information will not violate 552b because the requested information is of no criminal nature as well as expected to endanger the life or physical safety of the individual.

The BOP must demonstrate the existence of a nexus "between [its] activity" (rather than its investigation) "and its law enforcement duties." However, the defendant's is not making known that the prison investigation is shown to have been in fact conducted for an improper purpose, which Exemption 7 may not be applicable to the records of that investigation.

An investigation results into the inappropriate acts of former BOP worker Mrs. Kimberly Moore are not protected material simply because it [is] in an investigatory file. And such documents could be released without interference to related proceedings. Furthermore, the agency has not pointed to a <u>specific</u> pending

or contemplated law enforcement proceeding which could be harmed by disclosure, and by releasing the requested information will establish relatiatory act against plaintiff which he only want to show is the reason he was given a disciplinary report by Mrs. Kimberly Moore in the first place.  Because Mrs. Kimberly Moore wanted to show prison officials that she was not indulging in any illegal acts -- to which there was no reason to continue observing her actions while on the job.

Therefore, the agency must prove more than a generalized showing that release of these particular kinds of documents will interfere with enforcement proceedings when the investigation is far beyond completed during that time periord of Mrs. Kimberly Moore working for the BOP.

WHEREFORE, these reasons, plaintiff asks the court to deny defendants' motion for final summary judgment.

## CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true copy of the foregoing motions have been mailed to Alexander D. Shoaibi, AUSA, 555 4th Street, N.W., Washington, D.C. 20530, on this _____ day of _____, 2007.

Respectfully submitted,

Monroe L. Coleman, Pro Se
#01723-016
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

UNITED STATES DISTRICT COURT


CIVIL ACTION NO. _____

MONROE L. COLEMAN, Pro Se                    PETITIONER,

V.


MARK A. BEZY, WARDEN                         RESPONDENT.

PETITIONER'S OPPOSITION TO RESPONDENT'S
OPPOSITION DATED: _____ OF _____, 2006

COMES NOW, Monroe L. Coleman, Pro Se opposing  the named Respon-
dent's Opposition stating why the "disciplinary report filed against
petitioner on or around June 15, 2005, should not be removed from
petitioner's institutional jacket."

The disciplinary report needs to be quashed due to the fact
that after and before the report was written by Kimberly Moore,
the Bureau of Prisons staff/officer(s)  was watching Mrs. Kimberly
Moore who was under investigation and being observed due to her
improper conduct while working on the clock at United States Peni-
tentiary ("USP") Terre Haute.

It was a known fact that she was indulging in and committing
adulterous acts in violation of the United States Department of
Justice Directive Section 3420.09.

For her misbehavior, inappropriate actions while working as an employee for the Bureau of Prisons ("BOP") amounted to sanctions for wrongdoing pursuant to Dept. of Justice Directive §3420.09.

Also, let it be known that the staff and officers of Big Sandy intentionally covered-up the facts that Unicor workers Mr. Morgan, Mrs. S. Stacy, Mr. Abbott, and others knew that Mrs. Kimberly Moore was being promiscuous on the job, which either could have came to the aid of petitioner making known to staff/officer(s) during the investigation of this matter that the petitioner did not anything wrong due to those actions of Kimberly Moore. Furthermore, Mrs. Kimberly Moore was placed under another investigation which she was terminated from her assigned job because she was involved with one or two other inmates thereafter. Petitioner had complained by administrative remedy regarding "sexual harassment" before Mrs. Kimberly Moore was placed under investigation during the month of December 2005 or January 2006.

On several occasions petitioner and other inmates witnessed the misbehavior of Mrs. Kimberly Moore while she worked on the job as a BOP employee.

Mrs. Kimberly Moore would fondle petitioner middle body parts in the present of all staff/officers. Therefore, petitioner request that this Honorable Court order the respondent's to preserve and present the Unicor camera tapes during the entire year of 2005 to January 2006. Then the Court will see how Mrs. Kimberly Moore

-2-

sexually fondled petitioner's testicles and penis.

Petitioner did not want to be labelled as a snitch so he had to allow Mrs. Moore unwelcoming actions.

However, each staff/officer presence in Unicor during the pat-down before leaving the shop witnessed the aggressiveness of Mrs. Moore behavior, and not one of them tried to stop her or reported her conduct to the administration officials. But the staff/officers made it known about Mrs. Moore actions concerning Mr. Burke involvement. Specifically, "their involvement and playing around on the job."

## STATEMENT OF FACTS

Mrs. Kimberly Moore did not deny and refused to attack that specific "adulteress" word, knowingly of her misconduct which Mrs. Kimberly Moore would continuously stroke petitioner's private parts without his permission. Had she denied that petitioner was lying on her she would had been correct to charge petitioner with an institutional infraction of "lying", but her own guilt and shame refused to challenge what petitioner had witnessed and said. She only wanted to cover-up what was already known to staff and inmates.

For any prisoner making a false statement as such about any staff or officer will result in a disciplinary report.

However, for Kimberly Moore to make a false disciplinary report

when she knew her behavior was inappropriate while on the job
for participating in any kind of intimate relationship or unauthor-
ized physical contact with another Bureau of Prisons employee
especially with someone other than her husband was wrong and she
shall be held liable for making that false disciplinary report.
See 18 U.S.C. Section 1001 (Title 18 Crimes and Criminal Pro-
cedure).

Sec. 1001. Statement or entries generally - -

(A) Except as otherwise provided in this section, whoever,
in any matter within the jurisdiction of the executive, legislative,
or judicial branch of the Government of the United States, knowingly
and willfully --

(1) falsifies, conceals, or covers up by any trick, scheme,
or device a material fact;

(2) makes any materially false, fictitious, or fraudulent
statement or representation; or

(3) makes or uses any false writing or document knowing the
same to contain any materially false, fictitious, or shall be
fined under this title, imprisoned not more than 5 years or, ***.

Amendments 2004 - * * *

1996 - Pub. L. 104-292 reenacted section catchline without
change and amended text generally.  Prior to amendment, text read
as follows: "Whoever, in any matter within the jurisdiction of
any department or agency of United States knowingly and willffully

-4-

falsifies, conceals or covers up by any trick, scheme, or device
a material fact, or makes any false, fictitious or fraudulent
statements or representations, or makes or uses any false writing
or document knowing the same to contain any false, fictitious or
fraudulent statement or entry, shall be fined under this title
or imprisoned not more than five years, or both."

## ACTS OF RETALIATION BY PRISON OFFICIALS

To start, the act of filing a false disciplinary report against
the named petitioner shows that it was all right for Mrs. Kimberly
Moore to mess around with a white man on the job, but as soon
as petitioner let it be known that he was aware of her wrongful
acts or letting it be known that he wanted no involvement with
her fondling activity of his private parts then she became very
hostile and determine to get petitioner and the Caption (John
Doe) had petitioner locked down in segregation for calling a white
oficer or staff an "adulteress" which was a manner act of a word
not mentioning that same Captain kept petitioner confined in segre-
gation beyond the reasonable time for such a manner infraction.

The district court has determined that prisoners bringing
such claims must allege more than a de minimis retaliatory act
to establish a constitutional violation.

A prison official may not retaliate against or harass an

-5-

inmate for complaining through proper channels about a guard's misconduct.  Woods v. Smith, 60 F.3d 1161,1164 (5th Cir. 1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  McDonald v. Steward, 132 F.3d 225,231 (5th Cir. 1998).  An inmate must show that he suffered a qualifying adverse retaliatory act; the act must be more than inconsequential.    See Crawford-El v. Britton, 523 U.S. 574,588 n.10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).

Petitioner alleges that retaliation was used because he said what he said to a "white woman."  The reason why such retaliation (for the exercise of First Amendment rights) offends the Constitution is that it threatens to inhibit exercise of the protected right.  Crawford, supra at 588 n.10.

The First Amendment  hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise...."  Bart v. Telford, 677 F.2d 622,625 (7th Cir. 1982).  The Second Circuit has employed a similar de minimis standard, asking whether the retiation alleged by an inmate rose to the level of that which would deter the exercise of a constitutional right.  See Davidson v. Chestnut, 193 F.3d 144,149-50 (2d Cir. 1999).

To this _____ day of _____, 2006, petitioner

-6-

is subjected to retaliation because he was placed in segregation
upon arrival at United States Penitentiary Terre Haute for no
good reason, and if respondent's claimed due to medical, petitioner
makes known TB testing for him is conducted by x-ray.  Plus, peti-
tioner was forced to remain in segregation for one week which
he was not allowed phone call(s), access to the legal library
or its material, counsel, case manager, unit manager to which
petitioner was assigned to upon arrival to this prison refused
to see him for any reason whatsoever, petitioner was refused a
haircut and allowed an interview by the housing unit segregation
lieutenant.

The excuses the Bureau of Prisons officials used to block
or hinder petitioner's approach for relief are poor unreasonable
especially when constitutional rights are involved which there
should be no set time to exercise that right.  E.g., petitioner
alleged "sexual harassment" which respondent stated, "you will
not be informed of the outcome of that allegation investigation,"
your greivance is not granted or denied."  What part of the grei-
vance is granted and what part is denied?  Petitioner then tried
to forward the administrative complaint but was told by Regional
Director's Office and Central Director's Office that the complaint
was denied and untimely.

How can a prisoner exhaust the administrative remedy when
the respondent's duty and obligation are to make those forms less

-7-

possible available to a prisoner. The petitioner was housed in
a segregated unit, confined to a cell for twenty-four hours exclud-
ing one hour for recreation. However, no administrative remedy
forms are available or given upon request but maybe later if at
all after a certain time period has elapsed.

Due to the disciplinary report petitioner's custody points
have risen which may hinder a transfer to a lower custody level
institution.

When prison officials state, "you will not be notified of
the 'outcome' of the sexual harassment complaint." Meaning a
prisoner is denied the pursuit of that claim as done in the instant
case which prison officials denied petitioner the right to continue
pursuit of the issue by saying it is "untimely". The bias excuses
the bureau of prisons used shows an adverse act that it did not
appreciate a black prisoner making indirect degrading remark to
a white woman.

Retaliation -- Telephone Sanction

28 C.F.R. Section 541 - Tables -- Federal Bureau of Prisons
violations and sanctions:

The tables listed below are from the Code of Federal Regulations
(CFR), for federal inmates. Refer to the CFRd for detailed informa-
tion about GCT. SCT, phone Sanction etc. Institutions often take
phone privileges when the rules specifically say phone or visiting
limitation sanction cannot be applied unless the infraction was

-8-

related to that privilege.

28 CFR Section 100 (telephone regulation for inmates) Section 540.105 (telephone calls for inmates inadmission, holdover, segregation, or pre-trial-status) "Staff may not withhold phone privileges as a disciplinary measure except where the infraction for disciplinary action is taken involves abuse, or a clear potential for abuse, of the phone privilege." See also 28 CFR Section 541.13 (appendix A, Table 4-sanctions)(g)(loss of privileges) "... loss of telephone privileges for specified time for an abuse of the telephone privilege...Staff cannot take phone privileges, unless the disciplinary action is telephone related. The above also helps to support an act of retaliation when prison officials don't obey its own policy, regulations, or procedures.

The bureau of prisons' rule, regulation, or policy that govens disciplinary proceedings does not state or make clear what remarks are violative of BOP  disciplinary status.

When petitioner made such remark "you are an adulteress" it was innocent; where there is no guidelines for determining what remarks are unwarranted, or how to use any words that may cause an infraction which the BOP makes known "no profanity is allowed."

In fact, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark be made is violative but it does not stipulate whether an act against BOP 3420.09 is allowable to be said in words.

-9-

In other words, when a person witness two women on the job kissing one another, is an act of homosexuality; and to call either a homosexual after witnessing such violation or inappropriate acts according to the observer belief would be entitlement to freedom of speech.

BOP's disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior. However, to allow such punishing to go unsolved due to Mrs. Kimberly Moore's actions while on BOP working hours means that the punishment was a back door tool for punishing the petitioner.

This forms an act of retaliation in a manner unacceptable as result of unconstitutional application of the rule, regulation, or policy. The petitioner states his remark toward Mrs. Kimberly Moore was not a derogatory comment nor was it evidence to disrespect authority. The sole purpose beyond the remark was to alert Mrs. Moor that he was aware of her wrongful conduct and made the fact known to Unicor supervisor Mr. Abbott as well as letting Mrs. Moore know that her fondling petitioner was unwelcomed and unappreciated. And the disciplinary report charged no security concerns nor was security interest mentioned at the prison disciplinary hearing.

There was no minor penalty because petitioner loss his Unicor job, spent unreasonable days in segregation, loss of commissary and telephone privileges, custody level increased, early transfer

-10-

to United States Penitentiary Terre Haute.  Another act of retalia-
tion was during the transfer the same respondent S. R. Hastings,
Warden of United States Penitentiary Big Sandy located in Inez,
Kentucky.  While petitioner was housed in USP Atlanta holdover,
a decision was made by the U.S. District Court of Eastern District
of Kentucky on petitioner's habeas petition which he had 10 days
to object but the respondent named herein of Big Sandy refused
and denied to inform petitioner by legal mail received from the
U.S. Courthouse that petitioner was entitled to object within 10
days of that ruling.

Also, upon arrival at USP Terre Haute, Indiana petitioner
was placed in segregation without any just reasoning especially
when the Bureau of Prisons entire medical information states that
petitioner TB testing <u>must be done by x-ray and not injection</u>.
Therefore, prison officials cannot used injection as an excuse
to justify their wrongful act of placing petitioner in segregation
especially for more days than necessary or required.  Such act
is believed to have been an act of retaliation committed by the
present respondent via respondent Hastings.

Petitioner now argues that the disciplinary rule 312 [Insolence]
is unconstitutionally vague and overbroad; that BOP officials
had retaliated against him for previous legal court filings con-
cerning its agency as well as blowing the whistle on Mrs. Kimberly
Moore.  See Exhibits 1-50.

The Rule of disciplinary for "Insolence" does impermissibly

-11-

inhibit a prisoner's freedom of expression when he witnessed BOPs' employees indulging and engaging in on the job acts of kissing and rubbing and holding each other other than the spouse to which either was married.  See BOP policy 3420.09.

Thus, this wasn't a gratuitous exchange between inmate and employee because a threat to security lacked restraint and any verbal suffering challenges to her authority.  The remark was innocent when made.

BOP regulations, rules, and policies create infringement that arbitrarily abrogate his First Amendment right of Free Speech. E.g., if two people was indulging in the same sex intercourse and witnessed by others, it is not offensive to call them a homosexual.  As the petititioner witnessed Kimberly Moore committing an indecent act  on the job while other prisoners witnessed the same acts.

Petitioner interest is free expression, and the incidental restriction on alleged First Amendment freedoms is not greater than the furtherance of that free expression.  Consideration must be given to the rule, regulation, and policy that govern the BOPs' standard to justify punishing petitioner whether there exist a violation for punitive in nature regarding free Speech.  Thus, petitioner challenges the validity of the Insolence Rule whether the BOP rule impedes on his Frist Amendment right based on his religious belief and practice as well as the rule limiting free speech.

-12-

Petitioner believes the prison officials impermissibly punish-
ed him in retaliation for calling the foreman (Mrs. Kimberly Moore)
an "adulteress" without keeping it to himself when they knew other
inmates and staff were aware of Mrs. Kimberly Moore wrongful and
improper acts while on the job.

Please, bear in mind that Kimberly Moore never once denied
the statement made against her which she could had written a disci-
plinary report or included in that same disciplinary report that
petitioner was <u>lying</u>. Mrs. Kimberly Moore never did deny the
fact that such acts ever occurred, and with the aid of this court
it may order the respondent to have Mr. Burke submit an <u>affidavit</u>
stating whether he and Mrs. Kimberly Moore committed wrongful
and improper acts while working for BOPs' Unicor.

There may be an argument to determine whether the "speech"
and "nonspeech" elements are combined in the same course of con-
duct, a sufficiently important BOP interest in regulating the
nonspeech element can justify incidental limitations on First
Amendment freedoms.

The BOP regulation, rule, or policy is not clear standards
sufficiently justifiable within the constitutional power to
impinge on petitioner's Freedom of Speech. However, <u>to suppress</u>
<u>a free expression on the First Amendment freedoms is no greater</u>
<u>than is essential to the furtherance of that interest</u>. <u>The BOP</u>
<u>may not make regulations, rules, or policies that will restrain</u>
<u>the exercise of free Speech.</u>

-13-

Prison walls do not form a barrier separating prison inmates from the protections of the Federal Constitution.  Also, the petitiioner states the word used you're an "adulteress" has added no burden on prison security, especially when prison officials were aware of her previous improper acts with Mr. Burke.

Furthermore, why was not Mr. Abbott (Supervisor of Unicor) mentioned in the disciplinary report or the investigating report, since petitioner stated in the presence of Mr. Abbott why he used such word?  Mr. Abbott, Mr. Morgan, and Mrs. Stacy were aware of Kimbely Moore's wrongful actions before this incident occurred  with petitioner and either could had quashed the written report as pending before interviewing officer.

Petitioner was so shocked at the fact of being placed in segregation that he tried to commit suicide immediately after being escorted to the segregation unit.  See Exhibit(s).

Finally, petitioner was told by USP Big Sandy's Captain (John Doe), "Coleman, I cannot let you return to your housing unit because the younger guys (inmates) are mad with you; so you must remain in here (segregation) until they cool down."  However, a week afterward, Mr. Ranum asked petitioner, "are you ready to do right?"  Which petitioner stated yes!  Mr. Ranum then instructed the segregation unit oficers to release petitioner to his housing unit.

Chief Psychologist, Dr. Terry King has already submitted his paperwork for petitioner's return to general population, but

-14-

that John Doe Captain intentionally kept petitioner confined to segregation longer than required for a reason unfounded shows his bias and animosity held toward petitioner for saying what he did to a white woman is a clear sign of retaliation. See Exhibits in its entirety.

## DENIAL OF ACCESS TO THE COURT

Petitioner was released from the Segregation Housing Unit (SHU) July 6th, 2005, which he had one or three days to file the disciplinary appeal. There was no BP 8s or 9s (administrative forms) available nor was Ms. Greene and Mr. Dillian working.... Mr. Fazenbaker refused to give petitioner any forms stating, "wait until Dillian return on Sunday" (July 10th, 2005). Therefore, petitioner made out a form and placed it in the legal mailbox to be mailed to Warden Hastings which the result from that office stated "untimely" filed.

Whenever a prisoner cannot receive a grievance form, or a BOP official or employee refuses to give him one, then he is not bound by BOP regulation, policy, or rule to meet the filing deadline.

And last but not least, petitioner was intentionally transferred to USP Terre Haute, Indiana via USP/FCI Atlanta, Georgia which the district court magistrate of the Sixth Circuit has ruled on petitioner's petition which he was unable to oppose or object

-15-

at that time because respondent's intentionally refused and denied to inform petitioner (by delivery of mail) that a decision was made.  Knowing petitioner had 10 days to respond.

Petitioner was held back from filing the Informal Resolution Administrative Complaints.  See C.F.R. §542.13(a) due to Ms. Greene not willing to give him forms and/or refusing to process the administrative grievance informal resolution; along with Mr. Dillian refusal and denial to submit the informal resolution grievance for processing.  Thereafter, petitioner submitted BP9s without receiving any reply but then an untimely response from the Warden's  office was received by petitioner.

When petitioner was released from segregation he had limited time (hours) to file the disciplinary appeal which was denied without a response from the respondent's (Hastings) office because the response that came later than the timely answer from the warden's office claimed "unacceptable--your appeal is untimely and you need a required form." See McCarthy v. Madigan, 117 L. Ed. 2d 291, 503 U.S. 140, 112 S. Ct. 1081 (1991), the greivance  procedure regulations heavily burden the individual interests of petitioning inmate by (a) imposing short, successive filing deadlines that create a high risk of forfeiture of a claim for failure to comply, and (b) not authorizing an award of monetary damages; the interests of the Bureau do not weigh heavily in favor of exhaustion in view of the remedial scheme and particular claim(s) presented, since,

-16-

while the Bureau has a substantial interest in encouraging internal resolution of grievances and preventing the undermining of its authority by unnecessary resort of prisoners to the federal courts, and the grievance procedure filing deadlines are not a proper basis for excusing exhaustion.  Such applies to the hindering of bringing forth a claim of sexual harassment against Mrs. Kimberly Moore which Warden Hastings refused and denied to address directly.

Basically, the claims have merit but Hastings' administration does not want the necessary steps taken through exhaustion being that Hastings is the first female warden of a United States Federal Penitentiary, petitioner is black and had no right talking to a white woman regardless of the circumstances, and hoping this specific claim would falls short before reaching the court of law.

Making this entire matter necessary as a "Sensitive Grievance". Therefore, the above is a complete showing of a violation of petitioner's rights under the First Amendment, the right to petition the government for redress of grievances do not stop at the prisons' door when constitutional rights are afforded to every one; the showing that BOPs' regulations, rules, and policies create infringement that arbitrarily abrogate petitioner's First Amendment right of excess to the court.

WHEREFORE, petitioner prays that the disciplinary report be removed from his prison jacket and any other relief this court deems just.

Respectfully submitted,

-17-

Monroe L. Coleman-Bey

CERTIFICATE OF SERVICE

I, hereby states that a true copy of the foregoing motion has

been mailed on this _____ day of _____ , 2006,

to the below party:


Respectfully submitted,

Monroe L. Coleman, Pro Se
Reg. No. 01723-016
USP Terre Haute
P.O.Box 12015
Terre Haute, IN 47801

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,

      Plaintiff,

    v.                        Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.,

      Defendants.

## ORDER

Based on Plaintiff's request that the defendants failed to meet this Court's date to respond to the ORDER of July 3, 2007, the Court will GRANT

Plaintiff's request that the Defendants' Motion For Summary Judgment be denied

GRANT Plaintiff's request for Discovery along with probing into (1) whether Coleman has been retaliated against especially concerning $37.40 that is intentionally being withheld by the defendants; (2) was Coleman exercising his constitutional right when he had spoken to Mrs. Kimberly Moore; (3) why Mrs. Moore did not use "Lying" in her written report; (4) was the disciplinary report based on retaliation/revenge; and (5) whether the disciplinary report should be dismissed from Coleman's prison jacket based on 1-4.

SO ORDERED ON THIS _____ DAY OF _____, 2007.

                                           ROSEMARY M. COLLYER
                                           U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

I, hereby states that a true copy of the foregoing motion has been mailed on this _____ day of _____, 2006, to the below party:

Respectfully submitted,

Monroe L. Coleman, Pro Se
Reg. No. 01723-016
USP Terre Haute
P.O.Box 12015
Terre Haute, IN 47801

The United States Department of Justice, Federal Bureau of Prisons Program Statement 1040.4, non-discrimination towards inmates: [Policy §551.90, Bureau staff shall not discriminate against inmates on the basis of race, religious, national origin, sex, disability, or political belief.  This includes making administrative decisions and providing access to work, housing, and programs.] [;] this may include bogus disciplinary reports also.

The reporting requirements of public interest was established in Bureau of Prisons Policy 3420.09 when it was created.  However, the mental aspect of the public interest must be considered when reaching a decision whether the wrongful conduct of Mrs. Kimberly is of public information as well as whether she was under any investigations for violating the BOPs' Policy; supra.

The  5 U.S.C. 552 information is not really sensitive in nature as well as covered as personal privacy-protected information; which exemptions may apply to particular portions of the report but not whether Mrs. Kimberly Moore was under two or more investigations and was terminated due to wrongdoing conduct that Coleman had spoken of only because he and others had witnessed this violation.

The releasing of the information will not appear to interfere with or adversely affect the law enforcement process, [because those investigations were in criminal] and/or where it may be appropriate for review and accuracy to determine whether Coleman received a bias, discriminatory and retaliatory disciplinary report.

Moreover, supporting Coleman's position of bias, discriminatory and retaliatory acts committed by bureau of prisons officials especially former employee Mrs. Kimberly Moore; she was entitled to file an Inmate Discipline of category "313" stating, "Lying or providing a false statement to a staff member." Had Coleman lied on or against Mrs. Kimberly Moore along with degrading her as an officer then 313 was to be added to that disciplinary report which it was not. Affirming a retaliatory disciplinary report.

Furthermore, to show "retaliation act committed by prison officials for writing and processing false disciplinary report, then refusing to remove the disciplinary report amount to prisoner receiving unfair treatment for exercising his constitutional right." Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981). To deter a person of ordinary firmness from exercising his constitutional right suffer|d some adverse action as signs of bias and discriminatory practice at the hands of prison officials is strongly supported throughout this entire case. See McGrath v. Johnson, 155 F. Supp. 2d 294 (E.D. Pa 2001).

