via Certified Mail
Receipt NO. _____7004 1350 0005 7990 6004_____

September 20, 2007

Monroe LaVelle Coleman
#01723-016
Federal Corr'l Institution
P.O. Box 33
Terre Haute, IN 47808

Jeffrey A. Taylor
United States Attorney

Rudolph Contreras
Assistant United States Attorney

Alexander D. Shoaibi
Assistant United States Attorney
501 Third Street, N.W. Rm. E-4818
Washington, D.C. 20530

      Ref:  Coleman v. Harley Lappins, et al.
           Civil Action No. 06-2255(RMC)

Dear Counsels:

    In lieu of responding to the defendants' Renewal Motion for Summary Judgment in an effort to settle this case without the need of protractived litigation I hereby tendered the foregoing offer for settlement.

    In order to fully settle this case and not hold any of your clients liable for the claims made in the complaint I request the followings:

    Incident Report No. _1351770_____, charging "INSOLENCE" authored by Kimberly Moore, dated June 14th, 2005, which occurred at United States Penitentiary Big Sandy, located in INEZ, KY 41224.

# RECEIVED

SEP 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

After consideration of this proposal if the terms of the settlement proposal are agreeable to your clients I would request that you draw-up a motion for voluntarily dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii).

And forward a copy of the propsed request for dismissal to me for my signature.

I thank you advance for your cooperation in this matter.

Respectfully submitted,

MONROE LAVELLE COLEMAN

cc:  Clerk of U.S. District Court

via Certified Mail
Receipt NO.    7004 1350 0005 7990 6004

September 20, 2007

Monroe LaVelle Coleman
#01723-016
Federal Corr'l Institution
P.O. Box 33
Terre Haute, IN 47808

Jeffrey A. Taylor
United States Attorney

Rudolph Contreras
Assistant United States Attorney

Alexander D. Shoaibi
Assistant United States Attorney
501 Third Street, N.W. Rm. E-4818
Washington, D.C. 20530

        Ref:  Coleman v. Harley Lappins, et al.
              Civil Action No. 06-2255(RMC)

Dear Counsels:


    In lieu of responding to the defendants' Renewal Motion for
Summary Judgment in an effort to settle this case without the
need of protractived litigation I hereby tendered the foregoing
offer for settlement.

    In order to fully settle this case and not hold any of your
clients liable for the claims made in the complaint I request
the followings:

    Incident Report No. _1351770_____, charging "INSOLENCE"
authored by Kimberly Moore, dated June _14th_, 2005, which occurred
at United States Penitentiary Big Sandy, located in INEZ, KY _41224_.

After consideration of this proposal if the terms of the settlement proposal are agreeable to your clients I would request that you draw-up a motion for voluntarily dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii).

And forward a copy of the propsed request for dismissal to me for my signature.

I thank you advance for your cooperation in this matter.

Respectfully submitted,

MONROE LAVELLE COLEMAN

cc:  Clerk of U.S. District Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MONROE L. COLEMAN,
        Plaintiff,


        v.                          Civil Action No. 06-2255(RMC)


HARLEY LAPPIN, et al.
        Defendants.

OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT
MOTION RULE 56
AND
PLAINTIFF'S STATEMENT OF GENUINE ISSUES
PURSUANT TO FRCP 56


        As required by Local Rule 56, plaintiff contends that genuine
issues of material fact exist and disputes the following allegations
contained in defendants' statement of uncontroverted/Summary Judgment:

1.    Plaintiff make known the defendants' disciplinary report
        was mailed and received by him which he was already served
        a copy prior to filing this complaint, which that copy does
        not relieves the defendants of it obligation to provide the
        requested information against former Bureau of Prisons (hereafter
"BOP") employee Mrs. Kimberly Moore who was involved in a relationship
with a co-worker while still married to BOP employee Mr. Moore.

2.    Plaintiff asserts a) the agency cannot say, show, or deny
        former BOP employee Mrs. Kimberly Moore was terminated in

good standards with the BOP; b) Nor can the defendants assert
that Mrs. Kimberly Moore actions did not violate BOPs' Program
Statement 3420.09; and c) Defendant cannot assert plaintiff
received the disciplinary without "retaliation".

Other Genuine Issues

1.  Plaintiff seeks only the removal of that erroneous disciplinary
    report he received for witnessing a white woman indulging
    in cuddling and kissing a co-worker other than her husband
    on the job.

2.  It is requested to see whether co-worker Mr. Burke made any
    statement to investigating authorities concerning the misconduct
    of Mrs. Kimberly Moore.

3.  It is requested to see whether other co-workers made any
    statements  regarding the relationship Mrs. Kimberly Moore
    and Mr. Burke shared, as well as Mrs. Kimberly Moore involvement
    in other wrongful conduct on and off the BOPs' job.

See Wiley v. U.S., 20 F.3d 222,226(6th Cir. 1994); FRCP 56(e);
Maljack Prods., Inc. v. Goodtimes Home Video Corp., 81 F.3d 881,888
(9th Cir. 1996); North Bridge Assocs., 22 F.3d at 1206; See Moro
v. Shell Oil Co., 91 F.3d 872,874-75(7th Cir. 1996).

The defendant has not proven the word "adulteress" regarding
Mrs. Kimberly Moore was a prison threat short of establishing
a reason why said investigation of Mrs. Kimberly Moore is being
withheld from viewing.  Any and all investigations pertaining
to Mrs. Kimberly Moore will refute reason to remove that disciplinary
report from plaintiff's prison jacket.

GLOMAR OPPOSITION

The court is guided by a standard of reasonableness. While there is no requirement that an agency search be perfect, the search must be conducted in good faith using methods that are likely to produce the information requested if it exists.

The information sought that was held back by defendant must be reveal for public information showing society that the wrongful conduct of Mrs. Kimberly Moore and that an investigation into her misconduct did occur. Also, the public needs to know whether Mrs. Kimberly Moore can be trusted in the future with any other job without breach of contract or duty.

To release such information will not violate 552b because the requested information is of no criminal nature as well as expected to endanger the life or physical safety of the individual.

The BOP must demonstrate the existence of a nexus "between [its] activity" (rather than its investigation) "and its law enforce-ment duties." However, the defendant's is not making known that the prison investigation is shown to have been in fact conducted for an improper purpose, which Exemption 7 may not be applicable to the records of that investigation.

An investigation results into the inappropriate acts of former BOP worker Mrs. Kimberly Moore are not protected material simply because it [is] in an investigatory file. And such documents could be released without interference to related proceedings. Furthermore, the agency has not pointed to a <u>specific</u> pending

or contemplated law enforcement proceeding which could be harmed by disclosure, and by releasing the requested information will establish relatiatory act against plaintiff which he only want to show is the reason he was given a disciplinary report by Mrs. Kimberly Moore in the first place. Because Mrs. Kimberly Moore wanted to show prison officials that she was not indulging in any illegal acts -- to which there was no reason to continue observing her actions while on the job.

Therefore, the agency must prove more than a generalized showing that release of these particular kinds of documents will interfere with enforcement proceedings when the investigation is far beyond completed during that time periord of Mrs. Kimberly Moore working for the BOP.

WHEREFORE, these reasons, plaintiff asks the court to deny defendants' motion for final summary judgment.

## CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true copy of the foregoing motions have been mailed to Alexander D. Shoaibi, AUSA, 555 4th Street, N.W., Washington, D.C. 20530, on this ___19___ day of ___September___, 2007.

Respectfully submitted,

Monroe L. Coleman, Pro Se
#01723-016
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,
  Affiant/Plaintiff,

     v.                     Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
       Defendants.

## A F F I D A V I T

    I, Monroe L. Coleman, the named plaintiff/affiant in the above caption case number (hereafter "plaintiff") summits this affidavit in good faith.

    Thus, it is recommended or requested that this Honorable Court view in camera those documents and/or files used by the agency during 2005 through 2006 which pertain to Mrs. Kimberly Moore that led to her termination from bureau of prisons. Any employee, who is a citizen of the United States whose employment is suspended, discharged, or dismissed under the authority of the Bureau of Prisons Policy such actions of the employee shall be made known to the citizens of the United States as unacceptable and unwelcoming actions committed while working for the bureau of prisons. And this information has not been made available to plaintiff in this matter. The penalty for employee misconduct is a matter ususally left to the sound discretion of the executive agency. Boyce v. U.S., 211 Ct. Cl. 57, 543 F.2d 1290,1292(Ct. Cl. 1976).

Had Congress felt the disclosure of such information was harmful it would had made it Exempted in the interest of the "national security" as done in other federal branches of government.

Instead, Congress specified 11 named agencies to which the Act should apply, the character of which reveals, without doubt, a purpose to single out those agencies which are directly concerned with the national security. Of the 11 agencies, 8 are concerned with mitary operations or weapon development, the other 3, with international relations, internal security, and the stock-piling of strategic materials.

It is privileged information when an employee misconduct results in continuous investigations for less stringent reasons than a threat to endanger national security. Breach of loyalty and acts of unacceptable standard is not private information protected under 552a.