The Bureau erred for ... dismissing Coleman's Claim that the disciplinary charges against an inmate were false and filed in retaliation for him exercising of his constitutional right. The only evidence at the disciplinary hearing was that Coleman had witnessed Mrs. Kimberly Moore hinding in a secret area of the Unicor building kissing her co-worker Mr. Burke who is not her husband

which Coleman called her an "adulteress".  Mrs. Kimberly Moore
did not object nor included in her written report that Coleman
lied on her by admitting such statement; and the disciplinary panel
refused and denied to investigate Coleman's allegations along with
interviewing those witnesses to the misconduct of Mrs. Kimberly
Moore.

There was no other evidence used by the disciplinary panel
in making its conclusion which the panel strongly opposed the alle-
gation of Moore's wrongful act as well as denying her involvement
in any adulteress act.  See Moore v. Plaster, 266 F.3d 928 (8th
Cir. 2001) concerning Coleman exercising his constitutional right.

The disciplinary team consisted of two BOP employees; one
was not a party or an assigned member to Coleman's Unit Team.
Nor was the disciplinary measures correctional treatment goals
were in tact at the hearing because both bureau of prisons employees
limited Coleman constitutional right by placing such degree as
necessary to regulate and control his defense along with choice
of words why he called Moore an "adulteress".  This limitation used
as a tactic by bureau of prisons employees including disciplinary
panel rendered capriciously on the nature of retaliation or revenge
toward Coleman, which the disciplinary panel decisionmaking was viola-
tive of Coleman's due process of law during and at that hearing.  It
is requested that this Honorable Court conduct an inquiry into:
1) the disciplinary panel process; and 2) retaliation/revenge actions.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MONROE L. COLEMAN,
    Affiant/Plaintiff,

        v.                              Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
            Defendants.


A  F  F  I  D  A  V  I  T


I, Monroe L. Coleman, the named plaintiff/affiant in the
above caption case number (hereafter "plaintiff") summits this
affidavit in good faith.

Thus, it is recommended or requested that this Honorable
Court view in camera those documents and/or files used by the
agency during 2005 through 2006 which pertain to Mrs. Kimberly
Moore that led to her termination from bureau of prisons.
Any employee, who is a citizen of the United States whose employment
is suspended, discharged, or dismissed under the authority of
the Bureau of Prisons Policy such actions of the employee shall
be made known to the citizens of the United States as unacceptable
and unwelcoming actions committed while working for the bureau
of prisons.  And this information has not been made available
to plaintiff in this matter.  The penalty for employee misconduct
is a matter ususally left to the sound discretion of the executive
agency. Boyce v. U.S., 211 Ct. Cl. 57, 543 F.2d 1290,1292(Ct. Cl.
1976).

Had Congress felt the disclosure of such information was harm-
ful it would had made it <u>Exempted</u> in the interest of the "national
security" as done in other federal branches of government.

Instead, Congress specified 11 named agencies to which the
Act should apply, the character of which reveals, without doubt,
a purpose to single out those agencies which are directly concerned
with the national security. Of the 11 agencies, 8 are concerned
with mitary operations or weapon development, the other 3, with
international relations, internal security, and the stock-piling
of strategic materials.

It is privileged information when an employee misconduct
results in continuous investigations for less stringent reasons
than a threat to endanger national security. Breach of loyalty
and acts of <u>unacceptable standard</u> is not private information pro-
tected under 552a.

There is no justification the Bureau of Prisons can use to
denty the requested information sought by plaintiff. Society
needs to know of Mrs. Kimberly Moore's misconduct; to know that
she was under several investigations as a breach of federal conduct
that could had resulted in escapes as well as unprotecting those
inmates under her watch.

There is no Exemption to the Information sought from bureau
of prisons by plaintiff which FOIA does  not protect from disclo-
sure. See Section 552. Public Information; agency rules, opinions,
orders, records, and proceedings (a)(1)(A),(B),(C),(D),(E),(2).

The information is privileged necessarily on the character of
Mrs. Kimberly Moore and the likelihood of her misconducting herself
as an employee of the bureau of prisons, which the privileged
information should include the position she occupied and its relation-
ship to the security of those prisoners and prison.

Her misconduct affected plaintiff welfare and health.  And
it has been shown by those acts of bureau of prisons officials
or employees that the disciplinary report was filed only as an
act of <u>retaliation</u>.  Retaliatory acts - Women Prisoners of the
D.C. Department of Corrections v. District of Columbia, 320 U.S.
App. D.C., 247 (1996, because plaintiff had substantial protection
from retaliation for exercising his free speech.  Therefore, Mrs.
Kimberly Moore and others federal bureau of prisons officials
had motive to file that disciplinary report against Coleman other
than him using that constitutional right.

Thus, discovery is necessary in this matter to see the motive
used by bureau of prisons officials including Mrs. Kimberly Moore.
See Court order production 5 U.S.C. §552(a)(4)(F).  This requested
information to the bureau of prisons from plaintiff and/or court
is not concerned with national security.

## PLAINTIFF'S REQUEST FOR DISCOVERY

Plaintiff request discovery in the instant case to prove
retaliatory acts committed by bureau of prisons officials as well

as reasons to show the hidden bias, unfair treatment to him, and
the cover-up of Mrs. Kimberly Moore's misconduct that was a known
fact existing prior to, during, and after the disciplinary report.

The penalty for employee misconduct is a matter usually left
to the sound discretion of the executive agency. Boyce v. U.S.,
211 Ct. Cl. 57, 543 F.2d 1290,1292 (Ct. Cl. 1976), but plaintiff
is not interested in the penalty Mrs. Moore received only to prove
an investigation did exist along with assertion that he should
not had received a disciplinary report.

It is request of the following information be provided to
this Court for in camera viewing: Notice of discharge, Suspension
notice, Just Cause for termination, Memorandum or documents stating
just cause, Benefit warning, Reason(s) for dismissal/suspension,
documents and/or statements of co-workers of Mrs. Kimberly Moore
along with any documents and/or statements made or filed on behalf
of any other person who was aware of Mrs. Moore's inappropriate
actions while employed for the bureau of prisons.

Without this information plaintiff is unable to oppose the
summary judgment by affidavits. Plaintiff was not aware previously
that he should had filed for discovery but now do so. There is
discoverable materials that would likely raise a genuine issue
of material fact and thus defeat summary judgment. Maljack Prods.,
Inc. v. Goodtimes Home Video Corp., 81 F.3d 881,888 (9th Cir.
1996); North Bridge Assocs., 22 F.3d at 1206.

The requested discovery: deposition of a certain witness,

and/or inmates, co-workers, bureau of prisons officials; request
for documents; request for interrogatory answers). See Allen
v. Bridgestone/Firestone, Inc., 81 F.3d 793,797-98 (8th Cir. 1996);
Paddington Partners, 34 F.3d at 1138. As mentioned above plaintiff
when then be able to dispute and refute the defendant's summary
judgment motion, because such information will explain how the
evidence uncovered through additional discovery can reasonably
create a genuine issue of material fact that is, how plaintiff
will overcome the hurdle against the summary judgment by defendants.

However, it is important to note that the D.C. Circuit in
Bevis v. Department of State, 801 F.2d at 1389, held that even
though an agency "need not justify its withholding on a document-
by-document basis in court, [it] must itself review each document
to determine the category in which it belongs." 801 F.2d at 1389;
See also Crooker v. ATF, 789 F.2d at 67. But it must explain
to the court how the release of each category would interfere
with previous enforcement proceedings, Bevis, supra at 1389-90;
Bruscino v. Federal Bureau of Prisons, slip op. at 16.

Thus, it is recommended or requested that this Honorable
Court view in camera those documents and/or files used by the
agency during 2005 through 2006 which pertain to Mrs. Kimberly
Moore that led to her termination from bureau of prisons. Basically,
the agency should not experience any embarrassment and discomfort
by revealing the requested information (e.g., critical insights
into its legal thinking and strategy).

The requested information will show without doubt an act of retaliation committed by prison officials due to plaintiff telling Mrs. Kimberly Moore that she was an "adulteress" after plaintiff and others witnessed her indulging in inappropriate acts with co-worker Mr. Burke. And to this date below, plaintiff still accepting acts of retaliation from prison officials because of that disciplinary report.

Plaintiff believes the disciplinary report should be removed for: 1) the report was written only due to retaliation; 2) he will continue being subjected to retaliatory acts by prison officials; 3) said investigation results were not of any criminal proceeding; 4) disclosure will not have a significant, adverse effect on Mrs. Kimberly Moore's private or professional life; and 5) prison officials conduct as well as their actions were done in bad faith by placing in plaintiff's prison jacket a bias and retaliatory disciplinary report due to Mrs. Kimberly Moore being a white woman and plaintiff Asiatic, and the agency refusal to respond to requested information shows its bad faith in processing or in its search for necessary information then not allowing plaintiff the opportunity to review such to determine whether those allegations are false.

Plaintiff is not requesting the identities of those that were involved in investigating Mrs. Kimberly Moore unprofessional behavior while employed by bureau of prisons, but only to show this Honorable Court why the information should be released for the removal of that erroneous disciplinary report from his prison

jacket.

Revealing of this information is the best of public interest in disclosure as sufficiently compelling that overcomes privacy interest which the defendant's defective affidavit have not disputed this fact.

And at the litigation stage, the agency must demonstrate to the court, either through a Vaughn affidavit or an in camera submission, that its refusal to confirm or deny the existence of responsive records is appropriate. See Ely v. FBI, 781 F.2d 1487,1492 n.4 (11th Cir. 1986); Grove v. CIA, 752 F. Supp. at 30; See Shaw v. FBI, 604 F. Supp. 342,344-45 (D.D.C. 1985). Requester seeking any investigatory files only on Mrs. Kimberly Moore who is believed to have participated in misbehavior during bureau of prisons working hours and off athe job. See bureau of prisons policy 3420.09 (attached hereto). Furthermore, plaintiff asserts had he been represented by counsel or resided in society such information would be made available for public interest.

Discovery may be applicable in this matter to determine whether defendant acted in bad faith by writing then processing a disciplinary report based on true facts of Mrs. Kimberly Moore, which the disciplinary report was an act to cover-up Moore's degradation. Therefore, plaintiff's request for discovery shall include bureau of prisons witnesses, request for documents pertaining to those witnesses, and reports written and filed by the prison officials namely ("SIS") Security Investigative Services.

Plaintiff contends that the district court should examine the documents at issue in camera to determine whether any portion of the materials consists of non-exempt, "reasonably segregable" information. It has long been the rule in this Circuit that non-exempt factual information in a document must be disclosed unless it is inextricably intertwined with exempt material. See e.g., Mead Data Central, Inc. v. Dep't of the Air Force, 184 U.S. App. D.C. 350, 566 F.2d 242,269 D.C. Cir. 1977); Schiller v. NLRB, 296 U.S. App. D.C. 84 (1992).

In 1974, Congress expressly incorporated this requirement into the FOIA which now provides that "any reasonably segregable portion of a record shall be provided...after deletion of the portions which are exempt...." 5 U.S.C. §552(b) (1976). Citing Center for Auto Safety v. Environment Protection Agency, 235 U.S. App. D.C. 169 (1984). Thus, plaintiff request this Court to adopt a per se rule that trial courts must use in camera inspection where the agency claims that is withholding factual material because such material is inextricably intertwined with exempt deliberative material under Exemption 5.

In 1974, Congress amended the FOIA and invested the district court with discretion to conduct in camera inspection without the necessity of relying upon affidavits. The District Court is required to determine FOIA exemption claims "de novo" and "may examine the contents of such agency records in camera..." 5 U.S.C. §552(a)(4)(B)(emphasis added).

Moreover, in addition to the above, the legislative intent, as expressed in the Conference Report clearly reflects the view that in camera reviews were to be a "secondary tool of FOIA enforcement." Ingle v. Department of Justice, 698 F.2d 259,264 (6th Cir. 1983). The Conference Report notes:

> the court may examine records in camera in making its determination under any of the nine categories of exemptions under section 552(b) of the law... while in camera examinations need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. S. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), reprinted in [1974] U.S. Code Cong. & Admin. News, pp. 6267,6287-88. Furthermore, the House Report indicates that the FOIA merely "permit[s] such in camera inspection at the discretion of the Court." H.R. Rep. No. 93-1380, Conference Rep. 93d Cong., 2d Sess. 9 (1974).

Making available for public inspection and copying the information described in 5 U.S.C. §(a)(2)(B) and (C) and otherwised comply with 5 U.S.C. §522(a)(2). Meaning, the public interest is at stake regarding the misbehavior of Mrs. Kimberly Moore and the public is entitle to know whether she was first investigated when bureau of prisons officials became aware of her actions.

In assessing whether records are compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding. Jefferson v. Dep't of Justice, 350 U.S. App. D.C. 337, 284 F.3d 172,176-77 (D.C. Cir. 2002)(citations and internal quotations omitted). In the instant case, "defendant's affidavits must establish...'a rational nexus between the investigation and one of the [SIS] law enforcement duties; and'...a 'connection between an individual or incident and a possible security risk or violation of federal law.'" Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 356 U.S. App. D.C. 333, 331 F.3d 918,926 (D.C. Cir. 2003)(quoting Campbell, 164 F.3d at 32), cert. denied, 540 U.S. 1104, 124 S. Ct. 1041, 157 L. Ed. 2d 888 (2004). And the instant case is not of criminal nature.

Plaintiff's request for Freedom of Information is not to learn of those that investigated former bureau of prisons employee Mrs. Kimberly Moore, who was not under any criminal investigation.

A discovery will reveal the very fact that plaintiff was viewed as saying something too smart to a white woman as if he should never forget the harm done to Elmer Till. But, plaintiff needs the Court to determine whether Mrs. Kimberly Moore violated and/or breached bureau of prisons policy 3420.09 (that is attached), along with being under an investigation for wrongful acts with others other than her husband while on and off the bureau of prisons job.

Society has a vested right to be informed of Moore's actions.

This discovery will positively affirm plaintiff's allegations supported by retaliatory, discriminatory, and bias acts committed by bureau of prisons officials. Meaning, the disciplinary report should be deleted from plaintiff's prison jacket preventing summary judgment.

Additionally, defendant's Summary Judgment should be denied because plaintiff's attached EXHIBIT will suffice <u>retaliatory act committed by prison officials for exercising his Freedom of Speech</u>. See Ex. Writ of Habeas Corpus.

This affidavit was prepared and done in good faith. Under the penalty of perjury plaintiff swears to the best of his knowledge that the above is true and correct accordingly to his recollection. And it is requested that a <u>telephone conference be scheduled in this matter instead of a hearing</u>.

Respectfully submitted,

Monroe L. Coleman, Pro /Se

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true copy of the foregoing motions have been mailed to Alexander D. Shoaibi, AUSA, 555 4th Street, N.W., Washington, D.C. 20530, on this 27th day of August, 2007.

Respectfully submitted,

Monroe L. Coleman, Pro Se
#01723-016

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the court to deny defendant's motion for final summary judgment.

## A. Introduction

1.   Plaintiff Monroe L. Coleman; defendant is Bureau of Prisons Agency.

2.   On 8-24-06, plaintiff sued defendant for failing to provide him with Freedom of Information Act request. On 2-7-07, defendant filed Enlargement of Time, Notice of Appearance 2-7-07.

3.   On _____, defendant filed a motion for final summary judgment on plaintiff's cause of action for Freedom of Information Request.

4.   Summary Judgment is improper in this case because there are genuine issues of fact on each element of plaintiff's cause of action for Freedom of Information Act 5 U.S.C. §522: Const'l Right; Public Interest; 552 entitlement.

5.   A statement of genuine is attached, as required by Local Rule 56. Plaintiff seeks information supporting Mrs. Kimberly Moore was under investigation for wrongful actions while on the bureau of prisons job;

was involved in inappropriate kissing, fornication, cuddling,

or providing inmate(s) with personal garment while working

for BOP at United States Penitentiary Big Sandy, Inez, Kentucky;

that the disciplinary report was a cover-up to help Mrs. Kimberly

Moore who was facing suspicion, suspension, or removal for having

a relationship on and off the BOPs' job.

### C. Standard of Review

6.  Although summary judgment is proper in any case where there
    is no genuine issue of material fact, this is not a case
    in which the court should grant summary judgment. Fed.R.Civ.P.
    56(c); Celotex Corp. v. Catrett, 477 U.S. 317,322, 106 S.
    Ct. 2548,2552 (1986).

7.  Without any discovery plaintiff is unable to show the bias,
    retaliation for exercising his First Amendment Constitutional
    Right, and discriminatory practice committed by those defendants.
    See attached Petition For Writ of Habeas of Corpus.  Also,
    defendant cannot rely on conclusory statements to establish
    that plaintiff has not presented evidence on an essential
    element of his claim.
    Rather, defendant must demonstrate the absence of a genuine
    factual dispute. See Celotex Corp., supra, 477 U.S. at 327,
    106 S. Ct. at 2255.  Only if the defendant meets its burden
    is plaintiff required to respond by summary judgment proof
    to show a genuine issue of material fact. Fed.R.Civ.P. 56(e).

8.  In determining whether there is a disputed issue of material

fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant. Garcia v. Pueblo Country Club, 299 F.3d 1233, 123 6-37 (10th Cir. 2002).

9.  Plaintiff must prove the following essential elements to sustain a claim for Freedom of Information Request against defendant:  the claim is not of criminal nature, the claim is of public interest, the claim established a constitutional violation of plaintiff's First Amendment right, the disciplinary report issued or served on plaintiff was done as act of retaliation especially to cover-up the wrongdoing of former bureau of prisons employee Mrs. Kimberly Moore, plaintiff has requested from defendant that it remove the erroneous disciplinary report from his prison jacket that was prejudicially place against him, Mrs. Kimberly Moore was under several investigations before, during, and after plaintiff received that disciplinary report as well as prison employees knew of Mrs. Kimberly Moore's adulteress acts with co-worker Mr. Burke.  Because there is a material fact issue on the element of defendant's has failed to support with doubt that the withholding of its information is not of public interest and concerns no criminal charge(s) against Mrs. Kimberly Moore, along with failure to show a good reason why that disciplinary report should remain in plaintiff's prison jacket, therefore, defendant is not entitled to summary judgment in this case.

10. <u>Public Interest</u> - Plaintiff received retaliation for exercising

his constitutional right under the First Amendment:

    It is well established that while "[p]rison walls do not form a
barrier separating prison inmates from the protections of the Const'n."
Turner v. Safley, 482 U.S. 78,84, 107 S. Ct. 2254, 96 L. Ed. 2d 64(1987),
prison restrictions that implicate prisoners' const'l rights may be up-
held if they are "reasonably related to legitimate penological interest,"
id. at 89, 107 S. Ct. 2254; see also Purnell v. Lord, 952 F.2d 679,682
(2d Cir. 1992). However, this [retaliation] requires a "particularized
<u>proffer</u> of evidence to be presented whether unconst't motive by prison
officials is sufficient also to defeat the summary judgment. In Turner,
supra, the Supreme Court held that "when a prison regulation impinges on
inmates" const'l rights, the regulation is...interest," at 89.

    The public is entitled to know whether bureau of prisons officials

favor <u>a white woman employee over a black prisoner especially when</u>

<u>she is at fault compared to the prisoner observing her misbehavior</u>

<u>in violation of Federal Bureau of Prisons Plicy 3420.09</u>.  The public

interest has an opinion regarding the <u>bureau of standard conduct</u>

when that standard <u>is breached</u> which could had an affect on public

security.

    To limit public interest on such matters as in the instant

case where the result has influence on its security, the public

interest stands on the surface of constitutionality awareness especial-

ly when:  Job termination, fraud, female employee unfaithfulness,

discrimination, bias, prisoner's unfair treatment, and bureau of

prisons employee breach of contract are the base of each party's

interest.

    Public interest taxes concern:  1) Whether a full and proper

investigation was done on Mrs. Kimberly Moore; 2) whether plaintiff

was unfairly treated by prison officials by filing a deceptive,

bias, or retaliatory disciplinary report against him when he has
done no wrong to Mrs. Kimberly Moore; 3) whether she is a blessing
or a curse to society's security and/or code of conduct; and 4)
neither did plaintiff violate the security of the prison.

Furthermore, Mrs. Kimberly Moore intentionally disregarded
the purpose and reason of working for the bureau of prisons. She
took for granted the safety of employees, plaintiff, and society
while enjoying her <u>cake and eating it too</u>. Mrs. Kimberly Moore
should not be allowed to think her <u>crafty activities on the job
will go unnotice in society</u>.

Mrs. Kimberly Moore conduct should not be secluded from the
public especially when the public has a right to be informed of
any transgression that leads to a job termination. Additionally,
when a government employee work or job assignment(s) can or may
fall ptentially in the same capacity as law-enforcement that result
in job termination because of violating the job's policy and/or
regulation(s) without criminal charges filed, there the public
interest is at stake.

And accordingly, to plaintiff's interpretation, once Mrs.
Kimberly Moore breached the language of Federal Bureau of Prisons
<u>3420.09</u> it becomes public information especially when it is not
of criminal investigation. See the attached 3420.09.

Meaning, the second part of plaintiff's FOIA 5 U.S.C.S. §552
request for information regarding Mrs. Kimberly Moore's misbehavior
investigation should be inspected by this Court to make its interpre-

tation whether the requested information is of public interest.

Note, not only was Mrs. Kimberly Moore <u>unfaithful</u> <u>and</u> <u>wreckless</u> <u>in her actions that were despicable while on the job which she committed fraud against those parties who had a contract with her</u>. That motive became the end result leading to <u>termination</u> from employment. And the public needs to be made aware whether Mrs. Kimberly Moore is competent to handle certain job position as well as to trust her with the security of others regardless if prisoners.

Even if certain names, addresses, or titles are deleted, there is nothing to interfere or desists the information <u>disclosure</u> <u>to</u> <u>the public</u>. Also, the <u>public</u> <u>interest</u> <u>is</u> <u>concerned</u> <u>with</u> <u>whether</u> <u>the federal bureau of prisons officials condone especially while on the job fraudulent acts of Mrs. Kimberly Moore</u>, <u>then</u> <u>condemning</u> <u>Monroe L. Coleman for telling Mrs. Moore what he and others had witnessed her "adulteress" behavior</u>.

Mrs. Kimberly Moore's infidelity while on Bureau of Prisons job is public information because it goes toward her integrity and faithfulness toward her family. This makes the termination of public interest; to be public inspected and copied. 5 U.S.C. §552(a)(2)(B) & (C). 5 U.S.C. 522(a)(2). See also Bureau of Prisons attached policy 3420.09.

Plaintiff also makes known that bureau of prisons officials, staff, officers, counselors, employees, and inmates will surely continue to show bias, prejudice, and mental threat to his wellbeing as unlimited retaliatory acts for something plaintiff was not a

part of committing the Moore's infraction.

This is a strong possibility that plaintiff will suffer unnecessary pain emotionally and mentally with hope that it doesn't become physical. Such irreparable injury is due to his inability to have that pre-judicial disciplinary report removed.

Information customarily furnished to the public in the regular course of the performance of official duties may continue to be furnished to the public without complying with this subpart, provided that the furnishing of such information would not violate the Privacy Act of 1974 5 U.S.C. 552a, and would not be inconsistent with subparts C,D, or E of this part.

To the extent permitted by other laws, the Department will also consider making available records which it is permitted to withhold under the FOIA if it determines that such disclosure could be in the public interest. Information which does not warrant classification shall not be withheld from a requester on the basis of 5 U.S.C. 552(b)(1).

See 28 C.F.R. Ch. 1 §16.96, 97 - These exemptions apply only to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. 552(j) and (K). Where compliance would not appear to interfere with or adversely affect the overall law enforcement process, the applicable exemption may be waived by the FBI. See 28 C.F.R. Ch 1 (7-1-97 Edition) §16.1(a) General provisions. 5 U.S.C. 552. All requests for records that are not processed under this subpart.

Disclosure sought is not within exemption of 5 U.S.C. §552(b)(2) where the information is not of criminal nature nor will it describe the names of those law-enforcement officials involved in the internal investigation once certain information of the investigative report is deleted where necessary.  But Action to gain access to law enforcement records under FOIA (5 USCS §552) regarding brief, personal memo from Office of Professional Responsibility to FBI and/or BOP should not fall under §552 exemption 2 if those official names are deleted concerning those that reported/recommended the termination of Mrs. Kimberly Moore.

In order for a nondisclosure statute to override the compulsory disclosure requirements of the Freedom of Information, 5 U.S.C.S. §552, by means of its third exemption, the particular statute must (1) absolutely forbid disclosure or (2) set forth specific standard and  criteria for withholding information or refer with sufficient particularity to the kinds of information to be withheld so as to remove any unlimited discretion about withholding or disclosing the information in question.

D. Objections

11.  Defendant's summary judgment is not plausible.

A. Defendant relies on defective affidavits.  The affidavits have not corrected or mentioned the bias, retaliatory, and discriminatory practice toward plaintiff by the filing of a bogus disciplinary report because Mrs. Kimberly Moore is a white woman.