There is no justification the Bureau of Prisons can use to denty the requested information sought by plaintiff. Society needs to know of Mrs. Kimberly Moore's misconduct; to know that she was under several investigations as a breach of federal conduct that could had resulted in escapes as well as unprotecting those inmates under her watch.

There is no Exemption to the Information sought from bureau of prisons by plaintiff which FOIA does  not protect from disclosure. See Section 552. Public Information; agency rules, opinions, orders, records, and proceedings (a)(1)(A),(B),(C),(D),(E),(2).

The information is privileged necessarily on the character of Mrs. Kimberly Moore and the likelihood of her misconducting herself as an employee of the bureau of prisons, which the privileged information should include the position she occupied and its relationship to the security of those prisoners and prison.

Her misconduct affected plaintiff welfare and health. And it has been shown by those acts of bureau of prisons officials or employees that the disciplinary report was filed only as an act of retaliation. Retaliatory acts - Women Prisoners of the D.C. Department of Corrections v. District of Columbia, 320 U.S. App. D.C., 247 (1996, because plaintiff had substantial protection from retaliation for exercising his free speech. Therefore, Mrs. Kimberly Moore and others federal bureau of prisons officials had motive to file that disciplinary report against Coleman other than him using that constitutional right.

Thus, discovery is necessary in this matter to see the motive used by bureau of prisons officials including Mrs. Kimberly Moore. See Court order production 5 U.S.C. §552(a)(4)(F). This requested information to the bureau of prisons from plaintiff and/or court is not concerned with national security.

## PLAINTIFF'S REQUEST FOR DISCOVERY

Plaintiff request discovery in the instant case to prove retaliatory acts committed by bureau of prisons officials as well

as reasons to show the hidden bias, unfair treatment to him, and the cover-up of Mrs. Kimberly Moore's misconduct that was a known fact existing prior to, during, and after the disciplinary report.

The penalty for employee misconduct is a matter usually left to the sound discretion of the executive agency. Boyce v. U.S., 211 Ct. Cl. 57, 543 F.2d 1290,1292 (Ct. Cl. 1976), but plaintiff is not interested in the penalty Mrs. Moore received only to prove an investigation did exist along with assertion that he should not had received a disciplinary report.

It is request of the following information be provided to this Court for in camera viewing:  Notice of discharge, Suspension notice, Just Cause for termination, Memorandum or documents stating just cause, Benefit warning, Reason(s) for dismissal/suspension, documents and/or statements of co-workers of Mrs. Kimberly Moore along with any documents and/or statements made or filed on behalf of any other person who was aware of Mrs. Moore's inappropriate actions while employed for the bureau of prisons.

Without this information plaintiff is unable to oppose the summary judgment by affidavits.  Plaintiff was not aware previously that he should had filed for discovery but now do so.  There is discoverable materials that would likely raise a genuine issue of material fact and thus defeat summary judgment. Maljack Prods., Inc. v. Goodtimes Home Video Corp., 81 F.3d 881,888 (9th Cir. 1996); North Bridge Assocs., 22 F.3d at 1206.

The requested discovery:  deposition of a certain witness,

and/or inmates, co-workers, bureau of prisons officials; request for documents; request for interrogatory answers).  See Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793,797-98 (8th Cir. 1996); Paddington Partners, 34 F.3d at 1138.  As mentioned above plaintiff when then be able to dispute and refute the defendant's summary judgment motion, because such information will explain how the evidence uncovered through additional discovery can reasonably create a genuine issue of material fact that is, how plaintiff will overcome the hurdle against the summary judgment by defendants.

However, it is important to note that the D.C. Circuit in Bevis v. Department of State, 801 F.2d at 1389, held that even though an agency "need not justify its withholding on a document-by-document basis in court, [it] must itself review each document to determine the category in which it belongs." 801 F.2d at 1389; See also Crooker v. ATF, 789 F.2d at 67.  But it must explain to the court how the release of each category would interfere with previous enforcement proceedings, Bevis, supra at 1389-90; Bruscino v. Federal Bureau of Prisons, slip op. at 16.

Thus, it is recommended or requested that this Honorable Court view in camera those documents and/or files used by the agency during 2005 through 2006 which pertain to Mrs. Kimberly Moore that led to her termination from bureau of prisons.  Basically, the agency should not experience any embarrassment and discomfort by revealing the requested information (e.g., critical insights into its legal thinking and strategy).

The requested information will show without doubt an act
of retaliation committed by prison officials due to plaintiff
telling Mrs. Kimberly Moore that she was an "adulteress" after
plaintiff and others witnessed her indulging in inappropriate
acts with co-worker Mr. Burke.  And to this date below, plaintiff
still accepting acts of retaliation from prison officials because
of that disciplinary report.

Plaintiff believes the disciplinary report should be removed
for:  1) the report was written only due to retaliation; 2) he
will continue being subjected to retaliatory acts by prison officials;
3) said investigation results were not of any criminal proceeding;
4) disclosure will not have a significant, adverse effect on Mrs.
Kimberly Moore's private or professional life; and 5) prison officials
conduct as well as their actions were done in bad faith by placing
in plaintiff's prison jacket a bias and retaliatory disciplinary
report due to Mrs. Kimberly Moore being a white woman and plaintiff
Asiatic, and the agency refusal to respond to requested information
shows its bad faith in processing or in its search for necessary
information then not allowing plaintiff the opportunity to review
such to determine whether those allegations are false.

Plaintiff is not requesting the identities of those that
were involved in investigating Mrs. Kimberly Moore unprofessional
behavior while employed by bureau of prisons, but only to show
this Honorable Court why the information should be released for
the removal of that erroneous disciplinary report from his prison

jacket.

Revealing of this information is the best of public interest
in disclosure as sufficiently compelling that overcomes privacy
interest which the defendant's defective affidavit have not disputed
this fact.

And at the litigation stage, the agency must demonstrate
to the court, either through a Vaughn affidavit or an in camera
submission, that its refusal to confirm or deny the existence
of responsive records is appropriate.  See Ely v. FBI, 781 F.2d
1487,1492 n.4 (11th Cir. 1986); Grove v. CIA, 752 F. Supp. at
30; See Shaw v. FBI, 604 F. Supp. 342,344-45 (D.D.C. 1985).  Reques-
ter seeking any investigatory files only on Mrs. Kimberly Moore
who is believed to have participated in misbehavior during bureau
of prisons working hours and off athe job.  See bureau of prisons
policy 3420.09 (attached hereto).  Furthermore, plaintiff asserts
had he been represented by counsel or resided in society such
information would be made available for public interest.

Discovery may be applicable in this matter to determine whether
defendant acted in bad faith by writing then processing a discipli-
nary report based on true facts of Mrs. Kimberly Moore, which
the disciplinary report was an act to cover-up Moore's degradation.
Therefore, plaintiff's request for discovery shall include bureau
of prisons witnesses, request for documents pertaining to those
witnesses, and reports written and filed by the prison officials
namely ("SIS") Security Investigative Services).

Plaintiff contends that the district court should examine the documents at issue in camera to determine whether any portion of the materials consists of non-exempt, "reasonably segregable" information. It has long been the rule in this Circuit that non-exempt factual information in a document must be disclosed unless it is inextricably intertwined with exempt material. See e.g., Mead Data Central, Inc. v. Dep't of the Air Force, 184 U.S. App. D.C. 350, 566 F.2d 242,269 D.C. Cir. 1977); Schiller v. NLRB, 296 U.S. App. D.C. 84 (1992).

In 1974, Congress expressly incorporated this requirement into the FOIA which now provides that "any reasonably segregable portion of a record shall be provided...after deletion of the portions which are exempt...." 5 U.S.C. §552(b) (1976). Citing Center for Auto Safety v. Environment Protection Agency, 235 U.S. App. D.C. 169 (1984). Thus, plaintiff request this Court to adopt a per se rule that trial courts must use in camera inspection where the agency claims that is withholding factual material because such material is inextricably intertwined with exempt deliberative material under Exemption 5.

In 1974, Congress amended the FOIA and invested the district court with discretion to conduct in camera inspection without the necessity of relying upon affidavits. The District Court is required to determine FOIA exemption claims "de novo" and "may examine the contents of such agency records in camera..." 5 U.S.C. §552(a)(4)(B)(emphasis added).

Moreover, in addition to the above, the legislative intent, as expressed in the Conference Report clearly reflects the view that in camera reviews were to be a "secondary tool of FOIA enforcement." Ingle v. Department of Justice, 698 F.2d 259,264 (6th Cir. 1983). The Conference Report notes:

> the court may examine records in camera in making its determination under any of the nine categories of exemptions under section 552(b) of the law... while in camera examinations need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. S. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), reprinted in [1974] U.S. Code Cong. & Admin. News, pp. 6267,6287-88. Furthermore, the House Report indicates that the FOIA merely "permit[s] such in camera inspection at the discretion of the Court." H.R. Rep. No. 93-1380, Conference Rep. 93d Cong., 2d Sess. 9 (1974).

Making available for public inspection and copying the information described in 5 U.S.C. §(a)(2)(B) and (C) and otherwised comply with 5 U.S.C. §522(a)(2). Meaning, the public interest is at stake regarding the misbehavior of Mrs. Kimberly Moore and the public is entitle to know whether she was first investigated when bureau of prisons officials became aware of her actions.