F. Summary Judgment Evidence

12.  In support of his response, plaintiff includes the evidence
attached hereto:

A. The affidavits of Monroe L. Coleman have established grounds
for discovery to see whether plaintiff received bias, retaliatory,
and discriminatory practices from defendant.

D. Conclusion

13.  Plaintiff only want the removal of that erroneous disciplinary
report from his prison jacket which should not had been filed against
him.  Once this Corut has reviewed in camera the information it
will see the wrongful conduct of defendant and for such reasons,
plaintiff asks the Court to deny defendant's motion for final summary
judgment.

Furthermore, a prison inmate "retains those First Amendment
rights that are not inconsistent with his statut as a prisoner or with
the legitimate penological objectives of the corrections system.
Giano v. Senkowski, 54 F.3d 1050,1053(2d Cir. 1995).  In Thornburgh
v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459(1989),
the Court set forth three factors to be considered in balancing in-
mates' interests against those of correctional institutions:  (i)
"where the governmental objective underlying the regulations at issue
is legitimate and neutral, and [whether] the regulations are rational-
ly related to that objective," id. at 414, 109 S. Ct. at 1882, (ii)
"whether there are alternative means of exercising the right that re-
main open to prison inmates," id. at 417, 109 S. Ct. at 1884, and

(iii) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison," id. at 418, 109 S. Ct. at 1884.

The disciplinary report written by Mrs. Kimberly Moore should be quashed knowingly that she was under an investigation....

Plaintiff requests the release of FOIA 552 regarding those investigations of Mrs. Kimberly Moore wrongful, inappropriate, and belligerent conduct that has led to plaintiff receiving a prison infraction without--truthfully violating any prison regulations, rules or policy; and/or removal of that disciplinary report written under pretense by Mrs. Kimberly Moore and processed by prison officials under the same disguise as Mrs. Moore. But, only by the defendant's intent was the disciplinary report written to cover-up the true motive of Mrs. Kimberly Moore's action. Therefore, discovery is necessary in this matter as well as this Court reviewing in camera the concealed information the defendant's refuses to release. Retaliatory Actions: A genuine issue of material fact as to retaliation has been established by plaintiff and yet undisputed by defendant. Therefore, this allows the district court jurisdiction to determine whether such unprofessional and misconduct were established that while "[p]rison walls do not form a barrier separating prison inmates from the protections of the constitution." Turner v. Safley, 482 U.S. 78,84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), prison restrictions that implicate prisoners' constitutional rights may be  upheld if they are "reasonably related to legitimate penological

interests," id. at 89, 107 S. Ct. 2254; see also Purnell v. Lord,
952 F.2d 679,682 (2d Cir. 1992).  However, this [retaliation] re-
quires a "particularized proffer of evidence to be presented whether
unconstitutional motive by prison officials is sufficient also
to defeat the summary judgment.

In Turner, supra, the Supreme Court held that "when a prison
regulation impinges on inmatess' constitutional rights, the regula-
tion is valid if it is reasonably related to legitimate penological
interests," at 89, 107 S. Ct. at 2261.

No Resolution of disputes on Affidavits - Although affidavits may
be used on motion for summary judgment, court may not resolve disputed
fact issues by reference to affidavits. Benton-Volvo--Metairie,
Inc. v. Volvo Southwest, Inc. (1973, CA5 La) 479 F.2d 135, 17 FR
Serv 2d 554; Chemical Foundation, Inc. v. Universal-Cyclops Steel
Corp. (1942, DC Pa) 2 FRD 283, 53 USPQ 173; Eastern Tunneling Corp.
v. Southgate Sanitation Dist. (1979, DC Colo) 487 F. Supp. 109.

While Rule 56 provides for filing of affidavits bona fide
factual disputes may not be disposed of through use of affidavits.
Jackson v. Griffith (1973, CA10 Kan) 480 F.2d 261; Daniels v.
Beryllium Corp. (1964, ED Pa) 227 F. Supp. 591.

Where affidavits filed upon defendant's motion for judgment
on record and plaintiff's motion to strike certain defense as well
as presenting a defense summary judgment then becomes a conflict
and an in-camera review is necessary along with discovery.

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, hereby states that a true copy of

the foregoing motion(s) and affidavit are mailed to the following:

| Alexander D. Shoaibi | | Alexander D. Shoaibi |
|---|---|---|
| Assistant United States Attorney | | Assistant U.S. Attorney |
| 555 4th St., N.W. Room #4218 | **or** | 501 Third St., N.W. Rm E-4218 |
| Washington, D.C. 20530 | | Washington, D.C. 20530 |

Dated: _____

                                        Respectfully Submitted,


                                        _____
                                        Monroe L. Coleman, Pro Se
                                        U.S.Penitentiary
                                        P.O. Box 12015
                                        Terre Haute, IN 47801

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,
        Plaintiff,

    v.                                Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
        Defendants.

### ORDER

Upon the motion(s) and affidavit(s) of Plaintiff, and the court being sufficiently advised,

IT IS HEREBY ORDERED that the Plaintiff's Opposition To Defendants' Summary Judgment; Glomar Opposition; Affidavit; and Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment will be held in abeyance for ruling until this Court has review in-camera the withheld Freedom of Information, 5 U.S.C. 552 sought by plaintiff whether said information is of public interest; and

IT IS FURTHER ORDERED that the Plaintiff's request for Discovery be GRANTED

This the _____ day of September, 2007.


                                        _____
                                        ROSEMARY M. COLLYER, JUDGE
                                        UNITED STATES DISTRICT COURT

August 24, 2007

Monroe LaVelle Coleman
#01723-016
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

Alexander D. Shoaibi
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

    Re:  Letter/Motion
        Civil Action No. 06-2255(RMC)

Dear Clerk of Court:


    It is requested that this Honorable Court enter an ORDER stating, "the defendants have conceded" via Attorney Alexander D. Shoaibi, of 555 4th Street, N.W., Washington, D.C. 20530, on this 24th day of August, 2007, because the defendants have failed to respond to the Court's Order dated July 3rd, 2007, and for defendants' failure, the Court will deny Summary Judgment filed by defendants in this matter.

    This Court may grant this request based on the defendants failure.  I thank you for your time and assistance in this matter,


                Respectfully submitted,


                Monroe LaVelle Coleman

cc: Inmate's File

DATE: MAY 14, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : ████████████ COLEMAN ████████████
      TERRE HAUTE USP      UNT: LCP      QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 451045-F1
DATE RECEIVED   : APRIL 30, 2007
RESPONSE DUE    : MAY 20, 2007
SUBJECT 1       : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2       :


Intentional

Denial To Return Coleman's
Personal Property


Extensions are overdue


Rec. 6-8-07

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTH CENTRAL REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID    : 451045-R1
DATE RECEIVED : MAY 29, 2007
RESPONSE DUE  : JUNE 28, 2007
SUBJECT 1    : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2    :

*Me seeks to intervene in order to receive back the $37.40 that Gammon's (of business office) is intentionally withholding This further Retaliation*

*Rec 7-12-07*

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID     : 451045-A1
DATE RECEIVED : JULY 9, 2007
RESPONSE DUE  : AUGUST 18, 2007
SUBJECT 1     : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2     :

The defendants' agents
are withholding Coleman's
property because he filed
against their boss and
General Harley Lappin

Rec 7-12-07

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: AUGUST 23, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP     UNT: LCP     QTR: D01-206L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : SEPTEMBER 7, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

*Prison officials intextronally
Refusing to return this property*

*Rec. 8-22-07*

The United States Department of Justice, Federal Bureau of Prisons Program Statement 1040.4, non-discrimination towards inmates: [Policy §551.90, Bureau staff shall not discriminate against inmates on the basis of race, religious, national origin, sex, disability, or political belief. This includes making administrative decisions and providing access to work, housing, and programs.] [;] this may include bogus disciplinary reports also.

The reporting requirements of public interest was established in Bureau of Prisons Policy 3420.09 when it was created. However, the mental aspect of the public interest must be considered when reaching a decision whether the wrongful conduct of Mrs. Kimberly is of public information as well as whether she was under any investigations for violating the BOPs' Policy; supra.

The 5 U.S.C. 552 information is not really sensitive in nature as well as covered as personal privacy-protected information; which exemptions may apply to particular portions of the report but not whether Mrs. Kimberly Moore was under two or more investigations and was terminated due to wrongdoing conduct that Coleman had spoken of only because he and others had witnessed this violation.

The releasing of the information will not appear to interfere with or adversely affect the law enforcement process, [because those investigations were in criminal] and/or where it may be appropriate for review and accuracy to determine whether Coleman received a bias, discriminatory and retaliatory disciplinary report.

Moreover, supporting Coleman's position of bias, discriminatory and retaliatory acts committed by bureau of prisons officials especially former employee Mrs. Kimberly Moore; she was entitled to file an Inmate Discipline of category "313" stating, "Lying or providing a false statement to a staff member." Had Coleman lied on or against Mrs. Kimberly Moore along with degrading her as an officer then 313 was to be added to that disciplinary report which it was not. Affirming a retaliatory disciplinary report.

Furthermore, to show "retaliation act committed by prison officials for writing and processing false disciplinary report, then refusing to remove the disciplinary report amount to prisoner receiving unfair treatment for exercising his constitutional right." Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981). To deter a person of ordinary firmness from exercising his constitutional right suffer‖d some adverse action as signs of bias and discriminatory practice at the hands of prison officials is strongly supported throughout this entire case. See McGrath v. Johnson, 155 F. Supp. 2d 294 (E.D. Pa 2001).

The Bureau erred for ... dismissing Coleman's Claim that the disciplinary charges against an inmate were false and filed in retaliation for him exercising of his constitutional right. The only evidence at the disciplinary hearing was that Coleman had witnessed Mrs. Kimberly Moore hinding in a secret area of the Unicor building kissing her co-worker Mr. Burke who is not her husband

which Coleman called her an "adulteress".  Mrs. Kimberly Moore
did not object nor included in her written report that Coleman
lied on her by admitting such statement; and the disciplinary panel
refused and denied to investigate Coleman's allegations along with
interviewing those witnesses to the misconduct of Mrs. Kimberly
Moore.

There was no other evidence used by the disciplinary panel
in making its conclusion which the panel strongly opposed the alle-
gation of Moore's wrongful act as well as denying her involvement
in any adulteress act.  See Moore v. Plaster, 266 F.3d 928 (8th
Cir. 2001) concerning Coleman exercising his constitutional right.

The disciplinary team consisted of two BOP employees; one
was not a party or an assigned member to Coleman's Unit Team.
Nor was the disciplinary measures correctional treatment goals
were in tact at the hearing because both bureau of prisons employees
limited Coleman constitutional right by placing such degree as
necessary to regulate and control his defense along with choice
of words why he called Moore an "adulteress".  This limitation used
as a tactic by bureau of prisons employees including disciplinary
panel rendered capriciously on the nature of retaliation or revenge
toward Coleman, which the disciplinary panel decisionmaking was viola-
tive of Coleman's due process of law during and at that hearing.  It
is requested that this Honorable Court conduct an inquiry into:
1) the disciplinary panel process; and 2) retaliation/revenge actions.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,

      Plaintiff,

    v.                        Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.,

      Defendants.

## ORDER

Based on Plaintiff's request that the defendants failed to meet
this Court's date to respond to the ORDER of July 3, 2007,
the Court will GRANT
Plaintiff's request that the Defendants' Motion For Summary Judgment
be denied
GRANT Plaintiff's request for Discovery along with probing into
(1) whether Coleman has been retaliated against especially concerning
$37.40 that is intentionally being withheld by the defendants;
(2) was Coleman exercising his constitutional right when he had
spoken to Mrs. Kimberly Moore; (3) why Mrs. Moore did not use "Lying"
in her written report; (4) was the disciplinary report based on
retaliation/revenge; and (5) whether the disciplinary report should
be dismissed from Coleman's prison jacket based on 1-4.
SO ORDERED ON THIS _____ DAY OF _____, 2007.

                                      ROSEMARY M. COLLYER
                                      U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, hereby states that a true copy of

the foregoing motion(s) and affidavit are mailed to the following:

Alexander D. Shoaibi                          Alexander D. Shoaibi
Assistant United States Attorney              Assistant U.S. Attorney
555 4th St., N.W. Room #4218        **or**    501 Third St., N.W. Rm E-4218
Washington, D.C. 20530                        Washington, D.C. 20530


Dated: 8-27-07


                                    Respectfully Submitted,


                                    Monroe L. Coleman, Pro Se
                                    U.S.Penitentiary
                                    P.O. Box 12015
                                    Terre Haute, IN 47801

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,
          Plaintiff,

          v.                              Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
          Defendants.

ORDER

Upon the motion(s) and affidavit(s) of Plaintiff, and the court being sufficiently advised,

IT IS HEREBY ORDERED that the Plaintiff's Opposition To Defendants' Summary Judgment; Glomar Opposition; Affidavit; and Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment will be held in abeyance for ruling until this Court has review in-camera the withheld Freedom of Information, 5 U.S.C. 552 sought by plaintiff whether said information is of public interest; and

IT IS FURTHER ORDERED that the Plaintiff's request for Discovery be GRANTED

This the _____ day of September, 2007.

                              _____
                              ROSEMARY M. COLLYER, JUDGE
                              UNITED STATES DISTRICT COURT

*Exhibit*

BP-A148.055
SEP 98
**INMATE REQUEST TO STAFF**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) MR Gammon Unit Ofc. | DATE: 6-22-07 |
| FROM: Coleman, Monroe | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Unit Orderlie | UNIT: D-1 #206 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

MR Gammon, after speaking with you in the presence of Deputy Warden MR Ebbert on 6-21-07, which you stated you will conduct no trace on the money $37.50 that was supposed to have been sent by DOP to the U.S. District Court, which you further stated the money was sent during April 8 or 12 2007. However, you personally knew the money was never sent and it is Requested you respond on paper for legal action. **THeft/Conspiracy/Fraud**

CC: Congress Rep. Norton

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER    **SECTION 6**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CLERK'S OFFICE
333 Constitution Avenue, NW
Washington, DC 20001
FAX ( 202) 354-3121
TEL (202) 354-3102

## F A X   C O V E R
## S H E E T                                    FAX

To:  **Counselor B Stewart**

From: **Tammy Forrest**

Date: **03/21/07**                    ✳

Time:

Fax No: **812-244-4793**

Pages [ including cover sheet ]  **5**



Admin Remedy # 451045-R1



**COMMENTS:**  Case information on M L Coleman.

Coleman, Monroe

c/F

Date: 06/21/2007
Time: 1:36:51 pm

Facility: THA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

**Criteria:** PLRA Payments

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/2007 12:10:38 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($37.40) | GTHAD062 | | 2016 | $25.45 |
| 02/01/2007 12:10:46 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($6.99) | GTHAD062 | | 1319 | $16.00 |
| 01/14/2007 12:10:01 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | Initial PLRA Pymt | ($22.35) | GTHAD062 | | 1144 | $2.99 |

**Total Number Transactions: 3**

*Treas Request*
6/21/07

WorkstationID: THAHQVXG61

UserID: THA1368

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 3rd & CONSTITUTION AVE., N.W.
### WASHINGTON, D.C. 20001

May 23, 2007
Re: New Case Filing Fee
Case# DDCX106CV002255

Mr. Monroe L Colemen-Bey, Reg# 01723-016
USP Terre Haute
US Penitentiary
PO Box 12015
Terre Haute, IN 47801

Dear Mr. Monroe L Coleman-Bey:

This is in reference to your inquiry regarding payments applied to your account.

The Court ordered on December 15, 2006 that you were obligated to pay a new case filing fee $350.00.

The following is a breakdown of your payments received, the receipt number, and the balance remaining after the payment was applied.

**New Case Filing Fee**

| Date Pmt. Received | Payment Amt. | Receipt # | Balance |
|---|---|---|---|
| 01/26/2007 | $ 22.35 | 4616001843 | $327.65 |
| 02/09/2007 | $  6.99 | 4616002228 | $320.66 |
| 03/12/2007 | $320.66 | 4616002854 | ---------- |

As of May 23, 2007, the finance office of the US District Court for the District of Columbia has not received a payment in the amount of $37.50 for the above mentioned case. If/When we do receive this payment, it will be refunded because this case is paid in full.

If additional information is needed or if there is any discrepancies, please do not hesitate to contact me at (202) 354-3100.

Sincerely,

Tamara M. Forrest
Financial Specialist

AARON Work Lief
District: 4-5-07

Rec 5-31-07



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
*Terre Haute, Indiana*

Date:    May 21, 2007

Reply To
Attn Of:    R.V. Veach, Warden

Subject:    Inmate Request to Staff

To:    Inmate Coleman, Monroe #01723-016

This is in response to your Inmate Request to Staff form dated April 27, 2007, wherein you requested clarification as to when funds would be refunded to your Trust Fund account due to a PLRA payment having been made after the PLRA had been paid in full.

A review of the information provided by both you, and the Clerk of the District Court of Columbia, revealed that the PLRA has been stopped. Because the Business Office cannot refund monies that have already been sent from your account, you are urged to contact the Court to attempt to obtain the requested refund. It is the responsibility of the Court to determine whether or not a refund to your Trust Fund account is warranted due to PLRA overpayment.

You may address the Court at the following;

Clerk's Office
United States District of Columbia
U.S. Court House
333 Constituion AVE. N.W.
Washington, D.C.  20001

I trust this satisfies your request at this time.

AARON Winick Ired !
Dated: 4-5-07

**Ward, Aaron**

| | |
|---|---|
| From: | |
| Sent: | Thursday, April 05, 2007 12:58 PM |
| To: | Ward, Aaron |
| Subject: | Congressional Inquiry re: COLEMAN, Monroe L., #01723-016 |
| Importance: | High |

** High Priority **

Aaron:

Good afternoon!  This informal e-mail is in response to your electronic Congressional inquiry concerning inmate Monroe L. Coleman, Reg. No. 01723-016.  Your constituent, inmate Coleman's mother, reports that $37.50 has been deducted from her son's commissary account for a filing fee that has already been paid in full.

Inmate Coleman is a 51-year old male who was sentenced out of the Superior Court, District of Columbia, to a term of LIFE for Robbery While Armed, 1st Degree Murder While Armed, and Assault With Intent to Commit Robbery While Armed.  He is parole eligible on 12/22/2020.  Inmate Coleman is currently housed at the United States Penitentiary (USP), Terre Haute, Indiana.

A review of inmate Coleman's record reveals that his Unit Team received the court receipt last Friday, 03/30/2007.  The receipt was provided to Financial Management staff and they subsequently removed the encumbrance from inmate Coleman's account.  I have confirmed that inmate Coleman's account will be refunded accordingly.

Hopefully, you will find this information helpful.  Should you have any questions or need any additional information, please don't hesitate to contact me.  Take care –

Office or Legislative Affairs
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534
(    )
(         (fax no.)

This message and any attached documents are intended for official use and may contain SENSITIVE information.  If this message and any attachments contain SENSITIVE information, they should be labeled, stored, managed, and disposed of according to procedures that maintain the integrity of any SENSITIVE information.

>>> "Ward, Aaron" <aaron.ward@mail.house.gov> 4/3/2007 7:09 PM >>>
Hi

Money ($37.50) is being deducted from his account for a filing fee that has already been paid in full.  The courts informed the BOP, according to his
mother, that the balance was paid in full March 5th.

Thanks for looking into this for me.

Aaron

Office of Congresswoman Eleanor Holmes Norton
529 14th Street NW STE 900
Washington, DC 20045

April 10, 2007

60 Minutes
524 West 57th Street
New York, NY 10019

RE:  Investigation into the Mistreatment of District of Columbia
     Prisoners

Dear 60 Minutes:


     This letter comes to your attention regarding District of
Columbia prisoners who are housed in the federal bureau of prisons.

     Accordingly, the D.C. Self Improvement National Capital Revita-
lization Act of 1997, was implemented for the closing of the District
of Columbia Department of Corrections prison system with exception
of the D.C. Detention Center.

     What is sought from 60 Minutes is a thorough investigation
and interview with D.C. prisoners [starting at U.S. Penitentiary
Terre Haute, Indiana] into the erroneous discriminatory, bias,
and unfair treatment committed by District of Columbia and Bureau
of Prisons officials as well as the United States Parole Commission
toward D.C. prisoners housed in the federal bureau of prisons.

     It is highly possible that this probe by 60 Minutes will
reveal the followings:  Fraud, Constitutional and Civil Rights
violations with great possibilities of criminal charges filed
against those for their misconduct.

     This investigation should consist of:  U.S. Parole Commission
disparity treatment; bureau of prisons officials deliberate indiffernce
[medical, jobs, commissary (high blood) items, education, good
time credits, disciplinary reports, Unit Team inappropriate behavior,
administrative complaints, and visitation denials]; not excluding
reasons why Delegate, Eleanor Holmes Norton allows such erroneous
acts to continue?  Continuous complaints by D.C. prisoners to
prison officials and the courts have not desisted these constitutional
and civil rights violations.  Therefore, it is requested that
60 Minutes probe into this **inhumane treatment** of all D.C. prisoners
housed in the bureau of prisons.

     Your time and support into the above matter will be deeply
appreciated.

                              Sincerely yours,


cc:  Del. Eleanor H. Norton        _____
     Member of Congress            U.S.P. Terre Haute
                                   P.O. Box 12015
                                   Terre Haute, IN 47801

July 19, 2007

Robert Pierre
Washington Post Editor
1150 15th Street, N.W.
Washington, D.C. 20071
(202) 236-1798

RE: Disparity Treatment of D.C. Prisoners

Dear Mr. Pierre:


First, we the prisoners of Washington, D.C. would like to thank you for allowing us this opportunity to address you.

Second, there are several complaints that effect the majority of us which the courts, District of Columbia, and Bureau of Prisons officials don't share in our pleadings.

Sir, we have no one to make known our disparity treatment, but we hope you will assist us in informing society what goes on inside these prison walls as follow: Medical, Jobs, property, and mainly, the United States Parole Commission set-offs.

Since the transition from D.C. to the Federal Bureau of Prisons, we have been unfairly treated in each area mentioned above. Such problems are the same throughout the entire bureau of prisons, and it seems no one truly or really care about us.

Letters have been mailed to Sixty Minutes regarding our problems which Del. Eleanor Holmes Norton won't truly assist us in her congressional capacity to its fullest extent. Therefore, we are praying for any support from you.

And third, those issues concerning the U.S. Parole Board are: 1) Pervasive refusal to use parole laws in effect at time of crimes committed; 2) Use of the same reasons, over and over, as a basis to justify below or above Guideline ranges; 3) Continuous use of the same circumstances and facts, seriousness and nature of the offense over and over to deny parole, although the courts' considered it in the Presentence Investigation (PSI) as a basis to fashion the sentence; 4) Refusal to use D.C. Parole Manuals which stresses rehabilitation as a suitability basis for parole instead of the U.S. Parole Commissioner's Manual -- which stresses

cont'd page 2.

use of its 24 reasons to go outside the parole guidelines to suffice any imperfections within the D.C. Parole Laws; 5) Never, ever, discussing with parole candidates what is necessary to become parole suitable if given a set-off at the initial hearing stage, and not assigning a presumptive date upon completion of multiple parole set-offs...; and 6) Refusing to consider terminally ill patients for medical release where their condition came about after entry into the bureau of prisons, and not before committing the instant offense...which is supported by the Parole Guidelines.

Mr. Pierre, we hope have provided you with some information why we are in need of your editorial support, and conducting an assembly with the D.C. prisoners starting in the United States Penitentiaries. And last, please give our regards to Ms. Yvonne Lamb. We thank you and hope to hear from you soon. Thank you!!!!!