In assessing whether records are compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding. Jefferson v. Dep't of Justice, 350 U.S. App. D.C. 337, 284 F.3d 172,176-77 (D.C. Cir. 2002)(citations and internal quotations omitted). In the instant case, "defendant's affidavits must establish...'a rational nexus between the investigation and one of the [SIS] law enforcement duties; and'...a 'connection between an individual or incident and a possible security risk or violation of federal law.'" Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 356 U.S. App. D.C. 333, 331 F.3d 918,926 (D.C. Cir. 2003)(quoting Campbell, 164 F.3d at 32), cert. denied, 540 U.S. 1104, 124 S. Ct. 1041, 157 L. Ed. 2d 888 (2004). And the instant case is not of criminal nature.

Plaintiff's request for Freedom of Information is not to learn of those that investigated former bureau of prisons employee Mrs. Kimberly Moore, who was not under any criminal investigation.

A discovery will reveal the very fact that plaintiff was viewed as saying something too smart to a white woman as if he should never forget the harm done to Elmer Till. But, plaintiff needs the Court to determine whether Mrs. Kimberly Moore violated and/or breached bureau of prisons policy 3420.09 (that is attached), along with being under an investigation for wrongful acts with others other than her husband while on and off the bureau of prisons job.

Society has a vested right to be informed of Moore's actions.

This discovery will positively affirm plaintiff's allegations supported by retaliatory, discriminatory, and bias acts committed by bureau of prisons officials. Meaning, the disciplinary report should be deleted from plaintiff's prison jacket preventing summary judgment.

Additionally, defendant's Summary Judgment should be denied because plaintiff's attached EXHIBIT will suffice retaliatory act committed by prison officials for exercising his Freedom of Speech. See Ex. Writ of Habeas Corpus.

This affidavit was prepared and done in good faith. Under the penalty of perjury plaintiff swears to the best of his knowledge that the above is true and correct accordingly to his recollection. And it is requested that a telephone conference be scheduled in this matter instead of a hearing.

Respectfully submitted,

Monroe L. Coleman, Pro Se

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true copy of the foregoing motions have been mailed to Alexander D. Shoaibi, AUSA, 555 4th Street, N.W., Washington, D.C. 20530, on this 17 day of September, 2007.

Respectfully submitted,

Monroe L. Coleman, Pro Se
#01723-016

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the court to deny defendant's motion for final summary judgment.

## A. Introduction

1. Plaintiff Monroe L. Coleman; defendant is Bureau of Prisons Agency.

2. On 8-24-06, plaintiff sued defendant for failing to provide him with Freedom of Information Act request. On 2-7-07, defendant filed Enlargement of Time, Notice of Appearance 2-7-07.

3. On _____, defendant filed a motion for final summary judgment on plaintiff's cause of action for Freedom of Information Request.

4. Summary Judgment is improper in this case because there are genuine issues of fact on each element of plaintiff's cause of action for Freedom of Information Act 5 U.S.C. §522: Const'l Rght; Public Interest; 552 entitlement.

5. A statement of genuine is attached, as required by Local Rule 56. Plaintiff seeks information supporting Mrs. Kimberly Moore was under investigation for wrongful actions while on the bureau of prisons job;

was involved in inappropriate kissing, fornication, cuddling,

or providing inmate(s) with personal garment while working

for BOP at United States Penitentiary Big Sandy, Inez, Kentucky;

that the disciplinary report was a cover-up to help Mrs. Kimberly

Moore who was facing suspicion, suspension, or removal for having

a relationship on and off the BOPs' job.

### C. Standard of Review

6.    Although summary judgment is proper in any case where there
      is no genuine issue of material fact, this is not a case
      in which the court should grant summary judgment. Fed.R.Civ.P.
      56(c); Celotex Corp. v. Catrett, 477 U.S. 317,322, 106 S.
      Ct. 2548,2552 (1986).

7.    Without any discovery plaintiff is unable to show the bias,
      retaliation for exercising his First Amendment Constitutional
      Right, and discriminatory practice committed by those defendants.
      See attached Petition For Writ of Habeas of Corpus.  Also,
      defendant cannot rely on conclusory statements to establish
      that plaintiff has not presented evidence on an essential
      element of his claim.
      Rather, defendant must demonstrate the absence of a genuine
      factual dispute. See Celotex Corp., supra, 477 U.S. at 327,
      106 S. Ct. at 2255.  Only if the defendant meets its burden
      is plaintiff required to respond by summary judgment proof
      to show a genuine issue of material fact. Fed.R.Civ.P. 56(e).

8.    In determining whether there is a disputed issue of material

fact that precludes summary judgment, the court must consider
all evidence in the light most favorable to plaintiff as
the nonmovant. Garcia v. Pueblo Country Club, 299 F.3d 1233,
123 6-37 (10th Cir. 2002).

9.   Plaintiff must prove the following essential elements to
sustain a claim for Freedom of Information Request against
defendant:  the claim is not of criminal nature, the claim
is of public interest, the claim established a constitutional
violation of plaintiff's First Amendment right, the disciplinary
report issued or served on plaintiff was done as act of retalia-
tion especially to cover-up the wrongdoing of former bureau
of prisons employee Mrs. Kimberly Moore, plaintiff has requested
from defendant that it remove the erroneous disciplinary
report from his prison jacket that was prejudicially place
against him, Mrs. Kimberly Moore was under several investiga-
tions before, during, and after plaintiff received that discipli-
nary report as well as prison employees knew of Mrs. Kimberly
Moore's adulteress acts with co-worker Mr. Burke.  Because
there is a material fact issue on the element of defendant's
has failed to support with doubt that the withholding of
its information is not of public interest and concerns no
criminal charge(s) against Mrs. Kimberly Moore, along with
failure to show a good reason why that disciplinary report
should remain in plaintiff's prison jacket, therefore, defendant
is not entitled to summary judgment in this case.

10.  Public Interest - Plaintiff received retaliation for exercising
his constitutional right under the First Amendment:
    It is well established that while "[p]rison walls do not form a
barrier separating prison inmates from the protections of the Const'n."
Turner v. Safley, 482 U.S. 78,84, 107 S. Ct. 2254, 96 L. Ed. 2d 64(1987),
prison restrictions that implicate prisoners' const'l rights may be up-
held if they are "reasonably related to legitimate penological interest,"
id. at 89, 107 S. Ct. 2254; see also Purnell v. Lord, 952 F.2d 679,682
(2d Cir. 1992). However, this [retaliation] requires a "particularized
proffer of evidence to be presented whether unconst't motive by prison
officials is sufficient also to defeat the summary judgment. In Turner,
supra, the Supreme Court held that "when a prison regulation impinges on
inmates" const'l rights, the regulation is...interest," at 89.

    The public is entitled to know whether bureau of prisons officials

favor a white woman employee over a black prisoner especially when

she is at fault compared to the prisoner observing her misbehavior

in violation of Federal Bureau of Prisons Plicy 3420.09.  The public

interest has an opinion regarding the bureau of standard conduct

when that standard is breached which could had an affect on public

security.

    To limit public interest on such matters as in the instant

case where the result has influence on its security, the public

interest stands on the surface of constitutionality awareness especial-

ly when:  Job termination, fraud, female employee unfaithfulness,

discrimination, bias, prisoner's unfair treatment, and bureau of

prisons employee breach of contract are the base of each party's

interest.

    Public interest taxes concern:  1) Whether a full and proper

investigation was done on Mrs. Kimberly Moore; 2) whether plaintiff

was unfairly treated by prison officials by filing a deceptive,

bias, or retaliatory disciplinary report against him when he has done no wrong to Mrs. Kimberly Moore; 3) whether she is a blessing or a curse to society's security and/or code of conduct; and 4) neither did plaintiff violate the security of the prison.

Furthermore, Mrs. Kimberly Moore intentionally disregarded the purpose and reason of working for the bureau of prisons. She took for granted the safety of employees, plaintiff, and society while enjoying her <u>cake and eating it too</u>. Mrs. Kimberly Moore should not be allowed to think her <u>crafty activities on the job will go unnotice in society</u>.

Mrs. Kimberly Moore conduct should not be secluded from the public especially when the public has a right to be informed of any transgression that leads to a job termination. Additionally, when a government employee work or job assignment(s) can or may fall ptentially in the same capacity as law-enforcement that result in job termination because of violating the job's policy and/or regulation(s) without criminal charges filed, there the public interest is at stake.

And accordingly, to plaintiff's interpretation, once Mrs. Kimberly Moore breached the language of Federal Bureau of Prisons <u>3420.09</u> it becomes public information especially when it is not of criminal investigation. See the attached 3420.09.

Meaning, the second part of plaintiff's FOIA 5 U.S.C.S. §552 request for information regarding Mrs. Kimberly Moore's misbehavior investigation should be inspected by this Court to make its interpre-

tation whether the requested information is of public interest.

Note, not only was Mrs. Kimberly Moore unfaithful and wreckless in her actions that were despicable while on the job which she committed fraud against those parties who had a contract with her. That motive became the end result leading to termination from employ- ment. And the public needs to be made aware whether Mrs. Kimberly Moore is competent to handle certain job position as well as to trust her with the security of others regardless if prisoners.