Sincerely,

#
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

BP-A148.055
SEP 98

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

**INMATE REQUEST TO STAFF**

Exhibit

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| MR Grammon Noel Csc | 6-22-07 |
| FROM: Coleman Maurice | REGISTER NO.: C1723-016 |
| WORK ASSIGNMENT: Unit Orderlie | UNIT: D-1  #206 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Mr Grammen, while speaking with you in the presence of Deputy Warden Mr Ebbert on 6-21-07, which you stated you will conduct an fence on the money $37.50 that was supposed to have been sent by DOP to the U.S. District Court, which you further stated the money was sent during April 8 or 12 2007. However, You personally know the money was Never Sent and it is Requested you respond on paper for legal action. — Theft/Conspiracy/Fraud

CC: Congress Rep. Norton

<span style="text-align:center">(Do not write below this line)</span>

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER**    **SECTION 6**

RECEIPT ADMINISTRATIVE REMEDY

DATE: MAY 14, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : ████████ COLEMAN ████ █████-███
      TERRE HAUTE USP     UNT: LCP     QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 451045-F1
DATE RECEIVED   : APRIL 30, 2007
RESPONSE DUE    : MAY 20, 2007
SUBJECT 1       : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2       :

*Intentional Denial To Return Coleman's Personal Property*

*Extensions are overdue*

*Rec. 6-8-07*

RECEIPT OF ADMINISTRATIVE REMEDY

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
NORTH CENTRAL REGIONAL OFFICE

TO : MONROE L COLEMAN, 01723-016
TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 451045-R1
DATE RECEIVED  : MAY 29, 2007
RESPONSE DUE   : JUNE 28, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

Me seeks to intervene
in order to recieve
back the $37.40 that
Gammon's (of business office)
is intentionally withholding
This further Retaliation


Rec 7-12-07

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP   UNT: LCP   QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID     : 451045-A1
DATE RECEIVED : JULY 9, 2007
RESPONSE DUE  : AUGUST 18, 2007
SUBJECT 1     : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2     :

The defendants' agents
are withholding Coleman's
Property because he filed
against their boss and
Sarah Hawley Coppin

Rec 7-12-07

DATE: AUGUST 23, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : SEPTEMBER 7, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

Prison officials intentionally
Refusing to return this property

Rec. 8-22-07

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CLERK'S OFFICE
333 Constitution Avenue, NW
Washington, DC 20001
FAX ( 202) 354-3121
TEL (202) 354-3102



## FAX COVER SHEET

**FAX**

**To:** Counselor B Stewart

**From:** Tammy Forrest

**Date:** 03/21/07

**Time:**

**Fax No:** 812-244-4793

**Pages** [ including cover sheet ] 5



Admin Remedy # 451045-R1

**COMMENTS:** Case information on M L Coleman.

Coleman, Monroe

c/f

Date: 06/21/2007
Time: 1:36:51 pm

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: THA

**Criteria: PLRA Payments**

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/2007 12:10:38 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($37.40) | GTHAD062 | | 2016 | $25.45 |
| 02/01/2007 12:10:46 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($6.99) | GTHAD062 | | 1319 | $16.00 |
| 01/14/2007 12:10:01 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | Initial PLRA Pymt | ($22.35) | GTHAD062 | | 1144 | $2.99 |

**Total Number Transactions: 3**

Trew Regust
6/21/07

WorkstationID: THAHQVXG61

UserID: THA1368

Page 1 of 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 3rd & CONSTITUTION AVE., N.W.
### WASHINGTON, D.C. 20001

May 23, 2007
Re: New Case Filing Fee
Case# DDCX106CV002255

Mr. Monroe L Colemen-Bey, Reg# 01723-016
USP Terre Haute
US Penitentiary
PO Box 12015
Terre Haute, IN 47801

Dear Mr. Monroe L Coleman-Bey:

This is in reference to your inquiry regarding payments applied to your account.

The Court ordered on December 15, 2006 that you were obligated to pay a new case filing fee $350.00.

The following is a breakdown of your payments received, the receipt number, and the balance remaining after the payment was applied.

**New Case Filing Fee**

| Date Pmt. Received | Payment Amt. | Receipt # | Balance |
|---|---|---|---|
| 01/26/2007 | $ 22.35 | 4616001843 | $327.65 |
| 02/09/2007 | $  6.99 | 4616002228 | $320.66 |
| 03/12/2007 | $320.66 | 4616002854 | ---------- |

As of May 23, 2007, the finance office of the US District Court for the District of Columbia has not received a payment in the amount of $37.50 for the above mentioned case. If/When we do receive this payment, it will be refunded because this case is paid in full.

If additional information is needed or if there is any discrepancies, please do not hesitate to contact me at (202) 354-3100.

Sincerely,

Tamara M. Forrest
Financial Specialist



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
*Terre Haute, Indiana*

Date:    May 21, 2007

Reply To
Attn Of:    R. V. Veach, Warden

Subject:    Inmate Request to Staff

To:    Inmate Coleman, Monroe #01723-016

This is in response to your Inmate Request to Staff form dated April 27, 2007, wherein you requested clarification as to when funds would be refunded to your Trust Fund account due to a PLRA payment having been made after the PLRA had been paid in full.

A review of the information provided by both you, and the Clerk of the District Court of Columbia, revealed that the PLRA has been stopped. Because the Business Office cannot refund monies that have already been sent from your account, you are urged to contact the Court to attempt to obtain the requested refund. It is the responsibility of the Court to determine whether or not a refund to your Trust Fund account is warranted due to PLRA overpayment.

You may address the Court at the following;

Clerk's Office
United States District of Columbia
U.S. Court House
333 Constituion AVE. N.W.
Washington, D.C.  20001

I trust this satisfies your request at this time.

Allron Wived Ired!
Dialed: 4-5-07

**Ward, Aaron**

**From:**
**Sent:** Thursday, April 05, 2007 12:58 PM
**To:** Ward, Aaron
**Subject:** Congressional Inquiry re: COLEMAN, Monroe L., #01723-016

**Importance:** High

** High Priority **

Aaron:

Good afternoon!  This informal e-mail is in response to your electronic Congressional inquiry concerning inmate Monroe L. Coleman, Reg. No. 01723-016.  Your constituent, inmate Coleman's mother, reports that $37.50 has been deducted from her son's commissary account for a filing fee that has already been paid in full.

Inmate Coleman is a 51-year old male who was sentenced out of the Superior Court, District of Columbia, to a term of LIFE for Robbery While Armed, 1st Degree Murder While Armed, and Assault With Intent to Commit Robbery While Armed.  He is parole eligible on 12/22/2020.  Inmate Coleman is currently housed at the United States Penitentiary (USP), Terre Haute, Indiana.

A review of inmate Coleman's record reveals that his Unit Team received the court receipt last Friday, 03/30/2007.  The receipt was provided to Financial Management staff and they subsequently removed the encumbrance from inmate Coleman's account.  I have confirmed that inmate Coleman's account will be refunded accordingly.

Hopefully, you will find this information helpful.  Should you have any questions or need any additional information, please don't hesitate to contact me.  Take care –

Office or Legislative Affairs
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534
(   )
(.                  (fax no.)


This message and any attached documents are intended for official use and may contain SENSITIVE information.  If this message and any attachments contain SENSITIVE information, they should be labeled, stored, managed, and disposed of according to procedures that maintain the integrity of any SENSITIVE information.


>>> "Ward, Aaron" <aaron.ward@mail.house.gov> 4/3/2007 7:09 PM >>>
Hi

Money ($37.50) is being deducted from his account for a filing fee that has already been paid in full.   The courts informed the BOP, acording to his
mother, that the balance was paid in full March 5th.

Thanks for looking into this for me.

Aaron

Office of Congresswoman Eleanor Holmes Norton
529 14th Street NW STE 900
Washington, DC 20045

April 10, 2007

60 Minutes
524 West 57th Street
New York, NY 10019

RE:  Investigation into the Mistreatment of District of Columbia
     Prisoners

Dear 60 Minutes:


     This letter comes to your attention regarding District of
Columbia prisoners who are housed in the federal bureau of prisons.

     Accordingly, the D.C. Self Improvement National Capital Revita-
lization Act of 1997, was implemented for the closing of the District
of Columbia Department of Corrections prison system with exception
of the D.C. Detention Center.

     What is sought from 60 Minutes is a thorough investigation
and interview with D.C. prisoners [starting at U.S. Penitentiary
Terre Haute, Indiana] into the erroneous discriminatory, bias,
and unfair treatment committed by District of Columbia and Bureau
of Prisons officials as well as the United States Parole Commission
toward D.C. prisoners housed in the federal bureau of prisons.

     It is highly possible that this probe by 60 Minutes will
reveal the followings:  Fraud, Constitutional and Civil Rights
violations with great possibilities of criminal charges filed
against those for their misconduct.

     This investigation should consist of:  U.S. Parole Commission
disparity treatment; bureau of prisons officials deliberate indiffernce
[medical, jobs, commissary (high blood) items, education, good
time credits, disciplinary reports, Unit Team inappropriate behavior,
administrative complaints, and visitation denials]; not excluding
reasons why Delegate, Eleanor Holmes Norton allows such erroneous
acts to continue?  Continuous complaints by D.C. prisoners to
prison officials and the courts have not desisted these constitutional
and civil rights violations.  Therefore, it is requested that
60 Minutes probe into this **inhumane treatment** of all D.C. prisoners
housed in the bureau of prisons.

     Your time and support into the above matter will be deeply
appreciated.

                              Sincerely yours,


cc:  Del. Eleanor H. Norton          _____
     Member of Congress              U.S.P. Terre Haute
                                     P.O. Box 12015
                                     Terre Haute, IN 47801

July 19, 2007


Robert Pierre
Washington Post Editor
1150 15th Street, N.W.
Washington, D.C. 20071
(202) 236-1798

RE:  Disparity Treatment of D.C. Prisoners

Dear Mr. Pierre:


First, we the prisoners of Washington, D.C. would like to thank you for allowing us this opportunity to address you.

Second, there are several complaints that effect the majority of us which the courts, District of Columbia, and Bureau of Prisons officials don't share in our pleadings.

Sir, we have no one to make known our disparity treatment, but we hope you will assist us in informing society what goes on inside these prison walls as follow:  Medical, Jobs, property, and mainly, the United States Parole Commission set-offs.

Since the transition from D.C. to the Federal Bureau of Prisons, we have been unfairly treated in each area mentioned above.  Such problems are the same throughout the entire bureau of prisons, and it seems no one truly or really care about us.

Letters have been mailed to Sixty Minutes regarding our problems which Del. Eleanor Holmes Norton won't truly assist us in her congressional capacity to its fullest extent.  Therefore, we are praying for any support from you.

And third, those issues concerning the U.S. Parole Board are:  1) Pervasive refusal to use parole laws in effect at time of crimes committed; 2) Use of the same reasons, over and over, as a basis to justify below or above Guideline ranges; 3) Continuous use of the same circumstances and facts, seriousness and nature of the offense over and over to deny parole, although the courts' considered it in the Presentence Investigation (PSI) as a basis to fashion the sentence; 4) Refusal to use D.C. Parole Manuals which stresses rehabilitation as a suitability basis for parole instead of the U.S. Parole Commissioner's Manual -- which stresses

cont'd page 2.

use of its 24 reasons to go outside the parole guidelines to suffice any imperfections within the D.C. Parole Laws; 5) Never, ever, discussing with parole candidates what is necessary to become parole suitable if given a set-off at the initial hearing stage, and not assigning a presumptive date upon completion of multiple parole set-offs...; and 6) Refusing to consider terminally ill patients for medical release where their condition came about after entry into the bureau of prisons, and not before committing the instant offense...which is supported by the Parole Guidelines.

Mr. Pierre, we hope have provided you with some information why we are in need of your editorial support, and conducting an assembly with the D.C. prisoners starting in the United States Penitentiaries. And last, please give our regards to Ms. Yvonne Lamb. We thank you and hope to hear from you soon. Thank you!!!!!

Sincerely,

#
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801



# Program Statement

**U.S. Department of Justice**
Federal Bureau of Prisons

**OPI:** OGC
**NUMBER:** 3420.09
**DATE:** 2/5/99
**SUBJECT:** Standards of Employee Conduct

1. **PURPOSE AND SCOPE.**  To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

• employee conduct and responsibility,
• ethics in matters involving conflicts of interest,
• post-employment restrictions,
• procurement integrity issues,
• attorney ethics, and
• outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act. Such employees are subject to certain standards and prohibitions -- some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization. Contractors and volunteers working at Bureau facilities also are expected to conduct themselves by these standards. This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment. It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

---

PS 3420.09
2/5/99
Page 2

2. **PROGRAM OBJECTIVES.**  The expected results of this program are:

a. Employees will conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b. Employees will avoid situations which involve conflicts of interest with their employment.

c. Employees will comply with restrictions on employment outside the Bureau and after employment with the Bureau.

d. Employees will conform with procurement integrity regulations.

e. Employees will uphold the ethical rules governing their professions.

f. Employees will immediately report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer (CEO) or another appropriate authority.

g. Employees who fail to conduct themselves in accordance with these standards will be subject to appropriate sanctions.

**Directive Rescinded**

PS 3420.08    Standards of Employee Conduct and Responsibility (3/7/96)

**Directives Referenced**

PS 3735.04    Drug Free Workplace Program (6/30/97)
PS 5510.09    Searching, Detaining, or Arresting Persons Other Than Inmates (3/6/98)
PS 5840.03    Staff Correspondence About Inmates (3/4/93)

18 U.S.C. § 201    Bribery; Illegal Gratuities
18 U.S.C. § 203    Representational Issues
18 U.S.C. § 205    Representational Issues
18 U.S.C. § 207    Post-Employment Statute
18 U.S.C. § 208    Conflict of Interest Statute
18 U.S.C. § 2241-45    Sexual Abuse
41 U.S.C. § 423    Procurement Integrity Act

**6. DEFINITIONS.** For the purposes of this Program Statement, the following definitions apply:

a. **Chief Executive Officer (CEO).** The Warden at institutions, the Director at Staff Training Centers, the Community Corrections Manager at community corrections offices, and the Regional Director at the regional offices, and the Assistant Director of each Division at the Central Office.

b. **Conflict of Interest.** A conflict between public interests and the private interests of the individual involved.

c. **Criminal Matters.** Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, or with state and local inmates.

d. **During the Conduct of a Procurement.** The time between the beginning and end of a procurement. The conduct of a procurement begins on the earliest date an authorized official directs that a specific action be taken to initiate a procurement. These actions include:

■ Drafting a specification or a statement of work;
■ Reviewing and approving a specification;
■ Computing requirements or purchase request;
■ Preparing or issuing a solicitation;
■ Evaluating bids or proposals;
■ Selecting sources;
■ Conducting negotiations; or
■ Reviewing and approving the award of a contract or contract modification.

The conduct of a procurement ends with the award or modification of a contract or the cancellation of the procurement.

e. **Employment.** Any form of employment or business relationship, compensated or uncompensated involving the provision of personal services by the employee, whether to be undertaken at the same time as or subsequent to current federal employment. It includes, but is not limited to, personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

f. **Inmate.** Any person found guilty of committing a felony or misdemeanor and who has been placed in Bureau custody or under supervision of a federal court. This includes individuals participating in home-monitoring programs, parole, probation, halfway house placement, pretrial and non-sentenced inmates,

| 5 CFR § 2635 | Standards of Ethical Conduct for Employees of the Executive Branch (8/7/92) |
| 5 CFR § 2637 | Post-Employment (12/30/93) |
| 5 CFR § 2641 | Post-Employment (1/28/93) |
| 28 CFR § 50.15 | Representation of Federal Employees Sued, Subpoenaed or Charged in Their Individual Capacities (4/9/90) |
| 28 CFR § 500.1 | Contraband |
| Executive Orders 12674 and 12731 | Prescribing Standards of Ethical Conduct |
| DOJ Order 1735.1 | Procedures for Complying with Uniform Standards and Other Ethics Requirements (9/17/92) |
| ABA Model Rule 1.11 | Successive Government and Private Employment Rules for Lawyers (2/7/87) |
| ABA Model Rule 1.6 | Confidentiality of Information (8/2/83) |

**4. STANDARDS REFERENCED**

a. American Correctional Association, 3rd Edition, Standards for Adult Correctional Institutions: 3-4048, 3-4067.

b. American Correctional Association, 3rd Edition, Standards for Adult Local Detention Facilities: 3-ALDF-1C-23.

c. American Correctional Association, 2nd Edition, Standards for Administration of Correctional Agencies: 2-CO-1C-20, 2-CO-1C-04, 2-CO-1C-24.

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1A-23.

**5. GENERAL REFERENCES.** The Standards of Ethical Conduct for Employees of the Executive Branch, found at 5 CFR Part 2635, sets forth ethical standards, statutory provisions, and other matters governing the conduct of federal employees. Various resolutions, messages, memoranda, and Executive Orders are included, as are requirements for informing employees and the authority for regulating their conduct.

payments, or decide to pay or settle a claim, in excess of $10,000,000. (See definition "during the conduct of a procurement.")

## PUBLICATION AND INTERPRETATION

a. The CEO of each facility has the primary responsibility for ensuring that the Standards of Employee Conduct are provided and made known to each employee, contractor and volunteer.

b. Only actions made in reliance on advice received from the Ethics Officer, or his or her designee, may be protected from disciplinary action. When an employee's conduct violates a criminal statute, however, reliance on the advice of an ethics official cannot ensure the employee will not be prosecuted, but may be used as a factor in making this determination.

c. Each new employee, contractor, and volunteer shall receive and sign for this Program Statement at the time of appointment. In addition, all employees, contractors, and volunteers shall receive and sign for any updated versions of this Program Statement when issued. The responsibility for ensuring that employees, contractors and volunteers receive and sign for this Program Statement shall be delegated in the following manner:

- Human Resource Managers shall be responsible for employees;
- Department heads who oversee a contractor shall be responsible for that contractor;
- Employee Development Managers shall be responsible for volunteers.

All receipts are to be filed on the left side of the Official Personnel Folder.

Employee Development Managers shall ensure that supervisors and employees receive annual training on their responsibilities under these regulations and policies.

GENERAL POLICY. Employees of the Bureau are governed by the regulations published in 5 CFR Part 2635. While this Program Statement expounds on those regulations to clarify their application in the Bureau, it does not and cannot specify every incident which would violate the Standards of Conduct. In general, the Bureau expects its employees to conduct themselves in such a manner that their activities both on and off duty will not discredit themselves or the agency.

detainees, and inmates with state sentences under federal supervision.

9. Former Inmate. Any inmate for whom less than one year has elapsed since their release from Bureau custody or supervision of a federal court.

h. Official Investigation. Includes, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Professional Responsibility, Office of Internal Affairs, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity Investigator or any other employee the CEO authorizes or orders to conduct an investigation.

i. Negotiations. Discussion or communication with another person, or such person's agent or intermediary, mutually conducted with a view toward reaching an agreement regarding possible employment with that person.

j. Participate. To take action as an employee through decision, approval, disapproval, recommendation, rendering of advice, or investigation.

k. Particular Matter. Matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

l. Procurement Official. Any officer or employee of an agency who has participated personally and substantially in any of the activities involved "during the conduct of a procurement." This definition includes acting as a procuring or contracting officer, the source selection authority, a member of the source selection evaluation board, or the chief of a financial or technical evaluation team in a procurement in which that contractor was selected for award of a contract in excess of $10,000,000.

This definition also includes serving as a program manager, deputy program manager, or administrative contracting officer, and extends to officials who personally make the decision to award a contract, task order, or delivery order, establish overhead or other rates, approve the issuance of contract

reporting for duty, is prohibited. Employees shall be subject to disciplinary action if found to possess a .02 blood alcohol content level or greater while on duty.

b. **Sexual Relationships/Contact with Inmates.** Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or the families of inmates or former inmates. Chaplains, psychologists, and psychiatrists may continue a previously established therapeutic relationship with a former inmate in accordance with their respective codes of professional conduct and responsibility.

(1) An employee may not engage in, or allow another person to engage in, sexual behavior with an inmate. Regardless of whether force is used, or threatened, there is never any such thing as "consensual" sex between staff and inmates.

(2) Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. "Sexual contact" is defined as the intentional touching of "the genitalia, anus, groin, breast, inner thigh, or buttocks." Penetration is not required to constitute a prosecutable crime. Physical contact is not required to subject an employee to sanctions for sexual misconduct.

(3) Employees are subject to administrative action, up to and including removal, for any inappropriate contact or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. All allegations of sexual abuse shall be thoroughly investigated and, when appropriate, referred to authorities for prosecution.

8. **Additional Conduct Issues.** An employee may not offer or give to an inmate or a former inmate or any member of his or her family, or to any person known to be associated with a former inmate, any article, favor, or service, which is not authorized in the performance of the employee's duties. Neither shall an employee accept any gift, personal service, or favor from an inmate or former inmate, or from anyone known to be associated with or related to an inmate or former inmate. This prohibition includes becoming involved with families or associates of inmates. If such contact occurs, it must be reported using the procedure in subsection c(5).

a.

(1) An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another.

---

Employees shall:

a. Conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b. Not abuse their position by giving any false impression of having arrest authority through use of Bureau credentials or otherwise. Bureau employees may only arrest in their official capacity in very limited circumstances as permitted by 18 U.S.C. § 3050 or other authority officially granted to them, such as U.S. Marshal deputation.

c. Avoid any action which might result in, or create the appearance of, adversely affecting the confidence of the public in the integrity of the U.S. Government.

d. Avoid conflicts of interest in matters that affect their financial interests.

e. Comply with post-employment restrictions.

f. Conform with procurement integrity regulations.

g. Uphold the ethical rules governing their professions, including complying with applicable licensing authority rules, except when they conflict with federal law.

h. Follow special rules to avoid conflicts of interest when seeking employment outside the Bureau.

i. Immediately report to their CEOs, or other appropriate authorities, such as the Office of Internal Affairs or the Inspector General's Office, any violation or apparent violation of these standards.

j. Failure by employees to follow these regulations or this policy could result in appropriate disciplinary action, up to and including removal (see Attachment A).

9. **PERSONAL CONDUCT.** It is essential to the orderly running of any Bureau facility that employees conduct themselves professionally. The following are some types of behavior that cannot be tolerated in the Bureau.

a. **Alcohol/Narcotics.** The use of illegal drugs or narcotics or the abuse of any drug or narcotic is strictly prohibited at any time. Use of alcoholic beverages or being under the influence of alcohol while on duty or immediately prior to

11. ILLEGAL ACTIVITIES. Illegal activities on the part of any employee, in addition to being unlawful, reflect on the integrity of the Bureau and betray the trust and confidence placed in it by the public. It is expected that employees shall obey, not only the letter of the law, but also the spirit of the law while engaged in personal or official activities. Should an employee be charged with, arrested for, convicted of any felony or misdemeanor, that employee must immediately inform and provide a written report to the CEO. Traffic violations resulting in fines under $150 shall be exempt from the reporting requirement.

INTRODUCTION OF CONTRABAND. The introduction of contraband into or upon the grounds of any federal penal or correctional institution, or taking or attempting to take therefrom, anything whatsoever without the Warden's knowledge and consent, is prohibited. Pursuant to 28 CFR § 500.1(h), contraband is defined as any material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution. Contraband includes, but is not limited to, the following:

letters,
stamps,
money,
tools,
weapons,
paper,
food,
implements,
writing material,
messages,
instruments,
alcoholic beverages,
drugs,
photographic equipment,
computer software,
recording devices,
cellular phones, etc.

It is not Bureau policy to routinely search employees or their property; however, when the CEO has a reasonable suspicion to suspect that an employee is in possession of contraband items

13. OFFICIAL INVESTIGATION

Every employee is required to report to management immediately any violation or attempted violation of any law or regulation and any act or omission by any person which could result in a breach of institution security.

---

(2) An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3) An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4) An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others. Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5) An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including inmates whose relatives are inmates or former inmates) must report the contact, in writing, to the CEO as soon as practicable. This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment. The employee will then be instructed as to the appropriate course of action.

(6) Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7) Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10. RESPONSIVENESS

a. Because inattention to duty in a correctional environment can result in escapes, assaults, and other incidents. Therefore, employees are required to remain fully alert and attentive during duty hours.

b. Inattention to duty in a correctional environment can jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

c. Employees are to obey the orders of their superiors at all times. In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

PS 3420.09
2/5/99
Page 11

which, if introduced, could endanger the safety of staff or inmates or the security of the institution, the CEO may authorize the search of an employee or his or her personal property. Searches may also be authorized when the CEO has reasonable suspicion that an employee is transporting contraband. Other circumstances may warrant an order by the CEO to randomly search employees or any person or their property when entering or leaving the institution.

are to cooperate fully by providing all pertinent information which they may have. Full cooperation requires truthfully responding to all questions and providing a signed affidavit, if requested. Any employee who fails to cooperate fully or who hinders an investigation is subject to disciplinary action, up to and including removal.

14. **JUST DEBTS**. Failure on the part of any employee, without good reason and in a proper and timely manner, to honor debts acknowledged by him or her to be valid or reduced to judgment by a court, or to adhere to satisfactory arrangements for the settlement thereof, may be cause for disciplinary action. Depending on the circumstances, an employee who receives a legally valid garnishment order may be subject to disciplinary action.

15. **CONFIDENTIALITY**. Employees of the Bureau have access to official information ranging from personal data concerning staff and inmates to information involving security. Because of the varying degrees of sensitivity of such information, it may be disclosed or released only as required in the performance of an employee's duties or upon specific authorization from someone with the authority to release official information. The only persons authorized to release official information are:

■ in the Central Office, the Director, or designee;

■ in a Regional Office, the Regional Director, or designee;

■ in other locations, the CEO, or designee.