Even if certain names, addresses, or titles are deleted, there is nothing to interfere or desists the information disclosure to the public. Also, the public interest is concerned with whether the federal bureau of prisons officials condone especially while on the job fraudulent acts of Mrs. Kimberly Moore, then condemning Monroe L. Coleman for telling Mrs. Moore what he and others had witnessed her "adulteress" behavior.

Mrs. Kimberly Moore's infidelity while on Bureau of Prisons job is public information because it goes toward her integrity and faithfulness toward her family. This makes the termination of public interest; to be public inspected and copied. 5 U.S.C. §552(a)(2)(B) & (C). 5 U.S.C. 522(a)(2). See also Bureau of Prisons attached policy 3420.09.

Plaintiff also makes known that bureau of prisons officials, staff, officers, counselors, employees, and inmates will surely continue to show bias, prejudice, and mental threat to his wellbeing as unlimited retaliatory acts for something plaintiff was not a

part of committing the Moore's infraction.

This is a strong possibility that plaintiff will suffer unneces-
sary pain emotionally and mentally with hope that it doesn't become
physical.  Such irreparable injury is due to his inability to have
that pre-judicial disciplinary report removed.

Information customarily furnished to the public in the regular
course of the performance of official duties may continue to be
furnished to the public without complying with this subpart, provided
that the furnishing of such information would not violate the Privacy
Act of 1974 5 U.S.C. 552a, and would not be inconsistent with sub-
parts C,D, or E of this part.

To the extent permitted by other laws, the Department will
also consider making available records which it is permitted to
withhold under the FOIA if it determines that such disclosure could
be in the public interest.  Information which does not warrant classi-
fication shall not be withheld from a requester on the basis of
5 U.S.C. 552(b)(1).

See 28 C.F.R. Ch. 1 §16.96, 97 - These exemptions apply only
to the extent that information in this system is subject to exemp-
tion pursuant to 5 U.S.C. 552(j) and (K).  Where compliance would
not appear to interfere with or adversely affect the overall law
enforcement process, the applicable exemption may be waived by the
FBI. See 28 C.F.R. Ch 1 (7-1-97 Edition) §16.1(a) General provisions.
5 U.S.C. 552.  All requests for records that are not processed under
this subpart.

Disclosure sought is not within exemption of 5 U.S.C. §552(b)(2) where the information is not of criminal nature nor will it describe the names of those law-enforcement officials involved in the internal investigation once certain information of the investigative report is deleted where necessary. But Action to gain access to law enforcement records under FOIA (5 USCS §552) regarding brief, personal memo from Office of Professional Responsibility to FBI and/or BOP should not fall under §552 exemption 2 if those official names are deleted concerning those that reported/recommended the termination of Mrs. Kimberly Moore.

In order for a nondisclosure statute to override the compulsory disclosure requirements of the Freedom of Information, 5 U.S.C.S. §552, by means of its third exemption, the particular statute must (1) absolutely forbid disclosure or (2) set forth specific standard and criteria for withholding information or refer with sufficient particularity to the kinds of information to be withheld so as to remove any unlimited discretion about withholding or disclosing the information in question.

D. Objections

11. Defendant's summary judgment is not plausible.

A. Defendant relies on defective affidavits. The affidavits have not corrected or mentioned the bias, retaliatory, and discriminatory practice toward plaintiff by the filing of a bogus disciplinary report because Mrs. Kimberly Moore is a white woman.

F. Summary Judgment Evidence

12.  In support of his response, plaintiff includes the evidence
attached hereto:

A. The affidavits of Monroe L. Coleman have established grounds
for discovery to see whether plaintiff received bias, retaliatory,
and discriminatory practices from defendant.

D. Conclusion

13.  Plaintiff only want the removal of that erroneous disciplinary
report from his prison jacket which should not had been filed against
him.  Once this Corut has reviewed in camera the information it
will see the wrongful conduct of defendant and for such reasons,
plaintiff asks the Court to deny defendant's motion for final summary
judgment.

Furthermore, a prison inmate "retains those First Amendment
rights that are not inconsistent with his statut as a prisoner or with
the legitimate penological objectives of the corrections system.
Giano v. Senkowski, 54 F.3d 1050,1053(2d Cir. 1995).  In Thornburgh
v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459(1989),
the Court set forth three factors to be considered in balancing in-
mates' interests against those of correctional institutions:  (i)
"where the governmental objective underlying the regulations at issue
is legitimate and neutral, and [whether] the regulations are rational-
ly related to that objective," id. at 414, 109 S. Ct. at 1882, (ii)
"whether there are alternative means of exercising the right that re-
main open to prison inmates," id. at 417, 109 S. Ct. at 1884, and

(iii) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison," id. at 418, 109 S. Ct. at 1884.

The disciplinary report written by Mrs. Kimberly Moore should be quashed knowingly that she was under an investigation....

Plaintiff requests the release of FOIA 552 regarding those investigations of Mrs. Kimberly Moore wrongful, inappropriate, and belligerent conduct that has led to plaintiff receiving a prison infraction without--truthfully violating any prison regulations, rules or policy; and/or removal of that disciplinary report written under pretense by Mrs. Kimberly Moore and processed by prison officials under the same disguise as Mrs. Moore. But, only by the defendant's intent was the disciplinary report written to cover-up the true motive of Mrs. Kimberly Moore's action. Therefore, discovery is necessary in this matter as well as this Court reviewing in camera the concealed information the defendant's refuses to release. <u>Retaliatory</u> <u>Actions</u>: A genuine issue of material fact as to retaliation has been established by plaintiff and yet undisputed by defendant. Therefore, this allows the district court jurisdiction to determine whether such unprofessional and misconduct were established that while "[p]rison walls do not form a barrier separating prison inmates from the protections of the constitution." Turner v. Safley, 482 U.S. 78,84, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), prison restrictions that implicate prisoners' constitutional rights may be upheld if they are "reasonably related to legitimate penological

interests," id. at 89, 107 S. Ct. 2254; see also Purnell v. Lord,
952 F.2d 679,682 (2d Cir. 1992).  However, this [retaliation] re-
quires a "particularized proffer of evidence to be presented whether
unconstitutional motive by prison officials is sufficient also
to defeat the summary judgment.

In Turner, supra, the Supreme Court held that "when a prison
regulation impinges on inmatess' constitutional rights, the regula-
tion is valid if it is reasonably related to legitimate penological
interests," at 89, 107 S. Ct. at 2261.

No Resolution of disputes on Affidavits - Although affidavits may
be used on motion for summary judgment, court may not resolve disputed
fact issues by reference to affidavits. Benton-Volvo--Metairie,
Inc. v. Volvo Southwest, Inc. (1973, CA5 La) 479 F.2d 135, 17 FR
Serv 2d 554; Chemical Foundation, Inc. v. Universal-Cyclops Steel
Corp. (1942, DC Pa) 2 FRD 283, 53 USPQ 173; Eastern Tunneling Corp.
v. Southgate Sanitation Dist. (1979, DC Colo) 487 F. Supp. 109.

While Rule 56 provides for filing of affidavits bona fide
factual disputes may not be disposed of through use of affidavits.
Jackson v. Griffith (1973, CA10 Kan) 480 F.2d 261; Daniels v.
Beryllium Corp. (1964, ED Pa) 227 F. Supp. 591.

Where affidavits filed upon defendant's motion for judgment
on record and plaintiff's motion to strike certain defense as well
as presenting a defense summary judgment then becomes a conflict
and an in-camera review is necessary along with discovery.

The United States Department of Justice, Federal Bureau of
Prisons Program Statement 1040.4, non-discrimination towards inmates:
[Policy §551.90, Bureau staff shall not discriminate against inmates
on the basis of race, religious, national origin, sex, disability,
or political belief.  This includes making administrative decisions
and providing access to work, housing, and programs.] [;] this
may include bogus disciplinary reports also.

The reporting requirements of public interest was established
in Bureau of Prisons Policy 3420.09 when it was created.  However,
the mental aspect of the public interest must be considered when
reaching a decision whether the wrongful conduct of Mrs. Kimberly
is of public information as well as whether she was under any in-
vestigations for violating the BOPs' Policy; supra.

The  5 U.S.C. 552 information is not really sensitive in nature
as well as covered as personal privacy-protected information; which
exemptions may apply to particular portions of the report but not
whether Mrs. Kimberly Moore was under two or more investigations
and was terminated due to wrongdoing conduct that Coleman had spoken
of only because he and others had witnessed this violation.

The releasing of the information will not appear to interfere
with or adversely affect the law enforcement process, [because
those investigations were in criminal] and/or where it may be appro-
priate for review and accuracy to determine whether Coleman received
a bias, discriminatory and retaliatory disciplinary report.

Moreover, supporting Coleman's position of bias, discriminatory and retaliatory acts committed by bureau of prisons officials especially former employee Mrs. Kimberly Moore; she was entitled to file an Inmate Discipline of category "313" stating, "Lying or providing a false statement to a staff member." Had Coleman lied on or against Mrs. Kimberly Moore along with degrading her as an officer then 313 was to be added to that disciplinary report which it was not. Affirming a retaliatory disciplinary report.