The above shall not be construed as a reason to deny authorized persons access to official records and files. The Bureau has an obligation to supply official information in response to such requests from organizations or individuals upon determining that such individuals are properly identified and acting in an official capacity. To ensure the proper use of official information, the following rules of conduct are established:

R.5

---

PS 3420.09
2/5/99
Page 12

a. Employees shall verify the identification and authority of individuals requesting access to information prior to giving or discussing records, personnel files, or other official information.

b. Employees may not deny authorized persons access to official information.

c. Employees may not use, or release for use, official information for private purposes unless that information is available to the general public.

d. Employees may not remove information from files or make copies of records or documents, except in accordance with established procedures or upon proper authorization.

e. Employees may not make statements or release official information which could breach the security of the institution or unduly endanger any person.

f. Former employees may be granted access only to information available to the general public and may have no greater standing than the general public, irrespective of their past employment, and any associations developed in the course of such employment.

16. **GOVERNMENT PROPERTY**. Government property is to be used for authorized purposes only.

a. **Authorized Purposes**. Authorized purposes includes personal use of Government office equipment such as computers, printers, fax machines, telephones, copiers, and calculators. Use may not involve more than merely negligible cost to the Government.

b. **Negligible Cost**. Negligible cost to the Government includes the cost of electricity, ink, and ordinary wear and tear. Employees shall provide their own paper.

c. **Personal Use**. Personal use of Government property may take place before or after official working hours or during non-paid meal breaks, provided such use does not adversely affect the performance of official duties by the employee or the Bureau.

**Telephones**. Employees may place a personal call on a Government telephone during official working hours if the call:

■ does not adversely affect the performance of official duties by the employee or the Bureau;

■ is of reasonable duration and frequency;

R.6

b. Any employee who wishes to engage in employment outside the Bureau must obtain prior written approval for each activity using BP-S543.033 or BP-S166.033. Employment includes compensated speaking, writing, and teaching. Outside employment, including self-employment, must not result in, or create the appearance of, a conflict of interest with official duties or tend to impair the employee's mental or physical capacity to perform official duties and responsibilities. Written approval must be resubmitted when there is a change of duty station.

c. Any employee who wishes to serve as an officer or director of any organization, whether it is compensated or uncompensated, must also complete an outside employment request form. Employees who perform voluntary service involving church, union, employee's club, credit union, or union activities, which do not conflict with their official duties or with the mission of the Federal Bureau of Prisons, will be exempted from the requirement to request approval for these activities.

d. An employee may not have a direct or indirect financial interest that could be affected by the performance or nonperformance of his or her Government duties and responsibilities.

e. Certain professional employees are prohibited from engaging in the private practice of their professions. Exceptions may be granted, however, in accordance with subsection (1). Professional employees who wish to engage in outside employment within their profession should follow instructions provided in subsection (2) and should complete BP-S166.033. For the purpose of this subsection, teaching, writing, and speaking are not considered practicing within one's profession.

(1) Employment in Certain Professions. Persons currently employed by the Bureau in the professions listed below who would like to work within that profession during off-duty hours must have the approval of his or her immediate supervisor, CEO, Regional Director, and the Director:

- Architect
- Attorney
- Chaplain
- Doctor
- Psychologist

The Bureau Ethics Officer shall review each request to ensure that there are no conflicts of interest.

- could not reasonably have been made at another time; and
- is within the employee's local commuting area.

d. Fitness Equipment. Employees may use Government-owned fitness equipment during breaks if such equipment is intended exclusively for employee use.

e. Existing Prohibitions. This rule does not override already existing prohibitions on use of Government property, including those rules established by a supervisor for business reasons.

17. CREDENTIALS. Bureau of Prisons credentials, identification cards, Government drivers licenses, or badges may not be used to coerce, intimidate, or deceive others or to obtain any privilege or article not otherwise authorized in the performance of official duties.

a. Employees may not obtain or use identification badges issued by other sources which give the appearance of being an official Bureau or law enforcement credential.

b. Employees may not use credentials or otherwise represent themselves as Department of Justice personnel to obtain a gun permit to be used in their unofficial capacity.

c. Employees may use credentials to prove Government employment for purposes of permissible discounts offered to a broad class of Government employees.

18. OUTSIDE EMPLOYMENT

a. There are limitations as to the type of outside employment an employee may obtain. Employees may not:

- engage in any outside employment or activity that involves criminal matters, although the Director reserves the authority to approve uncompensated correctional work on a case-by-case basis;

- engage in any outside employment which would require the use of a firearm, except for military reserve duty; or

- testify as an expert witness in any legal proceeding, with or without compensation, in which the Bureau does not have an interest.

19. RULES FOR ATTORNEYS

a. Approval of Exceptions. Attorneys for the Bureau may not practice law on behalf of any other person or entity, for compensation, without the written approval of the Deputy Attorney General. Bureau attorneys, however, may perform uncompensated legal practice outside the Bureau if:

- the work does not violate 18 U.S.C. §§ 203 and 205,
- the General Counsel has approved the request, and
- the work does not involve criminal matters.

b. Confidentiality. Only under limited circumstances shall the attorney/client privilege of confidentiality apply to communications with a Bureau employee.

Successive Government and Private Employment

(1) A former Bureau attorney may not represent a private client in connection with a matter in which the attorney participated personally and substantially as a public officer. In such a case, the attorney's firm may continue representation of the matter only if the attorney is screened from any participation in the matter in which he or she participated in personally and is apportioned no part of the fee therefrom.

(2) A Bureau attorney who came from private practice may not participate in a matter before the Bureau in which the attorney participated personally and substantially while in private practice. Like any Bureau employee, an attorney may not negotiate for private employment with any party involved in a Bureau matter in which the attorney is participating in personally and substantially.

Other Duties. In addition to the ethical rules attorneys must follow, the duties of a Bureau attorney are further defined by federal regulations and Bureau policy.

CONFLICTS OF INTEREST. Bureau employees should avoid situations where their official actions affect or appear to affect their private interests, financial or non-financial.

Prohibitions. Employees are prohibited from taking official action on matters that affect the financial interests of:

- The employee, a spouse, minor child, or a general partner of an employee;

Attorneys who seek to practice law outside of the Bureau must also refer to Section 19, Rules for Attorneys.

The form entitled "Request for Approval for Outside Employment Within One's Profession" (BP-S543.03) must be completed with all appropriate signatures affixed before the employee may engage in the outside practice of his or her profession. The form requires such basic information as the name of the employee, the employee's job title, grade, institution and a brief description of the outside employment contemplated. The brief description, at a minimum, should include:

- a summary of the duties to be performed,
- the work address of the employer,
- the hours of employment, and
- any information deemed relevant to support the request.

Failure to provide the required information could result in delays in processing or a denial of the request.

(2) Other Outside Employment. Any other employee who wishes to engage in outside employment must obtain prior approval from his or her supervisor and CEO by initiating a Request for Approval for Outside Employment. Forms may be found on BOPDOCS.

(3) Change of Outside Employment. Any approval granted for outside employment is specific to the particular position referenced in the application and approval request. Any employee who wishes to change outside employment, (e.g., to work for a different company, accept a different position with the same company, etc.), must submit a new request form, and receive approval before doing so.

(4) One-Time Review of Outside Employment. All employees who have received approval for outside employment prior to the effective date of this Program Statement must submit a new request form by December 31, 1998. Request for Outside Employment forms may be found on BOPDOCS This requirement applies even if the employee is still in the same outside position for which approval had previously been granted. The purpose of this one-time review is to ensure compliance with the Supplemental Standards Of Ethical Conduct For Employees Of The Department Of Justice (5 CFR Part 3801).

- An organization where the employee is an officer, director, trustee, partner or employee; or
- An organization the employee is negotiating with for future employment.

b. **Waivers.**

(1) The Director may grant an individual waiver if the interest is found not to be so substantial as to affect the employee's service to the Bureau.

(2) Employee's holdings in mutual funds are exempt if the employee's share is no more than one percent of the total assets of the fund.

(3) An employee with a conflict of interest may ask to have himself or herself recused from the matter, sell the asset, or resign.

(4) An employee must seek written authorization prior to participating in a matter which could call into question the employee's impartiality, even if there is not a statutory conflict of interest.

(5) Procurement officials must refer to Section 23, Procurement Integrity.

21. **SEEKING OTHER EMPLOYMENT.** Any Bureau employee who wishes to seek employment with persons who otherwise would be affected by the performance or nonperformance of the employee's official duties are required to disqualify themselves from participation in any particular matter that will have a direct and predictable effect on the financial interests of the person with whom he or she is negotiating.

When an employee is not actually negotiating for employment, but lacks impartiality in dealing with a prospective employer, the employee should disqualify himself or herself. A Bureau employee who is aware of, or should be aware of, the need to disqualify himself or herself from participation in a particular matter must contact his or her supervisor and request, in writing, to be removed from the matter.

22. **POST-EMPLOYMENT.** The Office of Government Ethics, in accordance with statutes, has issued post-employment restrictions for federal employees who leave federal service. There is a general restriction on the representation of parties in matters related to their federal employment. This regulation is not designed to bar an individual from accepting employment with any

private or public employer after his or her service at the Bureau, but certain acts that are detrimental to public confidence in Government are prohibited.

b. **Lifetime Prohibition.** All former Bureau employees are prohibited from representing another party before the Government on a particular matter involving specific parties in which they participated personally and substantially while working for the Government. This prohibition does not apply to an appearance or communication involving purely social contacts, a request for publicly available documents, or a request for purely factual information or the supplying of such information. This restriction is found at 18 U.S.C. § 207(a)(1).

c. **Two-Year Prohibition.** After leaving the Bureau, a former employee is restricted from acting as a representative on a particular matter for which the employee had official responsibility, rather than personal participation. The restriction applies if the former employee knew, or reasonably should have known, that the matter was pending under his or her official responsibility during his or her last year of Government service. This restriction is found at 18 U.S.C. § 207(a)(2).

d. **One-Year Prohibition.** Former senior level employees are restricted from lobbying the Bureau, on behalf of another person on a matter in which that person seeks official action, for one year. This ban only applies to Executive Schedule or SES level 5 and 6 employees. The purpose of this restriction is to allow for a period of adjustment for incoming senior employees of an agency and to diminish any appearance that Government decisions might be affected by the improper influence of a former senior employee. This restriction is found at 18 U.S.C. § 207(c).

33. **PROCUREMENT INTEGRITY.** During the conduct of a procurement, a procurement official is prohibited from knowing, directly or indirectly, soliciting or accepting any promise of future employment or business from any officer, employee, representative, agent, or consultant of a competing contractor. This prohibition includes engaging in any discussion of future employment or business opportunity. This restriction is found in the Procurement Integrity Act, 41 U.S.C. § 423. Any procurement official who participates personally and substantially in a procurement in excess of $100,000 (the simplified acquisition threshold) and who is contacted concerning employment by a person who is a bidder or offeror in such procurement must promptly report the contact in writing both to the employee's supervisor as well as to the Ethics Officer.

PS 3420.09
2/5/99
Page 1

Attachment A, Page 1

## Standard Schedule of Disciplinary Offenses and Penalties

1. This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed. The offenses listed are not inclusive of all offenses.

2. Ordinarily, penalties imposed should be within the range of penalties provided for an offense. In aggravated cases, a penalty outside the range of penalties may be imposed. For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties. When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3. The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty. The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal. While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal. This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons. For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4. Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5. Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6. The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

PS 3420.09
2/5/99
Page 19

a. Recusal To Discuss Employment. In certain instances, a procurement official may obtain permission to withdraw from further participation in a procurement to discuss future employment with a competing contractor. An eligible procurement official may, in accordance with specific procedures in the regulations, request authorization to be recused from participation in the procurement. A procurement official is not eligible for recusal if, during the period beginning with the issuance of a procurement solicitation and ending with the award of a contract or procurement, he or she has participated personally and substantially in the evaluation of bids or proposals, the selection of sources, or the conduct of negotiations.

An individual may not commence discussions with a competing contractor until he or she has received written approval of the recusal request from his or her supervisor. Rejection of a recusal request is not an adverse personnel action.

b. Post-Employment Restrictions For Procurement Officials. The Procurement Integrity Act places restrictions on employees involved in procurement who leave federal service. A former procurement official cannot, for one year after his or her last personal and substantial involvement in a procurement, in excess of $10,000,000, accept compensation from such contractor as an employee, officer, director, or consultant. This does not prohibit former procurement officials from accepting compensation from any division or affiliate of a contractor that does not produce the same or similar products or services for which the employee contracted while a government employee.

/s/
Kathleen Hawk Sawyer
Director

PS 3420.09
2/5/99
Attachment A, Page 2

7. Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8. Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

# Program Statement

OPI: OGC
**NUMBER:** 3420.09
**DATE:** 2/5/99
**SUBJECT:** Standards of Employee Conduct

1. **PURPOSE AND SCOPE.** To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

- employee conduct and responsibility,
- ethics in matters involving conflicts of interest,
- post-employment restrictions,
- procurement integrity issues,
- attorney ethics, and
- outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act. Such employees are subject to certain standards and prohibitions — some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization. Contractors and volunteers working in Bureau facilities also are expected to conduct themselves by these standards. This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment. It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

---

PS 3420.09
2/5/99
Page 2

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

a. Employees will conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b. Employees will avoid situations which involve conflicts of interest with their employment.

c. Employees will comply with restrictions on employment inside the Bureau and after employment with the Bureau.

d. Employees will conform with procurement integrity regulations.

e. Employees will uphold the ethical rules governing their professions.

f. Employees will immediately report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer (CEO) or another appropriate authority.

g. Employees who fail to conduct themselves in accordance with these standards will be subject to appropriate sanctions.

3. **DIRECTIVES AFFECTED**

**Directive Rescinded**

PS 3420.08    Standards of Employee Conduct and Responsibility (3/7/96)

**Directives Referenced**

PS 3735.04    Drug Free Workplace Program (6/30/97)
PS 5510.09    Searching, Detaining, or Arresting Persons Other Than Inmates (3/6/98)
PS 5840.03    Staff Correspondence About Inmates (3/4/93)
18 U.S.C. § 201    Bribery; Illegal Gratuities
18 U.S.C. § 203    Representational Issues
18 U.S.C. § 205    Representational Issues
18 U.S.C. § 207    Post-Employment Statute
18 U.S.C. § 208    Conflict of Interest Statute
18 U.S.C. § 2241-45    Sexual Abuse
41 U.S.C. § 423    Procurement Integrity Act

PS 3420.09
2/5/99
Page 3

4. STANDARDS REFERENCED

a. American Correctional Association, 3rd Edition, Standards for Adult Correctional Institutions: 3-4048, 3-4067.

b. American Correctional Association, 3rd Edition, Standards for Adult Local Detention Facilities: 3-ALDF-1C-23.

c. American Correctional Association, 2nd Edition, Standards for Administration of Correctional Agencies: 2-CO-1C-04, 2-CO-1C-20, 2-CO-1C-24.

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1A-23.

5. GENERAL REFERENCES. The Standards of Ethical Conduct for Employees of the Executive Branch, found at 5 CFR Part 2635, sets forth ethical standards, statutory provisions, and other matters governing the conduct of federal employees. Various resolutions, messages, memoranda, and Executive Orders are included, as are requirements for informing employees and the authority for regulating their conduct.

| Reference | Description |
| --- | --- |
| 5 CFR § 2635 | Standards of Ethical Conduct for Employees of the Executive Branch (8/7/92) |
| 5 CFR § 2637 | Post-Employment (12/30/93) |
| 5 CFR § 2641 | Post-Employment (1/28/92) |
| 28 CFR § 50.15 | Representation of Federal Employees Sued, Subpoenaed or Charged in Their Individual Capacities (4/9/90) |
| 28 CFR § 500.1 | Contraband |
| Executive Orders 12674 and 12731 | Prescribing Standards of Ethical Conduct |
| DOJ Order 1735.1 | Procedures for Complying with Uniform Standards and Other Ethics Requirements (9/17/92) |
| ABA Model Rule 1.11 | Successive Government and Private Employment Rules for Lawyers (2/7/87) |
| ABA Model Rule 1.6 | Confidentiality of Information (8/2/83) |

PS 3420.09
2/5/99
Page 4

6. DEFINITIONS. For the purposes of this Program Statement, the following definitions apply:

a. Chief Executive Officer (CEO). The Warden at institutions, the Director at Staff Training Centers, the Community Corrections Manager at community corrections offices, the Regional Director at the regional offices, and the Assistant Director of each division at the Central Office.

b. Conflict of Interest. A conflict between public interests and the private interests of the individual involved.

c. Criminal Matters. Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, with state and local inmates.

■ ■ ■ ■ ■ ■ ■

During the Conduct of a Procurement. The time between the beginning and end of a procurement. The conduct of a procurement begins on the earliest date an authorized official directs that a specific action be taken to initiate a procurement. These actions include:

Drafting a specification or a statement of work;
Reviewing and approving a specification;
Computing requirements or a purchase request;
Preparing or issuing a solicitation;
Selecting sources;
Evaluating bids or proposals;
Conducting negotiations; or
Reviewing and approving the award of a contract or contract modification.

The conduct of a procurement ends with the award or modification of a contract or the cancellation of the procurement.

e. Employment. Any form of employment or business relationship, compensated or uncompensated, involving the provision of personal services by the employee, whether to or for the federal employer. It includes, but is not limited to, personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

f. Inmate. Any person found guilty of committing a felony or misdemeanor and who has been placed in Bureau custody or under supervision of a federal court. This includes individuals participating in home-monitoring programs, parole, probation, halfway house placement, pretrial and non-sentenced inmates,

payments, or decide to pay or settle a claim, in excess of $10,000,000. (See definition "during the conduct of a procurement.")

PS 3420.09
2/5/99
Page 6

## PUBLICATION AND INTERPRETATION

a. The CEO of each facility has the primary responsibility for ensuring that the Standards of Employee Conduct are provided and made known to each employee, contractor and volunteer.

b. Only actions made in reliance on advice received from the Ethics Officer, or his or her designee, may be protected from disciplinary action. When an employee's conduct violates a criminal statute, however, reliance on the advice will not, by itself, protect the employee. Reliance on the advice that an employee's conduct violates an ethics official cannot ensure the employee will not be prosecuted, but may be used as a factor in making this determination.

c. Each new employee, contractor, and volunteer shall receive and sign for this Program Statement at the time of appointment. In addition, all employees, contractors, and volunteers shall receive and sign for any updated versions of this Program Statement when issued. The responsibility for ensuring that employees, contractors and volunteers receive and sign for this Program Statement shall be delegated in the following manner:

- Human Resource Managers shall be responsible for employees;

- Department heads who oversee a contractor shall be responsible for that contractor; and

- Employee Development Managers shall be responsible for volunteers.

All receipts are to be filed on the left side of the Official Personnel Folder.

**GENERAL POLICY.** Employees of the Bureau are governed by the regulations published in 5 CFR Part 2635. While this Program Statement grounds on those regulations to clarify their application to the Bureau, it does not and cannot specify every incident which would violate the Standards of Conduct. In general, the Bureau expects its employees to conduct themselves in such a manner that their activities both on and off duty will not discredit themselves or the agency.

Employee Development Managers shall ensure that supervisors and employees receive annual training on their responsibilities under these regulations and policies.

PS 3420.09
2/5/99
Page 5

detainees, and inmates with state sentences under federal supervision.

9. **Former Inmate.** Any inmate for whom less than one year has elapsed since their release from Bureau custody or supervision of a federal court.

h. **Official Investigation.** Includes, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Internal Affairs, Office of Professional Responsibility, Office of Investigation, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity investigator or any other employee the CEO authorizes or orders to conduct an investigation.

i. **Negotiations.** Discussion or communication with another person, or such person's agent or intermediary, mutually conducted with a view toward reaching an agreement regarding possible employment with that person.

j. **Participate.** To take action as an employee through decision, approval, disapproval, recommendation, rendering of advice, or investigation.

k. **Particular Matter.** Matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

l. **Procurement Official.** Any officer or employee of an agency who has participated personally and substantially in any of the activities involved "during the conduct of a procurement." This definition includes acting as a procuring contracting officer, the source selection authority, a member of the source selection evaluation board, or the chief of a financial or technical evaluation team in a procurement in which that contractor was selected for award of a contract in excess of $10,000,000.

This definition also includes serving as a program manager, deputy program manager, or administrative contracting officer, and extends to officials who personally make the decision to award a contract, task order, or delivery order, establish overhead or other rates, approve the issuance of contract

reporting for duty, is prohibited. Employees shall be subject to disciplinary action if found to possess a .02 blood alcohol content level or greater while on duty.

b. **Sexual Relationships/Contact With Inmates.** Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or the families of inmates or former inmates. Chaplains, psychologists, and psychiatrists may continue a previously established therapeutic relationship with a former inmate in accordance with their respective codes of professional conduct and responsibility.

(1) An employee may not engage in, or allow another person to engage in, sexual behavior with an inmate. Regardless of whether force is used, or threatened, there is never any such "consensual" sex between staff and inmates.

(2) Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. "Sexual contact" is defined as the intentional touching of "the genitalia, anus, groin, breast, inner thigh, or buttocks." Penetration is not required to support a conviction for sexual contact. All allegations of sexual abuse shall be thoroughly investigated and, when appropriate, referred to authorities for prosecution.

(3) Employees are subject to administrative action, up to and including removal, for any inappropriate contact or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for sexual misconduct.

c. **Additional Conduct Issues.** An employee may not offer or give to an inmate or a former inmate or any member of his or her family, or to any person known to be associated with an inmate or former inmate, any article, favor, or service, which is not authorized in the performance of the employee's duties. Neither shall an employee accept any gift, personal service, or favor from an inmate, or former inmate, or from anyone known to be associated with any inmate or former inmate. This prohibition includes becoming involved with families or associates of inmates. If such contact occurs, it must be reported using the procedure in subsection c(5).

(1) An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another.

Employees shall:

a. Conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b. Not abuse their position by giving any false impression of having arrest authority through use of Bureau credentials or otherwise. Bureau employees may only arrest in their official capacity in very limited circumstances as permitted by official 18 U.S.C. § 3050 or other authority officially granted to them, such as U.S. Marshal deputation.

c. Avoid any action which might result in, or create the appearance of, adversely affecting the confidence of the public in the integrity of the U.S. Government.

d. Avoid conflicts of interest in matters that affect their financial interests.

e. Comply with post-employment restrictions.

f. Conform with procurement integrity regulations.

g. Uphold the ethical rules governing their professions, including complying with applicable licensing authority rules, except when they conflict with federal law.

h. Follow special rules to avoid conflicts of interest when seeking employment outside the Bureau.

i. Immediately report to their CEOs, or other appropriate authorities, such as the Office of Internal Affairs or the Inspector General's Office, any violation or apparent violation of these standards.

j. Failure by employees to follow these regulations or this policy could result in appropriate disciplinary action, up to and including removal (see Attachment A).

9. **PERSONAL CONDUCT.** It is essential to the orderly running of any Bureau facility that employees conduct themselves professionally. The following are some types of behavior that cannot be tolerated in the Bureau.

a. **Alcohol/Narcotics.** The use of illegal drugs or narcotics or the abuse of any drug or narcotic is strictly prohibited at any time. Use of alcoholic beverages or being under the influence of alcohol while on duty or immediately prior to

11. ILLEGAL ACTIVITIES. Illegal activities on the part of any employee, in addition to being unlawful, reflect on the integrity of the Bureau and betray the trust and confidence placed in it by the public. It is expected that employees shall obey, not only the letter of the law, but also the spirit of the law while engaged in personal or official activities. Should an employee be charged with, arrested for, or convicted of any felony or misdemeanor, that employee must immediately inform and provide a written report to the CEO.

Traffic violations resulting in fines under $150 shall be exempt from the reporting requirement.

INTRODUCTION OF CONTRABAND. The introduction of contraband into or upon the grounds of any federal penal or correctional institution, or taking or attempting to take therefrom, anything whatsoever without the Warden's knowledge and consent, is prohibited. Pursuant to 28 CFR § 500.1(h), contraband is defined as any material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of an institution. Contraband includes, but is not limited to, the following:

lettters,
stamps,
money,
tools,
weapons,
paper,
food,
implements,
welding material,
messages,
instruments,
alcoholic beverages,
drugs,
photographic equipment,
computer software,
recording devices,
cellular phones, etc.

13. OFFICIAL INVESTIGATION

Every employee is required to report to management immediately any violation or attempted violation of any law or regulation and any act or omission by any person which could result in a breach of institution security.

It is not Bureau policy to routinely search employees or their property; however, when the CEO has a reasonable suspicion to suspect that an employee is in possession of contraband items

(2) An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3) An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4) An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others. Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5) An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including employees whose relatives are inmates or former inmates) must report this contact, in writing, to the CEO as soon as practicable. This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment. The employee will then be instructed as to the appropriate course of action.