Furthermore, to show "retaliation act committed by prison officials for writing and processing false disciplinary report, then refusing to remove the disciplinary report amount to prisoner receiving unfair treatment for exercising his constitutional right." Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981). To deter a person of ordinary firmness from exercising his constitutional right suffer[l]d some adverse action as signs of bias and discriminatory practice at the hands of prison officials is strongly supported throughout this entire case. See McGrath v. Johnson, 155 F. Supp. 2d 294 (E.D. Pa 2001).

The Bureau erred for ... dismissing Coleman's Claim that the disciplinary charges against an inmate were false and filed in retaliation for him exercising of his constitutional right. The only evidence at the disciplinary hearing was that Coleman had witnessed Mrs. Kimberly Moore hinding in a secret area of the Unicor building kissing her co-worker Mr. Burke who is not her husband

which Coleman called her an "adulteress".  Mrs. Kimberly Moore
did not object nor included in her written report that Coleman
lied on her by admitting such statement; and the disciplinary panel
refused and denied to investigate Coleman's allegations along with
interviewing those witnesses to the misconduct of Mrs. Kimberly
Moore.

There was no other evidence used by the disciplinary panel
in making its conclusion which the panel strongly opposed the alle-
gation of Moore's wrongful act as well as denying her involvement
in any adulteress act.  See Moore v. Plaster, 266 F.3d 928 (8th
Cir. 2001) concerning Coleman exercising his constitutional right.

The disciplinary team consisted of two BOP employees; one
was not a party or an assigned member to Coleman's Unit Team.
Nor was the disciplinary measures correctional treatment goals
were in tact at the hearing because both bureau of prisons employees
limited Coleman constitutional right by placing such degree as
necessary to regulate and control his defense along with choice
of words why he called Moore an "adulteress".  This limitation used
as a tactic by bureau of prisons employees including disciplinary
panel rendered capriciously on the nature of retaliation or revenge
toward Coleman, which the disciplinary panel decisionmaking was viola-
tive of Coleman's due process of law during and at that hearing.  It
is requested that this Honorable Court conduct an inquiry into:
1) the disciplinary panel process; and 2) retaliation/revenge actions.

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, hereby states that a true copy of

the foregoing motion(s) and affidavit are mailed to the following:

| | | |
|---|---|---|
| Alexander D. Shoaibi<br>Assistant United States Attorney<br>555 4th St., N.W. Room #4218<br>Washington, D.C. 20530 | **or** | Alexander D. Shoaibi<br>Assistant U.S. Attorney<br>501 Third St., N.W. Rm E-4218<br>Washington, D.C. 20530 |

Dated: Sept 19, 2007

Respectfully Submitted,

Monroe L. Coleman, Pro Se
U.S.Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,
        Plaintiff,

        v.                              Civil Action No. 06-2255(RMC)

HARLEY LAPPIN, et al.
        Defendants.

## ORDER

Upon the motion(s) and affidavit(s) of Plaintiff, and the
court being sufficiently advised,

IT IS HEREBY ORDERED that the Plaintiff's Opposition To Defen-
dants' Summary Judgment; Glomar Opposition; Affidavit; and Plain-
tiff's Memorandum In Opposition To Defendants' Motion For Summary
Judgment will be held in abeyance for ruling until this Court
has review in-camera the withheld Freedom of Information, 5 U.S.C.
552 sought by plaintiff whether said information is of public
interest; and

IT IS FURTHER ORDERED that the Plaintiff's request for Discovery
be GRANTED

This the _____ day of September, 2007.

                                   _____
                                   ROSEMARY M. COLLYER, JUDGE
                                   UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT


CIVIL ACTION NO. 06-2255 (RMC)

MONROE L. COLEMAN, Pro Se                    PETITIONER,

V.

MARK A. BEZY, WARDEN                         RESPONDENT.

PETITIONER'S OPPOSITION TO RESPONDENT'S
OPPOSITION DATED: _____ OF _____, 2006 2007

COMES NOW, Monroe L. Coleman, Pro Se opposing the named Respon-
dent's Opposition stating why the "disciplinary report filed against
petitioner on or around June 15, 2005, should not be removed from
petitioner's institutional jacket."

The disciplinary report needs to be quashed due to the fact
that after and before the report was written by Kimberly Moore,
the Bureau of Prisons staff/officer(s) was watching Mrs. Kimberly
Moore who was under investigation and being observed due to her
improper conduct while working on the clock at United States Peni-
tentiary ("USP") Terre Haute.

It was a known fact that she was indulging in and committing
adulterous acts in violation of the United States Department of
Justice Directive Section 3420.09.

For her misbehavior, inappropriate actions while working as an employee for the Bureau of Prisons ("BOP") amounted to sanctions for wrongdoing pursuant to Dept. of Justice Directive §3420.09.

Also, let it be known that the staff and officers of Big Sandy intentionally covered-up the facts that Unicor workers Mr. Morgan, Mrs. S. Stacy, Mr. Abbott, and others knew that Mrs. Kimberly Moore was being promiscuous on the job, which either could have came to the aid of petitioner making known to staff/officer(s) during the investigation of this matter that the petitioner did not anything wrong due to those actions of Kimberly Moore. Furthermore, Mrs. Kimberly Moore was placed under another investigation which she was terminated from her assigned job because she was involved with one or two other inmates thereafter. Petitioner had complained by administrative remedy regarding "sexual harassment" before Mrs. Kimberly Moore was placed under investigation during the month of December 2005 or January 2006.

On several occasions petitioner and other inmates witnessed the misbehavior of Mrs. Kimberly Moore while she worked on the job as a BOP employee.

Mrs. Kimberly Moore would fondle petitioner middle body parts in the present of all staff/officers. Therefore, petitioner request that this Honorable Court order the respondent's to preserve and present the Unicor camera tapes during the entire year of 2005 to January 2006. Then the Court will see how Mrs. Kimberly Moore

-2-

sexually fondled petitioner's testicles and penis.

Petitioner did not want to be labelled as a snitch so he had to allow Mrs. Moore unwelcoming actions.

However, each staff/officer presence in Unicor during the pat-down before leaving the shop witnessed the aggressiveness of Mrs. Moore behavior, and not one of them tried to stop her or reported her conduct to the administration officials. But the staff/officers made it known about Mrs. Moore actions concerning Mr. Burke involvement. Specifically, "their involvement and playing around on the job."

### STATEMENT OF FACTS

Mrs. Kimberly Moore did not deny and refused to attack that specific "adulteress" word, knowingly of her misconduct which Mrs. Kimberly Moore would continuously stroke petitioner's private parts without his permission. Had she denied that petitioner was lying on her she would had been correct to charge petitioner with an institutional infraction of "lying", but her own guilt and shame refused to challenge what petitioner had witnessed and said. She only wanted to cover-up what was already known to staff and inmates.

For any prisoner making a false statement as such about any staff or officer will result in a disciplinary report.

However, for Kimberly Moore to make a false disciplinary report

-3-

when she knew her behavior was inappropriate while on the job
for participating in any kind of intimate relationship or unauthor-
ized physical contact with another Bureau of Prisons employee
especially with someone other than her husband was wrong and she
shall be held liable for making that false disciplinary report.
See 18 U.S.C. Section 1001 (Title 18 Crimes and Criminal Pro-
cedure).

Sec. 1001. Statement or entries generally - -

(A) Except as otherwise provided in this section, whoever,
in any matter within the jurisdiction of the executive, legislative,
or judicial branch of the Government of the United States, knowingly
and willfully --

(1) falsifies, conceals, or covers up by any trick, scheme,
or device a material fact;

(2) makes any materially false, fictitious, or fraudulent
statement or representation; or

(3) makes or uses any false writing or document knowing the
same to contain any materially false, fictitious, or shall be
fined under this title, imprisoned not more than 5 years or, ***.

Amendments 2004 - * * *

1996 - Pub. L. 104-292 reenacted section catchline without
change and amended text generally.  Prior to amendment, text read
as follows: "Whoever, in any matter within the jurisdiction of
any department or agency of United States knowingly and willffully

-4-

falsifies, conceals or covers up by any trick, scheme, or device
a material fact, or makes any false, fictitious or fraudulent
statements or representations, or makes or uses any false writing
or document knowing the same to contain any false, fictitious or
fraudulent statement or entry, shall be fined under this title
or imprisoned not more than five years, or both."

### ACTS OF RETALIATION BY PRISON OFFICIALS

To start, the act of filing a false disciplinary report against
the named petitioner shows that it was all right for Mrs. Kimberly
Moore to mess around with a white man on the job, but as soon
as petitioner let it be known that he was aware of her wrongful
acts or letting it be known that he wanted no involvement with
her fondling activity of his private parts then she became very
hostile and determine to get petitioner and the Caption (John
Doe) had petitioner locked down in segregation for calling a white
oficer or staff an "adulteress" which was a manner act of a word
not mentioning that same Captain kept petitioner confined in segre-
gation beyond the reasonable time for such a manner infraction.