(6) Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7) Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10. RESPONSIVENESS

a. Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents. Therefore, employees are required to remain fully alert and attentive during duty hours.

b. Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

c. Employees are to obey the orders of their superiors at all times. In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

a. Employees shall verify the identification and authority of individuals requesting access to information prior to giving or discussing records, personnel files, or other official information.

b. Employees may not deny authorized persons access to official information.

c. Employees may not use, or release for use, official information for private purposes unless that information is available to the general public.

d. Employees may not remove information from files or make copies of records or documents, except in accordance with established procedures for proper authorization.

e. Employees may not make statements or release official information which could breach the security of the institution or unduly endanger any person.

f. Former employees may be granted access only to information available to the general public and may have no greater standing than the general public, irrespective of their past employment and any associations developed in the course of such employment.

16. GOVERNMENT PROPERTY. Government property is to be used for authorized purposes only.

a. Authorized Purposes. Authorized purposes includes personal use of Government office equipment such as computers, printers, fax machines, telephones, copiers, and calculators. Use may not involve more than merely negligible cost to the Government.

b. Negligible Cost. Negligible cost to the Government includes the cost of electricity, ink, and ordinary wear and tear. Employees shall provide their own paper.

c. Personal Use. Personal use of Government property may take place before or after official working hours or during non-paid meal breaks, provided such use does not adversely affect the performance of official duties by the employee or the Bureau, with the following exception:

Telephones. Employees may place a personal call on a Government telephone during official working hours if the call:

- does not adversely affect the performance of official duties by the employee or the Bureau;

- is of reasonable duration and frequency;

R.6

---

which, if introduced, could endanger the safety of staff or inmates or the security of the institution, the CEO may authorize the search of an employee or his or her personal property. Searches may also be authorized when the CEO has a reasonable suspicion that an employee is transporting contraband. Other circumstances may warrant an order by the CEO to randomly search employees or any person or their property when entering or leaving the institution.

c. During the course of an official investigation, employees are to cooperate fully by providing all pertinent information which they may have. Full cooperation requires truthfully responding to all questions and providing a signed affidavit, if requested. Any employee who fails to cooperate fully or who hinders an investigation is subject to disciplinary action, up to and including removal.

14. JUST DEBTS. Failure on the part of any employee, without good reason and in a proper and timely manner, to honor debts acknowledged by him or her to be valid or reduced to judgment by a court, or to adhere to satisfactory arrangements for the settlement thereof, may be cause for disciplinary action. Depending on the circumstances, an employee who receives a legally valid garnishment order may be subject to disciplinary action.

15. CONFIDENTIALITY. Employees of the Bureau have access to official information ranging from personal data concerning staff and inmates to information involving security. Because of the varying degrees of sensitivity of such information, it may be disclosed or released only as required in the performance of an employee's duties or upon specific authorization from someone with the authority to release official information. The only persons authorized to release official information are:

- in the Central Office, the Director, or designee;
- in a Regional Office, the Regional Director, or designee;
- in other locations, the CEO, or designee.

The above shall not be construed as a reason to deny authorized persons access to official records and files. The Bureau has an obligation to supply official information in response to requests from organizations or individuals upon determining that such individuals are properly identified and acting in an official capacity. To ensure the proper use of official information, the following rules of conduct are established:

R.5

b. Any employee who wishes to engage in employment outside the Bureau must obtain prior written approval for each activity using BP-S543.033 or BP-S166.033. Employment includes compensated self-employment, writing, and teaching. Outside employment, including speaking, must not result in, or create the appearance of, a conflict of interest with official duties or tend to impair the employee's mental or physical capacity to perform official duties and responsibilities. Written approval must be resubmitted when there is a change of duty station.

c. Any employee who wishes to serve as an officer or director of any organization, whether it is compensated or uncompensated, must also complete an outside employment request form. Employees who perform voluntary service involving church, employee's club, credit union, or union activities, which do not conflict with their official duties or with the mission of the Federal Bureau of Prisons, will be exempted from the requirement to request approval for these activities.

d. An employee may not have a direct or indirect financial interest that could be affected by the performance or nonperformance of his or her Government duties and responsibilities.

e. Certain professional employees are prohibited from engaging in the private practice of their professions. Exceptions may be granted, however, in accordance with subsection (1). Employees/professional employees who wish to engage in outside employment within their profession should follow instructions provided in subsection (2) and should complete BP-S166.033. For the purpose of this subsection, teaching, writing, and speaking are considered practicing within one's profession.

(1) **Employment in Certain Professions.** Persons currently employed by the Bureau in the professions listed below who would like to work **within** that profession during off-duty hours must have the approval of his or her immediate supervisor, CEO, Regional Director, and the Director:

- Architect
- Attorney
- Chaplain
- Doctor
- Psychologist

The Bureau Ethics Officer shall review each request to ensure that there are no conflicts of interest.

---

- could not reasonably have been made at another time; and
- is within the employee's local commuting area.

d. **Fitness Equipment.** Employees may use Government-owned fitness equipment during breaks if such equipment is intended exclusively for employee use.

e. **Existing Prohibitions.** This rule does not override already existing prohibitions on use of Government property, including those rules established by a supervisor for business reasons.

17. **CREDENTIALS.** Bureau of Prisons credentials, identification cards, Government drivers licenses, or badges may not be used to coerce, intimidate, or deceive others or to obtain any privilege or article not otherwise authorized in the performance of official duties.

a. Employees may not obtain or use identification badges issued by other sources which give the appearance of being an official Bureau or law enforcement credential.

b. Employees may not use credentials or otherwise represent themselves as Department of Justice personnel to obtain a gun permit to be used in their unofficial capacity.

c. Employees may use credentials to prove Government employment for purposes of permissible discounts offered to a broad class of Government employees.

18. **OUTSIDE EMPLOYMENT**

a. There are limitations as to the type of outside employment an employee may obtain. Employees may not:

- engage in any outside employment or activity that involves criminal matters, although the Director reserves the authority to approve uncompensated correctional work on a case-by-case basis;
- engage in any outside employment which would require the use of a firearm, except for military reserve duty; or
- testify as an expert witness in any legal proceeding, with or without compensation, in which the Bureau does not have an interest.

PS 3420.09
2/5/99
Page 16

PS 3420.09
2/5/99
Page 15

## 19. RULES FOR ATTORNEYS

a. **Approval of Exceptions.** Attorneys for the Bureau may not practice law on behalf of any other person or entity, for compensation, without the written approval of the Deputy Attorney General. Bureau attorneys, however, may perform uncompensated legal practice outside the Bureau if:

- the work does not violate 18 U.S.C. §§ 203 and 205,
- the General Counsel has approved the request, and
- the work does not involve criminal matters.

b. **Confidentiality.** Only under limited circumstances shall the attorney/client privilege of confidentiality apply to communications with a Bureau employee.

c. **Successive Government and Private Employment**

(1) A former Bureau attorney may not represent a private client in connection with a matter in which the attorney participated personally and substantially as a public officer. In such a case, the attorney's firm may continue representation of the matter only if the attorney is screened from any participation in the matter in which he or she participated in personally and is apportioned no part of the fee therefrom.

(2) A Bureau attorney who came from private practice may participate in a matter before the Bureau in which the attorney participated personally and substantially while in private practice. Like any Bureau employee, an attorney may not negotiate for private employment with any party involved in a Bureau matter in which the attorney is participating in personally and substantially.

d. **Other Duties.** In addition to the ethical rules attorneys must follow, the duties of a Bureau attorney are further defined by federal regulations and Bureau policy.

## 20. CONFLICTS OF INTEREST.

Bureau employees should avoid situations where their official actions affect or appear to affect their private interests, financial or non-financial.

a. **Prohibitions.** Employees are prohibited from taking official action on matters that affect the financial interests of:

- The employee, a spouse, minor child, or a general partner of an employee;

---

Attorneys who seek to practice law outside of the Bureau must also refer to Section 19, Rules for Attorneys.

The form entitled "Request for Approval for Outside Employment Within One's Profession" (BP-S543.033) must be completed with all appropriate signatures affixed before the employee may engage in the outside practice of his or her profession. The form requires such basic information as the name of the employee, the employee's job title, grade, institution and a brief description of the outside employment contemplated. The brief description, at a minimum, should include:

- a summary of the duties to be performed,
- the work address of the employer,
- the hours of employment, and
- any information deemed relevant to support the request.

Failure to provide the required information could result in delays in processing or a denial of the request.

(2) **Other Outside Employment.** Any other employee who wishes to engage in outside employment must obtain prior approval from his or her supervisor and CEO by initiating a Request for Approval for Outside Employment. Forms may be found on BOPDOCS.

(3) **Change of Outside Employment.** Any approval granted for outside employment is specific to the particular position referenced in the application and approval. Any employee who wishes to change outside employment, (e.g., to work for a different company, accept a different position with the same company, etc.), must submit a new request form, and receive approval before doing so.

(4) **One-Time Review of Outside Employment.** All employees who have received approval for outside employment prior to the effective date of this Program Statement must submit a new request form by December 31, 1998. Request for Outside Employment forms may be found on BOPDOCS. This requirement applies even if the employee is still in the same outside position for which approval had previously been granted. The purpose of this one-time review is to ensure compliance with the Supplemental Standards Of Ethical Conduct For Employees Of The Department Of Justice (5 CFR Part 3801).

private or public employer after his or her service at the Bureau, but certain acts that are detrimental to public confidence in Government are prohibited.

a. Lifetime Prohibition. All former Bureau employees are prohibited from representing another party before the Government on a particular matter involving specific parties in which they participated personally and substantially while working for the Government. This prohibition does not apply to an appearance or communication involving purely social contacts, a request for purely factual information or the supplying of such information. This restriction is found at 18 U.S.C. § 207(a)(1).

b. Two-Year Prohibition. After leaving the Bureau, a former employee is restricted from acting as a representative on a particular matter for which the employee had official responsibility, rather than personal participation. The restriction applies if the former employee knew, or reasonably should have known, that the matter was pending under his or her official responsibility during his or her last year at Government service. This restriction is found at 18 U.S.C. § 207(a)(2).

c. One-Year Prohibition. Former senior level employees are restricted from lobbying the Bureau, on behalf of another person on a matter in which that person seeks official action for one year. This ban only applies to Executive Schedule or SES level 5 and 6 employees. The purpose of this restriction is to allow for a period of adjustment for incoming senior employees and to diminish any appearance that Government decisions of an agency might be affected by the improper influence of a former senior employee. This restriction is found at 18 U.S.C. § 207(c).

3. PROCUREMENT INTEGRITY. During the conduct of a procurement, procurement official is prohibited from knowingly directly or indirectly, soliciting or accepting any promise of future employment or business from any officer, employee representative, agent, or consultant of a competing contractor. This prohibition includes engaging in any discussion of future employment or business opportunity. This restriction is found in the Procurement Integrity Act, 41 U.S.C. § 423. Any procurement official who participates personally and substantially in a procurement in excess of $100,000 (the simplified acquisition threshold) and who is contacted concerning employment by a person who is a bidder or offerer in such procurement must promptly report the contact in writing both to the employee's supervisor as well as to the Ethics Officer.

■ An organization where the employee is an officer, director, trustee, partner or employee; or

■ An organization the employee is negotiating with for future employment.

b. Waivers

(1) The Director may grant an individual waiver if the interest is found not to be so substantial as to affect the employee's service to the Bureau.

(2) Employee's holdings in mutual funds are exempt if the employee's share is no more than one percent of the total assets of the fund.

(3) An employee with a conflict of interest may ask to have himself or herself recused from the matter, sell the asset, or resign.

(4) An employee must seek written authorization prior to participating in a matter which could lead a reasonable person to question the employee's impartiality, even if there is not a statutory conflict of interest.

(5) Procurement officials must refer to Section 23, Procurement Integrity.

21. SEEKING OTHER EMPLOYMENT. Any Bureau employee who wishes to seek employment with persons who otherwise would be affected by the performance or nonperformance of the employee's official duties are required to disqualify themselves from participation in any particular matter that will have a direct and predictable effect on the financial interests of the person with whom he or she is negotiating.

When an employee is not actually negotiating for employment, but lacks impartiality in dealing with a prospective employer, the employee should disqualify himself or herself. A Bureau employee who is aware of, or should be aware of, the need to disqualify himself or herself from participation in a particular matter must contact his or her supervisor and request, in writing, to be removed from the matter.

22. POST-EMPLOYMENT. The Office of Government Ethics, in accordance with statutes, has issued post-employment restrictions for federal employees who leave federal service. There is a general restriction on the representation of parties in matters related to their federal employment. This regulation is not designed to bar an individual from accepting employment with any

PS 3420.09
2/5/99
Page 1

PS 3420.09
2/5/99
Attachment A, Page 1

## Standard Schedule of Disciplinary Offenses and Penalties

1. This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed. The offenses listed are not inclusive of all offenses.

2. Ordinarily, penalties imposed should be within the range of penalties provided for an offense. In aggravated cases, a penalty outside the range of penalties may be imposed. For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties. When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3. The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty. The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal. While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal. This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons. For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4. Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5. Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6. The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

a.  Recusal To Discuss Employment.  In certain instances, a procurement official may obtain permission to withdraw from further participation in a procurement to discuss future employment with a competing contractor. An eligible procurement official may, in accordance with specific procedures in the regulations, request authorization to be recused from participation in the procurement. A procurement official is not eligible for recusal if, during the period beginning with the issuance of a procurement solicitation and ending with the award of a contract, he or she has participated personally and substantially in the evaluation of bids or proposals, the selection of sources, or the conduct of negotiations.

An individual may not commence discussions with a competing contractor until he or she has received written approval of the recusal request from his or her supervisor. Rejection of a recusal request is not an adverse personnel action.

b.  Post-Employment Restrictions For Procurement Officials. The Procurement Integrity Act places restrictions on employees involved in procurement who leave federal service. A former procurement official cannot, for one year after his or her last personal and substantial involvement in a procurement in excess of $10,000,000 accept compensation from such contractor as an employee, officer, director, or consultant. This does not prohibit former procurement officials from accepting compensation from any division or affiliate of a contractor that does not produce the same or similar products or services for which the employee contracted while a government employee.

/s/
Kathleen Hawk Sawyer
Director

PS 3420.09
2/5/99
Page 19

PS 3420.09
2/5/99
Attachment A, Page 2

7. Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8. Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF INDIANA

Civil Action No.

Monroe L. Coleman,

Petitioner,

v.

Mark Bezy, Warden.

---

### PETITION FOR WRIT OF HABEAS CORPUS
### PURSUANT TO 28 USC SECTION 2241(a)(1) and (3)

---

**NOW COMES** the petitioner, Monroe L. Coleman, in pro se, pursuant to Title 28 USC Section 2241(a)(1) and (3), and hereby respectfully move for this Honorable Court to issue a writ of habeas corpus. In support thereof, petitioner states as follows:

### JURISDICTION

1. This court has jurisdiction to entertain the instant petition pursuant to Title 28 USC Section 2241(a)(1) and (3).

Specifically, section 2241(a)(1) and (3) provides in relevant part:

"§ 2241.         *Power to grant writ*
*(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.*

*1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof;*

*(3) He is in custody in violation of the Constitution or laws or treaties of the United States ...*

*See generally, Cervantes De Hernandez v. Chertoff, 368 F. Supp. 2d 896, 905 (7th Cir. 2005).*

### STATEMENT OF THE CASE

2. Petitioner is currently serving a 44 to life sentence based on a judgment order of the District of Columbia Superior Court entered in approximately 1987. The sentence resulted in a jury finding of guilt on the following criminal charges: Aiding and Abetting First Degree Felony Murder; Armed Robbery; Assault With Intent Rob While Armed, and Attempted Arm Robbery.

3. Petitioner has been in continuous custody of Attorney General since sentencing in 1987.

4. On or about June 14, 2005, Kimberly Moore, FWS, an employee of the Federal Bureau of Prisons ("BOP"), at the United States Penitentiary Big Sandy, Kentucky, wrote an Incident Report against petitioner alleging the following:

*"On 06-14-05 at approximately 3:15 while conducting pat searches in UNICOR, I instructed Inmate Coleman...to turn around so that I could conduct a pat search. He hesitated and walked towards Foreman Tacket to be pat searched. I than gave Inmate Coleman a direct*
order to come over so that I could perform the pat search. He stated that he did not want me to put my hands on him. At that point, I escorted Inmate Coleman to the office to counsel him on pat down procedures. Inmate Coleman stated in a threatening tone that he did not want my adulteress hands to be placed on him. He also stated that my hands were to dirty to touch him. He proceeded to say that he knew that Mr. Burke and myself were seeing each other. As leaving the office he stated in front of several inmates and staff the {comment} about not wanting my adultress hands on him. Prior to this particular event, I had {already} counseled Inmate Coleman for refusing pat down procedures"*

*Id., Exhibit A hereto (emphasis in original).*

5. On June 15, 2005, @ approximately 10:08 AM, G. Waher, an employee of the BOP at the United State Penitentiary Big Sandy, Kentucky delivered a copy of the Incident in question to petitioner. id.

6. On or about June 18, 2005, petitioner was seen by the Unit Disciplinary committee ("UDC") and said UDC members made the following findings:

*"Inmate admitted to making the statement to Ms. Moore...Inmate's own admission and the information provided in the body of the incident report...Committee action:Change of Jobs; 30 days loss of commissary; 30 days loss of phone privileges to start 6/18/2005 end 7/17/2005"*

*id.*

7. On various dates, petitioner fully exhausted his available administrative remedies challenging the disciplinary actions taken against him resulting in the incident report mentioned supra., which included sexual harrassment, retaliation and violations of his First Amendment Rights.

*See, Exhibits 1 Thru 52.*

8. Each and all administrative remedies were categorically denied.

## CLAIMS FOR RELIEF

9. The charges that were logged against petitioner were a direct result of BOP employee Kimberly Moore's sexuel harrassment and retaliation against petitioner. Furthermore, said disciplinary action violated petitioner's right to Freedom of Speech in violation of the First Amendment of the United States Constitution.

## REQUESTED RELIEF

10. That this Honorable Court enter an order directing that the BOP expunge the violative disciplinary reports from petitioner's institutional disciplinary record forthwith or show cause why such relief should not be granted.

## ARGUMENT

### "FREEDOM OF SPEECH MAYBE CONSIDERED LIBERTY OF SPEECH"

The First Amendment embraces two concepts: Freedom to believe and Freedom to act. The First is absolute, but in the nature of things, the second cannot be absolute, since conduct remains subject to regulation for the protection of society.

Petitioner use of the word "adulterous"" was not said for present danger but due to Mrs. Kimberly Moore fondling with Mr. Burke's genitals on several occasions in view of petitioner and others.

E.G., on free speech as well as liberty of speech-hypothetically, if petitioner saw to people of the same sex making out with each other then decides to say "you're a homosexual." Does petitioner has a First Amendment Right to say that when he had witnessed the wrongful act committed by those two people?

When the effect of a statute, [Bureau of Prisons Regulation], or ordinance upon which an employee violates either, the exercise of First Amendement freedom of speech appears to have been violated (if mentioning those actions) and the public interest to be protected is substantial, a rigid test requiring a showing of imminent danger to the security of the nation is an absurdity.

When particular conduct as that of Mrs. Kimbely Moore violates any employment integrity standards that are governed by Bureau of Prisons Policy 3420.09, the interest of public order may be adhered but when the actions of an employee shows disgrace not only indulging with staff but with prisoner(s) to whom she was employed to protect, the regulation then becomes abridgement of free speech, and the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the particular circumstances presented.

Wherefore, all premises considered, petitioner prays that the relief requested herein-above is granted.

Respectfully submitted this 27 day of July, 2006, at United States Penitentiary, Terre Haute, Indiana.

Monroe L. Coleman, Petitioner

Exhibits

1—50

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**

*[handwritten notes top right]*

**FEDERAL BUREAU OF PRIS**

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Warden S. R. Hastings | 6-10-05  USP 277-c |
| FROM: Coleman-Bey, m. | REGISTER NO.: 01723-06 |
| WORK ASSIGNMENT: Unicor | UNIT: D1  II 310 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action be
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Why are BP 8 or 8.5 (Administra-
tive Remedy complaint) is not
Answered Nor copies of such com-
plaint is given to the inmate?
Without the reply from the informa
complaint, may slow the processing
of the administrative complaint.
Therefore, it is Requested that
a copy be provided to the inmate
where there is no reply given from
prison officials.

CC: Inmate File           CC: C4 File

(Do not write below this line)

DISPOSITION:

Signature Staff Member                    | Date
_____ Acting Warden's Secretary   | 7-26-05

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 8
and BP-S148.070 APR 94

BP-S288.052 INCIDENT REPORT CDFRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE

Case 1:06-cv-02255-RMC   Document 28-10   Filed 09/05/2007   Page 9 of 24

135-770
1351770

FEDERAL BUREAU OF PRISONS

## Part I - Incident Report

**1. Name Of Institution:**

| 2. Name Of Inmate<br>Monroe L. Coleman | 3. Register Number<br>01723-016 | 4. Date Of Incident<br>06/14/05 | 5. Time<br>03:15 P.M. |
|---|---|---|---|

| 6. Place Of Incident<br>UNICOR FACTORY | 7. Assignment<br>UNICOR ORDLY | 8. Unit<br>B-1 |
|---|---|---|

**9. Incident: Insolence toward staff member (312)**

**11. Description Of Incident (Date: 06/15/05 Time: 03:15 P.M.** Staff become aware of incident)

On 06-14 05 at approximately 3:15 while conducting pat searches in UNICOR, I instructed Inmate Coleman, Registration # 01723-016, to turn around so that I could conduct a pat search. He hesitated and walked towards Foreman Tacket to be pat searched. I then gave Inmate Coleman a direct order to come over so that I could perform the pat search. He stated that he didn't want me to put my hands on him. At that point, I escorted Inmate Coleman to the office to counsel him on pat down procedures. Inmate Coleman stated in a threatening tone that he did not want my adulteress hands to be placed on him. He also stated that my hands were to dirty to touch him. He proceeded to say that he knew that Mr. Burke and myself were seeing each other. As leaving the office he stated in front of several inmates and staff the commit about not wanting my adulteress hands on him. Prior to this particular event, I had all ready counseled Inmate Coleman for refusing pat down procedures.

| 12. Signature Of Reporting Employee<br>*Kimberly Moore* | Date And Time<br>06/15/05<br>06:45 a.m | 13. Name And Title (Printed)<br>*Kimberly Noore, FWS* |
|---|---|---|
| 14. Incident Report Delivered To Above Inmate By<br>*G. WAHER* | 15. Date Incident Report Delivered<br>*6-15-05* | 16.time Incident Report Delivered<br>*1008Am* |

## Part II - Committee Action

**17. Comments Of Inmate To Committee Regarding Above Incident**

*Inmate admitted to making the statement to Ms. Moore.*

| 18. A. It Is The Finding Of The Committee That You:<br>_____ Committed The Following Prohibited Act.<br><br>_____ Did Not Commit A Prohibited Act. | B. _____ The Committee Is Referring The Charge(s) To The DHO For Further Hearing.<br>C. ✓ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within ~~15~~ 20 Calendar Days. |
|---|---|

**19. Committee Decision Is Based On The Following Information**

*Inmate's own Admission And the information provided IN the body of the Incident Report*

**20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)** *Change of Jobs*

*30 days Loss of comm. 30 days Loss of Phone privileges*
*to ~~stop~~ Start 6/18/2005 End 7/17/05*

*This is the copy from Ms Greene 7-22-05*

21. Date And Time Of Action _____ (The UDC Chairman's Signature Next To
His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects
The UDC Proceedings.)

*M. Roberts / M. Roht*              *M. D. Ulian*

Chairman (Typed Name/signature)    Member (Typed Name)        Member (Typed Name)

Record Copy - Cent     File Record;   Copy - DHO;   Copy - Inmate After UDC Action;   Copy -
Inmate Within 24 H     s Of Part I Preparation
(This Form Ma  Be      licated Via WP)
                                                            Replaces BP-288(52) Of Jan 88

| Pa : I] | Investigation | 22. Date And Time Investigation Began<br>6-15-2005/1008am |
|---------|---------------|---------------------------------------------------------|

23. Inmate Advis   : Right To Remain Silent: You Are Advised Of Your Right To Remain
Silent At All Sta   ; Of The Disciplinary Process But Are Informed That Your Silence May
Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional
Disciplinary Process.  You Are Also Informed That Your Silence Alone May Not Be Used To
Support A Finding That You Have Committed A Prohibited Act.

The Inmate Was Advised Of The Above Right By_Gary Waher, Jr._ At (Date/time)_6-15-2005/1008_

24. Inmate Statement And Attitude: Inmate had a good attitude. Inmate stated "Mrs.
Moore's hands were filthy and he asked her if Mr. Tacker could shake me down. I didn't
mean no disrespect, and I did not say nothing about her and Mr. Burke."