The district court has determined that prisoners bringing
such claims must allege more than a de minimis retaliatory act
to establish a constitutional violation.

A prison official may not retaliate against or harass an

-5-

inmate for complaining through proper channels about a guard's misconduct.  Woods v. Smith, 60 F.3d 1161,1164 (5th Cir. 1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225,231 (5th Cir. 1998).  An inmate must show that he suffered a qualifying adverse retaliatory act; the act must be more than inconsequential.   See Crawford-El v. Britton, 523 U.S. 574,588 n.10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).

Petitioner alleges that retaliation was used because he said what he said to a "white woman."  The reason why such retaliation (for the exercise of First Amendment rights) offends the Constitution is that it threatens to inhibit exercise of the protected right.  Crawford, supra at 588 n.10.

The First Amendment  hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise...." Bart v. Telford, 677 F.2d 622,625 (7th Cir. 1982).  The Second Circuit has employed a similar de minimis standard, asking whether the retiation alleged by an inmate rose to the level of that which would deter the exercise of a constitutional right.  See Davidson v. Chestnut, 193 F.3d 144,149-50 (2d Cir. 1999).

To this _____ day of _____, 2006, petitioner

-6-

is subjected to retaliation because he was placed in segregation
upon arrival at United States Penitentiary Terre Haute for no
good reason, and if respondent's claimed due to medical, petitioner
makes known TB testing for him is conducted by x-ray.  Plus, peti-
tioner was forced to remain in segregation for one week which
he was not allowed phone call(s), access to the legal library
or its material, counsel, case manager, unit manager to which
petitioner was assigned to upon arrival to this prison refused
to see him for any reason whatsoever, petitioner was refused a
haircut and allowed an interview by the housing unit segregation
lieutenant.

The excuses the Bureau of Prisons officials used to block
or hinder petitioner's approach for relief are poor unreasonable
especially when constitutional rights are involved which there
should be no set time to exercise that right.  E.g., petitioner
alleged "sexual harassment" which respondent stated, "you will
not be informed of the outcome of that allegation investigation,"
your greivance is not granted or denied."  What part of the grei-
vance is granted and what part is denied?  Petitioner then tried
to forward the administrative complaint but was told by Regional
Director's Office and Central Director's Office that the complaint
was denied and untimely.

How can a prisoner exhaust the administrative remedy when
the respondent's duty and obligation are to make those forms less

-7-

possible available to a prisoner.  The petitioner was housed in
a segregated unit, confined to a cell for twenty-four hours exclud-
ing one hour for recreation.  However, no administrative remedy
forms are available or given upon request but maybe later if at
all after a certain time period has elapsed.

Due to the disciplinary report petitioner's custody points
have risen which may hinder a transfer to a lower custody level
institution.

When prison officials state, "you will not be notified of
the 'outcome' of the sexual harassment complaint."  Meaning a
prisoner is denied the pursuit of that claim as done in the instant
case which prison officials denied petitioner the right to continue
pursuit of the issue by saying it is "untimely".  The bias excuses
the bureau of prisons used shows an adverse act that it did not
appreciate a black prisoner making indirect degrading remark to
a white woman.

Retaliation -- Telephone Sanction

28 C.F.R. Section 541 - Tables -- Federal Bureau of Prisons
violations and sanctions:

The tables listed below are from the Code of Federal Regulations
(CFR), for federal inmates.  Refer to the CFRd for detailed informa-
tion about GCT. SCT, phone Sanction etc.  Institutions often take
phone privileges when the rules specifically say phone or visiting
limitation sanction cannot be applied unless the infraction was

-8-

related to that privilege.

28 CFR Section 100 (telephone regulation for inmates) Section 540.105 (telephone calls for inmates inadmission, holdover, segregation, or pre-trial-status) "<u>Staff may not withhold phone privileges as a disciplinary measure except where the infraction for disciplinary action is taken involves abuse, or a clear potential for abuse, of the phone privilege</u>." See also 28 CFR Section 541.13 (appendix A, Table 4-sanctions)(g)(loss of privileges) "... loss of telephone privileges for specified time for an abuse of the telephone privilege...<u>Staff cannot take phone privileges, unless the disciplinary action is telephone related</u>. The above also helps to support an act of retaliation when prison officials don't obey its own policy, regulations, or procedures.

The bureau of prisons' rule, regulation, or policy that govens disciplinary proceedings does not state or make clear what remarks are violative of BOP  disciplinary status.

When petitioner made such remark "you are an adulteress" it was innocent; where there is no guidelines for determining what remarks are unwarranted, or how to use any words that may cause an infraction which the BOP makes known "no profanity is allowed."

In fact, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a <u>remark be made is violative but it does not stipulate whether an act against BOP 3420.09 is allowable to be said in words</u>.

-9-

In other words, when a person witness two women on the job kissing one another, is an act of homosexuality; and to call either a homosexual after witnessing such violation or inappropriate acts according to the observer belief would be entitlement to freedom of speech.

BOP's disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior. However, to allow such punishing to go unsolved due to Mrs. Kimberly Moore's actions while on BOP working hours means that the punishment was a back door tool for punishing the petitioner.

This forms an act of retaliation in a manner unacceptable as result of unconstitutional application of the rule, regulation, or policy. The petitioner states his remark toward Mrs. Kimberly Moore was not a derogatory comment nor was it evidence to disrespect authority. The sole purpose beyond the remark was to alert Mrs. Moor that he was aware of her wrongful conduct and made the fact known to Unicor supervisor Mr. Abbott as well as letting Mrs. Moore know that her fondling petitioner was unwelcomed and unappreciated. And the disciplinary report charged no security concerns nor was security interest mentioned at the prison disciplinary hearing.

There was no minor penalty because petitioner loss his Unicor job, spent unreasonable days in segregation, loss of commissary and telephone privileges, custody level increased, early transfer

-10-

to United States Penitentiary Terre Haute.  Another act of retalia-
tion was during the transfer the same respondent S. R. Hastings,
Warden of United States Penitentiary Big Sandy located in Inez,
Kentucky.  While petitioner was housed in USP Atlanta holdover,
a decision was made by the U.S. District Court of Eastern District
of Kentucky on petitioner's habeas petition which he had 10 days
to object but the respondent named herein of Big Sandy refused
and denied to inform petitioner by legal mail received from the
U.S. Courthouse that petitoner was entitled to object within 10
days of that ruling.

Also, upon arrival at USP Terre Haute, Indiana petitioner
was placed in segregation without any just reasoning especially
when the Bureau of Prisons entire medical information states that
petitioner TB testing must be done by x-ray and not injection.
Therefore, prison officials cannot used injection as an excuse
to justify their wrongful act of placing petitioner in segregation
especially for more days than necessary or required.  Such act
is believed to have been an act of retaliation committed by the
present respondent via respondent Hastings.

Petitioner now argues that the disciplinary rule 312 [Insolence]
is unconstitutionally vague and overbroad; that BOP officials
had retatiated against him for previous legal court filings con-
cerning its agency as well as blowing the whistle on Mrs. Kimberly
Moore.  See Exhibits 1-50.

The Rule of disciplinary for "Insolence" does impermissibly

-11-

inhibit a prisoner's freedom of expression when he witnessed BOPs' employees indulging and engaging in on the job acts of kissing and rubbing and holding each other other than the spouse to which either was married.  See BOP policy 3420.09.

Thus, this wasn't a gratuitous exchange between inmate and employee because a threat to security lacked restraint and any verbal suffering challenges to her authority.  The remark was innocent when made.

BOP regulations, rules, and policies create infringement that arbitrarily abrogate his First Amendment right of Free Speech. E.g., if two people was indulging in the same sex intercourse and witnessed by others, it is not offensive to call them a homosexual.  As the petititioner witnessed Kimberly Moore committing an indecent act  on the job while other prisoners witnessed the same acts.

Petitioner interest is free expression, and the incidental restriction on alleged First Amendment freedoms is not greater than the furtherance of that free expression.  Consideration must be given to the rule, regulation, and policy that govern the BOPs' standard to justify punishing petitioner whether there exist a violation for punitive in nature regarding free Speech.  Thus, petitioner challenges the validity of the Insolence Rule whether the BOP rule impedes on his Frist Amendment right based on his religious belief and practice as well as the rule limiting free speech.

-12-

Petitioner believes the prison officials impermissibly punish-
ed him in retaliation for calling the foreman (Mrs. Kimberly Moore)
an "adulteress" without keeping it to himself when they knew other
inmates and staff were aware of Mrs. Kimberly Moore wrongful and
improper acts while on the job.

Please, bear in mind that Kimberly Moore never once denied
the statement made against her which she could had written a disci-
plinary report or included in that same disciplinary report that
petitioner was lying. Mrs. Kimberly Moore never did deny the
fact that such acts ever occurred, and with the aid of this court
it may order the respondent to have Mr. Burke submit an affidavit
stating whether he and Mrs. Kimberly Moore committed wrongful
and improper acts while working for BOPs' Unicor.

There may be an argument to determine whether the "speech"
and "nonspeech" elements are combined in the same course of con-
duct, a sufficiently important BOP interest in regulating the
nonspeech element can justify incidental limitations on First
Amendment freedoms.