25. Other Facts Al   it The Incident, Statements Of Those Persons Present At Scene,
Disposition ?f Ev    nce, Etc.

26. Investig tor      omments And Conclusions
     Based on t      ritten report and inmates statement I am referring this incident
report to UDC

27. Action Taken

Forward report to UDC for sanctions

Date And Time Investigation Completed ___6-15-2005/1020am___

Printed Name/signature Of Investigator_Gary Waher, Jr._

Signatur                                   Activities Lieutenant
                                                  Title

BP 9                     Request For Adm. Remedy

U.S. Dept of Justice                                    **3**

Fr: <u>Coleman-Bey, M.</u>         <u>01723-016</u>      <u>B1</u>      <u>BSy</u>
    Last Name, Middle Initial      Reg. No.           Unit      Inst

Appeal                                      July 6, 2005

   I Have a First Amendment Right to
Freedom of Speech and Religious practice.
According to my religious belief and
practice of the Holy Bible (Sirach 23: 22-
27) those words of "you are an adult-
erous" are not violative to be considered
insolence as charged in the disciplinary
report that I was charged with, especial-
ly when I witnessed Mrs Moore
fraternizing with Mr Burke on the
stairway.
   In Sirach 23: states in the first
place she has broken the laws of the

Cont'd Page 2.

~~High. In the second place she has~~
WRONG her husband. And in the
third place she has made a  *  of
herself by committing an adultry....

BP-229(13)
July 2005

Respectfully,

MONROE L. Coleman Bey
01723-016

Affidavit / Declaration

I, MONROE L. Coleman-Bey did witness
MRS. Moore and Mr. Burke on the
STAIRWAY of Unicor fraternizing, on,
around, or during the month of June,
2005.
I, MONROE L. Coleman-Bey, swear the
above is true and correct to my know-
ledge.

Respectfully,



U.S. Department of Justice
Federal Bureau of Prisons



*United States Penitentiary - Big Sandy*

---

Office of the Warden

P.O. Box 2067
Inez, Kentucky 41224

July 18, 2005

**MEMORANDUM FOR COLEMAN, MONROE**
             **REG. NO. 01723-016 - B/1 UNIT**

**FROM:**      Suzanne R. Hastings, Warden

**SUBJECT:**   Inmate Request to Staff Response

This is in response to your Inmate Request to Staff dated
June 10, 2005 in which you request to know why your complaint was
not answered and why you are not allowed to receive a copy of the
BP-8 Informal Resolution response.

Program Statement 1330.13, <u>Administrative Remedy Program</u>, Section
7 (a) Informal Resolution, provides that each Warden shall
establish procedures to allow for the informal resolution of
inmate complaints.  It also states that an inmate should present
an issue of concern informally to staff first and staff should
attempt to informally resolve the issue before an inmate submits
a Request for Administrative Remedy.  Additionally, Section 8 (b)
of this Program Statement provides that staff should counsel the
inmate that informal resolution is ordinarily required; however,
the inmate may by-pass informal resolution for valid reasons.
Policy does not dictate a form for use in the informal resolution
process. However, to ensure that these steps take place, we
utilize the Attempt at Informal Resolution form (known as a BP-
8). This form is to document staff's attempts to informally
resolve your issue and ensure that staff indicate your reasons
for non-resolution of your complaint.  You will receive a copy of
this form with your completed BP-9 response if you do not
informally resolve your complaint.  If you do informally resolve
your complaint, then you will receive a copy of the form after
you sign it.  You do not get a copy of the form until the
completion of the Administrative Remedy Process.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY



*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman Bey, Monroe L.   01723-016   731   Big Sandy
_____LAST NAME, FIRST, MIDDLE INITIAL_____   REG. NO.   UNIT   INSTITUTION

**Part A– INMATE REQUEST** Appeal

I Have a 1st Amendment Right to Freedom of Speech and Religious practice. According to my religious belief and practice of the Holy Bible (Sirach 23: 22-27) those words of "You are an adulterous" are not violative to be considered insolence as charged in the disciplinary report that I was charged with, especially when I witnessed Mrs Moore fraternizing with Mr Burke on the stairway. In Sirach 23: states in the first place she Has the laws of the High. In the second place she Has wrong Her Husband. And in the third place she Has made a ——— of Herself by comm,itting an Adultry.... (Due to just coming out of situ when my counselor or case manager wasn't available),

7-20-05
DATE

C. Coey, M.
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 385189-F1

**Part C– RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

PRINTED ON RECYCLED PAPER

BP-229(13)

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRIS**



| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| MS Greene ~ Case Manager | 7-21-05 |
| FROM: | REGISTER NO.: |
| Coleman Bey, M. | 01723-016 |
| WORK ASSIGNMENT: | UNIT: |
| Orderly | B1      # 114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action be taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Ms. Greene, you were given on 7-20-05
the copy of the disciplinary report filed
against me. I am Requesting that copy
back to see whether it has been
altered. If you desire to interfere
with this administrative Remedy complaint
then the court will be notified. See
Bradley v. Hall, 64 F3d 1276 (C.A.9 (Or.) 1995).
Also, I've never received from the Warden's
office stating the previous Appeal was unacceptable.
meaning, its due date is near. 8-5-05 or 8-10-05
CC: Handwritten copy

**(Do not write below this line)**

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRIS**

| TO: (Name and Title of Staff Member) Ms Greene ~ Case Manager | DATE: 7-21-05 |
|---|---|
| FROM: Coleman Bey, M. | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1    #114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action b
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Ms. Greene, You were given on 7-20-05
the copy of the disciplinary report filed
against me. I am requesting that copy back
to see whether it has been altered. If
you desire to interfere with this administrative
remedy complaint then the court will be
notified. See Bradley v Hall, 64 F3d 1276
(C.A. 9 (Or.) 1995). Also, I've never received
from the warden's office stating the previous
appeal was unacceptable. meaning its due date
is near... 8-5-05 or 8-10-05

CC: Handwritten copy / Inmate's File
(Do not write below this line)

DISPOSITION:

Inmate given copy on
7/22/05

| Signature Staff Member 7/22/05 | Date E J Green |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Coleman, Monroe L.**            **01723-016**    **B1**    **USP BSU**
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.      UNIT      INSTITUTION

Part A- INMATE REQUEST    Retaliation: After being let out of seg under-
Sign (UdSN) leAnkued Ofc Jackson has been telling inmates udsN told
him About Mrs K. Moore; several pieces of property MISSING & hi.
shower shoes were intentionally Not placed in his property; AN extra
day was added to the D.R. penalty; 7-20-05, Case MNgr Ms Greene was
given udsN copy of the D.R. to make a copy which she intentionally
Refused & denied to give back. She then called Case MNgr Rogers to
the unit. UdsN repeatedly was Refused that copy back; 7-22-05, UdsN
served Ms Greene AN Inst'l Request regarding after Altering
evidence (see enclosure). This D.R. is Not the very same D.R.
given to her; 7-21-05, udsN mail was given to him at or around
11', 24 pm though he Received mail at mail call; ▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**7-23-05**                                    *Coleman, Monroe*
        DATE                                    SIGNATURE OF REQUESTER

Part B- RESPONSE



        DATE                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              CASE NUMBER: _____

Part C- RECEIPT

Return to: _____
                LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

        DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

BSY15
PAGE 001 OF 001    *    INMATE DISCIPLINE DATA    *    07-27-2005
CHRONOLOGICAL DISCIPLINARY RECORD    08:55:04

Case 1:06-cv-02255-RMC   Document 28-6   Filed 09/05/2007   Page 18 of 24

REGISTER NO: 01723-016   NAME..: COLEMAN, MONROE L
FUNCTION...: DIS       FORMAT: CHRONO    LIMIT TO ____ MOS PRIOR TO 07-27-2005
                    RSP OF: BSY-BIG SANDY USP

------------------------------------------------------------------------

REPORT NUMBER/STATUS.: 1351770 - SANCTIONED INCIDENT DATE/TIME: 06-14-2005 151
UDC HEARING DATE/TIME: 06-17-2005 1130
FACL/UDC/CHAIRPERSON.: BSY/B1/2/ROBERTS
REPORT REMARKS.......: INMATE ADMITTED TO MAKING THE STATEMENT TO MS. MOORE
   312   BEING INSOLENT TO STAFF MEMBER - FREQ: 1
       LP COMM    / 30 DAYS / CS
       COMP:     LAW:
       LP PHONE    / 30 DAYS / CS
       COMP:     LAW:

G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIREI





UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ColemanBey, Monroe C.      01723-06    B1                    Big Sandy
　　　 **LAST NAME, FIRST, MIDDLE INITIAL**      **REG. NO.**        **UNIT**        **INSTITUTION**

**Part A– INMATE REQUEST**          (Sexual Harassment against K. Moore)

On the 22nd of July, 2005 Case Manager Ms
Greene was given by undersign an Admini-
strative BP 8.5 concerning Ms Moore for "Ha-
rassment - Sexual Harassment." Since the filing
of complaint against Ms Moore Ms Greene
has intentionally interfered with undersign's
right to address the court. Ms Moore would con-
tinuously annoy undersign which he was afraid
to complaint because of unnecessary like today.
8-1-05      (See Disciplinary Rpt)
**DATE**                                              **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

10

_____                              _____
**DATE**                                       **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*
**ORIGINAL: RETURN TO INMATE**
                                              CASE NUMBER: _____

**Part C– RECEIPT**
                                              CASE NUMBER: _____
Return to: _____
LAST NAME, FIRST, MIDDLE INIT.



BSY-1330.13
July 18 2003
ATTACHMENT A

## ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

Federal Bureau of Prisons Program Statement 1330.13, Administrative Remedy Program, dated August 13, 2002, Provides that inmates have a responsibility to use the Administrative Remedy process in good faith. An inmate shall first present an issue of concern informally to staff and shall attempt to informal resolve the issue before an inmate submits a request for Administrative Remedy. The deadline for completion of informal resolve and submission of formal request (BP-9) is 20 Calendar days following the occurrent issue or concern.

**TO BE COMPLETED BY INMATE**

INMATE'S NAME: ColemanBey, M   REG. NO.: 01723-016   UNIT: 131 F14   DATE: 8-8-05

1.  Nature of problem and efforts have been made to resolve the problems. (List staff you have spoke with include copies of cop out responses)
On a few occasions the named subject felt embarassed when and during Ms K Moore pat search, this subject believed her intent was of a sexual harassment nature (See Disciplinary Rpt)

2.  State what action or resolution expected. Be Specific: Not to return to Unicor, but any other relief possible.

**TO BE COMPLETED BY STAFF**

3.  Summary of investigation: (indicate staff you spoke with and their responses) Include any resolution offered to inmate) Staff unaware of sexual harassment.
※ misplaced original BP 8 Issued a new one 8/8/05

4.  Explanation for non-resolution: ( State what Resolution was offered and Inmate's reason for not accepting Resolution)
Issued a BP 9

On_____Inmate Refused Offered Resolution.

_____
Staff

Date & Time Issued: BP-8 4/8/05  9:45
Date & Time Inmate Returned: 8/8/05

Correctional Counselor: _____
Correctional Counselor: _____

Date & Time Investigation Completed and BP-9 issued: _____
Staff issuing BP-9

Indicates review and agreement that Informal Resolution attempts has been exhausted.

Unit Manager's Signature/Date: _____

On _____, this issue was informally resolved.

_____        _____
Inmate Signature        Date

This document must accompany completed BP-9 and be turned in to the Warden's office by staff.

Peggy E. Patterson                    Dated: 8-9-05
U.S. Magistrate Judge
U.S. District Court
Eastern District of Kentucky
Ste 303- Federal Bldg.                    12
110 Main Street
Pikeville, Kentucky 41501-1144

RE: Acts of Retaliation
      Committed by BOP Officials

Dear Hon. Judge Patterson:

Since petitioner has filed claims against
the Bureau of Prisons, he is being un-
lawfully harassed for exercising a
constitutional right of Freedom of
Speech.

On June 15, 2005, he exercised his
Freedom of Speech under the First
Amendment by stating to a Bureau
of Prisons foreman, "You're an Adul-

teress because petitioner witnessed Mrs. Kimberly Moore and foreman Mr. Burke secretly kissing and holding themselves on a stairway. Petitioner made this information known to Unicor Supervisor Mr. Abbott in the presence of Mrs. Moore. For doing such I was placed segregation, receive commissary and telephone restriction, lost of employment, pay wage, transfer to a Spiritual Program at Petersburg, Virginia, and label by his peers and some staff as a snitch. And informing at will probably make it worst for petitioner.

Petitioner would use the Unicor for filing fee to courts, stamps, copies, hygiene products, commissary items, and for phone calls without putting unnecessary pressure on his elderly retired

Mother.

Petitioner has enclosed information concerning this mistreatment and deprivation of a Constitutional Right; a right to Freedom of Speech and practice. Had not petitioner witnessed such illegal act then he would had been disrespectful. It is not requested that this court acts on this matter which petitioner believes it does not have jurisdiction to do so, but he need to make the court aware of the retaliation and mistreatment he is experiencing from BOP officials. But petitioner do ask this court for an address he can write to regarding the tamperring and altering of the enclosed disciplinary by BOP staff. Petitioner thanks your for its time and concern. Also, Petitioner makes known to the court

he will submit a copy of the foregoing letter along with its additional information to the representatives in Civil Action No. 05-158-DCR  OR 05-158-PEP : To Cheryl D. Morgan, Asst. U.S. Atty, at 110 W. Vine St. Ste 400, Lexington, KY 40507-1671 and

Margaret J. Chriss, Asst. U.S. Atty, at 555 Fourth Street, N.W., Special Proceedings Section (10th Floor), Washington, D.C. 20530, on this ___ 9th day of __August__, 2005.

Respectfully submitted,

Monroe L. Coleman-Bey.

MONROE L. Coleman-Bey
#01723-016  USP BSY
P.O. Box 2068
Inez, KY 41224

# Certificate of Service

I, Monroe L. Coleman-Bey, pro se, states that a copy of the foregoing Institutional Grievance Complaint has been mail to:

U.S. Atty Assistance Cheryl D. Morgan at 110 W. Vine St., Ste 400 Lexington, Kentucky 40507-1671 and Margaret J. Chriss U.S. Atty Assistance at 555 Fourth St., N.W., Special Proceedings Section (10th Floor), Washington, D.C. 20530 on this 17th day of August, 2005.

Civil Action #05-158-DCR

Respectfully submitted,

Monroe L. Coleman-Bey
USP BSY #01723-016
P.O. Box 2068
Inez, KY 41224

~~REJECTION NOTICE~~ - ADMINISTRATIVE REMEDY

DATE: AUGUST 11, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
        BIG SANDY USP

TO  : MONROE L COLEMAN, 01723-016
        BIG SANDY USP      UNT: B UNIT      QTR: B01-114L
        P.O. BOX 2067
        INEZ,  KY 41224

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID          : 385189-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : AUGUST 11, 2005
SUBJECT 1          : UDC ACTION
SUBJECT 2          :
INCIDENT RPT NO: 1351770

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                ABOUT.

REMARKS           : HAD UNTIL 7/7/05 TO FILE - SUBMITTED BP-9 ON 7/20/05

*13*

RECEIPT - ADMINISTRATIVE REMEDY

DATE: AUGUST 11, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BIG SANDY USP

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 385218-F1
DATE RECEIVED   : AUGUST 11, 2005
RESPONSE DUE    : AUGUST 31, 2005
SUBJECT 1       : PERSONAL PROPERTY - INCL. CONFISCATION OR DESTRUCTION
SUBJECT 2       :
INCIDENT RPT NO:



RECEIPT - ADMINISTRATIVE REMEDY

DATE: AUGUST 15, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BIG SANDY USP

TO   : MONROE L COLEMAN, 01723-016
       BIG SANDY USP     UNT: B UNIT     QTR: B01-114L

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 385436-F1
DATE RECEIVED   : AUGUST 12, 2005
RESPONSE DUE    : SEPTEMBER 1, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

*15*

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: COLEMANGREY, MONROE     01723-016     01     USP T354

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A - REASON FOR APPEAL "Sexual Harrassment based on Retaliation"
subject Had previous civil cases pending against respondent
Hastings which His First Amendment Right has been violated
As well as stripped by use of A smoke screen. To allow
speech makes the Rule an exaggerated response. Therefore
the validity of the "Insolence" Rule as applied to His statement
is challenged under the const'l right and religious belief
due to His observation of employees kissing and Holding
each other On the job in violation of BOP Policy. Mrs Moore
never denied Her involvement....

8-17-05
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

16

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE                         SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                    BP-230(13)

*17*

This subject addresses three specific issues in this complaint for constitutional reasons: 1) Does he has a constitutional right to Freedom of Speech when he witnessed unlawful acts committed by Bureau of Prisons (BOP)staff or foremen; 2) Does he has a constitutional right to exercise his religious belief without breaching security of the prison; 3) ~~Does he has a right to be free from retaliatory acts~~ committed by BOP officials, staff, foremen, and officers because he was exercising his right in U.S. Federal Court and the warden is the respondent?

A petitioner or plaintiff shall exercise his constitutional right whenever a matter arose concerning his rights being violated by prison officials, staff, foremen, or officers. To deny any protection that is afforded a prisoner may and will result in legal action being resolved by a U.S. Federal Court Judge or Magistrate. Furthermore, a prisoner shall be free from any acts of retaliation of BOP officials and staff. See Clark v. Stalder, 121 F3d 222,230(5ᵗʰ Cir. 1997). See the enclosed Exhibits ( 1-    ).

COMES NOW, Petitioner, _Maurce L. Coleman-Bey_, protected by the First and Fourteenth Amendments which BOP officials have unconstitutionally infringed on his rights by use of its regulation, policy, or rule that abridge on his Freedom of Speech, religious belief, without harmed being doe for exercising such right(s).    Therefore, the First Amendment and the relevant prison regulation are not coterminous. *The precise contour of the First Amendment need to be determined whether protection of a prisoner right is secure.*

Courts have determined that incarceration does not divest prisoner of all constitutional protections. Inmates retain, for example, the right to be free from racial discrimination, Lee v. Washington, *** the right to due process, Wolff v. McDonnell, *** and, as relevant here, certain protections of the First Amendment Turner, ***. Also, the courts have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individual in society at large. In the First Amendment context, For instance, some rights are simply inconsistent with the status of a prisoner or "with the legitimate penological objectives of corrections system, "Pell v. Procunier ***.

While Turner, the court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims; "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *** According to this standard, four factors are relevant. First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [And neutral] governmental interest put forward to justify it." *** If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in favor. *** In addition, courts should consider three other factors:  the existence of alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the absence of ready alternatives: available to the prison for achieving the governmental objectives ***

This subject request a test to determine and evaluate whether prisoner's First Amendment challenges, the protection to use "**Adulteress**" when he had witnessed a female and male [not marry to each other] by kissing and rubbing on one another secretly during working hours for the BOP."

Subject argues that the BOP rule, regulation, or policy that governs disciplinary proceedings does not state or make clear what remarks are violatiive of BOP disciplinary status. When subject made that remark ["you're an adulteress"] it was innocent where there are no guidelines for determining what remarks are unwarranted. In fact, however, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark be made is violation. BOP disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior." However, to allow such punish to go unsolved means that the punishment is a backdoor tool for punishing the subject. This forms an act of retaliation in this manner is unacceptable as a result of unconstitutional application of the rule, regulation, or policy.

Petitioner states the purpose for penological interest rules are required but inappropriate if or when they steps on a prisoner First and Fourteenth Amendments rights. Subject has not done anything wrong. Frat-

enizing is prohibited on a BOP job especially when the two parties are not marriage to each other. For exercising his **Freedom of Speech** and making known that the Holy Bible forbidden adultery, and when he said those words mention above it was not an act of "disrespect" because he witnessed the kissing and other acts committed by those foremen.

## RETALIATORY ACTS

The court has held that a section 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate exercise of his substantive constitutional rights, See **Franco v. Kelly**, 854 F2d 584,589-90(2d Cir 1988); See also, Thornburgh v. Abbott, 490 U.S. 401,407, 104 l. Ed. 2d 459, 109 S. Ct. 1874(1989), "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the **First Amendment**, which are implicit in incarceration." Union, Inc., 433 U.S. 119, 125, s53 L. Ed. 2d 629, 97 S. Ct. 2532(1977).

A prisoner retains those First Amendment rights that are not inconsistent with is status as a prisoner or with the legitimate penological objectives of the corrections system. The discriminatory enforcement, poses greater concerns with respect to the freedom of speech protected by the Federal Constitution's of civil procedure.

## AFFIDAVIT
s

I, Monroe Coleman Bey, state that he is the affiant in this matter which is being presented to this agency

On Monday, August 15, 2005, Unit Manager Fazenbaker asked this affiant to "work with him." Meaning resolving the grievance filed. "You came out of the Shu (segregation housing unit), I got you a job in the unit, a single cell, and you want to go to that program in Leavenworth. You want a pack of batteries?" Such statement or words from the unit manager was coercing and mild threatening. Mr. Fazenbaker did give the subject a pack of institutional/commissary batteries.

I, Monroe Coleman Bey, do swear that the above information herein is true to the best of my knowledge on this 24th day of August, 2005.

Respectfully submitted,

A. Bey

Regional Dir.'s Office
Mid-Atlantic Region
10010 Junction Dr. Ste 100N
Annapolis Junction, MD 20701

RE: Administrative Remedy Com-
     plaint Based on Constitution-
     al Rights Violation

Dear Regional Director:

This letter comes to your atten-
tion due to Sexual Harrassment,
Retaliation Acts, and impediment
of this subject's access to the
court.

The subject states he had
(3) previous pending legal matters

before the Eastern District Court which ~~Bureau of Prisons~~ officials namely Ms. Greene and Mr. Dillian have intentionally impeded and tried to hinder his opportunity to address the court on these new claims herein. See attachments—Therefore, such claims are constitutional regardless whether BOPs' regulation, rule, or policy support said conclusion that his constitutional rights outweigh the lateness used by Grievance Coordinator. Thus, the subject ask that he be pardoned for delay which mostly due to BOP interference, unavailable

stamps and copying because of insufficient funds.

The relief sought is removal of disciplinary report and earned monetary damages based on UNICOR pay to the present day.

P.S.

The subject is unable to get the enclosed Affidavit notarized due to conflict with staff (MS. Greene). BOP 40.7 (b) or (c).

Respectfully,

Coleman.

Date: 8-24-05

Monroe L. Coleman-Bey
USP BSY #01723-016
P.C. Box 2068
Inez, KY 41224

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 30, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO    MONROE L COLEMAN, 01723-016
      BIG SANDY USP        UNT: B UNIT        QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 385189-R1      REGIONAL APPEAL
DATE RECEIVED  : AUGUST 29, 2005
SUBJECT 1      : UDC ACTION
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

REJECT REASON 2: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.   TEXT ON ONE SIDE.   THE
                 TEXT MUST BE LEGIBLE.

REMARKS        : YOU HAVE ATTACHED THREE DIFFERENT REMEDY NUMBERS.
                 YOU ARE UNTIMELY ON YOUR UDC APPEAL.



REQUEST FOR ADMINISTRATIVE REMEDY
PART B - RESPONSE

Remedy No. 385436-F1

This is in response to your Request for Administrative Remedy receipted August 12, 2005 in which you allege harassment by your Case Manager and sexual harassment by a UNICOR staff member.

Allegations of this nature are taken very seriously at USP Big Sandy and will be forwarded to the appropriate department for investigation. You will not be notified of the outcome.

Based on the above information, your Request for Administrative Remedy is neither granted nor denied, but is provided for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Mid-Atlantic Region, 10010 Junction Drive, Suite 100-N, Annapolis Junction, Maryland 20701 within 20 calendar days of the date of this response.

_____          _____
Suzanne R. Hastings, Warden                 Date

REJECTION NOTICE – ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 7, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP      UNT: B UNIT      QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 385189-R2        REGIONAL APPEAL
DATE RECEIVED    : SEPTEMBER 1, 2005
SUBJECT 1        : UDC ACTION
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY. YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

Z/

U.     ment of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**



Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: COLEMAN BEY, MONROE    01733-016    B1    USP BSy

      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**    Sensitive Adm. Remedy (Appeal)

This writer was released from SHU July 6th, 2005, which he had three days to file the disciplinary appeal there was no BP9s administrative forms available NOR M/s Greene and Mr Dillion working to assist him. Mr Frazenbaker refused to give this writer a form stating, "Wait until Dillion Return on Sunday" (July 10th, 05). Therefore, this writer made out a form and placed it in the legal mailbox to Warden Hastings which the result from that office stated, "Untimely".

9-8-05

DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

ZZ

RECEIVED

SEP 16 2005

BUREAU OF PRISONS
MARO REGIONAL COUNSEL

_____

DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: 38589-R3

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: SEPTEMBER 12, 2005



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BIG SANDY USP

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L



ADDITIONAL TIME IS NEEDED TO RESPOND TO THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID        : 385436-F1
DATE RECEIVED    : AUGUST 12, 2005
RESPONSE DUE     : SEPTEMBER 21, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP      UNT: B UNIT      QTR: B01-114L
      P.O. BOX 2067
      INEZ,  KY 41224


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 389167-R1        REGIONAL APPEAL
DATE RECEIVED   : SEPTEMBER 16, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.



REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP        UNT: B UNIT      QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 389168-R1        REGIONAL APPEAL
DATE RECEIVED    : SEPTEMBER 16, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.



REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP     UNT: B UNIT     QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 389169-R1        REGIONAL APPEAL
DATE RECEIVED   : SEPTEMBER 16, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

Z 6

~~REJECTION~~ NOTICE – ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP         UNT: B UNIT        QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 389170-R1         REGIONAL APPEAL
DATE RECEIVED    : SEPTEMBER 16, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

27

-4-

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO      MONROE L COLEMAN, 01723-016
        BIG SANDY USP       UNT: B UNIT      QTR: B01-114L
        P.O. BOX 2067
        INEZ, KY 41224


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 385189-R3         REGIONAL APPEAL
DATE RECEIVED    : SEPTEMBER 16, 2005
SUBJECT 1        : UDC ACTION
SUBJECT 2        :
INCIDENT RPT NO: 1351770

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

REMARKS          : WE ARE UPHOLDING THE INSTITUTION'S REJECTION.



U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: [illegible] [illegible] [illegible] [illegible]
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A - REASON FOR APPEAL** this [illegible] [illegible] [illegible] Administrative Remedy [illegible] to [illegible] [illegible] [illegible] is going [illegible] to the BOP [illegible] [illegible] [illegible] claim(s) the inmate need not exhaust the [illegible] ministrative Remedy." Ultimately should be [illegible]

[illegible]-05
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

29

DATE

GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY

CASE NUMBER: [illegible]

**Part C - RECEIPT**

CASE NUMBER:

Return to:
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF [illegible]

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP          UNT: B UNIT
      P.O. BOX 2067                      QTR: B01-114L
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 390573-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 3, 2005
SUBJECT 1        : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.



REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP        UNT: B UNIT        QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 390574-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 3, 2005
SUBJECT 1       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2       : ADMINISTRATIVE REMEDY PROCEDURES
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

3 /



REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP      UNT: B UNIT      QTR: B01-114L
      P.O. BOX 2067
      INEZ,  KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 389167-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 3, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS          : WE CONCUR WITH THE REGIONAL OFFICE.

32

—1—

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP      UNT: B UNIT        QTR: B01-114L
      P.O. BOX 2067
      INEZ,  KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 389168-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 3, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.
REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS          : WE CONCUR WITH THE REGIONAL OFFICE.



33

- 17 -

REJECTION NOTICE — ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-006
      BIG SANDY USP        UNT: B UNIT        QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 389170-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 3, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS          : WE CONCUR WITH THE REGIONAL OFFICE.

34

— B —

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP       UNT: B UNIT       QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 385189-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 3, 2005
SUBJECT 1       : UDC ACTION
SUBJECT 2       :
INCIDENT RPT NO: 1351770

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

REMARKS         : WE CONCUR WITH THE REGIONAL OFFICE'S & INSTITUTION'S
                  RATIONALE FOR REJECTING YOUR APPEAL.

35

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 21, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
BIG SANDY USP      UNT: B UNIT      QTR: B01-114L
P.O. BOX 2067
INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID         : 389169-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED     : OCTOBER 3, 2005
SUBJECT 1         : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2         :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS           : WE CONCUR WITH THE REGION.

56

Rec. 11/10/05

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| WARDEN, S. Hastings | 1-20-06  USP-79-06 |
| FROM: Coleman-Bey, M. | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1  II 114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Remedy No. 385436-F1

In Response to my B.P. 9, concerning c/o Kimberly Moore, you said an investigation would take place and that my grievance was Neither granted or denied. My rights were violated and I am seeking to be reimbursed for lost wages, and a return to my former job status, along with having the entire disciplinary, in this matter expunged from all records. Would you please inform me of your position, in the above - Request. Thank you

CC: Inmate's File (Do not write below this line)

DISPOSITION:

37

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

REQUEST FOR ADMINISTRATIVE REMEDY
PART B - RESPONSE

Remedy No. 385436-F1

This is in response to your Request for Administrative Remedy receipted August 12, 2005 in which you allege harassment by your Case Manager and sexual harassment by a UNICOR staff member.

Allegations of this nature are taken very seriously at USP Big Sandy and will be forwarded to the appropriate department for investigation.  You will not be notified of the outcome.

Based on the above information, your Request for Administrative Remedy is neither granted nor denied, but is provided for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Mid-Atlantic Region, 10010 Junction Drive, Suite 100-N, Annapolis Junction, Maryland 20701 within 20 calendar days of the date of this response.


_____                    _____9/6/05_____
Suzanne R. Hastings, Warden                      Date



U.S. Department of Justice
Federal Bureau of Prisons

United States Penitentiary, Big Sandy

Office of the Warden                    P.O. Box 2067
                                        ~~Inez, KY 41224~~

February 3, 2006

**MEMORANDUM FOR COLEMAN, MONROE**
**REG. NO.  01723-016, UNIT B1**

**FROM:**        Suzanne R. Hastings, Warden

**SUBJECT:**     Inmate Request to Staff Response

This is in response to your Inmate Request to Staff dated January 20, 2006,  in which you state that your civil rights were violated, and you request to be returned to your former job status and have all disciplinary matters expunged. As stated in your original Administrative Remedy response, all allegations were forwarded to the appropriate department for investigation. You will not be notified of the outcome of the investigation.

As for your disciplinary inquiries, your incident report went through the appropriate disciplinary process. If you feel that the sanctions were inappropriate, you were provided all necessary instructions on how to appeal the decision reached by the UDC.

If you are dissatisfied with the response from your original Administrative Remedy response, you were provided all necessary instructions on how to appeal the decision to the Regional Director.

I trust this has addressed your concerns.



BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS** 

| TO: (Name and Title of Staff Member) | DATE: |
| --- | --- |
| F. Terrero-Leibel, HSA | 2-7-06 |
| FROM: Coleman-Bey, Monroe | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1 → 114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Ms. Leibel, last June (05) I Had tried to commit suicide due to my confinement to the segregation unit. The institu- tion belt slapped due to my weight. However the stiffness of my neck seem to resurface again and again which I am requesting an X-Ray especial- ly whenever the pain or throbbing occurs, Because it would be unfair to consistent- ly and continuously come to sick-call and be forced to pay $2.00 for every visit especially is the soreness is not available at this specific time.

<center>(Do not write below this line)</center>

DISPOSITION:

You have been scheduled for an x-Ray of your neck (cervical spine). We don't have the facility to have walk-ins, which After the x-Ray result is in, you can make sick call for the results and physical assessment.

| Signature Staff Member | Date |
| --- | --- |
| F. Terrero-Leibel HSA | 2-9-06 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

*140*

Department of the Interior
Office for Equal Opportunity
1849 C Street, N.W., Mail Stop 1442
Washington, D.C. 20240


RE:   Prison Grievance Complaint(s)
      Remedy No. 385436-F1


Dear Dept of the Interior:

                                          Feb. 8, 2006


      On June 14th, 2005, this writer revealed a secret relation or
love affair going on between Unicor Foremen Mrs. Kimberly Moore and
Mr. Burke.  For blowing the whistle on these two white bureau of pri-
sons employees, which it was preplanned to strip him of his prison
job for meddling into white folks business.
      The 1st, 7th, and 14th amendments of the Constitution did not
stop at the prison gate denying this writer the same equal justice
as his other counterparts in any workplace.  Furthermore, this writer
refused Mrs. Kimberly Moore approaches:  (1) Because she was married,
(2) her involvement with Mr. Burke, and (3) retaliation was possible
as done to Emmett Tills.
      This retaliation, disparity treatment, and discriminatory prac-
tices committed by bureau of prisons officials are of a constitutional
violation that infringed upon the rights of this person.  Mr. Coleman-
Bey hasn't done anything wrong which fratenizing is prohibited on
Bureau of Prisons federal government jobs especially when the parties
are not married to each other.  Because of this writer exercising
his freedom of speech and whistleblowing he received five sanctions:
placed in segregation, job terminated, commissary and telephone re-
strictions, and lost of pay.
      Thereafter, it is alleged that Mrs. Kimberly Moore got sexually
involved with another black inmate which it is believed drugs and
her personal garment were given to that inmate.  However, she was
placed under investigation by prison officials which the matter has

page 2 of 2.

been referred to the FBI for further investigation into her involvement with that inmate. After learning of this new and similar matter this writer wrote to the Warden, Ms. Suzanne Hastings inquiring into his matter, which he'd learned that the Remedy No. 385436-F1 has not been granted or denied but nothing has been done to correct the wrong committed to him. During January, 2006, this writer was told indirectly threatened by a prison official not to press his complaint which can cause you more than it's worth; which probably meant segregation, or transfer denied. This writer only want to be reassigned to his job, recompensated for time lost from the job, and the disciplinary report removed from his institutional jacket.

I thank you for your time and for any and all assistance you may render unto this matter. Thanks!

Respectfully,

Monroe LaVelle Coleman-Bey
#01723-016
USP-BSY
P.O. BOX 2068
Inez, Kentucky 41224

BP-S148.055  **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Warden, S. Hastings | 2-12-06 |
| FROM: Coleman-Bey, Monroe | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1   # 114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

In Response to your Memo dated: 2-3-06 (# 385431 FI). Warden, Hastings, it seems to be strange that you stated in your response that this writer will not be notified of the outcome of the investigation regarding Mrs Kimberly Moore's wrongful Acts. However, since this notice wasn't given promptly to this writer on 9-6-05 whether to appeal your decision in the above remedy Number, it is requested that permission be given to appeal your administrative decision to the Atlantic Region which no relief has been given. ....

(Do not write below this line)

DISPOSITION:

41

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Regional Parole Office                    6-12-06
North Central Region
44th & State Avenue

**42**

Gateway Tore II 8th Floor
Kansas City, Kansas 66101

Re:    A FOIA Complaint, See
       Adm. Remedy #385436-F1
       5 USCS §552, N. 863


Dear Director:


U.S. Congress in USCS §552
(a)(4)(B) has allowed for sep-
arate complaint files under
Freedom of Information Act

before a federal court obtains
jurisdiction to enjoin withold-
ing of official information,
since to hold to contrary
would give undue precedence
to Freedom of Information Act
Requests in aid of discovery
over all other requests under
that Act. Burrell v. Rodgers
(1977, WD Okla) 438 F. Supp
25, 23 FR Supp 2d 1130.

What is requested from your
office: (1) the release of
any and all 730.5 informa-

tion regarding former Bureau of prisons officer Mrs Kimberly Moore who worked for USP Big Sandy, Inez, Kentucky; and (2) removal of disciplinary report filed by Mrs Kimberly Moore. Based on proven facts by USP Big Sandy's staff, the accusation made by this writer confirms the inappropriate and improper acts of Mrs Kimberly Moore in violation of P.S. 3420.09 basically

in its entirety. However, since the filing of the above No. 385436-F1, Mrs. Moore has been terminated from her position due to those wrongful acts. Therefore, this request for disciplinary removal should be granted. Thank you.

Respectfully,

Ronald L. Coleman
USP Terre Haute
Reg. No. 01723-016
P. O. Box 12015
Terre Haute, Ind.
47801

Federal Bureau of Prisons
~~U.S. Justice Department~~
301 First Street, N.W.
Washington, D.C. 2005



RE:   Freedom of Information Act
      (U.S.C. 552), Privacy Act
      (5 U.S.C. 552(6)(C)(B)(7),
      General (U.S.C. 552 A(J)(2) or
      Specific (U.S.C. 552a(K)(2) Not
      Applicable to This Request

Identification Of Requestor:

Name       :  Monroe LaVelle Coleman
D.O.B.     :  12-29-56
F.B.I.     :
Soc. Sec. #   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

This letter will serve as undersign request pursuant to the provi-
sions of the Freedom of Information Act (5 U.S.C. 552) and the
Privacy Act (5 U.S.C. 552a (d)(1), and the applicable state statutes
governing Freedom of Information Requests if state agency request,
for full disclosure and release of all records and/or data contained
in the files regarding BOP former worker Kimberly Moore, including
disciplinary report filed against Monroe LaVelle Coleman by Mrs.
Kimberly Moore who was terminated for indulging in wrongful acts
as a BOP worker during 2005 or 2006, which it requested that any
and all investigations on the named party Mrs Kimberly Moore be
released to requester.  This disciplinary report and the requested
investigation(s) took place at Big Sandy USP which is located in
Inez, Kentucky during the year of 2005 and/or 2006.

This undersign is in need of the investigation reports and any
and/or all information, data, or reports not otherwise exempt by
statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. a(j)(2), (k)(2), or
law; Tarlton v. Saxbe, 507 F. 2d 1116, 165 U.S. App. D.C. 293(1974);
162 U.S. App. D.C. 284(1974); Sullivan v. Murphy, 478 F. 2d 938,

156 U.S. App. 28(1973).  Your agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted, and only with reference to specific citation of authority, Paton v. LaPrade, 524 F. 2d 862, 868-69(CA 3 2975).

It is further requested that your agency provides the undersign with a copy of specific regulations of your Department as provided by statute (5 U.S.C 552), so that compiance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

Pursuant to title 5 U.S.C. (6)(1), it is noted that your agency has ten (10) working days following receipt of this request to provide the information and material sought.  Should any delay occur, it is requested that your agency inform the undersign of this delay as provided by agency regulations, and the date as to when your agency will be able to act upon this request.

Finally, please note also that the undersign will agree to pay any reasonable costs, or file In Forma Pauperis if he is indigent. provided by statute or regulation of your agency for search and copy of material requested.

Respectfully submitted,

s/ _____

Date: 6-21-06



**U.S. Department of Justice**
Federal Bureau of Prisons

North Central Regional Office

400 State Avenue
Tower II, Suite 800
Kansas City, KS 66101

June 21, 2006

Monroe Coleman
Register No.  01723-016
United States Penitentiary
Terre Haute, IN  47801-2015

Re:  Your Information Request

Dear Requestor:

This is in regard to your above-referenced information request recently received in this office.

You should be aware that, in accordance with 28 C.F.R. 513.60, a request for information directed to the Federal Bureau of Prisons is not deemed properly filed until received by the component at the address specified in Appendix I, Title 28 C.F.R. Additionally, once the component receives a request for records, a review of the request is conducted by the Central Office FOI/PA Section to determine whether the required elements of a request under the applicable information access statutes and regulations have been met.

We are returning your request and all enclosures for your submission to the  Director, Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, Attention: FOI/PA Section, pursuant to Title 28 Code of Federal Regulations, Part 16.3.

Sincerely,

Daryl Kosiak
Regional Counsel

Dated:  June 25, 2006

Freedom of Information Act Request

Monroe LaVelle Coleman
Reg. No. #01723-016
USP Terre Haute
P.O. Box 12015
Terre Haute, IN 47801



RE:  F.O.I.A. §552

The foregoing shall serve as the undersign's request for
disclosure of the information set out infra., pursuant to the
Freedom of Information Act, 5 U.S.C. Section 441.

Specifically, the undersign requests copies of the following
information:

1) Provide the reason why the Unicor Supervisor was not
allowed to resolve and testify on behalf of the undersign at the
disciplinary hearing which the supervisor could had made known
to prison's officials before the disciplinary report was written
that he and other Unicor staff members were fully aware of Mrs.
Kimberly Moore's wrongful, degrading, and improper acts with Mr.
Burke prior to Coleman's disciplinary report;  2) Provide under-
sign with any and all investigation information, data, reports,
memorandums, or any other writting concerning Mrs. Kimberly Moore
while working at USP Big Sandy located in Inez, Kentucky; 3)
Provide the results or conclusions of each investigation informa-
tion, data, reports, memorandums, or any other writting concerning
Mrs. Kimberly Moore while working at USP Big Sandy; 4) Provide
the reason why Mrs. Kimberly Moore was changed from one job posi-

cont'd page 2.

tion then assigned to the Unicor job position; 5) Provide the reason why Mrs. Kimberly Moore was not placed on leave for wrongful acts while working for the BOP when she had committed violation acts of the Bureau of Prisons policies, and/or regulations with Mr. Burke at the conclusion of the first investigation; and 6) Provide the results of the investigation why Mrs. Kimberly Moore was terminated from the Bureau of Prisons, along with dates of each investigative reports, memorandums, data, or any and all written reports done by Bureau of Prisons staff.

Finally, in the event, the Bureau of Prisons is willing to discuss options available to avoid litigation, the undersign will be interested before initiating a lawsuit in the federal court within 7 working days after receipt of this letter to your office, and if possible a Lien may be filed with the Indiana's County Recorder's Office.

The undersign thanks you for your time and for any and all assistance you may render unto the above matter.

Respectfully submitted,

Monroe LaVelle Coleman
#01723-016
USP Terre Haute
P.O. Box 12015
Terre Haute, IN 47801

**46**

Regional Director's Office
Dept. of Justice-Bureau of Prisons                    Dated: 6-25-06
320 First Street, N.W.
Washington, D.C. 20001

RE:  Administrative Remedies:   385436-F1, 385189-R2, 389169-A1,
                                358189-F1, 389167-A1, 389168-R1,
                                389169-R1, 389170-R1, 389168-A1,
                                389170-A1, 390573-A1, & 390574-A1.

The foregoing shall serve as my request for informal resolution
of the following issues, as required under Bureau of Prisons Program
Statement #1330.13.


### ISSUES PRESENTED FOR REVIEW


USP Big Sandy located in Inez, Kentucky is where undersign
filed an institutional complaint regarding Sexual Harassment com-
mitted by former BOP worker Mrs. Kimberly Moore; 2) Retaliation
committed by BOP officers and officials against the undersign
for calling a white woman who is Kimberly Moore an "Adulteress";
aand 3) BOP officials, disciplinary hearing officers, along with
Kimberly Moore violated undersign Constitutional Rights under
the language of Freedom of Speech.

Specifically, the BOP officials have refused and denied to
remove the "Insolence" disciplinary report from the Central Files
of the undersign as well as making such a request which the disci-
plinary should had not had lefted the institution when officials
knew she had or was under previous investigation by BOP staff.
And Kimberly Moore was later terminated for her involvement in

cont'd page 2.

in further wrongful acts namely with inmate(s).  See U.S. Dept. of Justice Directive: 3420.09.  See Attachments.

Therefore, the undersign is attempted through further administrative remedy to resolve this matter with Bureau of Prisons officials before addressing the United States District Court in the State of Indiana.

RELIEF SOUGHT

Removal of Insolence Disciplinary report and replacement of loss wages from Unicor job of $1,200.00.  If no relief is granted then the undersign will file to Small Claims or under the Bivens Act seeking monetary and compensatory damages, and attorney fee totalling $6,000.00 - $10,000.00.

Respectfully submitted,

Monroe LaVelle Coleman
#01723-016
U.S.P. Terre Haute
P.O. Box 12015
Terre Haute, Indiana 47801

Harley Lappins,                           July 11, 06
D.R., Bureau of Prisons,
Dept of Justice                                    **47**
320 First St., N.W.,
Washington, D.C. 20530

RE: U.S. District Court Complaint

Dear Sir:

On or about June 25th 2006,
this writer placed in the hand
of Bureau of Prisons staff/officer
at the mailroom two F.O.I.C.
Complaints which the undersign
has not received a response yet
as of this 11th day of July from
your office in compliance to such
Request for information as well as

Removal of that erroneous disciplinary
Report.

Well, the undersign is preparing
two legal complaints for filing
to both federal courts, within five
working days if a reply is yet
to be answered,
    Thank you.

                    Sincerely,

                    Coleman, Marvin

July 23, 2006

Agency Head of Freedom of Information Act
Office of Information and Privacy Act
United States Department of Justice
1425 New York Avenue, N.W.
Suite 11050
Washington, D.C. 20530-0001



Re: Freedom of Information Act Appeal

Dear Freedom of Information Act Appeal Officer:

This is an appeal under the Freedom of Information Act.
During or around the month of mid-June or early July, 2006,
I requested documents under the Freedom of Information Act.
My requet was assigned the following identification number:
2006-07999.

On July 19, 2006, I receive a response to my request in
a letter signed by Richard W. Schott. I appeal the denial of
my request.

The documents that were withheld must be disclosed under
the FOIA because of 5 U.S.C. §55a and Privacy Act, 5 U.S.C. §552a
which the information requested was for personal use and not
for commericial use. Also, the requester is challenging the
disciplinary report written by Mrs. Kimberly Moore who wrongfully
deprived the requester of his First Amendment right to "Freedom
of Speech". Thereafter, Mrs. Kimberly Moore was placed under
another investigation for wrongful acts which caused her to be
terminated from her job as a bureau of prisons employee.

Disclosure of the documents I requested is in the public
interest because the information is likely to contribute signifi-
cantly to public understanding of the operations or activities
of the government and is not primarily in my commericial interest.

<u>cont'd page 2.</u>

Requester is only trying to prove that Mrs. Kimberly Moore improper, inappropriate, and wrongful acts not only violated the Bureau of Prisons regulations/policies but also infringed on requester constitutional rights for calling her an "adulteress".

I appeal the decision to require to pay review costs or to receive the requested information, records, investigation report(s), and documents signed by bureau of prisons employee terminating Mrs. Kimberly Moore and why. I am not seeking the documents for commercial use. The requested is only seeking for the removal of that disciplinary report filed by Mrs. Kimberly Moore against requester on or about June 14, 2005.

Thank you for your consideration of this appeal.


Sincerely,

Monroe LaVelle Coleman
Reg. No. 01723-016
USP Terre Haute
P.O. Box 12015
Terre Haute, Indiana 47801

# Relief Sought

**4**

Removal of "Disciplinary Report and Unicor pay for days falsely terminated from work.

Coleman, M.

RECEIPT OF ADMINISTRATIVE REMEDY

DATE: MAY 14, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO   :  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
        TERRE HAUTE USP      UNT: LCP      QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID       : 451045-F1
DATE RECEIVED   : APRIL 30, 2007
RESPONSE DUE    : MAY 20, 2007
SUBJECT 1       : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2       :

*Intentional*
Denial To Return Coleman's
Personal Property


Extensions are overdue


Rec. 6-8-07

RECEIPT ADMINISTRATIVE REMEDY

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
NORTH CENTRAL REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID     : 451045-R1
DATE RECEIVED : MAY 29, 2007
RESPONSE DUE  : JUNE 28, 2007
SUBJECT 1     : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2     :

The seeks to intervene in order to receive back the $37.40 that Grammon's (of business office) is intentionally withholding This further Retaliation

Rec 7-12-07

RECEIPT ADMINISTRATIVE REMEDY

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : AUGUST 18, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

The defendants' agents are withholding Coleman's property because he filed against their boss and friend Harley Lappin

Rec 7-12-07

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: AUGUST 23, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : SEPTEMBER 7, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

Prison officials intentionally
Refusing to return this property

Rec. 8-22-07

August 24, 2007

Monroe LaVelle Coleman
#01723-016
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

Alexander D. Shoaibi
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

     Re:  Letter/Motion
         Civil Action No. 06-2255(RMC)

Dear Clerk of Court:


    It is requested that this Honorable Court enter an ORDER stating, "the defendants have conceded" via Attorney Alexander D. Shoaibi, of 555 4th Street, N.W., Washington, D.C. 20530, on this 24th day of August, 2007, because the defendants have failed to respond to the Court's Order dated July 3rd, 2007, and for defendants' failure, the Court will deny Summary Judgment filed by defendants in this matter.

    This Court may grant this request based on the defendants failure.  I thank you for your time and assistance in this matter,


                    Respectfully submitted,



                    Monroe LaVelle Coleman

cc: Inmate's File

The United States Department of Justice, Federal Bureau of Prisons Program Statement 1040.4, non-discrimination towards inmates: [Policy §551.90, Bureau staff shall not discriminate against inmates on the basis of race, religious, national origin, sex, disability, or political belief. This includes making administrative decisions and providing access to work, housing, and programs.] [;] this may include bogus disciplinary reports also.

The reporting requirements of public interest was established in Bureau of Prisons Policy 3420.09 when it was created. However, the mental aspect of the public interest must be considered when reaching a decision whether the wrongful conduct of Mrs. Kimberly is of public information as well as whether she was under any investigations for violating the BOPs' Policy; supra.

The  5 U.S.C. 552 information is not really sensitive in nature as well as covered as personal privacy-protected information; which exemptions may apply to particular portions of the report but not whether Mrs. Kimberly Moore was under two or more investigations and was terminated due to wrongdoing conduct that Coleman had spoken of only because he and others had witnessed this violation.

The releasing of the information will not appear to interfere with or adversely affect the law enforcement process, [because those investigations were in criminal] and/or where it may be appropriate for review and accuracy to determine whether Coleman received a bias, discriminatory and retaliatory disciplinary report.