The BOP regulation, rule, or policy is not clear standards
sufficiently justifiable within the constitutional power to
impinge on petitioner's Freedom of Speech. However, to suppress
a free expression on the First Amendment freedoms is no greater
than is essential to the furtherance of that interest. The BOP
may not make regulations, rules, or policies that will restrain
the exercise of free Speech.

-13-

Prison walls do not form a barrier separating prison inmates from the protections of the Federal Constitution. Also, the petitioner states the word used you're an "adulteress" has added no burden on prison security, especially when prison officials were aware of her previous improper acts with Mr. Burke.

Furthermore, why was not Mr. Abbott (Supervisor of Unicor) mentioned in the disciplinary report or the investigating report, since petitioner stated in the presence of Mr. Abbott why he used such word? Mr. Abbott, Mr. Morgan, and Mrs. Stacy were aware of Kimbely Moore's wrongful actions before this incident occurred with petitioner and either could had quashed the written report as pending before interviewing officer.

Petitioner was so shocked at the fact of being placed in segregation that he tried to commit suicide immediately after being escorted to the segregation unit. See Exhibit(s).

Finally, petitioner was told by USP Big Sandy's Captain (John Doe), "Coleman, I cannot let you return to your housing unit because the younger guys (inmates) are mad with you; so you must remain in here (segregation) until they cool down." However, a week afterward, Mr. Ranum asked petitioner, "are you ready to do right?" Which petitioner stated yes! Mr. Ranum then instructed the segregation unit oficers to release petitioner to his housing unit.

Chief Psychologist, Dr. Terry King has already submitted his paperwork for petitioner's return to general population, but

-14-

that John Doe Captain intentionally kept petitioner confined to
segregation longer than required for a reason unfounded shows
his bias and animosity held toward petitioner for saying what
he did to a white woman is a clear sign of retaliation.  See
Exhibits in its entirety.

## DENIAL OF ACCESS TO THE COURT

Petitioner was released from the Segregation Housing Unit
(SHU) July 6th, 2005, which he had one or three days to file the
disciplinary appeal.  There was no BP 8s or 9s (administrative
forms) available nor was Ms. Greene and Mr. Dillian working....
Mr. Fazenbaker refused to give petitioner any forms stating, "wait
until Dillian return on Sunday" (July 10th, 2005).  Therefore,
petitioner made out a form and placed it in the legal mailbox
to be mailed to Warden Hastings which the result from that office
stated "untimely" filed.

Whenever a prisoner cannot receive a grievance form, or a
BOP official or employee refuses to give him one, then he is not
bound by BOP regulation, policy, or rule to meet the filing dead-
line.

And last but not least, petitioner was intentionally transferred
to USP Terre Haute, Indiana via USP/FCI Atlanta, Georgia which
the district court magistrate of the Sixth Circuit has ruled on
petitioner's petition which he was unable to oppose or object

-15-

at that time because respondent's intentionally refused and denied
to inform petitioner (by delivery of mail) that a decision was
made.  Knowing petitioner had 10 days to respond.

Petitioner was held back from filing the Informal Resolution
Administrative Complaints.  See C.F.R. §542.13(a) due to Ms.
Greene not willing to give him forms and/or refusing to process
the administrative grievance informal resolution; along with Mr.
Dillian refusal and denial to submit the informal resolution grie-
vance for processing.  Thereafter, petitioner submitted BP9s with-
out receiving any reply but then an untimely response from the
Warden's office was received by petitioner.

When petitioner was released from segregation he had limited
time (hours) to file the disciplinary appeal which was denied
without a response from the respondent's (Hastings) office because
the response that came later than the timely answer from the warden's
office claimed "unacceptable--your appeal is untimely and you
need a required form." See McCarthy v. Madigan, 117 L. Ed. 2d
291, 503 U.S. 140, 112 S. Ct. 1081 (1991), the greivance procedure
regulations heavily burden the individual interests of petitioning
inmate by (a) imposing short, successive filing deadlines that
create a high risk of forfeiture of a claim for failure to comply,
and (b) not authorizing an award of monetary damages; the interests
of the Bureau do not weigh heavily in favor of exhaustion in view
of the remedial scheme and particular claim(s) presented, since,

-16-

while the Bureau has a substantial interest in encouraging internal resolution of grievances and preventing the undermining of its authority by unnecessary resort of prisoners to the federal courts, and the grievance procedure filing deadlines are not a proper basis for excusing exhaustion.  Such applies to the hindering of bringing forth a claim of sexual harassment against Mrs. Kimberly Moore which Warden Hastings refused and denied to address directly.

Basically, the claims have merit but Hastings' administration does not want the necessary steps taken through exhaustion being that Hastings is the first female warden of a United States Federal Penitentiary, petitioner is black and had no right talking to a white woman regardless of the circumstances, and hoping this specific claim would falls short before reaching the court of law.

Making this entire matter necessary as a "Sensitive Grievance". Therefore, the above is a complete showing of a violation of peti- tioner's rights under the First Amendment, the right to petition the government for redress of grievances do not stop at the prisons' door when constitutional rights are afforded to every one; the showing that BOPs' regulations, rules, and policies create infringe- ment that arbitrarily abrogate petitioner's First Amendment right of excess to the court.

WHEREFORE, petitioner prays that the disciplinary report be removed from his prison jacket and any other relief this court deems just.

Respectfully submitted,

-17-

Monroe L. Coleman-Bey

CERTIFICATE OF SERVICE

I, hereby states that a true copy of the foregoing motion has
been mailed on this _19th_ day of _September_ , 2007,
to the below party:

Respectfully submitted,

Monroe L. Coleman, Pro Se
Reg. No. 01723-016
USP Terre Haute
P.O.Box 12015
Terre Haute, IN 47801



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CLERK'S OFFICE
333 Constitution Avenue, NW
Washington, DC 20001
FAX ( 202) 354-3121
TEL (202) 354-3102

## FAX COVER SHEET

## FAX

| | |
|---|---|
| **To:** | Counselor B Stewart |
| **From:** | Tammy Forrest |
| **Date:** | 03/21/07 |
| **Time:** | |
| **Fax No:** | 812-244-4793 |
| **Pages** [ including cover sheet ] | 5 |



Admin Remedy # 457045-R1

**COMMENTS:** Case information on M L Coleman.

Coleman, Monroe

c/f

Date: 06/21/2007
Time: 1:36:51 pm

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: THA

**Criteria:** PLRA Payments

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/2007 12:10:38 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($37.40) | GTHAD062 | | 2016 | $25.45 |
| 02/01/2007 12:10:46 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | PLRA Payment | ($6.99) | GTHAD062 | | 1319 | $16.00 |
| 01/14/2007 12:10:01 AM | 01723016 | COLEMAN, MONROE L | THP | AMSERVI | Initial PLRA Pymt | ($22.35) | GTHAD062 | | 1144 | $2.99 |

**Total Number Transactions: 3**

WorkstationID: THAHQVXG61

UserID: THA1368

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 3rd & CONSTITUTION AVE., N.W.
### WASHINGTON, D.C. 20001

May 23, 2007
Re: New Case Filing Fee
    Case# DDCX106CV002255

Mr. Monroe L Colemen-Bey, Reg# 01723-016
USP Terre Haute
US Penitentiary
PO Box 12015
Terre Haute, IN 47801

Dear Mr. Monroe L Coleman-Bey:

This is in reference to your inquiry regarding payments applied to your account.

The Court ordered on December 15, 2006 that you were obligated to pay a new case filing fee $350.00.

The following is a breakdown of your payments received, the receipt number, and the balance remaining after the payment was applied.

**New Case Filing Fee**

| Date Pmt. Received | Payment Amt. | Receipt # | Balance |
|---|---|---|---|
| 01/26/2007 | $ 22.35 | 4616001843 | $327.65 |
| 02/09/2007 | $ 6.99 | 4616002228 | $320.66 |
| 03/12/2007 | $320.66 | 4616002854 | ---------- |

As of May 23, 2007, the finance office of the US District Court for the District of Columbia has not received a payment in the amount of $37.50 for the above mentioned case. If/When we do receive this payment, it will be refunded because this case is paid in full.

If additional information is needed or if there is any discrepancies, please do not hesitate to contact me at (202) 354-3100.

Sincerely,

Tamara M. Forrest
Financial Specialist



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
*Terre Haute, Indiana*

Date:     May 21, 2007

Reply To
Attn Of:     R.V. Veach, Warden

Subject:     Inmate Request to Staff

To:     Inmate Coleman, Monroe  #01723-016

This is in response to your Inmate Request to Staff form dated April 27, 2007, wherein you requested clarification as to when funds would be refunded to your Trust Fund account due to a PLRA payment having been made after the PLRA had been paid in full.

A review of the information provided by both you, and the Clerk of the District Court of Columbia, revealed that the PLRA has been stopped.  Because the Business Office cannot refund monies that have already been sent from your account, you are urged to contact the Court to attempt to obtain the requested refund.  It is the responsibility of the Court to determine whether or not a refund to your Trust Fund account is warranted due to PLRA overpayment.

You may address the Court at the following;

Clerk's Office
United States District of Columbia
U.S. Court House
333 Constituion AVE. N.W.
Washington, D.C.  20001

I trust this satisfies your request at this time.

All Rcu Lund Ind !
Dated: 4-5-07

**Ward, Aaron**

| | |
|---|---|
| **From:** | |
| **Sent:** | Thursday, April 05, 2007 12:58 PM |
| **To:** | Ward, Aaron |
| **Subject:** | Congressional Inquiry re: COLEMAN, Monroe L., #01723-016 |

**Importance:**     High

** High Priority **

Aaron:

Good afternoon!  This informal e-mail is in response to your electronic Congressional inquiry concerning inmate Monroe L. Coleman, Reg. No. 01723-016.  Your constituent, inmate Coleman's mother, reports that $37.50 has been deducted from her son's commissary account for a filing fee that has already been paid in full.

Inmate Coleman is a 51-year old male who was sentenced out of the Superior Court, District of Columbia, to a term of LIFE for Robbery While Armed, 1st Degree Murder While Armed, and Assault With Intent to Commit Robbery While Armed.  He is parole eligible on 12/22/2020. Inmate Coleman is currently housed at the United States Penitentiary (USP), Terre Haute, Indiana.

A review of inmate Coleman's record reveals that his Unit Team received the court receipt last Friday, 03/30/2007.  The receipt was provided to Financial Management staff and they subsequently removed the encumbrance from inmate Coleman's account.  I have confirmed that inmate Coleman's account will be refunded accordingly.

Hopefully, you will find this information helpful.  Should you have any questions or need any additional information, please don't hesitate to contact me.  Take care -

Office of Legislative Affairs
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534
(    )    
(            (fax no.)


This message and any attached documents are intended for official use and may contain SENSITIVE information.  If this message and any attachments contain SENSITIVE information, they should be labeled, stored, managed, and disposed of according to procedures that maintain the integrity of any SENSITIVE information.


>>> "Ward, Aaron" <aaron.ward@mail.house.gov> 4/3/2007 7:09 PM >>>
Hi

Money ($37.50) is being deducted from his account for a filing fee that has already been paid in full.  The courts informed the BOP, acording to his
mother, that the balance was paid in full March 5th.

Thanks for looking into this for me.

Aaron


Office of Congresswoman Eleanor Holmes Norton
529 14th Street NW STE 900
Washington, DC 20045

Exhibit

BP-A148.055
SEP 98
**INMATE REQUEST TO STAFF**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mr Gammon Unit Ofc. | DATE: 6-22-07 |
| FROM: Coleman, Maurice | REGISTER NO.: C1723-016 |
| WORK ASSIGNMENT: Unit Orderlie | UNIT: D-1 #206 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Mr Gammon, while speaking with you in the presence of Deputy Warden Mr Ebbert on 6-21-07, which you stated you will conduct no trace on the money $37.50 that was supposed to have been sent by DOP to the U.S. District Court, which you further stated the money was sent during April 8 or 12 2007. However, you personally knew the money was never sent and it is Requested you respond on paper for legal action. Theft/Conspiency/Fraud

CC: Congress Rep. Norton

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

RECEIPT   ADMINISTRATIVE REMEDY

DATE: MAY 14, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
       TERRE HAUTE USP

TO  : ███████ L COLEMAN, 01723-016
       TERRE HAUTE USP    UNT: LCP    QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 451045-F1
DATE RECEIVED  : APRIL 30, 2007
RESPONSE DUE   : MAY 20, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

Intentional
Denial To Return Coleman's
Personal Property


Extensions are overdue


Rec. 6-8-07

RECEIPT    ADMINISTRATIVE REMEDY

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTH CENTRAL REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP   UNT: LCP    QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 451045-R1
DATE RECEIVED  : MAY 29, 2007
RESPONSE DUE   : JUNE 28, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

The seeks to intervene
in order to receive
back the $37.40 that
Grammas's (of business office)
is intentionally withholding
This Further Retaliation

Rec   7-12-07

RECEIPT - ADMINISTRATIVE REMEDY

DATE: JULY 12, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L


THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : AUGUST 18, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

The defendants' agents
are withholding Coleman's
property because he filed
against their boss and
friend Hawley Lappin

Rec 7-12-07

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: AUGUST 23, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: LCP    QTR: D01-206L


ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 451045-A1
DATE RECEIVED  : JULY 9, 2007
RESPONSE DUE   : SEPTEMBER 7, 2007
SUBJECT 1      : COMMISSARY ACCOUNT - POSTING FUNDS, FORMS 21/24, ETC.
SUBJECT 2      :

Prison officials intentionally
Refusing to return this property

Rec. 8-22-07

April 10, 2007

60 Minutes
524 West 57th Street
New York, NY 10019

RE:   Investigation into the Mistreatment of District of Columbia
      Prisoners

Dear 60 Minutes:


      This letter comes to your attention regarding District of
Columbia prisoners who are housed in the federal bureau of prisons.

      Accordingly, the D.C. Self Improvement National Capital Revita-
lization Act of 1997, was implemented for the closing of the District
of Columbia Department of Corrections prison system with exception
of the D.C. Detention Center.

      What is sought from 60 Minutes is a thorough investigation
and interview with D.C. prisoners [starting at U.S. Penitentiary
Terre Haute, Indiana] into the erroneous discriminatory, bias,
and unfair treatment committed by District of Columbia and Bureau
of Prisons officials as well as the United States Parole Commission
toward D.C. prisoners housed in the federal bureau of prisons.

      It is highly possible that this probe by 60 Minutes will
reveal the followings:  Fraud, Constitutional and Civil Rights
violations with great possibilities of criminal charges filed
against those for their misconduct.

      This investigation should consist of:  U.S. Parole Commission
disparity treatment; bureau of prisons officials deliberate indiffernce
[medical, jobs, commissary (high blood) items, education, good
time credits, disciplinary reports, Unit Team inappropriate behavior,
administrative complaints, and visitation denials]; not excluding
reasons why Delegate, Eleanor Holmes Norton allows such erroneous
acts to continue?  Continuous complaints by D.C. prisoners to
prison officials and the courts have not desisted these constitutional
and civil rights violations.  Therefore, it is requested that
60 Minutes probe into this **inhumane treatment** of all D.C. prisoners
housed in the bureau of prisons.

      Your time and support into the above matter will be deeply
appreciated.

                                   Sincerely yours,


cc:  Del. Eleanor H. Norton          _____
     Member of Congress              U.S.P. Terre Haute
                                     P.O. Box 12015
                                     Terre Haute, IN 47801

July 19, 2007


Robert Pierre
Washington Post Editor
1150 15th Street, N.W.
Washington, D.C. 20071
(202) 236-1798

RE:  Disparity Treatment of D.C. Prisoners

Dear Mr. Pierre:


     First, we the prisoners of Washington, D.C. would like to
thank you for allowing us this opportunity to address you.

     Second, there are several complaints that effect the majority
of us which the courts, District of Columbia, and Bureau of Prisons
officials don't share in our pleadings.

     Sir, we have no one to make known our disparity treatment,
but we hope you will assist us in informing society what goes
on inside these prison walls as follow:  Medical, Jobs, property,
and mainly, the United States Parole Commission set-offs.

     Since the transition from D.C. to the Federal Bureau of Prisons,
we have been unfairly treated in each area mentioned above.  Such
problems are the same throughout the entire bureau of prisons,
and it seems no one truly or really care about us.

     Letters have been mailed to Sixty Minutes regarding our problems
which Del. Eleanor Holmes Norton won't truly assist us in her
congressional capacity to its fullest extent.  Therefore, we are
praying for any support from you.

     And third, those issues concerning the U.S. Parole Board
are:  1) Pervasive refusal to use parole laws in effect at time
of crimes committed; 2) Use of the same reasons, over and over,
as a basis to justify below or above Guideline ranges; 3) Continuous
use of the same circumstances and facts, seriousness and nature
of the offense over and over to deny parole, although the courts'
considered it in the Presentence Investigation (PSI) as a basis
to fashion the sentence; 4) Refusal to use D.C. Parole Manuals
which stresses rehabilitation as a suitability basis for parole
instead of the U.S. Parole Commissioner's Manual -- which stresses

cont'd page 2.

use of its 24 reasons to go outside the parole guidelines to suffice any imperfections within the D.C. Parole Laws; 5) Never, ever, discussing with parole candidates what is necessary to become parole suitable if given a set-off at the initial hearing stage, and not assigning a presumptive date upon completion of multiple parole set-offs...; and 6) Refusing to consider terminally ill patients for medical release where their condition came about after entry into the bureau of prisons, and not before committing the instant offense...which is supported by the Parole Guidelines.

    Mr. Pierre, we hope have provided you with some information why we are in need of your editorial support, and conducting an assembly with the D.C. prisoners starting in the United States Penitentiaries. And last, please give our regards to Ms. Yvonne Lamb. We thank you and hope to hear from you soon. Thank you!!!!!

                    Sincerely,

                    _____

                    #
                    U.S.Penitentiary
                    P.O. Box 12015
                    Terre Haute, IN 47801