## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MONROE L. COLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-2255 (RMC)** |
| | ) | |
| **HARLEY LAPPINS,** | ) | |
| **Director, Bureaus of Prisons,** *et al.* | ) | |
| | ) | |
| **Defendants.** | | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant Bureau of Prisons ("BOP") in the above-captioned case, through its undersigned attorneys, submit this memorandum of points and authorities in support of its renewed Motion for Summary Judgment on the grounds that the disclosable portions of the records requested by Plaintiff pursuant to the Freedom of Information Act, 5 U.S.C. §552 ("FOIA" or the "Act"), have been provided, and that the remaining portion of the records, were properly withheld under the Act.

The Bureau of Prisons (BOP) has properly withheld these documents based on the asserted exemptions, and Defendant's renewed Motion for Summary Judgment should be granted.

**INTRODUCTION**

At issue in this Freedom of Information Act (FOIA), 5 U.S.C. § 552, case is whether the Bureau of Prisons ("BOP") properly withheld twenty-one pages of material from the Plaintiff and redacted 101 pages of material from the BOP under FOIA exemptions found in subsections (b)(2), (b)(5), (b)(6), (b)(7)(C),(b)(7)(F) and (b)(7)(E).

The Defendant properly withheld these documents in their entirety, pursuant to the above enumerated exemptions.  See Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989).  Defendant's motion to dismiss or, in the alternative, motion for summary judgment motion should therefore be granted and this matter should be dismissed.

**FACTUAL BACKGROUND**

On June 30, 2006, the Freedom of Information ("FOIA") Division of the Federal Bureau of Prisons, Central Office received and forwarded to CLC Lexington, a Freedom of Information ("FOIA") request from the Plaintiff dated June 21, 2006. Plaintiff's letter requested "all records and/or data contained in the files regarding BOP former worker Kimberly Moore, including disciplinary report filed against Monroe LaVelle Coleman by Mrs. Kimberly Moore who was terminated..."  ". . . any and all investigations on the named party Mrs. Kimberly Moore be released to requestor." *[Massey Decl. 4]*.

On July 19, 2006, CLC Lexington responded to Mr. Coleman's FOI request no. 2006-07999.  Mr. Coleman was notified that there were 2 pages responsive to his request.  It was determined that the 2 pages were releasable and were released.[1]

---

[1]The specific documents were the two page "Incident Report" issued to Mr. Coleman.

The letter also informed Mr. Coleman that with regard to his request for all past disciplinary actions for a staff member, the BOP was refusing to confirm or deny the existence of such records. This was based upon the lack of the individual's consent, proof of death, official acknowledgment of an investigation, or overriding public interest, and because even to acknowledge the existence of these records pertaining to an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. 552(b)(7)(C), also known as a *Glomar* exception. *[Massey Decl. 8-10]*.

Mr. Coleman filed suit on December 29, 2006. *[Docket #1]*. The Defendant filed a Motion to Dismiss/Summary Judgement *[Docket #17]*, which was denied on July 3, 2007. *[Docket #20]*. The Defendant filed a Supplemental Motion for Summary Judgement *[Docket #26]*, which was denied on February 28, 2008. *[Docket #33]*.

The Court's Order of February 28, 2008, *[Docket #33]*, citing Jefferson v. Dep't of Justice, 284 F.2d 172 (D.C. Cir. 2007)(quoting Pratt v. Webster, 673 F.2d. 408 (D.C. Cir. 1982), determined:

> "The declarant's vague and general references to Program Statement 3420.09 do not demonstrate the circumstances under which the requested records may have been compiled, and do not explain what enforcement or administrative proceedings may have occurred or may have been authorized." *[Order p.5]*.

The Court further stated:

> "A *Glomar* response is not appropriate in the absence of an evidentiary record to support a finding that BOP records pertaining to Mrs. Moore are law enforcement records". *[Order p.5]*.

In order to provide the Court with the necessary information to demonstrate the circumstances under which the requested records were compiled, and to explain what enforcement or administrative proceedings occurred or may have been authorized, the BOP withdraws its *Glomar* defense.[2] The BOP acknowledges records are in existence relating to the Plaintiff's request.

At this stage, Defendant believes that it can only demonstrate to the Court that these records fit into the *Glomar* exception by admitting that the records exist.[3] Of course, by admitting the existence of records, Defendant can no longer rely on the *Glomar* exception as a defense. The Defendant, therefore, relies now on other exemptions to the FOIA.

The Plaintiff sought records related to Mrs. Moore, a former BOP employee. There are two (2) Office of Inspector General ("OIG") investigations,[4] and two Office of Internal Affairs ("OIA") investigations[5] that are responsive to the Plaintiff's requests. These investigations were conducted by the Justice Department's Office of Inspector General and BOP's Office of Internal Affairs based upon allegations levied by the Plaintiff and other inmates.[6] These investigations

---

[2]Maydak v. Dept. of Justice, 362 F.Supp2d. 316, 319 (D.D.C. 2005)(Bureau of Prisons (BOP) could raise new defenses in Freedom of Information Act (FOIA) action for first time in its renewed summary judgment motion, where plaintiff had ample opportunity to respond to the BOP's alleged new claims).

[3]There exist two (2) Office of Inspector General ("OIG") investigations, and two Office of Internal Affairs ("OIA") investigations which are responsive to the Plaintiff's requests.

[4]OIG Case No. 2007-001334M (Retaliation) and Case No. 2006-002389 (Sexual Abuse of a Ward).

[5]OIA Case No. 2006-00810 (Sexual Abuse of a Ward) and Case No. 2007-C-00203 (Retaliation).

[6]It should be noted Mrs. Moore is no longer employed by the BOP.

dealt with allegations of inappropriate relationships with inmates and retaliation.

These investigations were opened based upon Program Statement 3420.09, entitled *Standards of Employee Conduct* which addresses BOP staff conduct and investigations into allegations of staff misconduct. *[Walasinski Decl. ¶9].* [7] Depending on the outcome of the investigations, Mrs. Moore could have been subjected to criminal charges, civil fines/remedies and/or administrative charges. *[Walasinski Decl. ¶18].*

The BOP located 164 pages responsive to Mr. Coleman's request. *[Gottlieb Decl. ¶7].* Forty (42) pages are released in their entirety. *[Gottlieb Decl. ¶8].* There were twenty-one (21) pages withheld in their entirety. *[Gottlieb Decl. ¶22].* These pages include a one (1) page memorandum related to Ms. Moore concerning the details of an investigation, naming names, events, and other inmates. This page was withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(c), and Title 5, United States Code, Section 552(b)(7)(F), *[Gottlieb Decl. ¶¶24-25].*

Two (2) pages entitled "Referral of Incident Form" concern another inmate and issues related to Ms. Moore. These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(C), and Title 5, United States Code, Section 552(b)(7)(F). *[Gottlieb Decl. ¶¶26-27].*

Two (2) pages of a Memorandum for Special Investigative Agent concern another inmate,

---

[7]Official investigations include, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Professional Responsibility, Office of Internal Affairs, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity Investigator or any other employee the CEO authorizes or orders to conduct an investigation. *[Walasinski Decl. ¶¶ 10-11].*

Ms. Moore, and events related to a referral of incident.  These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(C),and Title 5, United States Code, Section 552(b)(7)(F). *[Gottleib Decl. ¶¶28-29].*

Also withheld were eight (8) pages of letters written to Ms. Moore by another inmate threatening Ms. Moore. These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(C), and  Title 5, United States Code, Section 552(b)(7)(F). *[Gottleib Decl. ¶¶30-31].*

One (1) page of an e-mail cover sheet was withheld pursuant to Title 5, United States Code, Section 552(b)(5). *[Gottleib Decl. ¶¶32-33].*

Five (5) pages of a report entitled "Abbreviated Report of Investigation" and "Memorandum of Investigation" concern a summary of an investigation concerning Ms. Moore and the findings of the investigation.  These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(C), Title 5, United States Code, Section 552(b)(7)(F), *[Gottleib Decl. ¶¶34-35].*

Two (2) pages of a "Request for Personnel Action" for Ms. Moore containing personal and employment information were withheld pursuant to Title 5, United States Code, Section 552(b)(6), Title 5, United States Code, Section 552(b)(7)(C), and  Title 5, United States Code, Section 552(b)(7)(F). *[Gottleib Decl. ¶¶36-37].*

There were one hundred and one (101) total pages partially released to the Plaintiff. *[Gottleib Decl. ¶¶9-21].*

---

## ARGUMENT

This is an action under the Freedom of Information Act 5 U.S.C. ¶ 552 *et seq*. ("FOIA"). At issue is whether the Bureau of Prisons ("BOP") properly withheld, in whole, 21 pages and, in part, 101 pages responsive to the Plaintiff's FOIA request.

The withheld information consists of *inter alia* the materials outlined in the above background of the case. The grounds for withholding this information is discussed below and in the attached second Vaughn Index[8] by Ms. Denise Gottlieb, a Paralegal at the Consolidated Legal Center in Lexington, Kentucky, ("CLC Lexington"), outlining the documents released, withheld and partially released. There were 164 total pages responsive to the Plaintiff's request. *[Gottlieb Decl. ¶4]*.

### I.      Standard for Summary Judgement

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing'-that is, pointing out to the [Court]-that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560,1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

---

[8]"Vaughn Index" is a term derived from Vaughn v. Rosen, 484 F2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). The index usually consists of a detailed affidavit or declaration, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information. See John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989). In the instant case, the declaration of Ms. Gottlieb will serve as the BOP's Vaughn Index.

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,586 (1986).  Thus, to avoid

summary judgment, the Plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable. . . or is not significantly probative, . . .summary
> judgment may be granted. . . [T]he mere existence of a scintilla of evidence in support of
> the Plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for he Plaintiff.

Anderson, 477 U.S. at 252; see also Lanningham v. Navy, 813 F.2d 1236, 1242 (D.C.Cir.1987)

(the non-moving party is "required to provide evidence that would permit a reasonable jury to

find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" 477 U.S. at 327(quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[9] See Cappaboanca v. Commissioner, U.S.

---

[9]For purposes of summary judgment, an agency's decision to withhold information from
an FOIA requestor is subject to de novo review by the courts. Hayden v. National Security
Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied 446 U.S. 937
(1980).

Customs Serv., 847 F.Supp 1558,1562 (M.D. Fla. 1994)("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment")(citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In an FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden v. National Security Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979) cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. Of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Commission, 1441 F.Supp.2d 62, 67 (D.D.C. 2001)(quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)) see also Public Citizen, Inc., v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or declarations, show no

genuine issue as to any material fact and when the defendant is entitled to judgment as a matter

of law, summary judgment should be granted to the defendant. <u>Perry v. Block</u>, 684 F.2d 121

(D.C. Cir. 1982).

## II.    BOP Properly Applied the FOIA Exemptions to Plaintiff's Requests

### A.    <u>Exemption (b)(2)</u>

Exemption (b)(2) exempts from mandatory disclosure records that are "related solely to

the internal personnel rules and practices of an agency." 5 U.S.C. 552(b)(2).  Specifically, these

records include internal matters of a trivial nature ("low 2" information) and more substantial

internal matters, the disclosure of which would risk circumvention of a legal requirement ("high

2" information).

For purposes of this litigation the (b)(2) exemption being enforced is the low 2

information.  As a matter of long-standing practice, agencies have recognized that disclosing

"low 2" information–which by its very nature is nothing more than "trivial"– is in many instances

less burdensome than bothering to invoke the exemption to withhold it. <u>Fonda v. CIA</u>, 434

F.Supp. 498, 503 (D.D.C. 1977).  For information in a requested record to be properly withheld

under the "low 2" aspect of Exemption 2, it must meet two criteria: First, the information must

be "predominantly internal" and second, the information must be of a "trivial nature and not of

any genuine public interest".   <u>Schiller v. NLRB</u>, 964 F.2d 1205,1207 (D.C. Cir. 1992) and

<u>ACLU v. FBI</u>, 429 F.Supp.2d 179, 189 (D.D.C. 2006).

Courts have continued to include a wide variety of trivial administrative information

within the "low 2" aspect of Exemption 2's coverage.  This includes not only relatively minor

pieces of information.[10]  This information includes document routing information[11], internal

telephone and facsimile numbers[12].

The 63 pages of partially release pages contained telephone numbers and telephone

extension numbers that are trivial or routine with regard to Plaintiff's requests and not of

legitimate public interest. [*Gottlieb Decl.* ¶¶ 17-18].  They, therefore, qualify as the internal

administrative or procedural matters protected from disclosure under Exemption (b)(2).

### B.     Exemption (b)(5)

The general purpose of the deliberative process privilege component of Exemption 5 is to

"prevent injury to the quality of agency decisions." NLRB v. Sears, Roebuck & Co., 421 U.S.

132, 151 (1975).  Specifically, three policy purposes consistently have been held to constitute the

bases for this privilege: (1) to encourage open, frank discussions on matters of policy between

subordinates and superiors; (2) to protect against premature disclosure of proposed policies

before they are finally adopted; and (3) to protect against public confusion that might result from

disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's

action. See e.g., Russell v. Dep't of the Air Force, 628 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal

States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  As explained by the

---

[10]Hale v. US Dep't of Justice, 973 F.2d 894, 902 (10th Cir. 1992); Scherer v. Kelley, 584 F.2d 170, 175-76 (7th Cir. 1978); and Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau, 2005 WL 913268 at *3 (D.D.C. Apr. 20, 2005).

[11]Morley v. CIA, 453 F.Supp.2d at 148-49 & n.2 (D.D.C. 2006); Wheeler v. U.S. Dep't of Justice, 403 F.Supp.2d 1, 13 (D.D.C. 2005); and Larson v. Dep't of State, 2005 WL 3276303 at *14 (D.D.C. Aug. 10, 2005)

[12]Ray v. FBI, 441 F.Supp.2d 27, 33 (D.D.C. 2006); Odle, 2006 WL 1344813, at *13; Morales Cozier v. FBI, No. 99-0312, slip op. At 13 (N.D. Ga. Sept. 25, 2000); and Germosen v. Cox, 1999 WL 1021559, at *12 (S.D.N.Y. Nov. 9, 1999).

Supreme Court in <u>Sears</u>, <u>supra</u>, "[t]he purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." 421 U.S. at 150.

The courts have established two fundamental requirements, both of which must be met, for the deliberative process privilege to be invoked. First, the decision must be predecisional; second, the communication must be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." <u>Vaughn v. Rosen</u>, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975); <u>see</u> <u>also</u> <u>Mapother v. Dep't of Justice</u>, 3 F.3d 1533 (D.C. Cir. 1993).

In the instant case, the withheld e-mail *[Gottleib Decl. ¶¶32-33]*, was predecisional and deliberative and therefore properly withheld pursuant to exemption (B)(5). Accordingly, the BOP's decision should be upheld.

##       C.       <u>Exemption (b)(6)</u>

Exemption (b)(6) protects personal privacy interests. Exemption (b)(6) permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). While "personnel and medical files" are easily identified, the term "similar files" is more ambiguous. In <u>United States Dep't of State v. Washington Post Co.</u>, 456 U.S. 595 (1982), however, the Supreme Court firmly held the term is to be interpreted broadly rather than narrowly. <u>Id</u>. at 599-603. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." <u>Id</u>. at 601. Rather, the Court made clear that all information

that "applies to a particular individual" meets the threshold requirement for Exemption 6

protection. Id. at 602; see also Sherman v. United States Dep't of the Army, 244 F.3d 357, 361

(5th Cir. 2001) (recognizing the "Supreme Court has interpreted exemption 6 'files' broadly to

include any 'information which applies to a particular individual.'")

Once it has been established the information meets the threshold requirement of

exemption (b)(6), the focus of the inquiry turns to whether disclosure of the records at issue

"would constitute a clearly unwarranted invasion of personal privacy." This requires a balancing

of the public's right to disclosure against an individual's right to privacy. See Fund for

Constitutional Govt. v. Nat'l Archives & Records Serv., 656 F.2d 856,862 (D.C. Cir. 1981).

The one (1) page memorandum contains the names of other inmates, information

concerning other inmates and details surrounding the allegations of misconduct subject to

investigation and not related to the Plaintiff. *[Gottleib Decl. ¶¶24-25]*.    The two pages of the

"Referral of Incident" *[Gottleib Decl. ¶¶26-27],* also contain information related to another

inmate with details about the inmate and the allegations levied against Ms. Moore for purposes of

investigation.

The two pages of a Memorandum for Special Investigative Agent *[Gottleib Decl. ¶¶28-*

*29]*, also contain information related to another inmate and his allegations.  There is no mention

of the Plaintiff.  The eight page letter *[Gottleib Decl. ¶¶30-31]*, is a letter written to Ms. Moore

by another inmate, and describes allegations reviewed in the investigation as well as threatening

comments made to Ms. Moore.

The five page "Abbreviated Report of Investigation" *[Gottleib Decl. ¶¶34-35]*, again

contained information related to another inmate and Ms. Moore, and the specifics of the

investigation.  The two pages entitled "Request for Personnel Action", *[Gottleib Decl. ¶¶36-37]*, contained personnel and personal information such as social security numbers, home address, and the action taken by the staff member.

### D.    Exemption (b)(7)(C)

Exemption 7(C) permits an agency to withhold information compiled "for law enforcement purposes" if that information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether release of particular information is an "unwarranted" invasion of privacy, an agency must balance the type of privacy interest at stake[13] against the public interest in release of the type of information involved. See Schrecker v. U..S. Dept. of Justice, 254 F.3d 162, 166 (D.C. Cir. 2001).

The public interest in disclosure "is limited to the FOIA's 'core purpose' of shed [ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name. . . would allow citizens to know what their government is up to." Fitzgibbon v. CIA, 911 F .2d at 768. See also Albuquerque Publishing Co. v. United States

---

[13]Clearly, privacy interests are at stake because the mere mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation. Branch v. FBI, 658 F. Supp. 204,209 (D.D.C. 1987); Lesar v. Department of Justice, 636 F.2d 472, 488 (D.C. Cir. 1980). The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg: v. Department of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Dept. of Justice, 726 F. Supp. 851, 855-56 (D.D.C. 1989)(no public interest in disclosure of

sensitive information DEA obtained about individuals and their activities, where such material

would not shed light on DEA's conduct with respect to the investigation).  In order to overcome

legitimate privacy interests, the requester must not only demonstrate the existence of the public

interest, but also that the public interest is both significant and compelling. Senate of Puerto Rico

v. Department of Justice, 823 F.2d 574,588 (D.C. Cir. 1987); Stone v. FBI, 727 F.Supp. 662,

667-68 (D.D.C. 1990). According to the Court of Appeals for the District of Columbia, the

"categorical withholding" of information that identifies third parties in law enforcement records

will ordinarily be appropriate under exemption 7(C). SafeCard Services v. SEC, 926 F.2d

1197,1206 (D.C. Cir. 1991); see also Nation Magazine v. United States Customs Serv.,71 F.3d

885,896 (D.C. Cir. 1995) (stating the portions of records in investigatory files which would

reveal subjects, witnesses and informants in law enforcement investigations are categorically

exempt.)

        The circumstances under which the requested records were complied were based upon

two Office of Inspector General ("OIG") investigations, and two Office of Internal Affairs

("OIA") investigations. These investigations dealt with allegations of inappropriate relationships

with inmates and retaliation. Enforcement or administrative proceedings were authorized

pursuant to Program Statement 3420.09.*[Walasinski Decl.  ¶¶ 9-11]*.   In the case at bar, the

investigations were centered around the Office of Inspector General and the BOP's Office of

Internal Affairs.  Depending on the outcome of these investigations, Mrs. Moore could have been

subject to criminal or administrative charges[14]. *[Walasinski Decl. ¶18]*.  In other words, the actions were being investigated to determine whether laws had been violated, in the interest of law enforcement.  Records of these investigations necessarily, therefore, would constitute law enforcement records.

The one (1) page memorandum *[Gottleib Decl. ¶¶24-25]*, contains the names of other inmates, information concerning other inmates and details surrounding the allegations of misconduct not related to the Plaintiff.  The release of this information would potentially endanger the safety of the inmate named as well as chill any type of investigation.  This is a concern in a prison setting where rival inmates may have cooperated against another inmate or staff member. Case law has long recognized the strong privacy interests inherent in law enforcement records, especially when it involves the name of third parties (including the names of law enforcement personnel).

In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C.Cir.1990) (quoting Branch v. FBI, 658 F.Supp. 204, 209 (D.D.C.1987)); accord Congressional News Service v. DOJ, 438 F.Supp. 538, 541 (D.D.C.1977) ("an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo"). The fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that

---

[14]Attachment "A" of Program Statement 3420.09, outlines the administrative sanctions for violations of this policy.  The Program Statement also reference criminal referral as a possible sanction.

their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed. *See* Weisberg v. DOJ, 745 F.2d 1476, 1491 (D.C.Cir.1984).[15]

The two pages of the "Referral of Incident" *[Gottleib Decl. ¶¶26-27],* also contains information related to another inmate, including a name, details about the inmate and the allegations levied against Ms. Moore. This information could endanger the other inmate. The two pages of a Memorandum for Special Investigative Agent *[Gottleib Decl. ¶¶28-29]*, also contain information related to another inmate and his allegations. Again, release of this information could endanger the inmate due to cooperating with the BOP in an investigation. The eight page letter *[Gottleib Decl. ¶¶30-31]*, is a letter written to Ms. Moore by another inmate and describes allegations reviewed in the investigation as well as threatening comments made to Ms. Moore.

Releasing the above information places the inmate at risk for possible retaliation for his threatening remarks to Ms. Moore and his reports of misconduct. Balderrama v. Homeland Security, 2006 WL 889778, *8 (Mar. 30, 2006) (BOP's refusal to release plaintiff's PSI to plaintiff or to a third party is consistent not only with BOP policy, but also with FOIA exemption (b)(7), which exempts from production records that could  reasonably be expected to disclose the identity of confidential sources, disclose techniques and procedures used for law enforcement investigations or prosecutions, and endanger the life or physical safety of any individual).

The five page "Abbreviated Report of Investigation" *[Gottleib Decl. ¶¶34-35]*, again contains  information related to another inmate and Ms. Moore, as well as the specifics of the

---

[15]*See also* Burke v. U.S. Dept. Of Justice, 1999 WL 1032814 (Sept. 30, 1999); Keys v. U.S. Dept. Of Justice, 83 F2d. 337 (C.A.D.C. 1987); Williams v. FBI, 69 F.2d 1155 (C.A.D.C. 1995).

investigation.  The release of this information could endanger the inmate for cooperating with the BOP in an investigation and subject the inmate to retaliation.

The two pages entitled "Request for Personnel Action", *[Gottlieb Decl. ¶¶36-37]*, contained personnel and personal information such as social security numbers, home address, and the action taken by the staff member and the BOP. The release of this information could endanger the safety of Mrs. Moore and her family, by disclosing information related to a BOP investigation. See Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C.Cir.1990); Burke v. U.S. Dept. Of Justice, 1999 WL 1032814 (Sept. 30, 1999).

In the case at bar, the Plaintiff is not entitled to the sensitive information which he seeks. It is clear the names, the details of the investigation related to another inmate, and other personal information and employment information were properly withheld pursuant to exemption 7(C). Such information would not shed any light on the BOP's performance of its statutory duties, nor is any public interest discernable. Moreover, as discussed in the attached declarations, disclosure of this information would constitute an unwarranted invasion into the personal privacy of the affected individuals, and may very well have negative repercussions for the BOP's ability to investigate staff and inmate misconduct within the prison system. Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C.Cir.1990); Berger v. I.R.S., 487 F.Supp 2d. 482 (D.N.J. 2007).

Since the pages at issue here contain information about other individuals, including information about potential criminal activities, it would clearly violate their privacy rights to provide these documents to Plaintiff.  The privacy interests of third parties named in the context of their potential illegal activities far outweighs any public interest in release of the documents.

Given the strong emphasis placed on the protection of individual's privacy interests, the lack

of public interest in the material, and the applicable body of case law, it is clear the BOP properly

excluded the contested information. Accordingly, the decision should be affirmed. Kuffell v. U.S.

Bureau of Prisons, 882 F.Supp, 116 (D.D.C. 1995); Doyharzabal v. Gal, 2001 WL 35810871 (Sept.

13, 2001).

### E.    Exemption (b)(7)(E)

Exemption 7(E) affords protection to all law enforcement information that "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law." 5 U.S.C. 552(b)(7)(E).

7(E) is comprised of two distinct protective clauses. The first clause permits the withholding

of "records or information complied for law enforcement purposes...that would disclose techniques

and procedures for law enforcement investigations or prosecution." This clause is phrased in such

a way so as to not require a showing of any particular determination of harm–or risk of

circumvention of law–that would be caused by disclosure of records or information within its

coverage. Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.,

2006 WL 1826185 *7 (D.D.C. June 30, 2006); Burke v. U.S. Dep't of Justice, 1999 WL 1032814,

at *8 (D.D.C. Sept. 30, 1999). Rather, it is designed to provide "categorical" protections to the

information so described. Judicial Watch, Inc. V. U.S. Dep't of Commerce, 337 F.Supp.2d 146, 181

(D.D.C. 2004).

The second clause of Exemption 7(E) protects "guidelines for law enforcement investigations

or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law

Jordan v. Department of Justice, 591 F.2d 753, 771 (D.C. Cir. 1978).

Five (5) pages are being withheld in part pursuant to 5 U.S.C. § 552(b)(7)(E) because they were compiled for law enforcement purposes that would disclose certain investigative techniques and procedures. Specifically, the withheld contents of these documents, if released, would risk circumvention of BOP investigative techniques. *[Gottleib Decl. ¶19]*

F.     **Exemption (b)(7)(F)**

Exemption 7(F) permits the withholding of information necessary to protect the physical safety of a wide range of individuals. This exemption provides broad protection to "any individual" when disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F). Brady-Lunny v. Massey, 185 F.Supp.2d 928,932 (D.D.C. 2002), (finding that release of detainees' names would endanger life and physical safety given security risks that are always present in inmate populations). As set forth below, the BOP properly withheld this information pursuant to exemption (b)(7)(F).

The one (1) page memorandum  *[Gottleib Decl. ¶¶24-25]*, contains the names of other inmates, information concerning other inmates and details surrounding the allegations of misconduct not related to the Plaintiff. The release of this information would potentially endanger the safety of the inmate named as well as chill any type of investigation. This is a concern in a prison setting where rival inmates may have cooperated against another inmate or staff member, subjecting them to retaliation or violence. Brunetti v. F.B.I. 357 F.Supp2d. 97 (D.D.C. 2004); Balderrama v. Homeland Security, 2006 WL 889778 (Mar. 30, 2006); Maydak v. Dept. of Justice, 362 F.Supp.2d 316 (D.D.C. 2005).

The two pages of the "Referral of Incident" *[Gottleib Decl. ¶¶26-27],* also contains information related to another inmate with details about the inmate and the allegations levied against

Ms. Moore. This information could endanger the other inmate's safety and Mrs. Moore's safety if disclosed. The two pages of a Memorandum for Special Investigative Agent *[Gottleib Decl. ¶¶28-29]*, also contain information related to another inmate and his allegations. Again, release of this information could endanger the inmate because of cooperating with the BOP in an investigation. See Brunetti v. F.B.I. 357 F.Supp2d. 97 (D.D.C. 2004); Balderrama v. Homeland Security, 2006 WL 889778 (Mar. 30, 2006); Maydak v. Dept. of Justice, 362 F.Supp.2d 316 (D.D.C. 2005).

The eight page letter *[Gottleib Decl. ¶¶30-31]*, is a letter written to Ms. Moore, by another inmate and describes allegations reviewed in the investigation as well as threatening comments made to Ms. Moore. Releasing this information places the inmate at risk for possible retaliation for his threatening remarks to Ms. Moore.[16]

The five page "Abbreviated Report of Investigation" *[Gottleib Decl. ¶¶34-35]*, again contained information related to another inmate and Ms. Moore, and the specifics of the investigation. The release of this information could endanger the inmate for cooperating with the BOP in an investigation and subject the inmate to retaliation.[17]

The two pages entitled "Request for Personnel Action", *[Gottleib Decl. ¶¶36-37]*, contained personnel and personal information such as social security numbers, home address, and the action taken by the staff member. The release of this information could endanger the safety of Mrs. Moore

---

[16]. See Brunetti v. F.B.I. 357 F.Supp2d. 97 (D.D.C. 2004); Balderrama v. Homeland Security, 2006 WL 889778 (Mar. 30, 2006); Maydak v. Dept. of Justice, 362 F.Supp.2d 316 (D.D.C. 2005).

[17]See Brunetti v. F.B.I. 357 F.Supp2d. 97 (D.D.C. 2004); Balderrama v. Homeland Security, 2006 WL 889778 (Mar. 30, 2006); Maydak v. Dept. of Justice, 362 F.Supp.2d 316 (D.D.C. 2005).

and her family, by disclosing information related to a BOP investigation.[18]

### III.    Partially Released Documents

There were one hundred and one (101) total pages partially released.  *[Gottleib Decl. ¶¶9-21 & Attachment "B"]*.  Of the 101 pages partially released, 76 pages had sections partially withheld pursuant to 5 U.S.C. §552 (b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals.  *[Gottleib Decl. ¶12]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the Exemption used to withhold specific information.  The 76-pages noted with a redaction based upon Exemption (b)(6) are based upon the rationale outlined in the above section entitled *Exemption b(6)*.

Of these 101 pages, 77 pages had sections partially withheld  pursuant to 5 U.S.C. §552 (b)(7)(c) which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.  These documents contain names of BOP staff members and other inmates that were involved in the investigation of retaliation, sexual harassment, and cruel and unusual wrongful acts against him. *[Gottleib Decl. ¶13]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the exemption used to withhold specific information.  The 77-pages noted with a redaction based upon Exemption (b)(7)(C) are based upon the rationale outlined in the above section entitled

---

[18] See  Brunetti v. F.B.I. 357 F.Supp2d. 97 (D.D.C. 2004); Balderrama v. Homeland Security, 2006 WL 889778 (Mar. 30, 2006); Maydak v. Dept. of Justice, 362 F.Supp.2d 316 (D.D.C. 2005).

*Exemption b(7)(C)*.

There were also 77 pages out of the 101 pages which had sections partially withheld pursuant to 5 U.S.C. §552 (b)(7)(F), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual. The release of the individuals' names and personal information  involved could cause personal distress or embarrassment; an unwarranted invasion of personal privacy and could be expected to endanger the life or physical safety of those involved. *[Gottlieb Decl. ¶15]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the Exemption used to withhold specific information.  The 77-pages noted with a redaction based upon Exemption (b)(7)(F) are based upon the rationale outlined in the above section entitled *Exemption b(7)(F)*.

63 pages of the 101 pages had sections partially withheld pursuant to  5 U.S.C. §552 (b)(2), which concerns internal administrative or procedural matters which are trivial or routine in that there is not a substantial or legitimate public interest in their disclosure. Specifically, these documents contain fax numbers and extension numbers that are trivial to this Complaint and are not a legitimate public interest. *[Gottlieb Decl. ¶17]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the Exemption used to withhold specific information.  The 63-pages noted with a redaction based upon Exemption (b)(2) are based upon the rationale outlined in the above section entitled *Exemption b(2)*.

Five (5) pages of the 101 pages had sections partially withheld pursuant to  5 U.S.C. §552 (b)(7)(E), which provides for the withholding of records or information compiled for law

enforcement purposes which would disclose certain investigative techniques and procedures. These documents contain information that would risk circumvention of BOP investigative techniques. *[Gottleib Decl. ¶19]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the exemption used to withhold specific information. The 5-pages noted with a redaction based upon Exemption (b)(7)(E) are based upon the rationale outlined in the above section entitled *Exemption b(7)(E)*.

One (1) page of the 101 pages had sections partially withheld pursuant to 5 U.S.C. §552 (b)(5), which allows exemption of information intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature. This exemption protects information which would not be available by law to a party other than an agency in litigation with that agency. *[Gottleib Decl. ¶¶20]*.

The Vaughn index, Attachment "B" contains a copy of each partially released document and the Exemption used to withhold specific information. The one (1) page noted with a redaction based upon Exemption (b)(5) is based upon the rationale outlined in the above section entitled *Exemption b(5)*.

## <u>CONCLUSION</u>

For the above reasons, the Bureau of Prisons' motion to dismiss or, in the alternative,  motion

for summary judgment should be granted and this matter should be dismissed with prejudice.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, D.C. BAR #423587
Assistant United States Attorney
501 Third Street, N.W., Rm E-4218
Washington, D.C.  20530
(202) 514-7236

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May, 2008, a copy of the foregoing Motion for Summary Judgment, and Vaughn Index was mailed, postage prepaid, to Plaintiff, Monroe Coleman, 01723-016, United States Penitentiary, Terre Haute, P.O. Box 12015, Terre Haute, IN., 47801.

/s/

ALEXANDER D. SHOAIBI
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONROE COLEMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civ. No. 06cv2255 (RMU) |
| | ) |
| HARLEY LAPPINS, | ) |
| DIRECTOR, FEDERAL BUREAU OF PRISONS, ET AL.) | |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF DENISE M. GOTTLEIB

1.    I, Denise M. Gottleib, hereby declare and state as follows:

2.    I am currently employed by the United States Government as a Paralegal

Specialist at the Consolidated Legal Center, Lexington, Kentucky, (CLC Lexington), a position I

have held since November 2007.  Prior to this assignment, I was a Paralegal Specialist in the

Central Office FOIA Division, Washington, D.C. from March of 2006 until November 2007.

From November of 1998 until March 2006, I held the positions of Legal Instruments Examiner,

and Paralegal at the Bureau of Prisons Mid Atlantic Regional Office, Annapolis Junction,

Maryland.

3.    Pursuant to the Court's Order dated February 28, 2008, concerning the

determination the BOP's decision to provide a GLOMAR response for the agency's disciplinary

records pertaining to a former BOP employee are law enforcement records within the scope of

Exemption 7, I am providing the following additional information.

5.    In order to provide the Court with the necessary information to demonstrate the circumstances under which the requested records were complied, and explain what enforcement or administrative proceedings occurred or may have been authorized, the BOP must abandon its GLOMAR defense, and acknowledge that records are in existence relating to the Plaintiff's request.

6.    I have prepared a second Vaughn Index for the Court, outlining the documents released, withheld and partially released.

7.    There were 164 total pages responsive to the Plaintiff's request.

## DOCUMENTS RELEASED IN ENTIRETY

8.    Forty (42) pages are released in their entirety, including the two (2) previously released pages from Ms. Massey related to Mr. Coleman's incident report. (**See Attachment "A"**).

## PARTIALLY RELEASED DOCUMENTS

9.    One hundred (101) pages are partially released. (**See Attachment "B"**).

10.    Each of the 101 pages contains material which was blocked off and the FOIA exemptions were used to redact that information is noted in the blocked section.

11.    The 101 pages contains the following exceptions used to justify each redaction.

12.    Of these 101 pages, 76 pages are withheld in part pursuant to 5 U.S.C. 552 (b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals.

13.     Of these 101 pages, 77 pages were also withheld in part pursuant to 5 U.S.C. §552(b)(7)(c) which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals.

14.     These documents contain names of BOP staff members and other inmates that were involved in the investigation of retaliation, sexual harassment, and cruel and unusual wrongful acts against him.

15.     Also 5 U.S.C. §552 (b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

16.     The releases of the individuals involved could cause personal distress or embarrassment; an unwarranted invasion of personal privacy and it is expected to endanger the life or physical safety of those involved.

17.     Of these 101 pages, 63 pages are also withheld in part pursuant to 5 U.S.C. §552 (b)(2), which concerns internal administrative or procedural matters which are trivial or routine in that there is not a substantial or legitimate public interest in their disclosure.

18.     Specifically, these documents contain fax numbers and extension numbers that are trivial to this suit and are not a legitimate public interest.

19.     Of these 101 pages, 5 pages are withheld in part pursuant 5 U.S.C. §552 (b)(7)(e), which provides for the withholding of records or information compiled for law enforcement purposes which would disclose certain investigative techniques and procedures. These documents contain would risk circumvention of BOP investigative techniques.

20.    Of these 101 pages, 1 page is withheld in part pursuant to 5 U.S.C. §552 (b)(5), which allows exemption of information intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature.

21.    This exemption protects information which would not be available by law to a party other than an agency in litigation with that agency.

## DOCUMENTS WITHHELD IN THEIR ENTIRETY

22.    21 pages are withheld in their entirety.

23.    If the Court wishes, these pages can be produced for in camera inspection.

24.    These pages include a one (1) page memorandum related to Ms. Moore concerning the details of an investigation, naming names, events, and other inmates.

25.    This page was withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

26.    Two (2) pages entitled "Referral of Incident Form" concerning another inmate and issues related to Ms. Moore.

27.    These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

28.    Two (2) pages of a Memorandum for Special Investigative Agent concerning another inmate, Ms. Moore and events related to a referral of incident.

29.    These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

30.    Eight (8) pages of letters written to Ms. Moore by an inmate threatening her.

31.    These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

32.    One (1) page of an e-mail cover page.

33.    This page was withheld pursuant to Title 5, United States Code, Section 552(b)(5), which allows exemption of information intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature.

34.    Five (5) pages of a report entitled "Abbreviated Report of Investigation" and "Memorandum of Investigation" concerning a summary of an investigation concerning Ms. Moore and the findings of the investigation.

35.     These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

36.     Two (2) pages of a "Request for Personnel Action" for Ms. Moore containing personal and employment information.

37.     These pages were withheld pursuant to Title 5, United States Code, Section 552(b)(6), which exempts personnel and medical files and similar files to preclude a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)( c), which exempts from disclosure records or information compiled for law enforcement purposes which would constitute a clearly unwarranted invasion of personal privacy surrounding other individuals. Title 5, United States Code, Section 552(b)(7)(f), which provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.

38.     I certify that the above cited documents are true and accurate copies of the

records.

-Attachment "A";     Fully Released Documents.
-Attachment "B";     Partially Released Documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge.


Executed this ___10___ day of April 2008.

                                    Denise M. Gottleib, Paralegal Specialist
                                    Consolidated Legal Center
                                    Federal Bureau of Prisons
                                    Lexington, Kentucky 40511

ATTACHMENT B

# FULL RELEASE



U.S. Department of Justice

Office of Professional Responsibility

*950 Pennsylvania Ave., NW, Room 3266*

*Washington, D.C. 20530*

NOV - 9 2006

## MEMORANDUM

TO:         Thomas F. McLaughlin
            Assistant Inspector General
            Investigations Division
            Office of the Inspector General

FROM:       Judith B. Wish
            Deputy Counsel

SUBJECT:    Referral of Complaint

The attached complaint from inmate Monroe L. Coleman was received by the Office of Professional Responsibility on August 4, 2006. Mr. Coleman alleged misconduct by Bureau of Prisons personnel. We have completed our review of the submission and have determined that the matter falls within the jurisdiction of your Office. We are referring this matter to you for whatever action you deem appropriate and have informed the complainant of the referral.

Attachment

cc:    John Dignam, Chief
       Office of Internal Affairs
       Bureau of Prisons

```
  BPPCG  S21.01                    INMATE HISTORY
PAGE 001                             ADM-REL                        11-15-2006
                                                                    10:45:17

  REG NO..: 01723-016 NAME....: COLEMAN, MONROE L
  CATEGORY: RPS        FUNCTION: PRT        FORMAT:

FCL     ASSIGNMENT  DESCRIPTION                      START DATE/TIME  STOP  DATE/TIME
THP     A-DES       DESIGNATED, AT ASSIGNED FACIL    09-17-2006 1446 CURRENT
THP     LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN    09-17-2006 1256 09-17-2006 1446
THP     A-DES       DESIGNATED, AT ASSIGNED FACIL    04-12-2006 1217 09-17-2006 1256
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL    04-12-2006 1217 04-12-2006 1217
A02     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   04-12-2006 0930 04-12-2006 1217
OKL     HLD REMOVE  HOLDOVER REMOVED                 04-12-2006 0730 04-12-2006 0730
OKL     A-BOP HLD   HOLDOVER FOR INST TO INST TRF    03-27-2006 1650 04-12-2006 0730
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL    03-27-2006 1750 03-27-2006 1750
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   03-27-2006 1350 03-27-2006 1750
A01     HLD REMOVE  HOLDOVER REMOVED                 03-27-2006 1350 03-27-2006 1350
ATL     A-BOP HLD   HOLDOVER FOR INST TO INST TRF    02-16-2006 1803 03-27-2006 1350
B00     RELEASE     RELEASED FROM IN-TRANSIT FACL    02-16-2006 1803 02-16-2006 1803
B00     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   02-16-2006 0941 02-16-2006 1803
B90     TRANSFER    TRANSFER                         02-16-2006 0941 02-16-2006 0941
B37     A-DES       DESIGNATED, AT ASSIGNED FACIL    02-05-2004 1719 02-16-2006 0941
S37     RELEASE     RELEASED FROM IN-TRANSIT FACL    02-05-2004 1719 02-05-2004 1719
S37     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   02-05-2004 0902 02-05-2004 1719
ATL     TRANSFER    TRANSFER                         02-05-2004 0902 02-05-2004 0902
ATL     A-DES       DESIGNATED, AT ASSIGNED FACIL    06-17-2002 1740 02-05-2004 0902
B39     RELEASE     RELEASED FROM IN-TRANSIT FACL    06-17-2002 1740 06-17-2002 1740
B39     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   06-17-2002 0755 06-17-2002 1740
ORL     TRANSFER    TRANSFER                         06-17-2002 0755 06-17-2002 0755
ORL     A-DES       DESIGNATED, AT ASSIGNED FACIL    07-19-2001 0001 06-17-2002 0755
I-D     RELEASE     RELEASED FROM IN-TRANSIT FACL    07-19-2001 0001 07-19-2001 0001
I-D     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   07-16-2001 1152 07-19-2001 0001
BOF     TRANSFER    TRANSFER                         07-16-2001 1152 07-16-2001 1152
BOF     A-DCOB      ADMIT TO D.C. OFFENDER BRANCH    09-15-2000 1456 07-16-2001 1152
P90     RELEASE 09  RELEASED FROM IN-TRANSIT, SEP    09-15-2000 1456 09-15-2000 1456
P90     A-ADMIT 09  ADMITTED TO IN-TRANSIT, SEP      09-30-1990 0323 09-15-2000 1456
I-T     RELEASE     RELEASED FROM IN-TRANSIT FACL    09-30-1990 0323 09-30-1990 0323
I-T     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   08-31-1990 0333 09-30-1990 0323
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL    08-31-1990 0333 08-31-1990 0333
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   08-30-1990 0710 08-31-1990 0333
ATL     HLD REMOVE  HOLDOVER REMOVED                 08-30-1990 0710 08-30-1990 0710
A11     A-PRE       PRE-SENTENCE ADMISSION           08-29-1990 1938 08-30-1990 0710
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL    08-29-1990 1838 08-29-1990 1838
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   08-29-1990 0640 08-29-1990 1838
EFE     HLD REMOVE  HOLDOVER REMOVED                 08-29-1990 0540 08-29-1990 0640
EFE     A-HLD       HOLDOVER, TEMPORARILY HOUSED     08-24-1990 1830 08-29-1990 0540
PIT     RELEASE     RELEASED FROM IN-TRANSIT FACL    08-24-1990 1930 08-24-1990 1930
PIT     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL   05-08-1969 0540 08-24-1990 1930
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

No. CR 89. U.S.C. 00530 7-77 A1

Re: Investigation and
Recommendation

Dear Director:

This writer is enclosing informa-
tion and requesting of your office
an investigation into the lack of
interest and concern committed by
Bureau of Prisons officials wrong-
ful acts mainly toward this writer:
Retaliation, Sexual Harassment,
Cruel and Unusual Punishment.
But this writer want is to have the
retaliated disciplinary report Removed
from this Prison Jacket.     Respectfully,



U.S. Department of Justice

Federal Bureau of Prisons

Washington, D.C. 20534

December 8, 2006

MEMORANDUM FOR SUZANNE HASTINGS, WARDEN
                USP BIG SANDY, KY

FROM:          John Dignam, Chief
               Office of Internal Affairs

SUBJECT:       OIA Complaint No. 2007-C-00203

The Office of Internal Affairs (OIA) received the attached
correspondence. This matter is being referred to your office for
disposition as indicated below.

/ /  This matter is referred to your office for investigation.
     **Please provide OIA with a summary of your findings within
     thirty days.**

/X/  This matter is referred for appropriate disposition by
     institution management. A summary of your findings is not
     required by OIA. Should you determine misconduct has
     occurred, however, please make an appropriate referral back
     to OIA in accordance with policy.

Please contact us with any questions or concerns. Your support
and cooperation are appreciated.

Attachment

**E-MAILED**

_SBU_ - _Sensitive But Unclassified_

This subject addresses three specific issues in this complaint for constitutional reasons: 1) Does he has a constitutional right to Freedom of Speech when he witnessed unlawful acts committed by Bureau of Prisons (BOP)staff or foremen; 2) Does he has a constitutional right to exercise his religious belief without breaching security of the prison; 3) Does he has a right to be free from retaliatory acts committed by BOP officials, staff, foremen, and officers because he was exercising his right in U.S. Federal Court and the warden is the respondent?

A petitioner or plaintiff shall exercise his constitutional right whenever a matter arose concerning his rights being violated by prison officials, staff, foremen, or officers. To deny any protection that is afforded a prisoner may and will result in legal action being resolved by a U.S. Federal Court Judge or Magistrate. Furthermore, a prisoner shall be free from any acts of retaliation of BOP officials and staff. See Clark v. Stalder, 121 F3d 222,230(5ᵗʰ Cir. 1997). See the enclosed Exhibits ( 1-     ).

COMES NOW, Petitioner, _Mauror L. Glemmu - Bey_, protected by the First and Fourteenth Amendments which BOP officials have unconstitutionally infringed on his rights by use of its regulation, policy, or rule that abridge on his Freedom of Speech, religious belief, without harmed being doe for exercising such right(s).    Therefore, the First Amendment and the relevant prison regulation are not coterminous. *The precise contour of the First Amendment need to be determined whether protection of a prisoner right is secure.*

Courts have determined that incarceration does not divest prisoner of all constitutional protections. Inmates retain, for example, the right to be free from racial discrimination, Lee v. Washington, *** the right to due process, Wolff v. McDonnell, *** and, as relevant here, certain protections of the First Amendment Turner, ***. Also, the courts have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individual in society at large. In the First Amendment context, For instance, some rights are simply inconsistent with the status of a prisoner or "with the legitimate penological objectives of corrections system, "Pell v. Procunier ***.

While Turner, the court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims; "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *** According to this standard, four factors are relevant. First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [And neutral] governmental interest put forward to justify it." *** If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in favor. *** In addition, courts should consider three other factors: the existence of alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the absence of ready alternatives: available to the prison for achieving the governmental objectives ***

This subject request a test to determine and evaluate whether prisoner's First Amendment challenges, the protection to use "Adulteress" when he had witnessed a female and male [not marry to each other] by kissing and rubbing on one another secretly during working hours for the BOP."

Subject argues that the BOP rule, regulation, or policy that governs disciplinary proceedings does not state or make clear what remarks are violative of BOP disciplinary status. When subject made that remark ["you're an adulteress"] it was innocent where there are no guidelines for determining what remarks are unwarranted. In fact, however, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark be made in violation. BOP disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior." However, to allow such punish to go unsolved means that the punishment is a backdoor tool for punishing the subject. This forms an act of retaliation in this manner is unacceptable as a result of unconstitutional application of the rule, regulation, or policy.

Petitioner states the purpose for penological interest rules are required but inappropriate if or when they steps on a prisoner. First and Fourteenth Amendments rights. Subject has not done anything wrong. Frat-

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRIS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Warden S.R. Hastings | 6-10-05 USP ADM-0 |
| FROM: Dennison BEY, Mi | REGISTER NO.: 01723-0 |
| WORK ASSIGNMENT: Unicor | UNIT: B1    II 310 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action be
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Why are BP 8 OR 8.5 (Administra-
tive Remedy complaint) is not
Answered, NOP copies of such com-
plaint is given to the inmate?
Without the reply from the informal
complaint, may slow the processing
of the administrative complaint.
Therefore, it is Requested that it
a copy be provided to the inmate
when there is NO reply given from
prison officials.
CC: Inmate File          CC: CF File
                    (Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| B. [signature] Acting Warden Secretary | 7-26-05 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct
and BP-S148.070 APR 94

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISO

| TO:(Name and Title of Staff Member) Ms Greene - Case Manager | DATE: 7-21-05 |
|---|---|
| FROM: Coleman Bey, M. | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1   #114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action be:
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Ms. Greene, You were given on 7-20-05
the copy of the disciplinary Report filed
against me. I am Requesting that copy back
to see whether it has been altered. If
you desire to interfere with this administrative
remedy complaint thru the court will be
notified. See Bradley v Hall 64 F3d 1276
(C.A. 9 (Or.) 1955). Also, I've never received
from the Warden's office stating the previous
Appeal was unacceptable, meaning its due date
is Near... 8-5-05 or 8-10-05
CC: Handwritten copy / Inmate's File
              (Do not write below this line)

DISPOSITION:

Inmate given copy on
7/22/05

| Signature Staff Member 7/22/05 | Date E J Greene |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct
and BP-S148.070 APR 94

Mothers

Petitioner has enclosed information concerning this mistreatment and deprivation of a Constitutional Right; a right to Freedom of Speech and practice. Had not petitioner witnessed such illegal act then he would had been disrespectful. It is not requested that this court acts on this matter which petitioner believes it does not have jurisdiction to do so, but he need to make the court aware of the Retaliation and mistreatment he is experiencing from BOP officials. But petitioner do ask this court for an address he can write to regarding the tampering and altering of the enclosed disciplinary by BOP staff. Petitioner thanks Your for its time and concern. Also, Petitioner makes known to the court

he will submit a copy of the foregoing letter along with its additional information to the Representatives in Civil Action No. 05-158-DCR or 05-158-PEP: To Cheryl D. Morgan, Asst. U.S. Atty, at 110 W. Vine St. Ste 400, Lexington, KY 40507-1671 and

Margaret J. Chriss, Asst. U.S. Atty, at 555 Fourth Street, N.W., Special Proceedings Section (10th Floor), Washington, D.C. 20530, on this 9th day of August, 2005.

Respectfully submitted,

Monroe L. Coleman-Bey

Monroe L. Coleman-Bey
#01723-016 USP BSY
P.O. Box 2068
Inez, KY 41224

U.S. DEPARTMENT OF JUSTICE                           REQUEST FOR ADMINISTRATIVE REMEDY

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

From: COLEMAN Monroe L.          01743-006        B3       USP. BSY
         LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Part A— INMATE REQUEST  ❑ RETALIATION: After being let out of seg under-
sign (UdSN) learned of Jackson has been telling inmates UdSN told
him about Mrs K Moore; several pieces of property missing; his
shower shoes were intentionally not placed in his property; An extra
day was added to the D.R. penalty; 7-30-05, Case Mngr Ms Greene was
given UdSN copy of the D.R. to make a copy which she intentionally
refused & denied to give back. She then called Case Mngr Rogers to
the unit. UdSN repeatedly was refused that copy back; 7-22-05 UdSN
served Ms Greene an Inst'l Request regarding after altering
evidence (see enclosure). This D.R. is not the very same D.R.
given to her; 7-21-05, UdSN mail was given to him at or around
11:24 pm though he received mail at Mail Call; ~~xxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

7-23-05                                    Coleman Monroe
DATE                                        SIGNATURE OF REQUESTER

Part B— RESPONSE


_____         _____
        DATE                                    WARDEN OR REGIONAL DIRECTOR
_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: _____

                                            CASE NUMBER: _____

Part C— RECEIPT

Return to: _____
                LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____         _____
        DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)      BP-229(13)
USP LVN                                                                            APRIL 1982

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 20, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP     UNT: D/E     QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE,  IN 47802

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 418189-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED   : JULY 17, 2006
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO :

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

REJECT REASON 2: SEE REMARKS.

REMARKS         : CONCUR WITH THE INSTITUTION'S RATIONALE FOR
                  REJECTING THIS APPEAL.

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Coleman, Monroe     01723-016     D-1     USP T. Haute
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**  This complaint is based on Cruel and Unusual Punishment committed by DOP Staff and officers along with orderly prisoners in at USP/FCI Atlanta; while he was in the holdover Unit. Something needs to be done about Atl... DOP/CFR §542.14 Initial filings; McCarty v Madigan, 503 U.S. 140, 117 L Ed 2d 291, 112 S Ct 1081 (1991).

6-29-06
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
JUNE 2002

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 19, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTH CENTRAL REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP     UNT: D/E     QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE,  IN 47802

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 415189-R1       REGIONAL APPEAL
DATE RECEIVED   : JUNE 14, 2006
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

U.S. Department of Justice  1-11-06

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: W. Brown, Mongove C. 01773-016  D-1  USP Terre Haute
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**      "CRUEL AND UNUSUAL PUNISHMENT"

While housed in USP/FCI ATLANTA, this prisoner was forced to live in a 3 men's cell that was designed for only 2 prisoners; his meals were cold or warm; he was not given the correct food portion unless he paid commissary to other prisoners who were considered orderlies while the warden, his assistant wardens, counselors, unit manager, unit case manager, and other officers turned their heads on these matters; this prisoner was not allowed to use the holdover library anytime after the one or less hour recreation time period(see PS 1315.07)(Case #7:05-00159DCR); this prisoner's clean sheets and towels were slided on the floor under the cell doors which the floor was always dirty; he was deprived of administrative remedy forms; and no fruits were allowed to be eaten by him as well as receiving a poor man's meals differently from what the compound was eating along with a lesser portion; mattresses were filthy from the floor use; food and rodents' feces were on most mattresses; some were wet or completely unfit to sleep on. This prisoner had his mother to make a citizen complaint to: Member of Congress Hon. Eleanor Holmes Norton regarding the conditions of that Holdover Unit.

6-06-06                    W. Brown ln.
DATE                       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

JUN 16 ...

DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE            CASE NUMBER: 415189- R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

cont'd page 2.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit Manager each should be investigated by conducting a desk audit during the months of February and March, 2006. The head orderly assigned inmates to all cells and for commissary only two would be placed in the same cell unless 3 were necessary due to crowd- ingness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be investigated which this writer had his mother make a citizen's complaint against the named prison especially when administrative complaint forms are not made available to "holdover prisoners". However, the federal courts have agreed that if a complaint amounts to constitutional magnitude of the prisoner's rights then his complaint is never untimely; just the fact that he tried and attempted to exhaust the remedy is sufficient for court's review.

The policy and procedures of Oklahoma City Federal Detention/ Holdover Center need to be adopted by and applied to USP/FCI Atlanta. There was one officer per unit of 100 and more prisoners in that Oklahoma Center while the prisoners had recreation period of all day seven days a week while USP/FCI Atlanta had four officers which the prisoners were only allowed one hour or less for recreation. What was the needed reason for four officers compared to one per unit?

### Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.                                Reg. No. 01723-016
*USP Terre Haute, IN 01-2006*

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

_____                          ___5/02/06___
Michael A. Zenk, Warden                                    Date

REJECTION NOTICE – ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE,   IN 47802


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID     : 415185-F1    ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED : JUNE 1, 2006
SUBJECT 1     : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2     : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS
                (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                ABOUT.

Attachment 1
Page 2 (front)
THA-1330.13B

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

### ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: Glennon, m.    REG. NO.: 01723-096 UNIT: D-1

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 5-15-06

NATURE OF COMPLAINT: USP Atlanta/FCI Atlanta
Holdover Unit - Its treatment and Care is Cruel
and Unusual Punishment - Regarding D.C. Prisoners)

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: The time allotted
to file this conduct has elapsed. This should have
been filed while you were at FCI Atlanta.

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION
ATTEMPT:_____

_____

INFORMAL RESOLUTION WAS ACCOMPLISHED:_____
                                                    DATE

INMATE'S SIGNATURE: _____
                    SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
                                    RESOLUTION

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Coleman, Monroe L.__  __01723016__  __D-1__  __Terre Haute USP__
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST while this prisoner was Housed at USP/
FCI Atlanta He was not issued or given A **Hot**
meal unless He paid the orderlies commissary...
the Holdover status consisted of three men in
a cell for two while one slept on the floor; mice
running in and out the cells, Roaches, No fruit
was issued during the meals; the meals were
not the same as the general population 9 out of
10 times; He was not allowed to see PA until after
3 or 4 weeks; and received less than one hr recreation,

__5-24-06__  "Cruel & Unusual   __C. Coleman jr.__
DATE          Conditions "              SIGNATURE OF REQUESTER

Part B- RESPONSE



See Attachment

_____                    _____
DATE                                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                 CASE NUMBER _____

                                           CASE NUMBER _____

Part C- RECEIPT

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT _____

_____                    _____
DATE                                       RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

_____          _____
DATE                            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____          _____
DATE                            REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**          CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

Regional Service Office    6-12-06
North Central Region
4th & State Avenue
Gateway Twr II 8th Floor
Kansas City, Kansas 66101

RE:    A FOIA Complaint, See
       Adm. Remedy #385436-F1
       5 USCS §552, N. 863


Dear Director:


U.S. Congress in USCS §552
(a)(4)(B) has allowed for sep-
arate complaint files under
Freedom of Information Act

before a federal court obtains
jurisdiction to enjoin withhold-
ing of official information,
since to hold to contrary
would give undue precedence
to Freedom of Information Act
requests in and of discovery
over all other requests under
that Act. Burrell v. Rodgers
(1977, WD Okla) 438 F. Supp
25, 25 FR Serv 2d 1130.

Withal is requested from your
office: (1) the release of
any and all BOP, information

- 2 -

DEC-11-2006 MON 05:36 PM US Dept of Justice          FAX NO. 13128867065          P. 12

BP-S288.052 INCIDENT REPORT CDFRM          135170 ew
MAY 1994                                    1351770
U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

1. Name Of Institution:
                        Part I - Incident Report

| 2. Name Of Inmate Monroe L. Coleman | 3. Register Number 01723-016 | 4. Date Of Incident 06/14/05 | 5. Time 03:15 P.M. |
|---|---|---|---|
| 6. Place Of Incident UNICOR FACTORY | 7. Assignment UNICOR ORDLY | 8. Unit B-1 | |

9. Incident: Insolence toward staff member (312)

11. Description Of Incident (Date: 06/15/05 Time: 03:15 P.M. Staff become aware of incident)

On 06-14 05 at approximately 3:15 while conducting pat searches in UNICOR, I instructed Inmate Coleman, Registration # 01723-016, to turn around so that I could conduct a pat search. He hesitated and walked towards Foreman Tacket to be pat searched. I then gave Inmate Coleman a direct order to come over so that I could perform the pat search. He stated that he didn't want me to put my hands on him. At that point, I escorted Inmate Coleman to the office to counsel him on pat down procedures. Inmate Coleman stated in a threatening tone that he did not want my adulteress hands to be placed on him. He also stated that my hands were to dirty to touch him. He proceeded to say that he knew that Mr. Burke and myself were seeing each other. As leaving the office he stated in front of several inmates and staff the commit about not wanting my adulteress hands on him. Prior to this particular event, I had all ready counseled Inmate Coleman for refusing pat down procedures.

| 12. Signature Of Reporting Employee | Date And Time 06/15/05 06:45 a.m | 13. Name And Title (Printed) Kimberly Moore , FWS |
|---|---|---|
| *Kimberly Moore* | | |
| 14. Incident Report Delivered To Above Inmate By | 15. Date Incident Report Delivered 6-15-05 | 16.time Incident Report Delivered 1008Am |
| G. WAHER | | |

                        Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident
Inmate admitted to making the statement to Ms. Moore.

| 18. A. It Is The Finding Of The Committee That You: ___ Committed The Following Prohibited Act. ___ Did Not Commit A Prohibited Act. | B. ___ The Committee Is Referring The Charge(s) To The DHO For Further Hearing. C. ___ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 20 Calendar Days. |
|---|---|

19. Committee Decision Is Based On The Following Information
Inmate's own Admission And the information provided IN the body of the Incident Report

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act) Change of Jobs
30 days Loss of comm. 30 days Loss of Phone privilages
to Start 6/18/2005 End 7/17/05

This is the copy from Ms Greene 7-22-05

# OFFICE OF INTERNAL AFFAIRS
## Investigative Routing Form
### Central Office

☑ / Professional List
☑ Inmate Profile (PP44)
☑ Check LawPack to Avoid Duplicate Case

Initials _C.M._  Date _2-28-06_                Entered By: _____

☐ Category 1- Criminal
☐ Category 2 - Administrative
☐ Category 3 - Open Case, Refer to Facility for Local Investigation
☐ Category 3 - Return to Institution for Inclusion on Monthly Report
☐ Open Complaint - Forward to CEO for Investigation (Response Required)
☐ Open Complaint - Prepare Request for Declaration (Response Required)
☐ Open / Close Complaint - Forward to CEO for Disposition (No Response Required)
☐ Open / Close Complaint for Record Keeping Purposes
☐ On-Site Investigation Requested
☐ PATRIOT ACT VIOLATION

Special Instructions:

Prior to OIG Referral
☐ Needs Injury Assessment
☐ Needs Supporting Documentation as noted above

_____              _3/1/2006_
Supervisory Management Analyst        Date

page 2 of 2.

been referred to the FBI for further investigation into her involve-
ment with that inmate. After learning of this new and similar matter
this writer wrote to the Warden, Ms. Suzanne Hastings inquiring into
his matter, which he'd learned that the Remedy No. 385436-F1 has not
been granted or denied but nothing has been done to correct the wrong
committed to him. During January, 2006, this writer was told indirect-
ly threatened by a prison official not to press his complaint which
can cause you more than it's worth; which probably meant segregation,
or transfer denied. This writer only want to be reassigned to his
job, recompensated for time lost from the job, and the disciplinary
report removed from his institutional jacket.

I thank you for your time and for any and all assistance you
may render unto this matter. Thanks!

Respectfully,

Monroe LaVelle Coleman-Bey
#01723-016
USP-BSY
P.O. BOX 2068
Inez, Kentucky 41224

BP-S238.052 INCIDENT REPORT    FRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE                135-170 aw
                                          1351770    FEDERAL BUREAU OF PRISONS

1. Name Of Institution:

Part I - Incident Report

| 2. Name Of Inmate Monroe L. Coleman | 3. Register Number 01723-016 | 4. Date Of Incident 06/14/05 | 5. Time 03:15 P.M. |
|---|---|---|---|
| 6. Place Of Incident UNICOR FACTORY | 7. Assignment UNICOR ORDLY | 8. Unit B-1 | |

9. Incident: Insolence toward staff member (312)

11. Description Of Incident (Date: 06/15/05 Time: 03:15 P.M. Staff become aware of incident)

On 06-14 05 at approximately 3:15 while conducting pat searches in UNICOR, I instructed Inmate Coleman, Registration # 01723-016, to turn around so that I could conduct a pat search. He hesitated and walked towards Foreman Tackte to be pat searched. I then gave Inmate Coleman a direct order to come over so that I could perform the pat search. He stated that he didn't want me to put my hands on him. At that point, I escorted Inmate Coleman to the office to counsel him on pat down procedures. Inmate Coleman stated in a threatening tone that he did not want my adulteress hands to be placed on him. He also stated that my hands were to dirty to touch him. He proceeded to say that he knew that Mr. Burke and myself were seeing each other. As leaving the office he stated in front of several inmates and staff the commit about not wanting my adulteress hands on him. Prior to this particular event, I had all ready counseled Inmate Coleman for refusing pat down procedures.

| 12. Signature Of Reporting Employee _Kimberly Moore_ | Date And Time 06/15/05 06:45 a.m | 13. Name And Title (Printed) Kimberly Moore , FWS | |
|---|---|---|---|
| 14. Incident Report Delivered To Above Inmate By _C. WAHER_ | | 15. Date Incident Report Delivered 6-15-05 | 16.time Incident Report Delivered 1008Am |

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident

Inmate admitted to making the statement to Ms. Moore.

18. A. It Is The Finding Of The Committee That You:
_____ Committed The Following Prohibited Act.

_____ Did Not Commit A Prohibited Act.

B. _____ The Committee Is Referring The Charge(s) To The DHO For Further Hearing.
C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 20 Calendar Days.

19. Committee Decision Is Based On The Following Information

Inmate's own Admission And the information provided IN the body of the Incident Report

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act) Change of Jobs

30 days Loss of comm. 30 days Loss of Phone privileges to Start 6/18/2005 End 7/17/05

DATE: AUGUST 15, 2005


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BIG SANDY USP

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 385436-F1
DATE RECEIVED  : AUGUST 12, 2005
RESPONSE DUE   : SEPTEMBER 1, 2005
SUBJECT 1      : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2      :
INCIDENT RPT NO:

This subject addresses three specific issues in this complaint for constitutional reasons; 1) Does he has a constitutional right to Freedom of Speech when he witnessed unlawful acts committed by Bureau of Prisons (BOP)staff or foremen; 2) Does he has a constitutional right to exercise his religious belief without breaching security of the prison; 3) Does he has a right to be free from retaliatory acts committed by BOP officials, staff, foremen, and officers because he was exercising his right in U.S. Federal Court and the warden is the respondent?

A petitioner or plaintiff shall exercise his constitutional right whenever a matter arose concerning his rights being violated by prison officials, staff, foremen, or officers. To deny any protection that is afforded a prisoner may and will result in legal action being resolved by a U.S. Federal Court Judge or Magistrate. Furthermore, a prisoner shall be free from any acts of retaliation of BOP officials and staff. See Clark v. Stalder, 121 F3d 222,230(5th Cir. 1997). See the enclosed Exhibits ( 1-    ).

COMES NOW, Petitioner, Maurol L. Coleman-Bey, protected by the First and Fourteenth Amendments which BOP officials have unconstitutionally infringed on his rights by use of its regulation, policy, or rule that abridge on his Freedom of Speech, religious belief, without harmed being doe for exercising such right(s).    Therefore, the First Amendment and the relevant prison regulation are not co-terminous. *The precise contour of the First Amendment need to be determined whether protection of a prisoner right is secure.*

Courts have determined that incarceration does not divest prisoner of all constitutional protections. Inmates retain, for example, the right to be free from racial discrimination, Lee v. Washington, *** the right to due process, Wolff v. McDonnell, *** and, as relevant here, certain protections of the First Amendment Turner, ***. Also, the courts have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individual in society at large. In the First Amendment context, For instance, some rights are simply inconsistent with the status of a prisoner or "with the legitimate penological objectives of corrections system, "Pell v. Procunier ***.

While Turner, the court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims; "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *** According to this standard, four factors are relevant. First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [And neutral] governmental interest put forward to justify it." *** If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in favor. *** In addition, courts should consider three other factors:  the existence of alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the absence of ready alternatives: available to the prison for achieving the governmental objectives ***

This subject request a test to determine and evaluate whether prisoner's First Amendment challenges, the protection to use "Adulteress" when he had witnessed a female and male [not marry to each other] by kissing and rubbing on one another secretly during working hours for the BOP."

Subject argues that the BOP rule, regulation, or policy that governs disciplinary proceedings does not state or make clear what remarks are violative of BOP disciplinary status.  When subject made that remark ["you're an adulteress"] it was innocent where there are no guidelines for determining what remarks are unwarranted. In fact, however, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark is made in violation. BOP disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior." However, to allow such punish to go unsolved means that the punishment is a backdoor tool for punishing the subject. This forms an act of retaliation in this manner is unacceptable as a result of unconstitutional application of the rule, regulation, or policy.

Petitioner states the purpose for penological interest rules are required but inappropriate if or when they steps on a prisoner First and Fourteenth Amendments rights. Subject has not done anything wrong. Frat-

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP     UNT: B UNIT     QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 384167-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED    : OCTOBER 3, 2005
SUBJECT 1        : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS          : WE CONCUR WITH THE REGIONAL OFFICE.

--\--

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO :  MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L
      P.O. BOX 2067
      INEZ,   KY 41224


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 389168-R1     REGIONAL APPEAL
DATE RECEIVED   : SEPTEMBER 16, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 385169-R1      REGIONAL APPEAL
DATE RECEIVED  : SEPTEMBER 16, 2005
SUBJECT 1      : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 369170-R1      REGIONAL APPEAL
DATE RECEIVED   : SEPTEMBER 16, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID          : 369160-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED      : OCTOBER 3, 2005
SUBJECT 1          : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2          :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY. YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS          : WE CONCUR WITH THE REGIONAL OFFICE.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO : MONROE L. COLEMAN, 01763-086
     BIG SANDY USP     UNT: E UNT     QTR: B01-114L
     P.O. BOX 2067
     INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 389170-A1     CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 3, 2005
SUBJECT 1       : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2       :
INCIDENT RPT NO.:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REMARKS         : WE CONCUR WITH THE REGIONAL OFFICE.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 61722-016
      BIG SANDY USP    UNT: B UNIT    QTR: B01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID     : 390572-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED : OCTOBER 3, 2005
SUBJECT 1     : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2     :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY. YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 4, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01743-016
      BIG SANDY USP     UNT: D UNIT    QTR: D01-114L
      P.O. BOX 2067
      INEZ, KY 41224

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 390574-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : OCTOBER 4, 2005
SUBJECT 1       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2       : ADMINISTRATIVE REMEDY PROCEDURES
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY.  YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

EDERAL BUREAU OF PRISONS

Office of Internal Affairs

| ROUTING AND TRANSMITTAL SLIP | Date | 1/22/07 | | |
|---|---|---|---|---|
| TO: | | | Initial | Date |
| 1. Valerie | | | | 1/22/07 |
| 2. Lloyd | | | | 1/22/07 |
| 3. John | | | | 1/22/07 |
| | | | | |
| | | | | |

| Action | | File | | Note and Return |
|---|---|---|---|---|
| Approval | | For Clearance | | Per Conversation |
| As Requested | | For Correction | | Prepare Reply |
| Circulate | | For Your Information | | See Me |
| Comment | | Investigate | X | Signature |
| Coordination | | Justify | | Returned |

REMARKS

Cover memo for OIG report for 2006-00810.

# OFFICE OF INTERNAL AFFAIRS
## Investigative Routing Form
### Central Office

☑   Professional List
☑   Inmate Profile (PP44)
☒   Check LawPack to Avoid Duplicate Case

Initials _CM_   Date _12·7·05_

☑   Category 1- Criminal
☐   Category 2 - Administrative
☐   Category 3 - Open Case, Refer to Facility for Local Investigation
☐   Open Complaint - Forward to CEO for Investigation (Response Required)
☐   Open Complaint - Prepare Request for Declaration (Response Required)
☐   Open / Close Complaint - Forward to CEO for Disposition (No Response Required)
☐   Open/Close Complaint for Record Keeping Purposes
☐   On-Site Investigation
☐   PATRIOT ACT VIOLATION

Special Instructions:

_Excessive Force_

_Sexual Abuse 10/21/2005_

Prior to OIG Referral
☐   Needs Injury Assessment
☐   Needs Supporting Documentation as noted above

_/s/_                          _12/8/2005_

Brian Ross                          Date
Supervisory Special Agent

# OFFICE OF INTERNAL AFFAIRS
## Investigative Routing Form
### Central Office

☑ Professional List
☑ Inmate Profile (PP44)
☐ Check LawPack to Avoid Duplicate Case

Initials _____ Date _11-15-06_                    Entered By: _____

☐ Category 1- Criminal
☐ Category 2 - Administrative
☐ Category 3 - Open Case, Refer to Facility for Local Investigation
☐ Category 3 - Return to Institution for Inclusion on Monthly Report
☐ Open Complaint - Forward to CEO for Investigation (Response Required)
☐ Open Complaint - Prepare Request for Declaration (Response Required)
☐ Open / Close Complaint - Forward to CEO for Disposition (No Response Required)
☐ Open / Close Complaint for Record Keeping Purposes
☐ On-Site Investigation Requested
☐ PATRIOT ACT VIOLATION

Special Instructions:

_____

Prior to OIG Referral
☐ Needs Injury Assessment
☐ Needs Supporting Documentation as noted above


_____          _____
Supervisory Management Analyst          Date

## FEDERAL BUREAU OF PRISONS
### Office of Internal Affairs

01 - 26 - 2007                                                                 Page 2 of 2

---

### EVENTS

Date Scheduled  10.14.2006     Suspense/Due Date  04/14/2006     Description  ON-GOING OIG INVESTIGATION

Comments

---

### CASE STATUS

Status  CLOS          Disposition  ADMN          Close Date  01/26/2007

ATTACHMENT A

# PARTIAL RELEASE

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Coleman Bey, Monroe L.__  __01723-016__  __B1__  __Big Sandy__
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST   Appeal    I Have A 1st Amendment Right to Freedom of Speech and Religious practice. According to my religious belief and practice of the Holy Bible (Sirach 23; 22-27) those words of "you are an adulterous" are not violative to be considered insolence as charged in the disciplinary report that I was charged with, especially when I witnessed [(b)(6), (b)(7)c, (b)(7)f] fraternizing with [(b)(6), (b)(7)f] on the stairway. In Sirach 23: states in the first place SHU has the laws of the High. In the second place [(b)(7)f, (b)(7)c, (b)(6)] And in the third place [(b)(7)f, (b)(7)c, (b)(6)] my comm, thing no Adultery.... Due to just comins out of SHU when my councilor or case-manager wasn't available).

7-20-05
DATE

C. Bey, au.
SIGNATURE OF REQUESTER

Part B- RESPONSE

_____
DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

WARDEN OR REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE    CASE NUMBER: __385189-F1__

Part C- RECEIPT    CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

JUN-12-2006 MON 05:36  .. US Dept of Justice          (b)(2)Low                    P. 22

Regional Direct's Office                    6-12-06
North Central Region
4th & State Avenue
Gateway Two II 8th Floor
Kansas City, Kansas 66101

Re:     A FOIA Complaint, See
        Adm. Remedy #385436-F1
        5 USCS §552, N. 863


Dear Director:


U.S. Congress in USCS §552
(a)(4)(B) has allowed for sep-
arate complaint filed under
Freedom of Information Act

DEC-11-2006 MON 05:38 ... US Dept of Justice    P. 23

...ng of official information,
since to hold to contrary
would give undue precedence
to Freedom of Information Act
requests in aid of discovery
over all other requests under
this Act. Burrell v. Rodgers
(1977, WD Okla) 438 F. Supp
25, 23 FR Serv 2d 1130.
What is requested from your
office: (1) the release of
any and all BOP's informa-

— 2 —

Action Regarding former burea...

(b)(7)f, (b)(7)c, (b)(6)

for USP Big Sandy, Inez,
Kentucky; and (2) removal
of disciplinary report files by

(b)(7)f, (b)(7)c, (b)(6)

Based on proven facts by
USP Big Sandy's staff, the
accusation made by this
writer confirms the inappro-
priate and improper acts of

(b)(7)f, (b)(7)c, (b)(6)

in viola-
tion of US 3420.09 basically

-3-

in its entirety. However, since
the filing of the above No.

[(b)(6), (b)(7)c, (b)(7)f]

position due to those wrong-
ful acts. Therefore, this re-
quest for disciplinary removal
should be granted. Thank you.

Respectfully,

Howard L. Coleman
USP Terre Haute
Reg No. 01723-016
P. O. Box 12015
Terre Haute, IN
47801

— 4 —

JUN-11-2008 MON 05:30 PM US Dept of Justice        FAX NO. 2)Low                    P. 28

Regional Director's Office
Dept. of Justice-Bureau of Prisons                    Dated: 6-25-06
320 First Street, N.W.
Washington, D.C. 20001

RE:  Administrative Remedies:     385436-F1, 385189-R2, 389169-A1,
                                  358189-F1, 389167-A1, 389168-R1,
                                  389169-R1, 369170-R1, 389168-A1,
                                  389170-A1, 390573-A1, & 390574-A1.

        The foregoing shall serve as my request for informal resolution
of the following issues, as required under Bureau of Prisons Program
Statement #1330.13.


                        ISSUES PRESENTED FOR REVIEW


        USP Big Sandy located in Inez, Kentucky is where undersign
filed an institutional complaint regarding Sexual Harassment com-
mitted by [(b)(6), (b)(7)c, (b)(7)f]

                                                  2) Retaliation
committed by BOP officers and officials against the undersign
for calling [(b)(6), (b)(7)c, (b)(7)f]

                                          an "Adulturess";
aand 3) BOP officials, disciplinary hearing officers, along with
[(b)(6), (b)(7)c, (b)(7)f]

                    violated undersign Constitutional Rights under
the language of Freedom of Speech.

        Specifically, the BOP officials have refused and denied to
remove the "Insolence" disciplinary report from the Cenral Files
of the undersign as well as making such a request which the disci-
plinary should had not had lefted the institution when officials
knew she had or was under previous investigation by BOP staff.
[(b)(7)f, (b)(7)c, (b)(6)]

                                          nvolvement in

DEC-11-2006 MON 05:35 PM US Dept of Justice          FAX NO. (b)(2)Low          P. 27

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 20, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE, IN 47802

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 415189-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : JULY 17, 2006
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

REJECT REASON 2: SEE REMARKS.

REMARKS         : CONCUR WITH THE INSTITUTION'S RATIONALE FOR
                  REJECTING THIS APPEAL.

DEC-11-2006 MON 05:36 PM US Dept of Justice          FAX NO. (202)Low                    P. 26

U.S. Department of Justice
Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

From: (b)(6)                          REG. NO. 01223-016        D-7        USP T. Haute
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.              UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**

This complaint is based on Cruel and Unusual Punishment committed by BOP staff and officers along with orderly prisoners in at USP/FCI Atlanta; while he was in the holdover Unit. Something needs to be done about Atl... BOP/CFR §542.14 Initial filing; McCarthy v Madigan, 503 U.S. 140, 117 L Ed 2d 291, 112 S Ct 1081 (1991).

6-29-06
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

[stamp: RECEIVED JUL 17 Administrative Remedy Section]

_____
DATE
ORIGINAL RETURN TO INMATE                           GENERAL COUNSEL

**Part C - RECEIPT**                                CASE NUMBER: _____

                                                    CASE NUMBER: _____
Return to: _____
SUBJECT: _____
         LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

_____
DATE                        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

                                                                    BP-231(13)
                                                                    JUNE 2002

DEC-11-2006 MON 05:39 PM US Dept of Justice          FAX NO. (b)(6), (b)(7)(C)                P. 29

DATE: JUNE 19, 2006

FROM: N. Fields
ADMINISTRATIVE REMEDY COORDINATOR
NORTH CENTRAL REGIONAL OFFICE

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE, IN 47802

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 415189-R1        REGIONAL APPEAL
DATE RECEIVED   : JUNE 14, 2006
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY.  INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

SEP-11-2006 MON 05:39 A US Dept of Justice                FAX NO. (...)Low                        P. 32

U S Department of Justice                                **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13, including any attachments must be submitted with this appeal.

From: Olsman, Monroe L.    01723-011    D-1    USP Terre Haute
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL    "CRUEL AND UNUSUAL PUNISHMENT"

While housed in USP/FCI ATLANTA, this prisoner was forced to live in a 3 men's cell that was designed for only 2 prisoners; his meals were cold or warm; he was not given the correct food portion unless he paid commissary to other prisoners who were considered orderlies while the warden, his assistant wardens, counselors, unit manager, unit case manager, and other officers turned their heads on these matters; this prisoner was not allowed to use the holdover library anytime after the one or less hour recreation time period(see PS 1315.07)(Case #7:05-00158DCR); this prisoner's clean sheets and towels were slided on the floor under the cell doors which the floor was always dirty; he was deprived of administrative remedy forms; and no fruits were allowed to be eaten by him as well as receiving a poor man's meals differently from what the compound was eating along with a lesser portion; mattresses were filthy from the floor use; food and rodents' feces were on most mattresses; some were wet or completely unfit to sleep on. This prisoner had his mother to make a citizen complaint to: Member of Congress Hon. Eleanor Holmes Norton regarding the conditions of that Holdover Unit.

6-06-06
DATE                                                                    Olsman m.
                                                        SIGNATURE OF REQUESTER

Part B - RESPONSE

JUN 14 2006

_____                              _____
DATE                                                 REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE

Part C - RECEIPT                                     CASE NUMBER: 415189-R1

                                                     CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL

SUBJECT _____    _____    _____    _____
                            REG. NO.            UNIT                INSTITUTION

_____
DATE                        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

DEC-11-2006 MON 05:__ _M US Dept of Justice                    FAX NO.    .2)Low                    P. 3

_ _ Department of Justice

_____ _____ __ _____                                    **Regional Administrative Remedy Appeal**

_____

_____ If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted _____

From: _____    _____    _____    _____
        LAST NAME, FIRST, MIDDLE INITIAL                REG. NO.            UNIT            INSTITUTION

**Part A - REASON FOR APPEAL**        "CRUEL AND UNUSUAL PUNISHMENT"

(While housed in USP/FCI ATLANTA, this prisoner was forced to live in a 3 man's
cell that was designed for only 2 prisoners; his meals were cold or warm; he was
not given the correct food portion unless he paid commissary to other prisoners
who were considered orderlies while the warden, his assistant wardens, counselors,
unit manager, unit case manager, and other officers turned their heads on these
matters; this prisoner was not allowed to use the holdover library anytime after
the one or less hour recreation time period(see PS 1315.07)(Case #7:05-02153PCR);
this prisoner's clean sheets and towels were slided on the floor under the cell
doors which the floor was always dirty; he was deprived of administrative remedy
forms; and no fruits were allowed to be eaten by him as well as receiving a poor
man's meals differently from what the compound was eating along with a lesser
portion; mattresses were filthy from the floor use; food and rodents' feces
were on most mattresses; some were wet or completely unfit to sleep on.
This prisoner had his mother to make a citizen complaint to: Member of Congress
Hon. Eleanor Holmes Norton regarding the conditions of that Holdover Unit.

_____                            _____
        DATE                                            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
        DATE                                            **REGIONAL DIRECTOR**

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar
days of the date of this response.
SECOND COPY: RETURN TO INMATE

**Part C - RECEIPT**                                    CASE NUMBER: 418159-R1

                                                        CASE NUMBER: _____
Return to _____
        SUBJECT: _____    _____    _____    _____
                LAST NAME, FIRST, MIDDLE INITIAL                REG. NO.            UNIT            INSTITUTION

_____                            _____
        DATE                                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

                                                                                BP-230(13)
                                                                                JUNE 2002

DEC-11-2006 MON 05:30 PM US Dept of Justice          FAX NO. 2)Low          P. 02

cont'd page 2.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit Manager each should be investigated by conducting a desk audit during the months of February and March, 2006. The head orderly assigned inmates to all cells and for commissary only two would be placed in the same cell unless 3 were necessary due to crowd-ingness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be investigated which this writer had his mother make a citizen's complaint against the named prison especially when administrative complaint forms are not made available to "holdover prisoners". However, the federal courts have agreed that if a complaint amounts to constitutional magnitude of the prisoner's rights then his complaint is never untimely; just the fact that he tried and attempted to exhaust the remedy is sufficient for court's review.

The policy and procedures of Oklahoma City Federal Detention/ Holdover Center need to be adopted by and applied to USP/FCI Atlanta. There was one officer per unit of 100 and more prisoners in that Oklahoma Center while the prisoners had recreation period of all day seven days a week while USP/FCI Atlanta had four officers which the prisoners were only allowed one hour or less for recreation. What was the needed reason for four officers compared to one per unit?

DEC-11-2006 MON 05:38 ... US Dept of Justice          FAX NO. [____]Low          P. 33

Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.

*USP Terre Haute, D 01-206 U*          Reg. No. 01723-016

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

*Michael A. Zenk*          5/02/06
Michael A. Zenk, Warden          Date

JET-11-2006 MON 05:55 PM US Dept of Justice          FAX NO. N(2)Low          P. 34

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO : MONROE L COLEMAN, 01723-016
     TERRE HAUTE USP      UNT: D/E      QTR: D01-206U
     4700 BUREAU ROAD SOUTH
     TERRE HAUTE, IN 47802

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 410189-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : JUNE 1, 2006
SUBJECT 1      : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2      : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

DEC-11-2006 MON 05:39 PM US Dept of Justice            FAX NO.             P. 05

cont'd page 2.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit
Manager each should be investigated by conducting a desk audit
during the months of February and March, 2006.  The head orderly
assigned inmates to all cells and for commissary only two would
be placed in the same cell unless 3 were necessary due to crowd-
ingness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be
investigated which this writer had his mother make a citizen's
complaint against the named prison especially when administrative
complaint forms are not made available to "holdover prisoners".
However, the federal courts have agreed that if a complaint
amounts to constitutional magnitude of the prisoner's rights
then his complaint is never untimely; just the fact that he
tried and attempted to exhaust the remedy is sufficient for
court's review.

The policy and procedures of Oklahoma City Federal Detention/
Holdover Center need to be adopted by and applied to USP/FCI
Atlanta.  There was one officer per unit of 100 and more prisoners
in that Oklahoma Center while the prisoners had recreation period
of all day seven days a week while USP/FCI Atlanta had four
officers which the prisoners were only allowed one hour or less
for recreation.  What was the needed reason for four officers
compared to one per unit?

DEC-11-2006 MON 05:39 PM US Dept of Justice          FAX NO.          P. 08

Attachment 1
Page 2 (front)
THA-1330.13B

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

### ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: Glenn, M.     REG. NO.: 01723-046 UNIT: D-1

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 5-15-06

NATURE OF COMPLAINT: USP Atlanta/FCI Atlanta Holdover Unit - Its treatment and Care is Cruel and Unusual Punishment - Regarding D.C. Prisoners)

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: The time allotted to file this complaint has elapsed. This should have been filed while you were at FCI Atlanta

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION ATTEMPT:

INFORMAL RESOLUTION WAS ACCOMPLISHED:

                                                    DATE

INMATE'S SIGNATURE:

SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
RESOLUTION

DEC-11-2006 MON 05:36 PM US Dept of Justice    FAX NO.        2)Low    P. 37

### Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.

*USP Terre Haute DO1-206 U*        Reg. No. 01723-016

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

_____        _____5/02/06_____
Michael A. Zenk, Warden                        Date

DEC-11-2006 MON 05:40 PM US Dept of Justice          FAX NO. [(b)(2)Low]                P. 20

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP     UNT: D/E     QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE, IN 47802

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 415189-F1     ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : JUNE 1, 2006
SUBJECT 1      : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2      : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

DEC-11-2006 MON 05:40 PM US Dept of Justice          FAX NO. (x-x2)Low                    P. 32

cont'd page 2.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit Manager each should be investigated by conducting a desk audit during the months of February and March, 2006.  The head orderly assigned inmates to all cells and for commissary only two would be placed in the same cell unless 3 were necessary due to crowd-inness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be investigated which this writer had his mother make a citizen's complaint against the named prison especially when administrative complaint forms are not made available to "holdover prisoners". However, the federal courts have agreed that if a complaint amounts to constitutional magnitude of the prisoner's rights then his complaint is never untimely; just the fact that he tried and attempted to exhaust the remedy is sufficient for court's review.

The policy and procedures of Oklahoma City Federal Detention/ Holdover Center need to be adopted by and applied to USP/FCI Atlanta.  There was one officer per unit of 100 and more prisoners in that Oklahoma Center while the prisoners had recreation period of all day seven days a week while USP/FCI Atlanta had four officers which the prisoners were only allowed one hour or less for recreation.  What was the needed reason for four officers compared to one per unit?

LEC-11-2000 MON 05:40 .4 US Dept of Justice          FAX NO.[b)__Low                P. 40

Attachment 1
Page 2 (front)
THA-1330.13B

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

## INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

## ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: Coleman, M.    REG. NO.: D1723-016 UNIT: D-1

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 5-15-06

NATURE OF COMPLAINT: USP Atlanta/FCI Atlanta Holdover Unit - Its treatment and Care is Cruel and Unusual Punishment - Regarding D.C. Prisoners)

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: The time allotted to file this complaint has elapsed. This should have been filed while you were at FCI Atlanta

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION ATTEMPT: _____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____
                                                    DATE

INMATE'S SIGNATURE: _____
                SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
                              RESOLUTION

DEC-11-2006 MON 05:40 PM US Dept of Justice          FAX NO.  2)Low                    P. 4

## Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.                                    Reg. No. 01723-016
*USP Terre Haute D 01-206 u*

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

_____                    _5/02/06_
Michael A. Zenk, Warden                              Date

DEC-11-2006 MON 05:40 PM US Dept of Justice        FAX NO. (b)(2)Low        P. 42

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE, IN 47802

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 415189-F1
DATE RECEIVED   : JUNE 1, 2006        ADMINISTRATIVE REMEDY REQUEST
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS
                 (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED
                 ABOUT.

NOV-17-2008 MON 05:40 PM US Dept of Justice          FAX NO. [   ]Low                    P. 48

cont'd page 2.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit Manager each should be investigated by conducting a desk audit during the months of February and March, 2006. The head orderly assigned inmates to all cells and for commissary only two would be placed in the same cell unless 3 were necessary due to crowdingness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be investigated which this writer had his mother make a citizen's complaint against the named prison especially when administrative complaint forms are not made available to "holdover prisoners". However, the federal courts have agreed that if a complaint amounts to constitutional magnitude of the prisoner's rights then his complaint is never untimely; just the fact that he tried and attempted to exhaust the remedy is sufficient for court's review.

The policy and procedures of Oklahoma City Federal Detention/ Holdover Center need to be adopted by and applied to USP/FCI Atlanta. There was one officer per unit of 100 and more prisoners in that Oklahoma Center while the prisoners had recreation period of all day seven days a week while USP/FCI Atlanta had four officers which the prisoners were only allowed one hour or less for recreation. What was the needed reason for four officers compared to one per unit?

DEC-11-2006 MON 05:40 A US Dept of Justice          FAX NO. [u,2]Low                    P. 44

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

### Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

## ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: Coleman M.      REG. NO.: 01723-016 UNIT: D-1

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 5-15-06

NATURE OF COMPLAINT: USP Atlantra/FCI Atlanta Holdover Unit - Its treatment and Care is Cruel and Unusual Punishment - Regarding D (Prisoners)

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: The time allotted to file this complaint has elapsed. This should have been filed while you were at FCI Atlanta

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION ATTEMPT: _____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____

_____
DATE

INMATE'S SIGNATURE: _____

SIGNATURE INDICATES INMATE'S ACCEPTANCE OF RESOLUTION

DEC-11-2006 MON 05:40 .M US Dept of Justice          FAX NO. (one)Low                    P. 05

## Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.

*USP Terre Haute, IN 01-206 u*                         Reg. No. 01723-016

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

_____
Michael A. Zenk, Warden

_____5/02/06_____
                Date

DEC-11-2006 MON 05:40 PM US Dept of Justice    FAX NO. (b)(2)Low    P. 46

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO : MONROE L COLEMAN, 01723-016
     TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
     4700 BUREAU ROAD SOUTH
     TERRE HAUTE,  IN 47802

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 415189-F1    ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : JUNE 1, 2006
SUBJECT 1      : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2      : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND BOP REQUESTS
                 (BP-09, BP-10) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED (
                 ABOUT.

Holdover Unit: Counselor, Case Manager, Ms. Scott, and Unit Manager each should be investigated by conducting a desk audit during the months of February and March, 2006. The head orderly assigned inmates to all cells and for commissary only two would be placed in the same cell unless 3 were necessary due to crowdingness.

The entire "Holdover Unit" in the USP/FCI Atlanta needs to be investigated which this writer had his mother make a citizen's complaint against the named prison especially when administrative complaint forms are not made available to "holdover prisoners". However, the federal courts have agreed that if a complaint amounts to constitutional magnitude of the prisoner's rights then his complaint is never untimely; just the fact that he tried and attempted to exhaust the remedy is sufficient for court's review.

The policy and procedures of Oklahoma City Federal Detention/ Holdover Center need to be adopted by and applied to USP/FCI. Atlanta. There was one officer per unit of 100 and more prisoners in that Oklahoma Center while the prisoners had recreation period of all day seven days a week while USP/FCI Atlanta had had four officers which the prisoners were only allowed one hour or less for recreation. What was the needed reason for four officers compared to one per unit?

DEC-11-2006 MON 05:41 AM US Dept of Justice          FAX NO. Line2Low          P. 4

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman, Montvae L.    01723016    D-1    Terre Haute USP
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST While this prisonee was housek at USP/ FCI Atlanta He was not issued or given a Hot meal unless He paid the orderlies commissary... the Holdover status consisted of these men in a cell for two while one slept on the floor; mice was running in and out the cells, Roaches, no fruit not the same as the general population 9 out-of-10 times; He was not allowed to see PA until after 3 or 4 weeks; and received less than one hr recreation.

DATE 5-24-06    "Cruel & Unusual    SIGNATURE OF REQUESTER C. Coleman jr.
Conditions"

Part B- RESPONSE



See Attachment

DATE
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*    WARDEN OR REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

CASE NUMBER: _____
Part C- RECEIPT
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)
APRIL 1982

DEC-11-2006 MON 05:41 PM US Dept of Justice          FAX NO.                    P. 49

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman, Monroe C.   0172301E   D-1   Terre Haute
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A- INMATE REQUEST** While this prisoner was Housed at USP/
FCI Atlanta. He was not issued or given a Hot
meal unless he paid the orderlies commissary...
while Holdover status consisted of three men in
a cell for two while one slept on the floor; any
running in and out the cells; Roaches, no fruit
was issued doing the meals; the meals were
not the same as the general population; 9 out of
10 times; He was not allowed to see PA until
3 or 4 weeks; and received less than one HR recreation
5-24-06 "Cruel & Unusual   C. Monroe
         DATE    Conditions"              SIGNATURE OF REQUESTER

**Part B- RESPONSE**

See Attachment

_____
DATE                                      WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*
FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE        CASE NUMBER:_____

                                                        CASE NUMBER:_____
**Part C- RECEIPT**
Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT _____

_____                    ⊛        _____
DATE                                      RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229(13)
                                                                                      APRIL 1982

DEC-11-2006 MON 05:14 PM US Dept of Justice          FAX NO. (b)(2)Low          P. 50

U.S. DEPARTMENT OF JUSTICE                                 REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman, Monroe, C.          01723016          D-1          Terre Haute USP
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A- INMATE REQUEST  While this prisoner was housed at USP/
FCI Petersburg he was not issued or given a **Hot**
meal unless he paid the orderlies commissary...
the Holdover status consisted of three men in
a cell for two while one slept on the floor; Twice
was issued doing the meals; the meals, no fruit
not the same as the general population; 9 out of
10 times; He was not allowed to see PA until after
3 or 4 weeks; and received less than one hr recreation

5-24-06          "Cruel & Unusual          R Coleman
DATE              Conditions"          SIGNATURE OF REQUESTER

Part B- RESPONSE

See Attachment

_____
DATE

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.          WARDEN OR REGIONAL DIRECTOR

SECOND COPY: RETURN TO INMATE                                        CASE NUMBER: _____

Part C- RECEIPT                                                     CASE NUMBER: _____
Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                                    _____
DATE                                            RECIPIENT'S SIGNATURE (STAFF MEMBER)          BP-229(13)
                                                                                            APRIL 1982

DEC-11-2006 MON 05:41 PM US Dept of Justice          FAX NO. [602]Low          P. 01

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _Coleman, Maurice C._  _01722-16_  _D-1_  _____
         LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Part A- INMATE REQUEST _while this person was housed at this_
_FDC Atlanta he was not issued or given a Hot_
_meal unless he paid the orderlies commissary..._
_this Holdover status consisted of three men in_
_a cell here two while one slept on the floor, the_
_running he had out the cells, Ponchos, no fresh_
_but the same as the general population 9 out of_
_10 times, he was not allowed to see PA until at_
_2 or 4 weeks, and received less than one he received..._

_____ _____          _____
DATE                                                    SIGNATURE OF REQUESTER

Part B- RESPONSE

                                                    See Attachment

_____                              _____
DATE                                               WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE                        CASE NUMBER: _____
_____
                                                    CASE NUMBER: _____
Part C- RECEIPT
Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

_____          _____          _____
DATE                                               RECIPIENT'S SIGNATURE (STAFF MEMBER)
                                                                           BP-229(13)
                                                                           APRIL 1982

DEC-11-2006 MON 05:4: M US Dept of Justice          FAX NO. [·_2]Low                F. 53

Attachment 1
Page 2 (front)
THA-1330.13B

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

### ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: Coleman, M.   REG. NO.: 01723-016 UNIT: D-1

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 5-15-06

NATURE OF COMPLAINT: USP Atlanta/FCI Atlanta Holdover Unit - Its treatment and Care is Cruel and Unusual Punishment - Regarding D.C. Prisoners)

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: The time allotted to file this complaint has elapsed. This should have been filed while you were at FCI Atlanta.

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION ATTEMPT: _____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____

DATE

INMATE'S SIGNATURE: _____

SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
RESOLUTION

DEC-11-2006 MON 05:41 PM US Dept of Justice        FAX NO. [(b)(2)]Low        P. 55

## Response to Inmate Request to a Staff Member

Name: Coleman, Monroe L.                        Reg. No. 01723-016

*USP, Terre Haute D 01-206 U*

This is in response to your Inmate Request to Staff Member (Cop-Out), received March 27, 2006. You complained regarding the following: staff misconduct, lack of medical and dental care, and disproportion of food served and inadequate law library.

An investigation into your complaints reveals you arrived at this facility February 16, 2006, and were temporarily housed in holdover (DCU) status until your departure on March 27, 2006. Information reveals your unit team is accessible daily to report any staff misconduct. However, there is no information to reflect you made any effort to report any alleged misconduct. Additionally, inmates are provided a sign in sheet to request sick call and/or any other medical issues. Information reveals you received medical attention. There is no information, however, to indicate you requested treatment from dental. In regards to the food, the food service department ensures all food transported to the detention center meets the required temperature prior to serving to the inmates. Ordinarily, food service staff supervises the meal to ensure proper portions are being served. Moreover, the law library is equipped with reading and law material for all inmates in DCU. If there is a request for any specific material, you should submit a Cop-Out to the education department.

I trust this has addressed your concerns. Should you have any additional questions or concerns, I encourage you to discuss them with your unit team.

_____                    _5/0Z/06_
Michael A. Zenk, Warden                          Date

DEC-11-2006 MON 05:42 PM US Dept of Justice          FAX NO. (b)(2)Low          P. 54

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 1, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TERRE HAUTE USP

TO  : MONROE L COLEMAN, 01723-016
      TERRE HAUTE USP    UNT: D/E    QTR: D01-206U
      4700 BUREAU ROAD SOUTH
      TERRE HAUTE,  IN 47802


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 415166-F1         ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : JUNE 1, 2006
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
INCIDENT RPT NO :

REJECT REASON 1: ████████████████████████████████████████████████
                 ████████████████ 20 DAYS OF THE EVENT COMPLAINED █
                 ███████

# FEDERAL BUREAU OF PRISONS

## Office of Internal Affairs

11 - 28 - 2006

Page 1 of 1

| | | | |
|---|---|---|---|
| Matter ID | OIA-2007-C-00203 | OIG Case Number | |
| Region | MXR | Institution | BSY |
| Open Date | 11/27/2006 | Incident Date | |
| Closed Date | 11/27/2006 | Complaint Disposition | FRWD |

### COMPLAINT TOPIC

(b)(6), (b)(7)c, (b)(7)f     Complainant claims staff are retaliating against him.

### COMPLAINT SUMMARY

In an Request for Administrative Remedy inmate Monroe Coleman, #01723-016, claims his rights have been violated. Specifically, Coleman claims he was issued an incident report after calling (b)(7)f, (b)(7)c, (b)(6) and (b)(6), (b)(7)c, (b)(7)f adulterers" when he saw them kissing in the stairwell.

### SUBJECT INFORMATION

| | | | | |
|---|---|---|---|---|
| Subject Name | (b)(6), (b)(7)c, (b)(7)f | | SSN | (b)(6), (b)(7)c, (b)(7)f |
| Region | | Institution   BSY | Title | |
| Comments | | | | |
| Subject Name | (b)(6), (b)(7)c, (b)(7)f | | SSN | (b)(6), (b)(7)c, (b)(7)f |
| Region | | Institution   BSY | Title | |
| Comments | | | | |

### COMPLAINANT INFORMATION

Complainant Name   MONROE L. COLEMAN          Title/Inmate Reg. No. . 01723-016

### VICTIM INFORMATION

Victim Name        MONROE L. COLEMAN          Title/Inmate Reg. No.   01723-016

### EVENTS

Date Scheduled   11/27/2006      Suspense/Due Date  12/27/2006      Date Completed     11/27/2006

Description   OPENED/CLOSED RECORD KEEPING

# FEDERAL BUREAU OF PRISONS
## Office of Internal Affairs

11 - 28 - 2006

Page 1 of 1

| | | | |
|---|---|---|---|
| Matter ID | OIA-2007-0-02233 | OIG Case Number | |
| Region | MXR | Institution | BSY |
| Open Date | 11/27/2006 | Incident Date | |
| Closed Date | 11/27/2006 | Complaint Disposition | FRWD |

### COMPLAINT TOPIC

(b)(6), (b)(7)c, (b)(7)f

Complainant claims staff are retaliating against him.

### COMPLAINT SUMMARY

In an Request for Administrative Remedy inmate Monroe Coleman, #01723-016, claims his rights have been violated. Specifically, Coleman claims he was issued an incident report after calling (b)(7)f, (b)(7)c, (b)(6) (b)(6), (b)(7)c, (b)(7)f "adulterers" when he saw them kissing in the stairwell.

### SUBJECT INFORMATION

| | | | |
|---|---|---|---|
| Subject Name | (b)(6), (b)(7)c, (b)(7)f | SSN | (b)(6), (b)(7)c, (b)(7)f |
| Region | | Institution   BSY | Title |
| Comments | | | |
| Subject Name | (b)(6), (b)(7)c, (b)(7)f | SSN | (b)(6), (b)(7)c, (b)(7)f |
| Region | | Institution   BSY | Title |
| Comments | | | |

### COMPLAINANT INFORMATION

Complainant Name    MONROE L. COLEMAN          Title/Inmate Reg. No.    01723-016

### VICTIM INFORMATION

Victim Name    MONROE L. COLEMAN          Title/Inmate Reg. No.    01723-016

### EVENTS

Date Scheduled   11/27/2006   Suspense/Due Date   12/27/2006   Date Completed   11/27/2006

Description   OPENED/CLOSED RECORD KEEPING



Staff ID: (b)(6), (b)(7)c, (b)(7)f
F-M-L Name:
Short Name:
Soc. Sec. No.:
Date Of Birth:
Title:
Working Title:
Race:
Sex:
Pay Plan:
Series:
Grade:
Step:
Region: MXR        MID-ATLANTIC REGIONAL OFFICE
Facility: BSY        USP BIG SANDY
Bargaining Unit: 0010
Discipline: (b)(6)
Hazardous Duty Date:
Entered On Duty Date:
Separated Date:

Staff ID 
F-M-L Name
Short Name
Soc Sec No
Date Of Birth
Title
Working Title
Race
Sex
Pay Plan
Series
Grade
Step
Region: MXR    MID-ATLANTIC REGIONAL OFFICE
Facility: BSY    USP BIG SANDY
Bargaining Unit: (b)(6)
Discipline
Hazardous Duty Date
Entered On Duty Date
Separated Date



Staff ID: (b)(6), (b)(7)c, (b)(7)f
F-M-L Name:
Short Name:
Soc. Sec. No.:
Date Of Birth:
Title:
Working Title:
Race:
Sex:
Pay Plan:
Series:
Grade:
Step:
Region: MXR       MID-ATLANTIC REGIONAL OFFICE
Facility: BSY       USP BIG SANDY
Bargaining Unit: (b)(6)
Discipline:
Hazardous Duty Date:
Entered On Duty Date:
Separated Date:



Staff ID
F-M-L Name
Short Name
Soc. Sec. No.
Date Of Birth
Title
Working Title
Race
Sex
Pay Plan
Series
Grade
Step
Region: MXR     MID-ATLANTIC REGIONAL OFFICE
Facility: BSY     USP BIG SANDY
Bargaining Unit: (b)(6)
Discipline
Hazardous Duty Date
Entered On Duty Date
Separated Date:



Staff ID: (b)(6), (b)(7)c, (b)(7)f

F-M-L Name:

Short Name:

Soc. Sec. No.:

Date Of Birth:

Title:

Working Title:

Race:

Sex:

Pay Plan:

Series:

Grade:

Step:

Region: MXR        MID-ATLANTIC REGIONAL OFFICE

Facility: BSY        USP BIG SANDY

Bargaining Unit: (b)(6)

Discipline:

Hazardous Duty Date:

Entered On Duty Date:

Separated Date:



Staff ID: (b)(6), (b)(7)c, (b)(7)f
F-M-L Name:
Short Name:
Soc. Sec. No.:
Date Of Birth:
Title:
Working Title:
Race:
Sex:
Pay Plan:
Series:
Grade:
Step:
Region: SER        SOUTHEAST REGIONAL OFFICE
Facility: ATL        USP ATLANTA
Bargaining Unit: (b)(6)
Discipline:
Hazardous Duty Date:
Entered On Duty Date:
Separated Date:

```
BPPOPG  535.03 *                        INMATE PROFILE
PAGE 001 OF 001                                                        11-15-2006
       01723-016                        REG                            10:30:06
REGNO: 01723-016                        FUNCTION: PRT DOB/AGE.: 01-09-1956 / 50
NAME.: COLEMAN, MONROE L                                R/S/ETH.: B/M/O
RES..: THP-TERRE HAUTE USP                              MILEAGE.: 557 MILES
PHONE: 812-244-4400         FAX: 812-244-4789
 PROJ REL METHOD: LIFE                                  FBI NO...: 937169V7
 PROJ PRL DATE..: N/A                                   INS NO..: N/A
 PAR ELIG DATE..: 12-27-2000                            SSN.....: 577801280
 PAR HEAR DATE..: 06-2020            PSYCH: YES          DETAINER: NO         CMC..: YES
OFFN/CHG RMKS: DC CODE (ADULT); F1258-98 CF.C-ROB W/ARM; H-1ST DEG MRD W/ARM;
OFFN/CHG RMKS: I,M,N-AWITC POB W/ARM; F5572-83 C-UPWITD CONT SUBS - LIFE
  FACL CATEGORY         - - - CURRENT ASSIGNMENT - - - - - -   EFF DATE    TIME
 THP  ADM-REL    A-DES      DESIGNATED, AT ASSIGNED FACIL     09-17-2006  1446
 THP  ST BILLING NEL DC     NOT BILBL DISTRICT OF COLUMBIA    04-12-2006  1217
 THP  CARE LEVEL CARE2      STABLE, CHRONIC CARE             05-08-2006  0958
 THP  COR COUNSL D          B.STEWART, D, X [(b)(2)Low]       09-17-2006  1446
 THP  CASE MGT   CFSR       CERT FOOD SINCERITY REMOVAL       01-14-2003  0939
 THP  CASE MGT   LCP FAIL W LIFE CONNECT PROG FAIL-WITHDR     11-01-2006  0747
 THP  CASE MGT   PROG RPT   NEXT PROGRESS REPORT DUE DATE     02-05-2007  0934
 THP  CASE MGT   PSY ALERT  PSYCHOLOGY ALERT                  03-14-2006  1008
 THP  CASE MGT   RPT NEEDS  RELEASE PREP PGM NEEDS            03-19-2004  1315
 THP  CASE MGT   V94 CVB913 V94 CURR VIOL BEFORE 91394        06-16-2002  1644
 THP  COMM CORR  INST TRANS INSTITUTION TRANSFER              07-19-2001  0001
 THP  CORR SVCS  RAN NEG    RANDOM DRG TST-NEGATIVE           08-16-2006  0455
 THP  CORR SVCS  SAT NEG    SATURATION DRG TST-NEGATIVE       02-09-2004  1600
 THP  CASEWORKER D1                                           02-09-2004  1600
 THP  CUSTODY    IN         IN CUSTODY                        09-17-2006  1446
 THP  DRUG PGMS  DRG E COMP DRUG EDUCATION COMPLETED          03-14-1989  1730
 THP  DRUG PGMS  DRG I NONE NO DRUG INTERVIEW REQUIRED        12-07-2005  1143
 THP  DESIG/SENT ALPHA      TEAM ALPHA                        08-16-2002  1428
 THP  DESTNATION W REDES D  WAITING FOR REDESIGNATION         09-27-2006  1457
 THP  EDUC INFO  ESL HAS    ENGLISH PROFICIENT                11-09-2006  0903
 THP  EDUC INFO  GED HAS    COMPLETED GED OR HS DIPLOMA       06-24-2002  1517
 THP  FIN RESP   NO OBLG    FINANC RESP-NO OBLIGATION         06-27-2002  1212
 THP  LEVEL      HIGH       SECURITY CLASSIFICATION HIGH      06-27-2002  1731
 THP  MED DY ST  REG DUTY   NO MEDICAL RESTR-REGULAR DUTY     09-15-2000  1509
 THP  MED DY ST  YES Y/S    CLEARED FOR FOOD SERVICE          05-08-2006  0958
 THP  PGM REVIEW APR        APRIL PROGRAM REVIEW              04-16-2007  0926
 THP  PSYCH TRMT CDE DECL   CODE DECLINE                      08-27-2003  1656
 THP  PSYCH TRMT CDE DIS    CODE DISCHARGE                    10-03-2006  1238
 THP  QUARTERS   B01-206L   HOUSE B/RANGE 01/BED 206L         09-17-2006  1446
 THP  RELIGION   MOORISH    MOORISH SCIENCE TEMPLE            03-14-2006  1205
 THP  UNIT       D/E        R. WHITE 812-244-4521 [(b)(2)Low] 09-17-2006  1446
 THP  WAITNG LST A/O COMPLT A/O CLASS COMPLETE                04-27-2006  1030
 THP  WAITNG LST PVS        PRISONER VISITATION               05-30-2006  1411
 THP  WAITNG LST USP UN REG USP UNICOR REGULAR WAITING        07-20-2006  1200
 THP  WRK DETAIL D1 ORD     D1 ORD                            09-17-2006  1446


G0002      TRANSACTION SUCCESSFULLY COMPLETED
```

Department of Justice
Office of Professional Responsibility

OPR #: __14114__

Jarrett _____    Wish _____ TBA

| Inquiry: | 1. For assignment | 2. Support material. |
| --- | --- | --- |

Correspondence Tracking:    Assign to an Analyst for Handling.

Casetrak:    New investigation. _____ Support material.

(b)(6), (b)(7)c, (b)(7)f

1.    BOP PERSONNEL AND PROCEDURES .

Complainant Code/Name:    4 - Monroe L. Coleman

SYNOPSIS of ATTACHMENT:

6/04/06.  By letter dated 7/27/06, inmate Monroe L. Coleman (aka Coleman-
Bey) requested an investigation into the lack of interest and concern
committed by BOP officials.   He alleged wrongful acts against him,
including:  retaliation, sexual harassment, cruel and unusual punishment.
He requested that the disciplinary report be removed from his prison
jacket.

Recommendation:  Refer to OIG/BOP.

enizing is prohibited on a BOP job especially when the two parties are not marriage to each other. For exercising his **Freedom of Speech** and making known that the Holy Bible forbidden adultery, and when he said those words mention above it was not an act of "disrespect" because he witnessed the kissing and other acts committed by these foremen.

## RETALIATORY ACTS

The court has held that a section 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate exercise of his substantive constitutional rights, See **Franco v. Kelly**, 854 F2d 584,589-90(2d Cir 1988); See also, Thornburgh v. Abbott, 490 U.S. 401,407, 104 l. Ed. 2d 459, 109 S. Ct. 1874(1989), "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Union, Inc., 433 U.S. 119, 125, s55 L. Ed. 2d 629, 97 S. Ct. 2532(1977).

A prisoner retains those First Amendment rights that are not inconsistent with its status as a prisoner or with the legitimate penological objectives of the corrections system. The discriminatory enforcement, poses greater concerns with respect to the freedom of speech protected by the Federal Constitution's of civil procedure.

## AFFIDAVIT
s

I, MONROE Coleman Bey, state that he is the affiant in this matter which is being presented to this agency

On Monday, August 15, 2005 [(b)(6), (b)(7)c, (b)(7)f] asked this affiant to "work with him."

Meaning resolving the grievance filed. "You came out of the Shu (segregation housing unit), I got you a job in the unit, a single cell, and you want to go to that program in Leavenworth. You want a pack of batteries?" Such statement or words from the unit manager was coercing and mild threatening [(b)(6), (b)(7)c, (b)(7)f] did give the subject a pack of institutional/commissary batteries.

I, MONROE Coleman Bey, do swear that the above information herein is true to the best of my knowledge on this _____ day of _____, 2005.

Respectfully submitted,

Regional Administrative Remedy Appeal

U.S. Department of Justice

Federal Bureau of Prisons

Type or use ball-point pen. If attachment are needed, submit four copies. One copy of the completed BP-229 (13) including any attachments must be submitted with this appeal.

From: Coleman Bey, Monroe          01723-016        B1        USP Bsg
LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

Part A - REASON FOR APPEAL Sensitive Adm. Remedy (Appeal) This writer was released from SHU July 6th, 2005, which the had three days to file the disciplinary appeal There was no BP29s administrative forms available Nor  Mr Dillman working to assist him. _____ Refused to give this writer a form stating, "Wait until Dillman Return on Sunday" (July 10th, 05). Therefore, this writer made out a form and placed it in the legal mailbox to Warden Hastings which the result from that office stated, "Untimely" (5)

9-8-05
DATE

_____
SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED
SEP 16 2005
BUREAU OF PRISONS
MARO REGIONAL COUNSEL

_____          REGIONAL DIRECTOR
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

Part C - RECEIPT          CASE NUMBER: 385189-R3

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                    _____
DATE                               SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

```
 BSY15          *      INMATE DISCIPLINE DATA        *    07-27-2005
 PAGE 001 OF 001 *    CHRONOLOGICAL DISCIPLINARY RECORD  *    08:55:04

 REGISTER NO: 01723-016 NAME..: COLEMAN, MONROE L
 FUNCTION...: DIS      FORMAT: CHRONO   LIMIT TO ___ MOS PRIOR TO 07-27-2005
                       ASP OF: BSY-BIG SANDY USP

 --------------------------------------------------------------------------------
 REPORT NUMBER/STATUS.: 1351770 - SANCTIONED INCIDENT DATE/TIME: 06-14-2005 1515
 UDC HEARING DATE/TIME: 06-17-2005 1130
 FACL/UDC/CHAIRPERSON.: BSY/B1/2/ROBERTS
 REPORT REMARKS.......: INMATE ADMITTED TO MAKING THE STATEMENT TO (b)(6). (b)(7)c, (b)(7)f
     312  BEING INSOLENT TO STAFF MEMBER - FREQ. 1
          LP COMM   / 30 DAYS / CS
          COMP:   LAW:
          LP PHONE  / 30 DAYS / CS
          COMP:   LAW:



 G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

BP 9                    Request For Adm. Remedy

U.S. Dept of Justice

Fr: <u>Coleman-Bey, M.</u>        <u>01723-016</u>    <u>B1</u>    <u>B5y</u>
       Last Name, Middle Initial     Reg. No.    Unit    Unit

Appeal                        July 6, 2005

    I Have a First Amendment Right to
Freedom of Speech and Religious practice.
According to my religious belief and
practice of the Holy Bible (Sirach 23: 22-
27) those words of "you are an adult-
erous" are not violative to be considered
insolence as charged in the disciplinary
report that I was charged with, especial-
ly when I _____ [(b)(6), (b)(7)c, (b)(7)f]
[(b)(6), (b)(7)c, (b)(7)f] _____
_____ on the
stairway.
    In Sirach 23: states in the first
place [(b)(6), (b)(7)c, (b)(7)f] has broken the laws of The

Cont'd Page 2.

(b)(6), (b)(7)c, (b)(7)f

BP-229(13)
July 2005

Respectfully,

MONROE L. Coleman-Bey
01723-016

Affidavit/Declaration

I, MONROE L. Coleman-Bey did witness

(b)(6), (b)(7)c, (b)(7)f

around, or during the month of June,
2005.
I, MONROE L. Coleman-Bey, swear the
above is true and correct to my know-
ledge.

Respectfully,
Coleman-Bey, M.

Peggy E. Patterson                    Dated: 8-9-05
U.S. Magistrate Judge
U.S. District Court
Eastern District of Kentucky
Ste 203- Federal Bldg.
110 Main Street
Pikeville, Kentucky 41501-1144

RE: Acts of Retaliation
    Committed by BOP Officials

Dear Hon. Judge Patterson:

Since petitioner has filed claims against
the Bureau of Persons, he is being un-
lawfully harassed for exercising a
constitutional right of Freedom of
Speech.
On June 15, 2005, he exercised his
Freedom of Speech under the First
Amendment by stating to a Bureau
of Prisons (b)(6), (b)(7)c, (b)(7)f          "you're an Adul-

_____" because Petitioner witnessed

(b)(6), (b)(7)c, (b)(7)f

Petitioner made the information known
to Unicor Supervisor Mr. Abbott in
the presence of [(b)(6), (b)(7)c, (b)(7)f] For
doing such I was placed segregation,
receive commissary and telephone re-
striction, lost of employment, pay wage,
transfer to a Spiritual Program at
Petersburg, Virginia, and label by his
peers and some staff as a switch. And
informing it will probably make it worst
for petitioner.

Petitioner would use the Unicor
for filing fee to courts, stamps, copies,
hygiene products, commissary items, and
for phone calls without putting unneces-
sary pressure on his elderly retired

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman Bey, Monroe L.    01723-016    131    Big Sandy
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST    Appeal    I Have A 1st Amendment Right to
Freedom of Speech And Religious practice. According to my religious
belief and practice of the Holy Bible (Sirach 23: 22-27) those
words of "You are an adulterous" are not violative to be con-
sidered INSOLENCE As charged in the disciplinary report that I
was charged with, especially when I witnessed (b)(6), (b)(7)c, (b)(7)f
(b)(6), (b)(7)c, (b)(7)f
N the stairway. In Sirach
23: States in the first place she has the laws of the High, IN
And in the
(b)(6), (b)(7)c, (b)(7)f    (b)(6), (b)(7)c, (b)(7)f

on Case Manager wasn't Available,

7-20-05                                    C. Coleman, M.
DATE                                    SIGNATURE OF REQUESTER

Part B- RESPONSE

_____    _____
DATE                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 385189-F1

CASE NUMBER: _____

Part C- RECEIPT

Return to: _____    _____    _____    _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    ⊕    _____
DATE                        RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

USP LVN

Regional Director's Office                      Dated: 6-25-06
Dept. of Justice-Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20001

RE:  Administrative Remedies:   385436-F1, 385189-R2, 389169-A1,
                                358189-F1, 389167-A1, 389168-R1,
                                389169-R1, 389170-R1, 389168-A1,
                                389170-A1, 390573-A1, & 390574-A1.

        The foregoing shall serve as my request for informal resolution

of the following issues, as required under Bureau of Prisons Program

Statement #1330.13.


                        ISSUES PRESENTED FOR REVIEW


        USP Big Sandy located in Inez, Kentucky is where undersign

filed an institutional complaint regarding Sexual Harassment com-

mitted by [(b)(6), (b)(7)c, (b)(7)f]                        Retaliation

committed by BOP officers and officials against the undersign

for calling [(b)(6), (b)(7)c, (b)(7)f]

aand 3) BOP officials, disciplinary hearing officers, along with

[(b)(6), (b)(7)c, (b)(7)f]    violated undersign Constitutional Rights under

the language of Freedom of Speech.

        Specifically, the BOP officials have refused and denied to

remove the "Insolence" disciplinary report from the Cenral Files

of the undersign as well as making such a request which the disci-

plinary should had not had lefted the institution when officials

knew [(b)(6), (b)(7)c, (b)(7)f] was under previous investigation by BOP staff.

[(b)(6), (b)(7)c, (b)(7)f]         was later terminated for her involvement in

flow requiring bonus bonuses
by Prisons Officer [(b)(6), (b)(7)c, (b)(7)f]
[(b)(6), (b)(7)c, (b)(7)f] who worked
for USP Big Sandy, Inez,
Kentucky; and (2) removal
of disciplinary report filed by
[(b)(6), (b)(7)c, (b)(7)f]

Based on proven facts by
USP Big Sandy's staff, the
accusation made by this
writer confirms the inappro-
priate and improper acts of
[(b)(6), (b)(7)c, (b)(7)f] in viola
tion of US 3420.09 basically

-3-

... its entirety. However, since
at a filing of the above No.
5:85436-F, (b)(6), (b)(7)c, (b)(7)f ___ has
been terminated from (b)(6), (b)(7)c, (b)(7)f
position due to those wrong-
ful acts, therefore, this re-
quest for disciplinary removal
should be granted. Thank you.

Respectfully,

Lourdie L. Coleman
USP Terre Haute
Reg No. 01723-016
P. O. Box 12015
Terre Haute, IN
47801

— 4 —

DEC-11-2006 MON 06:35 PM US Dept of Justice                    (b)(2)Low                    P. 01



U.S. Department of Justice

Office of the Inspector General

_____

Washington, D.C. 20530

TO:        Dr. John Dignam, Chief
           Office of Internal Affairs
           Federal Bureau of Prisons

FROM:      Special Agent In Charge
           CM CA FO           Field Office

SUBJECT:   OIG Complaint No. _2007-00133-M_
           Agency File No. _UNKNOWN_
           Subject _UNKNOWN_

[✓]  This matter is referred for appropriate disposition by Agency management in
     accordance with your Agency's policies and regulations.  A copy of your
     findings and/or final action is not required by the OIG.

[__]  This matter is referred to your Agency for investigation.  Please report the
     status of this matter in your monthly report to the OIG.  A copy of your
     findings and/or final action is required to be provided to this Field Office.

[__]  This complaint will be investigated by the OIG.

[__]  OIG disposition awaits the prosecutorial decision of the Civil Rights division.

### IMPORTANT NOTICE

Identifying information may have been redacted from the attached OIG Report/Referral pursuant
to § 7 of the IG Act or because an individual has (a) requested confidentiality or (b) expressed a
fear of reprisal.  If you believe that it is necessary that redacted information be made available to
your Agency, you may contact the Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation
does not have a right to have access to an OIG Report/Referral or to the identities of complainants
or witnesses, and that, in all cases, complainants and witnesses are entitled to protection from
reprisal pursuant to the Inspector General Act and the Whistleblower Protection Act.

_____              _12/11/06_
Special Agent In Charge                Date

Attachment

DEC-11-2006 MON 05:36 PM US Dept of Justice        FAX NO. (b)   JW                    P. 02

OIG - INVESTIGATIONS DIVISION - Complaint Form        OIG NO.: CH-412-2007-001334-M

Received By: MASLONKOWSKI, MARIA F        Date Received: 12/05/2006    How Received: H

SUBJECT: Unidentified, BOP                                         SSNO:
Title: UNID                        Pay Plan:                       D.O.B.:
Component: BOP                      EOD Date:                       Alien No.:
Misc:                                                              F.B.I.No.:
Home:                                                              B.O.P.No.:
Phone:                                          ZIP:               D/L No.:
Work:                                                              Offenses: 412
Phone:                                          ZIP:

COMPLAINANT: Coleman, Monroe L.                                    SSNO:
Title: INMAT                        Pay Plan:                       D.O.B.:
Component: BOP                      EOD Date:                       Alien No.:
Misc: 01733-016                                                    F.B.I.No.:
Home:                                                              B.O.P.No.:
Phone:                                          ZIP:               D/L No.:
Work:
Phone:                                          ZIP:
Confidential:                      Revealed:                    Authority:  none

Details:
On December 5, 2006, the OIG received information that the complainant requested an
investigation into the lack of interest and concern committed by BOP officials. He alleged
wrongful acts against him, including: retaliation, sexual harassment, and cruel and unusual
punishment. He requested that the disciplinary report be removed from his prison jacket.

ALLEGATIONS: 412 Job Performance Failure
Occurrence Date:                        TIME:
CITY: Terre Haute                       State: IN                   Zip: 47802

DISPOSITION DATA: Disposition: M    Date: 12/05/2006    Approval (b)(6)

Referred to Agency: BOP        Date Sent: 12/11/2006    Component: BOP
Patriot Act: N        Civil Rights: N                Component Number:
Sensitive: N          Whistleblower: N        Consolidated Case Number:

Remarks:
Management issue.

DEC-11-2006 MON 05:35 PM US Dept of Justice        FAX NO. (b)(x)        P. 03

2007 - 001334

U.S. Department of Justice

Office of Professional Responsibility

950 Pennsylvania Ave., NW, Room 3266

Washington, D.C. 20530

NOV -9 2006

## MEMORANDUM

TO:              Thomas F. McLaughlin
                 Assistant Inspector General
                 Investigations Division
                 Office of the Inspector General

FROM:            Judith B. Wish
                 Deputy Counsel

SUBJECT:         Referral of Complaint

     The attached complaint from inmate Monroe L. Coleman was received by the Office of Professional Responsibility on August 4, 2006. Mr. Coleman alleged misconduct by Bureau of Prisons personnel. We have completed our review of the submission and have determined that the matter falls within the jurisdiction of your Office. We are referring this matter to you for whatever action you deem appropriate and have informed the complainant of the referral.

Attachment

cc:      John Dignam, Chief
         Office of Internal Affairs
         Bureau of Prisons

Oct-11-2004 MON 06:35 PM US Dept of Justice        FAX NO.    4)Low                    P. 04

Department of Justice                                    OPR #: <u>14114</u>
Office of Professional Responsibility
                                            Jarrett _____    Wish _____    TAA

| Inquiry: | 1. For assignment | 2. Support material. |
| Correspondence Tracking: | Assign to an Analyst for Handling | |

(b)(6)

1.    BOP PERSONNEL\AND PROCEDURES

<u>Complainant Code/Name</u>:      4 - Monroe L. Coleman

<u>SYNOPSIS of ATTACHMENT</u>:
9/04/06.  By letter dated 7/27/06, inmate Monroe L. Coleman (aka Coleman-
Bey) requested an investigation into the lack of interest and concern
committed by BOP officials.  He alleged wrongful acts against him,
including: retaliation, sexual harassment, cruel and unusual punishment.
He requested that the disciplinary report be removed from his prison
jacket.

<u>Recommendation</u>:  Refer to OIG/BOP.

JUL-11-2009 MON 05:38 PM US Dept of Justice          FAX NO.                P. 72

7-27-06

Dir. OS Office
of Professional Resp.
U.S. Dept of Justice
Washington, D.C. 20530
RE: Investigation and
     Recommendation

Dear Director:

This writer is enclosing informa-
tion and requesting of your office
an investigation into the lack of
interest and concern committed by
Bureau of Prisons officials wrong-
ful acts mainly toward this writer:
Retaliation, Sexual Harassment,
Cruel and Unusual Punishment.
All this writer want is to have the
retaliated disciplinary report removed
from this Prison Jacket.   Respectfully,
                           Coleman N.

SED-11-2008 MON 05:38 PM US Dept of Justice                FAX NO.           ow                    P. 08

This subject addresses three specific issues in this complaint for constitutional reasons: 1) Does he has a constitutional right to Freedom of Speech when he witnessed unlawful acts committed by Bureau of Prisons (BOP) staff or foremen; 2) Does he has a constitutional right to exercise his religious belief without breaching security of the prison; 3) Does he has a right to be free from retaliatory acts committed by BOP officials, staff, foremen, and officers because he was exercising his right in U.S. Federal Court and the warden is the respondent?

A petitioner or plaintiff shall exercise his constitutional right whenever a matter arose concerning his rights being violated by prison officials, staff, foremen, or officers. To deny any protection that is afforded a prisoner may and will result in legal action being resolved by a U.S. Federal Court Judge or Magistrate. Furthermore, a prisoner shall be free from any acts of retaliation of BOP officials and staff. See Clark v. Staider, 121 F3d 222,230(5th Cir. 1997). See the enclosed Exhibits ( 1-    ).

COMES NOW, Petitioner, Monroe L. Glenn-Bey, protected by the First and Fourteenth Amendments which BOP officials have unconstitutionally infringed on his rights by use of its regulation, policy, or rule that abridge on his Freedom of Speech, religious belief, without harmed being doe for exercising such right(s). Therefore, the First Amendment and the relevant prison regulation are not coterminous. *The precise contour of the First Amendment need to be determined whether protection of a prisoner right is secure.*

Courts have determined that incarceration does not divest prisoner of all constitutional protections. Inmates retain, for example, the right to be free from racial discrimination, Lee v. Washington, *** the right to due process, Wolff v. McDonnell, *** and, as relevant here, certain protections of the First Amendment Turner, ***. Also, the courts have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individual in society at large. In the First Amendment context, For instance, some rights are simply inconsistent with the status of a prisoner or "with the legitimate penological objectives of corrections system, "Pell v. Procunier ***.

While *Turner*, the court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims; "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *** According to this standard, four factors are relevant. First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [And neutral] governmental interest put forward to justify it." *** If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in favor. *** In addition, courts should consider three other factors: the existence of alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the absence of ready alternatives: available to the prison for achieving the governmental objectives ***

This subject request a test to determine and evaluate whether prisoner's First Amendment challenges; the protection to use "Adulteress" when he had witnessed a female and male [not marry to each other] by kissing and rubbing on one another secretly during working hours for the BOP."

Subject argues that the BOP rule, regulation, or policy that governs disciplinary proceedings does not state or make clear what remarks are violative of BOP disciplinary status. When subject made that remark ["you're an adulteress"] it was innocent where there are no guidelines for determining what remarks are unwarranted. In fact, however, the rule employs the term "clearly intrusive" to modify "unwarranted and uncalled for remarks," and requires that such a remark be made is violation. BOP disciplinary proceedings forbade, inter alia, cursing or insulting an employee, making derogatory comments, or using "intrusive verbal behavior." However, to allow such punish to go unsolved means that the punishment is a backdoor tool for punishing the subject. This forms an act of retaliation in this manner is unacceptable as a result of unconstitutional application of the rule, regulation, or policy.

Petitioner states the purpose for penological interest rules are required but inappropriate if or when they steps on a prisoner First and Fourteenth Amendments rights. Subject has not done anything wrong. Frat-

enizing is prohibited on a BOP job especially when the two parties are not marriage to each other. For exercising his Freedom of Speech and making known that the Holy Bible forbidden adultery, and when he said those words mention above it was not an act of "disrespect" because he witnessed the kissing and other acts committed by those foremen.

RETALIATORY ACTS

The court has held that a section 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate exercise of his substantive constitutional rights. See Franco v. Kelly, 854 F2d 584,589-90(2d Cir 1988); See also, Thornburgh v. Abbott, 490 U.S. 401,407, 104 l. Ed. 2d 459, 109 S. Ct. 1874(1989), "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Union, Inc., 433 U.S. 119, 125, s53 L. Ed. 2d 629, 97 S. Ct. 2532(1977).

A prisoner retains those First Amendment rights that are not inconsistent with is status as a prisoner or with the legitimate penological objectives of the corrections system. The discriminatory enforcement, poses greater concerns with respect to the freedom of speech protected by the Federal Constitution's of civil procedure.

AFFIDAVIT
s

I, MONROE O'lemmuBey, state that he is the affiant in this matter which is being presented to this agency

On Monday, August 15, 2005, (b)(6), (b)(7)c. (b)(7)f asked this affiant to "work with him." Meaning resolving the grievance filed. "You came out of the Shu (segregation housing unit), I got you a job in the unit, a single cell, and you want to go to that program in Leavenworth. You want a pack of batteries?" Such statement or words from the unit manager was coercing and mild threatening. (b)(6), (b)(7)c, (b)(7) did give the subject a pack of institutional/commissary batteries.

I, MONROE O'lemmuBey, do swear that the above information herein is true to the best of my knowledge on this _____ day of _____, 2005.

Respectfully submitted,

DEC-11-2006 MON 05:38 PM US Dept of Justice          FAX NO.          P. 05

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISO

| TO: (Name and Title of Staff Member) Warden S.R. Hastings | DATE: 6-10-05 USP-M-01 |
| FROM: Clemons Bey, M. | REGISTER NO.: 01733-06 |
| WORK ASSIGNMENT: Unicor | UNIT: B1  III 310 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action be
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Why are BP 8 or 8.5 (Administra-
tive Remedy Complaint) is not
answered nor copies of such com-
plaint is given to the inmate?
Without the reply from the informal
complaint, may slow the processing
of the administrative complaint.
Therefore, it is Requested that
a copy be provided to the inmate
when there is no reply given from
prison officials.
CC: Inmate File            CC: C+ File
                 (Do not write below this line)

DISPOSITION:

| Signature Staff Member Acting Warden's Secretary | Date 7-26-05 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-149.070 dated Oct
and BP-S148.070 APR 94

DEC-11-2006 MON 05:38 PM US Dept of Justice          FAX NO. (b) (6)                    P. 06

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISO

| TO: (Name and Title of Staff Member) Ms Greene - Case Manager | DATE: 7-21-05 |
|---|---|
| FROM: Coleman Bey, M. | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1        #114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action bei
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Ms. Greene, You were given on 7-20-05 the copy of the disciplinary Report filed against me. I am requesting that copy back to see whether it has been altered. If you desire to interfere with this administrative Remedy complaint then the court will be notified. See Bentley v Hall 64 P3d 1276. (C.A. 9 (Or.) 1995). Also, I've never received from the warden's office stating the previous appeal was unacceptable. meaning its due date is Near... 8-5-05 or 8-10-05

CC: Handwritten copy / Inmate's File
(Do not write below this line)

DISPOSITION:

Inmate given copy on 7/22/05

| Signature Staff Member 7/22/05 | Date E.S. Green |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct
and BP-S148.070 APR 94

DEC-11-2006 MON 05:36 PM US Dept of Justice          FAX NO.                    P. 10

U.S. Department of Justice                          **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-230(13) including any attachments must be submitted with this appeal.

From: Coleman Bey, Monroe    01723-016    B1    USP BSY
     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL  Sensitive Adm. Remedy (Appeal)
This writer was released from SHU July 6th, 2005,
which he had three days to file the disciplinary appeal
there was no BP9s administrative forms available
NCR Ms Greene and Mr Dillman working to assist
him. (b)(6), (b)(7)c, (b)(7)f    Refused to give this writer a
form stating, "Wait until Dillman Returns on Sunday"
(July 10th, 05). Therefore, this writer made out a form
and placed it in the legal mailbox to Warden Hastings
which the result from that office stated, "Untimely".

9-8-05                                    [signature]
DATE                                      SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED
SEP 1 6 2005
BUREAU OF PRISONS
MARO REGIONAL COUNSEL

_____                    _____
DATE                                       REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                 CASE NUMBER: _____

Part C - RECEIPT                           CASE NUMBER: 385789-R3

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL.    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    ⊕    _____
DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL.        BP-230 (13)
                                                                                JUNE 2002

FEB-11-2008 MON 05:38 PM US Dept of Justice          FAX NO.              P. 11
BSY15            *              INMATE DISCIPLINE DATA            *    07-27-2005
PAGE 001 OF 001 *         CHRONOLOGICAL DISCIPLINARY RECORD       *    08:55:34

REGISTER NO: 01723-016 NAME..: COLEMAN, MONROE L
FUNCTION...: DIS          FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 07-27-2005
                          RSP OF: BSY-BIG SANDY USP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
REPORT NUMBER/STATUS.: 1351770 - SANCTIONED INCIDENT DATE/TIME: 06-14-2005 1515
UDC HEARING DATE/TIME: 06-17-2005 1130
FACL/UDC/CHAIRPERSON.: BSY/B1/2/ROBERTS
REPORT REMARKS.......: INMATE ADMITTED TO MAKING THE STATEMENT TO (b)(6), (b)(7)c, (b)(7)f
    312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
         LP COMM   / 30 DAYS / CS
         COMP:   LAW:
         LP PHONE  / 30 DAYS / CS
         COMP:   LAW:


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

BP 9                    Request For Adm. Remedy

U.S. Dept of Justice

Fr: <u>Coleman-Bey, M.</u>    <u>01723-016</u>    <u>B1</u>    <u>BSg</u>
     Last Name, Middle Initial    Reg. No.    Unit    Inst

Appeal                         July 6, 2005

    I Have a First Amendment Right to
Freedom of Speech and Religions practice.
According to my religious belief and
practice of the Holy Bible (Sirach 23: 22-
27) those words of " you are an adult-
erous" are not violative to be considered
insolence as charged in the disciplinary
report that I was charged with, especial-
ly when I witnessed ▢(b)(6), (b)(7)c, (b)(7)f
▢(b)(6), (b)(7)c, (b)(7)f

    In Sirach 23: states in the first
place ▢(b)(6), (b)(7)c, (b)(7)f has broken the laws of the

DEC-11-2006 MON 05:37 PM US Dept of Justice          FAX NO. (b)(6)               P. 14

Cont'd Page 2.

(b)(6), (b)(7)c, (b)(7)f

BP-229(13)
July 2005

Respectfully,

Monroe L. Coleman Bey
01723-016

Affidavit/Declaration

I, MONROE L. Coleman-Bey did witness

(b)(6), (b)(7)c, (b)(7)f

around, or during the mouth of June, 2005.
I, MONROE L. Coleman-Bey, swear the above is true and correct to my knowledge.

Respectfully,
C. Coleman-Bey, M.

DEC-11-2006 MON 05:37 PM US Dept of Justice          FAX NO. (b, ow                    P. 16

Peggy E. Patterson                    Dated: 8-9-05
U.S. Magistrate Judge
U.S. District Court
Eastern District of Kentucky
Ste 203- Federal Bldg.
110 Main Street
Pikeville, Kentucky 41501-1144

RE: Acts of Retaliation
     Committed by BOP Officials

Dear Hon. Judge Patterson:

Since petitioner has filed claims against
the Bureau of Prisons, he is being un-
lawfully harrassed for exercising a
constitutional right of Freedom of
Speech.
On June 15, 2005, he exercised his
Freedom of Speech under the First
Amendment by stating to a Bureau
of Prisons foreman, "you're an Adul-

DEC-11-2006 MON 05:37 PM US Dept of Justice          FAX NO.          Low          P. 16

taress" because Petitioner Witnessed

[(b)(6), (b)(7)c, (b)(7)f]

Petitioner made the information Known to Unicor Supervisor Mr. Abbott in the presence [(b)(6), (b)(7)c, (b)(7)f] For doing such I was placed segregation, receive commissary and telephone restriction, lost of employment, pay wage, transfer to a Spiritual Program at Petersburg, Virginia, and label by his peers and some staff as a _switch_. And informing will probably make it worst for petitioner.

Petitioner would use the Unicor for filing fee to courts, stamps, copies, hygiene products, commissary items, and for phone calls without putting unnecessary pressure on his elderly retired

FEB-11-2008 MON 05:37 PM US Dept of Justice       FAX NO.       P. 17

Mother,

Petitioner has enclosed information concerning this mistreatment and deprivation of a Constitutional Right; a right to Freedom of Speech and practice. Had not petitioner witnessed such illegal act then he would had been disrespectful. It is not requested that this court acts on this matter which petitioner believes it does not have jurisdiction to do so, but he need to make the court aware of the Retaliation and mistreatment he is experiencing from BOP officials. But petitioner do ask this court for an address he can write to regarding the tamperring and altering of the enclosed disciplinary by BOP staff. Petitioner thanks you for its time and concern. Also, Petitioner makes known to the court

FEB 11 2008 MON 05:37 PM US Dept of Justice          FAX NO.                    P. 19

We will submit a copy of the
foregoing letter along with its
additional information to the Re-
presentatives in Civil Action No.
05-158-DCR  or 05-158-PEP: To
Cheryl D. Morgan, Asst. U.S. Atty, at
110 W. Vine St. Ste 400, Lexington, KY
40507-1671. and

Margaret J. Chriss, Asst. U.S. Atty,
at 555 Fourth Street, N.W., Special
Proceedings Section (10th Floor),
Washington, D.C. 20530, on this 9th
day of August, 2005.

Respectfully submitted,

Monroe L. Coleman-Bey

Monroe L. Coleman-Bey
#01723-016 USP TSY
P.O. Box 2068
Inez, KY 41224

DEC-11-2000 MON 05:37 PM US Dept of Justice          FAX NO.                    P.

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

From: Coleman, Markus                01753-            121          USP 1351
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.         UNIT         INSTITUTION

Part A- INMATE REQUEST    RETALIATION: After being let out of Seg Under-
Sign (Udsn) (Upon release) Mr Bryson has been telling inmates Udsn Told
him about Mrs K. Moore; accused of property being missing; his
shower was taken intentionally not placed in his property; An extra
day was added to the DHO penalty; 7-20-05, Case Mngr Ms Greene was
given legal copy of the DHO to make a copy which she intentionally
Refused & denied to give back; she then called Case Mngr Rogers to
the unit; Udsn repeatedly was refused that copy back; 7-22-05, Udsn
served Ms Greene an Insti Request Regarding the altering
Evidence (See Enclosure). This DHO is Not the very same D.R
given to her; 7-21-05, Udsn Mail was given to him at or around
11;24 pm though he received mail at Mail call;

7-23-05                                    Coleman Markus
    DATE                                   SIGNATURE OF REQUESTER

Part B- RESPONSE

_____                    _____
       DATE                                WARDEN OR REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE                 CASE NUMBER: _____

                                           CASE NUMBER: _____
Part C- RECEIPT
Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____        ⊕        _____
       DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229(13)
                                                                                    APRIL 1982
USP LVN

DEC-11-2006 MON 05:58 PM US Dept of Justice          FAX NO. [BLACKOUT]                    P. 19

U.S. Department of Justice                    Regional Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _____  _____  ____  _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT       INSTITUTION

Part A – REASON FOR APPEAL

_____

_____

_____

_____

_____

_____

_____

_____

8-7-05                                      _____
_____                                SIGNATURE OF REQUESTER
      DATE

Part B – RESPONSE

_____                              _____
      DATE                                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                  CASE NUMBER: _____

Part C – RECEIPT                               CASE NUMBER: _____

Return to: _____  _____  ____  _____
              LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT       INSTITUTION

SUBJECT: _____

_____                              _____
      DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

03/02 20:6 10:58 FAX (b)(2)Low          BOP OIA                                    ☒ 001

```
*************************
***   TX REPORT   ***
*************************

TRANSMISSION OK

TX/RX NO            1595
RECIPIENT ADDRESS   (b)(2)Low
DESTINATION ID
ST. TIME            03/02 10:55
TIME USE            02'40
PAGES SENT          24
RESULT              OK
```

U.S. Department of Justice
Federal Bureau of Prisons
Office of Internal Affairs
*Telephone: (202) 307-3226*
(b)(2)Low

## BOP OIA
### Central Office

TO:      Special Agent in Charge

X  Chicago Field Office        ❏ Dallas Field Office        ❏ Denver Field Office
❏ Los Angeles Field Office     ❏ Miami Field Office         ❏ New York Field Office
❏ Tucson Area Office           ❏ Washington Field Office    ❏ Houston Area Office
❏ San Francisco Area Office

FROM: _____          __3/2/2___
      Tamara L. Allen, Management Specialist (Signature)          Date

❏ Category 1        ❏ Category 2           ***Complaint

| FACILITY | USP Big Sandy, KY |
|---|---|
| SUBJECT(S) | (b)(6), (b)(7)c, (b)(7)f |

Please review this matter and send your disposition via fax to the

OIA CENTRAL OFFICE (b)(2)Low

Attachments

The information contained in this facsimile message may be confidential and/or legally privileged material intended only for the use of the



U.S. Department of Justice
Federal Bureau of Prisons
Office of Internal Affairs
*Telephone: (202) 307-3256*
(b)(2)Low

# BOP OIA
# Central Office

TO        Special Agent in Charge

X   Chicago Field Office     ❏ Dallas Field Office     ❏ Denver Field Office
❏ Los Angeles Field Office    ❏ Miami Field Office     ❏ New York Field Office
❏ Tucson Area Office       ❏ Washington Field Office   ❏ Houston Area Office
❏ San Francisco Area Office

FROM:  _____        _____
       Tamara Hutton, Management Specialist (Signature)        Date

❏ Category 1        ❏ Category 2        ***Complaint

| FACILITY | USP Big Sandy, KY |
|---|---|
| SUBJECT(S) | (b)(6), (b)(7)c, (b)(7)f |

Please review this matter and send your disposition via fax to the

OIA CENTRAL OFFICE at (b)(2)Low

Attachments

The information contained in this facsimile message may be confidential
and is legally privileged material intended only for the use of the
individual or entity named above.  If the reader of this message is not
the intended recipient, you are hereby notified that any copying,
distribution or dissemination of confidential or privileged information
is strictly prohibited.  If you have received this facsimile in error,
please notify us by telephone and we will arrange for return of the
facsimile to us.

March 1, 2006

(b)(6), (b)(7)c, (b)(7)f

USP Big Sandy

COMPLAINT

In a letter dated February 8, 2006, inmate Monroe Coleman, #01723-016, claims he previously reported an inappropriate relationship between (b)(6), (b)(7)c, (b)(7)f (b)(6), (b)(7)c, (b)(7)f He claims he subsequently 1) was placed in the SHU, 2) was terminated from his job, 3) was given commissary and telephone restrictions, and 4) lost pay. Coleman claims (b)(6), (b)(7)c, (b)(7)f with an unidentified black inmate, and (b)(6), (b)(7)c, (b)(7)f inmate (OIA-2006-00810/OIG 2006001389). Coleman states that after learning of these allegations, he wrote a letter to the Warden inquiring about his initial complaint. Coleman claims that in January 2006 he was "indirectly threatened" not to press his complaint.



Staff ID: (b)(6), (b)(7)c, (b)(7)f

F-M-L Name:

Short Name:

Soc. Sec. No.:

Date Of Birth:

Title:

Working Title:

Race:

Sex:

Pay Plan:

Series:

Grade:

Step:

Region: MXR      MID-ATLANTIC REGIONAL OFFICE

Facility: BSY      USP BIG SANDY

Bargaining Unit: (b)(6)

Discipline:

Hazardous Duty Date:

Entered On Duty Date:

Separated Date:



Staff ID: (b)(6), (b)(7)c, (b)(7)f
P-M-L Name:
Short Name:
Soc. Sec. No.:
Date Of Birth:
Title:
Working Title:
Race:
Sex:
Pay Plan:
Series:
Grade:
Step:
Region: MXR     MID-ATLANTIC REGIONAL OFFICE
Facility: BSY     USP BIG SANDY
Bargaining Unit: (b)(6)
Discipline:
Hazardous Duty Date:
Entered On Duty Date:
Separated Date:

```
   BOPGS         *          INMATE DISCIPLINE DATA          *     03-01-2006
PAGE 001 OF 001 *      CHRONOLOGICAL DISCIPLINARY RECORD     *     11:10:56

REGISTER NO: 01723-016 NAME...: COLEMAN, MONROE E
FUNCTION ..: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 03-01-2006

.............................................................................
REPORT NUMBER/STATUS.: 1351770 - SANCTIONED INCIDENT DATE/TIME: 06-14-2005 1615
UDC HEARING DATE/TIME: 06-17-2005 1130
FACL/UDC/CHAIRPERSON.: BSY/B1/I/ROBERTS
REPORT REMARKS.......: INMATE ADMITTED TO MAKING THE STATEMENT TO (b)(6), (b)(7)c, (b)(7)f
   312  BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        LP COMM   / 30 DAYS / CS
        COMP:   LAW:
        LP PHONE  / 30 DAYS / CS
        COMP:   LAW:
```

```
GC005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

Department of the Interior
Office for Equal Opportunity
1849 C Street, N.W., Mail Stop 1442
Washington, D.C. 20240

RE:  Prison Grievance Complaint(s)
     Remedy No. 385436-F1

Dear Dept of the Interior:                         Feb. 21 2006

     On June 14th, 2005, this writer revealed a secret relation or
love affair going on between (b)(6), (b)(7)c, (b)(7)f
(b)(6), (b)(7)c, (b)(7)f      For blowing the
sons employees, which it was preplanned to strip him of his prison
job for meddling int (b)(6)
     The 1st, 7th, and 14th amendments of the Constitution did not
stop at the prison gate denying this writer the same equal justice
as his other counterparts in any workplace.  Furthermore, this writer
refused (b)(6), (b)(7)c, (b)(7)f
(b)(6), (b)(7)c, (b)(7)f

     This retaliation, disparity treatment, and discriminatory prac-
tices committed by bureau of prisons officials are of a constitutional
violation that infringed upon the rights of this person.  Mr. Coleman-
Bey hasn't done anything wrong which fratenizing is prohibited on
Bureau of Prisons federal government jobs especially when the parties
are not married to each other.  Because of this writer exercising
his freedom of speech and whistleblowing he received five sanctions:
placed in segregation, job terminated, commissary and telephone re-
strictions, and lost of pay.
(b)(6), (b)(7)c, (b)(7)f

BP-S148.059 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
| Warden S. Hastings | 1-20-06 |
| FROM: Coleman Bey M. | REGISTER NO.: 01723-016 |
| WORK ASSIGNMENT: Orderly | UNIT: B1 II-114 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Remedy No. 385436-F1

Warren Hastings In Response to my B.P.'9
Concerning (b)(6), (b)(7)c, (b)(7)f                     you said an in-
vestigation would take place and that my grievance
was neither granted or denied. My rights were
violated and I am seeking to be reimbursed for
lost wages, and a return to my former job
status, along with having the entire disciplinary,
in this matter, expunged from all records.
Would you please inform me of your position, in
the above-Request.                    Thank you
CC: Inmate's File    (Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

UNICOR FEDERAL PRISON INDUSTRIES, INC
LEAVENWORTH, KANSAS

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Coleman Bey, Monroe C.      01723-06      B1      Big Sandy
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A- INMATE REQUEST      (Sexual HARASSMENT against K. Moore)

On the 22nd of July, 2005 Case Manager Ms
Greene was given by undersign an Admini-
strative BP 8.5 concerning (b)(6), (b)(7)c, (b)(7)f      for "Ha-
rassment - Sexual Harassment." Since the filing
of complaint (b)(6), (b)(7)c, (b)(7)f
has intentionally interfered with undersign's
right to address the court. (b)(6), (b)(7)c, (b)(7)f      would con-
tinuously annoy undersign which he was afraid
to complaint because of unnecessary like today.

8-1-05      (See Disciplinary Rpt)
DATE                                    SIGNATURE OF REQUESTER

Part B- RESPONSE

_____      _____
      DATE                              WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                              CASE NUMBER: _____

Part C- RECEIPT
Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administr.     Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: COLEMAN-BEY, MONROE          01743-016          D1          USP 75.4
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A - REASON FOR APPEAL "Sexual Harrassment based on Retaliation"
subject Had previous civil cases pending against respondent
Hastings which His First Amendment Right has been violated
As well as stripped by use of A Smoke screen. To allow
A rule to apply when the subject exercised His Freedom of
Speech makes the rule an exaggerated Response. Therefore,
the validity of the "Insolence" Rule as applied to His statement
is challenged under the Const'l right and religious belief
due to His observation of employees kissing and Holding
each Other On the job in violation of BOP Policy  [(b)(6), (b)(7)c, (b)(7)f]
never denied Her involvement...

8-17-05                                    C. Coleman
DATE                                    SIGNATURE OF REQUESTER

Part B - RESPONSE

_____                    _____
DATE                                    REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
FIRST COPY: REGIONAL FILE COPY                    CASE NUMBER: _____

Part C - RECEIPT
                                         CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

_____                    _____
DATE                                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                      BP-230(13)
                                                            JUNE 2002

enizing is prohibited on a BOP job especially when the two parties are not marriage to each other. For exercising his Freedom of Speech and making known that the Holy Bible forbidden adultery, and when he said those words mention above it was not an act of "disrespect" because he witnessed the kissing and other acts committed by those foremen.

## RETALIATORY ACTS

The court has held that a section 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate exercise of his substantive constitutional rights, See Franco v. Kelly, 854 F2d 584,589-90(2d Cir 1988); See also, Thornburgh v. Abbott, 499 U.S. 401,407, 104 L Ed. 2d 459, 109 S. Ct. 1874(1989), "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Union, Inc., 433 U.S. 119, 125, s53 L. Ed. 2d 629, 97 S. Ct. 2532(1977).

A prisoner retains those First Amendment rights that are not inconsistent with is status as a prisoner or with the legitimate penological objectives of the corrections system. The discriminatory enforcement, poses greater concerns with respect to the freedom of speech protected by the Federal Constitution's of civil procedure.

### AFFIDAVIT

s

I, MONROE C, (eman)Bey, state that he is the affiant in this matter which is being presented to this agency

On Monday, August 15, 2005 [(b)(6), (b)(7)c, (b)(7)f] asked this affiant to "work with him."

Meaning resolving the grievance filed. "You came out of the Shu (segregation housing unit), I got you a job in the unit, a single cell, and you want to go to that program in Leavenworth. You want a pack of batteries?" Such statement or words from the unit manager was coercing and mild threatening [(b)(6), (b)(7)c, (b)(7)f] did give the subject a pack of institutional/commissary batteries.

I, MONROE C, (eman)Bey, do swear that the above information herein is true to the best of my knowledge on this ___24th___ day of ___hicc2uJ/___, 2005.

Respectfully submitted,

C.C. Bey, em .

Date Allegation Rptd.    12/07/2005         Investigated By    ORS                    Categ

## CASE DESCRIPTION

(b)(6), (b)(7)c, (b)(7)f

## CASE SUMMARY

On November 4, 2005 inmate (b)(7)c, (b)(7)f                                              a threatening
note            reported the note on November 5, 2005. Whiteside was placed in the SHU and the note was forwarded to
SIS staff. While being escorted to the SHU           after advising the Lieutenant he would not cooperate in any
investigators. SIA James Link reviewed the note which contained several references to inappropriate behavior
between                                                            Whiteside was interviewed on December 5, 2005 but initially
                                              that the behavior referenced in his note to          would not be used.
(b)(7)e, (b)(6), (b)(7)c, (b)(7)f

## OTHER COMMENTS

## FINAL DISPOSITION

| | | |
|---|---|---|
| | **COMPLAINANT INFORMATION** | (b)(7)c, (b)(7)f |
| Complainant Name  (b)(7)c, (b)(7)f | Title/Inmate Reg. No. | |
| | **VICTIM INFORMATION** | |
| Victim Name | Title/Inmate Reg. No. | |

## OIG DISPOSITION

| | | |
|---|---|---|
| Referred Date  12/08/2005 | Deferred Date  12/14/2005 | Deferred By  CHICAGO FIELD OFFICE |
| Disposition  INVE | Comments | |

## EVENTS

| | | |
|---|---|---|
| Date Scheduled  12/08/2005 | Suspense/Due Date  01/09/2006 | Description  PENDING DEFERRAL BY OIG |
| Comments | | |
| Date Scheduled  12/14/2005 | Suspense/Due Date  04/14/2006 | Description  ON-GOING OIG INVESTIGATION |
| Comments | | |

## CASE STATUS

| | | |
|---|---|---|
| Status  OPEN | Disposition | Close Date |

FEDERAL BUREAU OF PRISONS

Office of Internal Affairs

01 - 26 - 2007                                                                                           Page 1 of 2

| Matter ID | OIA-2006-00810 | OIG Case Number | 2006001389 | Name | | Field Office | STL |
|---|---|---|---|---|---|---|---|
| Region | MVR | Institution | BSY | Open Date | 12/08/2005 | Number of Subjects | 1 |
| Date Allegation Rptd. | 12/07/2005 | Investigated By | OIG | | Category | 1 | |

### CASE DESCRIPTION

(MOORE, KIMBERLY D) Sexual Abuse of an Inmate

### CASE SUMMARY

On November 4, 2005 (b)(7)c, (b)(7)f, (b)(6)
reported the note on Nov (b)(7)c, (b)(7)f, (b)(6)
while being escorted to the SHU
(b)(6), (b)(7)c, (b)(7)f, (b)(7)e

In a letter dated Feb (b)(6), (b)(7)c, (b)(7)f Monroe Coleman #01723-016, claims he previously reported an inappropriate
relationship between (b)(6), (b)(7)c, (b)(7)f He claims he
subsequently 1) was placed in (b)(6), (b)(7)c, (b)(7)f phone restrictions.
and 2) lost pay. Coleman claim
(b)(6), (b)(7)c, (b)(7)f OIA-2005-00810/OIG-2006001389)    Coleman state
allegations, he wrote a letter to the Warden inquiring about his initial complaint. Coleman claims that in January 2006 he was
"indirectly threatened" not to press his complaint.

### OTHER COMMENTS

### FINAL DISPOSITION

(b)(6), (b)(7)c, (b)(7)f, (b)(7)e

### COMPLAINANT INFORMATION

| Complainant Name | MONROE L. COLEMAN | Title/Inmate Reg. No. | 01723-016 |
|---|---|---|---|
| Complainant Name | (b)(6), (b)(7)c, (b)(7)f | Title/Inmate Reg. No. | (b)(6), (b)(7)c, (b)(7)f |

### VICTIM INFORMATION

| Victim Name | | Title/Inmate Reg. No. | |
|---|---|---|---|
| Victim Name | MONROE L. COLEMAN | Title/Inmate Reg. No. | 01723-016 |

### OIG DISPOSITION

| Referred Date | 12/08/2005 | Deferred Date | 12/14/2005 | Deferred By | CHICAGO FIELD OFFICE |
|---|---|---|---|---|---|
| Disposition | INVE | Comments | | | |

### EVENTS

| Date Scheduled | 12/08/2005 | Suspense/Due Date | 01/08/2006 | Description | PENDING DEFERRAL BY OIG |
|---|---|---|---|---|---|
| Comments | | | | | |

# ΞDERAL BUREAU OF PRISONS

## Office of Internal Affairs

12 - 01 - 2006

Page 1 of 2

| Matter ID OIA-2006-00810 | OIG Case Number 2006001389 | Name (b)(7)c, (b)(7)f | | Field Office STL |
| --- | --- | --- | --- | --- |
| Region MXR | Institution BSY | Open Date 12/08/2006 | Number of Subjects 1 | |
| Date Allegation Rptd. 12/07/2006 | Investigated By OIG | | Category 1 | |

## CASE DESCRIPTION

(MOORE, KIMBERLY D) Sexual Abuse of an inmate

### CASE SUMMARY

(b)(6), (b)(7)c, (b)(7)f

In a letter dated February 6, 2006, inmate Monroe Coleman, #01723-016, claims he previously reported an inappropriate relationship between (b)(6), (b)(7)c, (b)(7)f. He claims he subsequently 1) was placed in the SHU, 2) was terminated from his job, 3) was given commissary and telephone restrictions, and 4) lost pay. Coleman claims (b)(6), (b)(7)c, (b)(7)f (b)(6) (OIA-2006-0061G/OIG 2006001389). Coleman states that after learning of these allegations, he wrote a letter to the Warden inquiring about his initial complaint. Coleman claims that in January 2006 he was "indirectly threatened" not to press his complaint.

OTHER COMMENTS

FINAL DISPOSITION

*This was combined w/ OIG 2006 001389.*
*Moore resigned during course of O.G. investigation*
*Report is pending.*
*Per Kevin Shirley SA Chicago Field Off.*
*Melinda*
*12-1-06*

### COMPLAINANT INFORMATION

| Complainant Name MONROE L. COLEMAN | Title/Inmate R |
| --- | --- |
| Complainant Name (b)(7)c, (b)(7)f | Title/Inmate R |

### VICTIM INFORMATION

| Victim Name | Title/Inmate R |
| --- | --- |
| Victim Name MONROE L. COLEMAN | Title/Inmate R |

### OIG DISPOSITION

| Referred Date 12/06/2005 | Deferred Date 12/14/2005 | Deferred By |
| --- | --- | --- |
| Disposition INVE | Comments | |

### EVENTS

| Date Scheduled 12/08/2005 | Suspense/Due Date 01/09/2006 | Description PENDING DEFERRAL BY OIG |
| --- | --- | --- |
| Comments | | |
| Date Scheduled 12/14/2005 | Suspense/Due Date 04/14/2006 | Description ON-GOING OIG INVESTIGATION |
| Comments | | |

### CASE STATUS

| Status OPEN | Disposition | Close Date |
| --- | --- | --- |

# FEDERAL BUREAU OF PRISONS
## Office of Internal Affairs

12 - 15 - 2005                                                                                Page 1 of 1

| Matter ID  OIA-2006-00610 | OIG Case Number  2006001389 | Name  (b)(7)c, (b)(7)f | Field Office  STL |
| Region  NCR | Institution  BSY | Open Date  12/08/2005 | Number of Subjects  1 |
| Date Allegation Rptd.  12/07/2005 | Investigated By  OIG | Category  1 |

### CASE DESCRIPTION
(b)(6), (b)(7)c, (b)(7)f

### CASE SUMMARY
(b)(6), (b)(7)c, (b)(7)f, (b)(7)e

### OTHER COMMENTS
### FINAL DISPOSITION

### COMPLAINANT INFORMATION
Complainant Name  (b)(7)c, (b)(7)f

Title/Inmate Reg. No.  (b)(7)c, (b)(7)f

### VICTIM INFORMATION
Victim Name

Title/Inmate Reg. No.

### OIG DISPOSITION
Referred Date  12/08/2005      Deferred Date  12/14/2005      Deferred By  CHICAGO FIELD OFFICE
Disposition  INVE      Comments

### EVENTS
Date Scheduled  12/08/2005      Suspense/Due Date  01/09/2006      Description  PENDING DEFERRAL BY OIG
Comments

Date Scheduled  12/14/2005      Suspense/Due Date  04/14/2006      Description  ON-GOING OIG INVESTIGATION
Comments

### CASE STATUS
Status  OPEN      Disposition      Close Date

DERAL BUREAU OF PRISONS
Office of Internal Affairs

12 - 06 - 2005                                                                           Page 1 of 1

| Matter ID   OIA-2005-00510     OIG Case Number | Name (b)(7)c, (b)(7)f | Field Office   STL |
| --- | --- | --- |
| Region   MCR        Institution   BSY        Open Date   12/06/2005        Number of Subjects   1 | | |
| Date Allegation Rptd.   12/07/2005        Investigated By   OIA        Category   1 | | |

CASE DESCRIPTION

(b)(6), (b)(7)c, (b)(7)f

CASE SUMMARY

(b)(6), (b)(7)c, (b)(7)f, (b)(7)e

OTHER COMMENTS

FINAL DISPOSITION

COMPLAINANT INFORMATION

Complainant Name   (b)(7)c, (b)(7)f          Title/Inmate Reg. No.   (b)(7)c, (b)(7)f

VICTIM INFORMATION

Victim Name                                  Title/Inmate Reg. No.

OIG DISPOSITION

Referred Date   12/08/2005     Deferred Date          Deferred By   CHICAGO FIELD OFFICE

Disposition                    Comments

EVENTS

Date Scheduled   12/08/2005     Suspense/Due Date   01/09/2006     Description   PENDING DEFERRAL BY OIG

Comments

CASE STATUS

Status   OPEN          Disposition          Close Date

FEDERAL BUREAU OF PRISONS
OFFICE OF INTERNAL AFFAIRS
SUBJECT REPORT

12-08-2005    Page 1 of 1

Matter ID:   OIA-2006/02913    Agent: (b)(6)

## SUBJECT INFORMATION

Name: (b)(6), (b)(7)c, (b)(7)f

Region:  GNR    Inst:  BSY    SSN: (b)(6), (b)(7)c, (b)(7)f    Title: (b)(6)

| Series | Payplan | Grade | Step | Discipline |
|--------|---------|-------|------|------------|
| 3-05 | WS | 07 | 02 | 3 |

Duty Date:  04/06/2003    Haz.Duty Date:  04/06/2003    Probationary:  N    Union Representation:

## REPORTED ALLEGATIONS

Allegation Master Code    192    Allegation Sub-Code    306D    Reported Date  12/08/2005    Legal Action    Sentence Date

Offense

Comments

## SUSTAINED ALLEGATIONS

## STATUS

Disposition:    Close Date:    Disciplinary Action:    Days Suspended:

Comments:

## DEMOGRAPHIC INFORMATION

(b)(7)c, (b)(7)f, (b)(6)



Staff
F-M-L Name
Short Name
Soc. Sec. N
Date Of Si
Ti
Working Ti
Ra
S
Pay Pl
Seri
Gra
St
Region: MXR     MID-ATLANTIC REGIONAL OFFICE
Facility: BSY     USP BIG SANDY
Bargaining Un
Disciplin
Hazardous Duty Dat
Entered On Duty Dat
Separated Dat

FROM : SP Big Sandy SIG Office     FAX NO. (b)(2)Low     No. 07 2005 01:12PM P3

(b)(7)c, (b)(7)f

No 1  Other

1 least Que to

LT





United States Penitentiary
Big Sandy, Kentucky
Special Investigative Agent's Office

# FAX Cover Sheet

To: Office of Internal Affairs

Fax Number: (b)(2)Low

Subject: Referral

From: Jim Link, SIA

Date: 12/7/05                Pages including cover sheet:        14

Comments:

FROM:

James Link, Special Investigative Agent
United States Penitentiary, Big Sandy, KY
1197 Airport Road
P.O. Box 2067
Inez, Kentucky 41224
Voice: (b)(2)Low
Fax:

## SENSITIVE INFORMATION NOTICE

The information contained within these documents is considered "DOJ Sensitive-Limited Official Use". If you are
not the intended recipient, and have received this transmission in error, this information is not to be disclosed or
utilized without the authorization of the Federal Bureau of Prisons. If you have received this transmission in error,
please notify the Special Investigative Agent at the above listed telephone number.

(b)(7)c, (b)(6)

# Office of Internal Affairs
## OIG REPORT ROUTING SLIP

Date Received: _____ 1 - 12-07 _____

Reviewed by Chief: _____ 1/12/07
(Sign/Date)

Reviewed by Supervisory Special Agent: _____ 1/12/07
(Sign/Date)

Received by Agent: _____ 1-18-07
(Sign/Date)

Copy sent to CEO: _____ 1-23-07
(Sign/Date)

Copy sent to Regional Director: _____ 1-23-07
(Sign/Date)

Additional copies sent to the following individuals:

_____

_____

_____

Note: Routing slip should be placed in case file, Section 2, once completed.



U.S. Department of Justice

Office of the Inspector General

Washington D.C. 20530

DATE:          January 9, 2007

MEMORANDUM

TO:            John T. Dignam, Chief
               Office of Internal Affairs
               Federal Bureau of Prisons

FROM:          Thomas F. McLaughlin
               Assistant Inspector General for Investigations

SUBJECT:       File Number: 2006-001389

Attached please find the Office of Inspector General Report of Investigation regarding the captioned subject. This report is being forwarded to you for your information.

It is important to us to know if you are able to use the information in this report. Your cooperation in completing the attached questionnaire helps us measure the quality of our reports. An agency official should complete the questionnaire and return it to our office immediately, using the attached self-addressed envelope.

If you should determine that this investigation is not complete, or that additional investigative work is necessary as a basis for administrative action, please contact the Special Agent in Charge for Operations, OIG Investigations Division (b)(2)Low

Thank you for your continuing support.

IMPORTANT NOTICE

Identifying information may have been redacted from the attached OIG Report/Referral pursuant to § 7 of the IG Act or because an individual has (a) requested confidentiality or (b) expressed a fear of reprisal. If you believe that it is necessary that redacted information be made available to your Agency, you may contact the Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation does not have a right to have access to an OIG Report/Referral or to the identities of complainants or witnesses, and that, in all cases, complainants and witnesses are entitled to protection from reprisal pursuant to the Inspector General Act and the Whistleblower Protection Act.

Attachments



U.S. Department of Justice

Federal Bureau of Prisons

Washington, D.C. 20534

January 22, 2007

MEMORANDUM FOR H. A. RIOS, JR., WARDEN
                USP BIG SANDY, KENTUCKY

FROM:        John Dignam, Chief
             Office of Internal Affairs

SUBJECT:     (b)(6), (b)(7)c, (b)(7)f

Attached for your review is the OIG investigative report on the above-named subject. Except in connection with official agency action, no portion of this report may be copied or distributed without the knowledge and consent of the Office of the Inspector General.

We agree with the findings in this matter and consider this case closed, administrative. Since the subject resigned her employment, no further action by your office is required.

If you have any questions regarding this matter, please contact me.

Attachment

cc:  K. M. White, Regional Director
     Mid-Atlantic Region

SBU - Sensitive But Unclassified

E-MAILED
1-23-07

DEC-13-2005 TUE 08:16 ... US Dept of Justice          FAX NO. (b), (7)w                    P. 01

U.S. Department of Justice

Office of the Inspector General

Washington, D.C. 20530

TO:        Dr. John Dignam, Chief              2006 - 00110
           Office of Internal Affairs           VAC 4 ...
           Federal Bureau of Prisons

FROM:      Special Agent In Charge
           CH / CRGD _____ Field Office

SUBJECT:   OIG Complaint No. 2006-OD1389-I
           Agency File N (b)(6), (b)(7)c, (b)(7)f
           Subject

|__| This matter is referred for appropriate disposition by Agency management in
accordance with your Agency's policies and regulations. A copy of your
findings and/or final action is not required by the OIG.

|__| This matter is referred to your Agency for investigation. Please report the
status of this matter in your monthly report to the OIG. A copy of your
findings and/or final action is required to be provided to this Field Office.

|_✓_| This complaint will be investigated by the OIG.

|__| OIG disposition awaits the prosecutorial decision of the Civil Rights division.

IMPORTANT NOTICE

Identifying information may have been redacted from the attached OIG Report/Referral pursuant
to § 7 of the IG Act or because an individual has (a) requested confidentiality or (b) expressed a
fear of reprisal. If you believe that it is necessary that redacted information be made available to
your Agency, you may contact the Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation
does not have a right to have access to an OIG Report/Referral or to the identities of complainants
or witnesses, and that, in all cases, complainants and witnesses are entitled to protection from
reprisal pursuant to the Inspector General Act and the Whistleblower Protection Act.

Special Agent In Charge                                    14/13/_____
                                                           Date

Attachment

DEC-13-2005 TUE 08:16 ... US Dept of Justice          FAX NO. (b)(2)Low                    P. 02

OIG - INVESTIGATIONS DIVISION - IFMS

OIG NO.: CH-409-2006-001389-I

Received By: (b)(7)c, (b)(7)f          Date Received:  12/08/2005    How Received:  A

(b)(6), (b)(7)c, (b)(7)f

Work: UNITED STATES PENITENTIARY
      1197 AIRPORT ROAD, INEZ, KY
Phone:   (606)433-2400                          ZIP:  41224

(b)(6), (b)(7)c, (b)(7)f

Home:
Phone:                                                          B.O.P.No.:
Work:                           ZIP:                            D/L No.:
Phone:
Confidential:                   ZIP:
                                Revealed:                       Authority:  none

ALLEGATIONS:  409 Personal Relationships
Occurrence Date:                          TIME:
CITY:  Job                     State: KY                 ZIP:   41224

Details:

On 12/8/05, the OIG received information that on several dates and times
(b)(7)c, (b)(7)f, (b)(6)                    (USP-Big Sandy, Inez, KY) would have personal conversations and
write sexually explicit notes to each other. It was also alleged that (b)(6), (b)(7)c, (b)(7)f
(b)(6), (b)(7)c, (b)(7)f

DISPOSITION DATA: Date:  12/09/2005        Disposition:  I      Approval (b)(6)
Referred to Agency:                                             Component: BOP
Civil Rights:  N                                               Sensitive:  N
Component Number:                          Consolidated Case Number:

Remarks:

Assigned to SA Bourbon.

Page 1 of 1                                Printed 12/13/2005        6:02:67

12 08 2005 10:17 FAX (b)(2)h          BOP OIA                                    ☒ 001

```
*************************
***   TX REPORT   ***
*************************
```

TRANSMISSION OK

TX/RX NO                    0542
RECIPIENT ADDRESS          (b)(2)Low
DESTINATION ID             SIG CHICAGO
ST. TIME                   12/08 10 15
TIME USE                   02 09
PAGES SENT                 18
RESULT                     OK

<br>

U.S. Department of Justice
Federal Bureau of Prisons
Office of Internal Affairs
Telephone: (202) 307-3286
FAX Telephone: (b)(2)Low

## BOP OIA
## Central Office

TO:    Special Agent in Charge

X  Chicago Field Office          Dallas Field Office          Denver Field Office
   Los Angeles Field Office      Miami Field Office           New York Field Office
   Tucson Area Office            Washington Field Office       Headquarters
   Houston Area Office           San Francisco Area Office

FROM:  _Karin Oheman_                            _12-8-05_
        Karin Oheman, Management Specialist       Date

X  Category 1        Category 2        Total Pages: 18

| FACILITY | USP Big Sandy, KY |
|---|---|
| SUBJECT(S) | (b)(6), (b)(7)c, (b)(7)f |
| ALLEGATION(S) | |

Please review this matter and send your disposition via fax to the
OIA CENTRAL OFFICE a (b)(2)Low

Attachments

This information contained in this facsimile message may be confidential
and/or legally privileged material intended only for the use of the



U.S. Department of Justice
Federal Bureau of Prisons
Office of Internal Affairs
Telephone: (202) 407-3734
FAX Telephone: (b)(2)Low

## BOP OIA
## Central Office

TO:     Special Agent in Charge

X Chicago Field Office          Dallas Field Office          Denver Field Office
  Los Angeles Field Office      Miami Field Office           New York Field Office
  Tucson Area Office            Washington Field Office      Headquarters
  Houston Area Office           San Francisco Area Office

FROM:   _Karin Cheman_                          _12-8-05_
        Karin Cheman, Management Specialist      Date

X Category 1        Category 2        Total Pages: 18

| FACILITY | USP Big Sandy, KY |
|---|---|
| SUBJECT(S) | (b)(6), (b)(7)c, (b)(7)f |
| ALLEGATION(S) | |

Please review this matter and send your disposition via fax to the
**OIA CENTRAL OFFICE at (202) 514-8625.**

Attachments

The information contained in this facsimile message may be confidential
and/or legally privileged material intended only for the use of the
individual or entity named above. If the reader of this message is not the
intended recipient, you are hereby notified that any copying, dissemination,
or distribution of confidential or privileged information is strictly
prohibited. If you have received this facsimile in error, please notify us
by telephone and we will arrange for return of the facsimile.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,           )
                             )
              PLAINTIFF,     )
v.                           )
                             )    Civil Action No. 06-2255(RMC)
HARLEY LAPPIN,               )
Director,                    )
Bureau of Prisons, el al.,)

## DECLARATION OF KEVIN J. WALASINSKI

1.    I, KEVIN J. WALASINSKI, hereby declare and state as follows:

2.    I am currently employed by the United States Government as a Senior Attorney at the Consolidated Legal Center, Lexington, Kentucky, ("CLC Lexington"), a position I have held since July 2001.  Prior to this assignment, I was the Attorney-Advisor at the Federal Correctional Institution, Milan, Michigan, a position I held from June 1994 to July 2001.  From July 1991 to June 1994, I served as the Attorney-Advisor at the United States Penitentiary, Marion, Illinois.  From August 1990 until July 1991, I served as an Attorney-Advisor for the Office of General Counsel for the Federal Bureau of Prisons, Central Office, Washington, D.C.

3.    Pursuant to the Court's Order dated July 3, 2007, concerning the determination the BOP's decision to provide a *Glomar* response for the agency's disciplinary records pertaining to a former BOP employee are law enforcement records within the scope of Exemption 7, I am providing the following additional information.

4.    The Freedom of Information Reform Act ("FOIRA")of 1986 or 1986 FOIA amendments, modified the threshold requirement of Exemption 7 in several distinct respects by deleting the word "investigatory" and adding the words "or information" such that Exemption 7 protections are now available to all records or information complied for law enforcement purposes.

5.    The FOIRA, except for Exemptions 7(B) & 7(E) altered the requirement that an agency demonstrate that disclosure "would" cause the harm, to the lesser standard that disclosure "could reasonably be expected to" cause a specific harm.

7.    Employees of the Federal Bureau of Prisons, which the exception of the Public Health Service, independent contractors, and non-law enforcement vested employees, are deemed federal law enforcement officials.

8.    These employees possess federal law enforcement responsibilities related to the security and orderly operation of the federal prison system.

9.    Within the operational structure of the Federal Bureau of Prisons, ("BOP"), the agency has authored a specific Program Statement which addresses investigations undertaken by the agency for misconduct or "discipline". Program Statement 3420.09, entitled *Standards of Employee Conduct* addresses BOP staff conduct and investigations into allegations of staff misconduct, including criminal misconduct and discipline.

10.    The BOP authored Program Statement 3420.09, entitled *Standards of Employee Conduct* which addresses BOP staff conduct and investigations into staff misconduct, including criminal misconduct. **See Attachment "A"; Program Statement 3420.09).**

11.    Page 5 of the Program Statement states:   h.   <u>Official Investigation</u>.   Includes, but is not limited to, investigations conducted by the Federal Bureau of Investigation, Office of the Inspector General, Office of Professional Responsibility, Office of Internal Affairs, Office of Personnel Management, Special Investigative Agent, Special Investigative Supervisor, Equal Employment Opportunity Investigator or any other employee the CEO authorizes or orders to conduct an investigation. **See Attachment "A"; Program Statement 3420.09, page #5).**

12. The Program Statement also refers to criminal matters.

c.  <u>Criminal Matters</u>.  Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, or with state and local inmates. **See Attachment "A"; Program Statement 3420.09, page #4)**.

13.  The allegations presented in the Plaintiff's Complaint would potentially warrant an official investigation pursuant to this Program Statement to determine if criminal or civil statutes, or administrative regulation(s) were violated.

14.  Indeed, the Plaintiff's own "Opposition Motion to Defendant's Motion to Dismiss", specifically states on page #4, ". . .misbehavior and misconduct were considered a security violation."

15.  Plaintiff also asserted in his "Opposition Motion to Defendant's Motion to Dismiss" page #4, ". . . places a threat on the prison and jeopardizes the life of inmates along with public safety."

16.  Plaintiff's Complaint states on page #3, ". . . was involved in other wrongful and improper acts that led to her being placed under another investigation (which plaintiff filed sexual harassment complaint on _____ ) for violating Bureau of Prisons procedure Section 3420.09 based on involvement with inmate(s) other than her husband."

17. Plaintiff's Complaint articulates allegations which would require an official investigation pursuant to the above Program Statement.

18. Depending on the outcome of an official/law enforcement investigation(s), the investigation(s) may warrant criminal charges, civil fines/remedies and/or administrative charges.

19. Clearly, Plaintiff is seeking a law enforcement record from the BOP as it relates to the request for any disciplinary files or investigations of the former BOP employee.

20. Within the framework of the Freedom of Information Act, the "law" to be enforced within the meaning of "law enforcement purposes" includes both civil and criminal statutes as well as those statutes authorizing administrative proceedings.

21. These records, if they exist, would be maintained as investigatory files and outline the facts, witnesses, law, and regulations, relied upon to either sustain or deny charges of criminal, civil or administrative misconduct.

22. These records, if they exist, would be maintained by either the Office of Internal Affairs ("OIA"), the Office of the Special Investigative Agent ("SIS or "SIA"), or the Office of Inspector General ("OIG") as well as criminal, civil, and administrative enforcement agencies such as the United States Attorney's Office or the Office of Personnel Management.

23.   Therefore, the disciplinary records sought, if they exist, are indeed law enforcement records as defined by the Freedom of Information Act.

24.   Exemption 7 ( C)provides for protection for personal information in law enforcement records.  Exemption 7( C) provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

25.   There is a clear danger in providing a federal prisoner with personal information, contained in an official/law enforcement investigation, of an individual charged with a statutory law enforcement duty to hold the prisoner in custody.

26.   A federal prisoner in possession of private information contained in an official/law enforcement investigation related to his custodian is in a position to black mail the employee concerning the investigation or any materials generated during the investigation.

27.   The federal prisoner may obtain personal information related to the employee such as social security numbers, addresses, family members names and locations, children, etc.

28.   The prisoner may use this information to discredit the employee and make the employee less effective in handling their law enforcement duties even if the employee is exonerated of wrongdoing.

29. Even if a BOP employee resigns their position, the material is no less sensitive and private.

30. A former employee still has the same concerns related to identity theft, retaliation, safety of family and self, and concerns related to a prisoner's desire for revenge while the individual was employed by the BOP.

31. Whether a current or former BOP employee, the disclosure of private information generated during an official/law enforcement investigation warrants and justifies a *Glomar* response.

32. Clearly, in the context of a federal prisoner, seeking a law enforcement investigation of his current or former custodian, such a disclosure could reasonably be expected to cause the specific harms outlined above, and additional harms not specifically listed.

33.   I certify that the above cited documents are true and accurate copies of the records maintained by the Bureau of Prisons.

Attachment A:   Program Statement 3420.09.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this   2   day of August 2007.


Kevin J. Walasinski, Senior Attorney
Consolidated Legal Center
Federal Bureau of Prisons
Lexington, Kentucky 40511

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 3420.09
**CHANGE NOTICE NUMBER:** 3420.09
**DATE:** 2/5/99

1. <u>PURPOSE AND SCOPE</u>.   To revise the Standards of Employee Conduct.

2. <u>SUMMARY OF CHANGES</u>.   The changes include expanding the time frames for personal use of government property as well as removing some limitations on outside employment.

The change in Attachment A modifies the definition of "reckoning period" to conform with the Department of Justice Order pertaining to disciplinary and adverse actions and added an addition offense (#54), "Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report."

Additionally, the Request for Outside Employment forms have been removed as attachments.   These forms may now be located in the forms area of BOPDOCS.

There are also various formatting changes, including conversion to WordPerfect 6.1, which caused some pagination changes.   The sections changed are marked by asterisks.   These changes can be found on pages 5, 6, 8, 15, 18, and 19.

3. <u>ACTION</u>.   All Wardens shall ensure each employee receives and signs for receipt of the revised pages.

File this Change Notice in front of the Program Statement on Standards of Employee Conduct.

/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 3420.09
**DATE:** 2/5/99
**SUBJECT:** Standards of Employee Conduct

1.  <u>PURPOSE AND SCOPE</u>.  To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

- employee conduct and responsibility,
- ethics in matters involving conflicts of interest,
- post-employment restrictions,
- procurement integrity issues,
- attorney ethics, and
- outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act.  Such employees are subject to certain standards and prohibitions -- some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization.  Contractors and volunteers working in Bureau facilities also are expected to conduct themselves by these standards.  This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment.  It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

a.  Employees will conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b.  Employees will avoid situations which involve conflicts of interest with their employment.

c.  Employees will comply with restrictions on employment outside the Bureau and after employment with the Bureau.

d.  Employees will conform with procurement integrity regulations.

e.  Employees will uphold the ethical rules governing their professions.

f.  Employees will immediately report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer (CEO) or another appropriate authority.

g.  Employees who fail to conduct themselves in accordance with these standards will be subject to appropriate sanctions.

3.  <u>DIRECTIVES AFFECTED</u>

a.  <u>Directive Rescinded</u>

PS 3420.08      Standards of Employee Conduct and Responsibility (3/7/96)

b.  <u>Directives Referenced</u>

PS 3735.04      Drug Free Workplace Program (6/30/97)
PS 5510.09      Searching, Detaining, or Arresting Persons Other Than Inmates (3/6/98)
PS 5840.03      Staff Correspondence About Inmates (3/4/93)

18 U.S.C. § 201      Bribery; Illegal Gratuities
18 U.S.C. § 203      Representational Issues
18 U.S.C. § 205      Representational Issues
18 U.S.C. § 207      Post-Employment Statute
18 U.S.C. § 208      Conflict of Interest Statute
18 U.S.C. § 2241-45  Sexual Abuse
41 U.S.C. § 423      Procurement Integrity Act

| 5 CFR § 2635 | Standards of Ethical Conduct for Employees of the Executive Branch (8/7/92) |
| 5 CFR § 2637 | Post-Employment (12/30/93) |
| 5 CFR § 2641 | Post-Employment (1/28/92) |
| 28 CFR § 50.15 | Representation of Federal Employees Sued, Subpoenaed or Charged in Their Individual Capacities (4/9/90) |
| 28 CFR § 500.1 | Contraband |
| Executive Orders 12674 and 12731 | Prescribing Standards of Ethical Conduct |
| DOJ Order 1735.1 | Procedures for Complying with Uniform Standards and Other Ethics Requirements (9/17/92) |
| ABA Model Rule 1.11 | Successive Government and Private Employment Rules for Lawyers (2/7/87) |
| ABA Model Rule 1.6 | Confidentiality of Information (8/2/83) |

## 4. STANDARDS REFERENCED

a. American Correctional Association, 3rd Edition, Standards for Adult Correctional Institutions: 3-4048, 3-4067.

b. American Correctional Association, 3rd Edition, Standards for Adult Local Detention Facilities: 3-ALDF-1C-23.

c. American Correctional Association, 2nd Edition, Standards for Administration of Correctional Agencies: 2-CO-1C-04, 2-CO-1C-20, 2-CO-1C-24.

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1A-23.

## 5. GENERAL REFERENCES. 
The Standards of Ethical Conduct for Employees of the Executive Branch, found at 5 CFR Part 2635, sets forth ethical standards, statutory provisions, and other matters governing the conduct of federal employees. Various resolutions, messages, memoranda, and Executive Orders are included, as are requirements for informing employees and the authority for regulating their conduct.

PS 3420.09
2/5/99
Page 4

6.  DEFINITIONS.  For the purposes of this Program Statement, the following definitions apply:

a.  Chief Executive Officer (CEO).  The Warden at institutions, the Director at Staff Training Centers, the Community Corrections Manager at community corrections offices, the Regional Director at the regional offices, and the Assistant Director of each division at the Central Office.

b.  Conflict of Interest.  A conflict between public interests and the private interests of the individual involved.

c.  Criminal Matters.  Involvement with a federal, state or local law enforcement agency, or with inmates as defined by this section, or with state and local inmates.

d.  During the Conduct of a Procurement.  The time between the beginning and end of a procurement.  The conduct of a procurement begins on the earliest date an authorized official directs that a specific action be taken to initiate a procurement.  These actions include:

- Drafting a specification or a statement of work;
- Reviewing and approving a specification;
- Computing requirements or a purchase request;
- Preparing or issuing a solicitation;
- Evaluating bids or proposals;
- Selecting sources;
- Conducting negotiations; or
- Reviewing and approving the award of a contract or contract modification.

The conduct of a procurement ends with the award or modification of a contract or the cancellation of the procurement.

e.  Employment.  Any form of employment or business relationship, compensated or uncompensated, involving the provision of personal services by the employee, whether to be undertaken at the same time as or subsequent to current federal employment.  It includes, but is not limited to, personal services as an officer, director, employee, agent, attorney, consultant, contractor, general partner, or trustee.

f.  Inmate.  Any person found guilty of committing a felony or misdemeanor and who has been placed in Bureau custody or under supervision of a federal court.  This includes individuals participating in home-monitoring programs, parole, probation, halfway house placement, pretrial and non-sentenced inmates,

detainees, and inmates with state sentences under federal
supervision.

g. <u>Former Inmate</u>. Any inmate for whom less than one year has
elapsed since their release from Bureau custody or supervision of
a federal court.

h. <u>Official Investigation</u>. Includes, but is not limited to,
investigations conducted by the Federal Bureau of Investigation,
Office of the Inspector General, Office of Professional
Responsibility, Office of Internal Affairs, Office of Personnel
Management, Special Investigative Agent, Special Investigative
Supervisor, Equal Employment Opportunity Investigator or any
other employee the CEO authorizes or orders to conduct an
investigation.

i. <u>Negotiations</u>. Discussion or communication with another
person, or such person's agent or intermediary, mutually
conducted with a view toward reaching an agreement regarding
possible employment with that person.

j. <u>Participate</u>. To take action as an employee through
decision, approval, disapproval, recommendation, rendering of
advice, or investigation.

k. <u>Particular Matter</u>. Matters that involve deliberation,
decision, or action that is focused upon the interests of
specific persons, or a discrete and identifiable class of
persons. The particular matters covered by this subpart include
a judicial or other proceeding, application, request for a ruling
or other determination, contract, claim, controversy, charge,
accusation, or arrest.

l. <u>Procurement Official</u>. Any officer or employee of an agency
who has participated personally and substantially in any of the
activities involved "during the conduct of a procurement." This
definition includes acting as a procuring contracting officer,
the source selection authority, a member of the source selection
evaluation board, or the chief of a financial or technical
evaluation team in a procurement in which that contractor was
selected for award of a contract in excess of $10,000,000.

This definition also includes serving as a program manager,
deputy program manager, or administrative contracting officer,
and extends to officials who personally make the decision to
award a contract, task order, or delivery order, establish
overhead or other rates, approve the issuance of contract

PS 3420.09
2/5/99
Page 6

payments, or decide to pay or settle a claim, in excess of $10,000,000. (See definition "during the conduct of a procurement.")

7. PUBLICATION AND INTERPRETATION

   a. The CEO of each facility has the primary responsibility for ensuring that the Standards of Employee Conduct are provided and made known to each employee, contractor and volunteer.

   b. Only actions made in reliance on advice received from the Ethics Officer, or his or her designees, may be protected from disciplinary action. When an employee's conduct violates a criminal statute, however, reliance on the advice of an ethics official cannot ensure the employee will not be prosecuted, but may be used as a factor in making this determination.

   c. Each new employee, contractor, and volunteer shall receive and sign for this Program Statement at the time of appointment. In addition, all employees, contractors, and volunteers shall receive and sign for any updated versions of this Program Statement when issued. The responsibility for ensuring that employees, contractors and volunteers receive and sign for this Program Statement shall be delegated in the following manner:

   ■ Human Resource Managers shall be responsible for employees;
   ■ Department heads who oversee a contractor shall be responsible for that contractor;
   ■ Employee Development Managers shall be responsible for volunteers.

   All receipts are to be filed on the left side of the Official Personnel Folder.

   d. Employee Development Managers shall ensure that supervisors and employees receive annual training on their responsibilities under these regulations and policies.

8. GENERAL POLICY. Employees of the Bureau are governed by the regulations published in 5 CFR Part 2635. While this Program Statement expounds on those regulations to clarify their application in the Bureau, it does not and cannot specify every incident which would violate the Standards of Conduct. In general, the Bureau expects its employees to conduct themselves in such a manner that their activities both on and off duty will not discredit themselves or the agency.

Employees shall:

a.  Conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

b.  Not abuse their position by giving any false impression of having arrest authority through use of Bureau credentials or otherwise.  Bureau employees may only arrest in their official capacity in very limited circumstances as permitted by 18 U.S.C. § 3050 or other authority officially granted to them, such as U.S. Marshal deputation.

c.  Avoid any action which might result in, or create the appearance of, adversely affecting the confidence of the public in the integrity of the U.S. Government.

d.  Avoid conflicts of interest in matters that affect their financial interests.

e.  Comply with post-employment restrictions.

f.  Conform with procurement integrity regulations.

g.  Uphold the ethical rules governing their professions including complying with applicable licensing authority rules, except when they conflict with federal law.

h.  Follow special rules to avoid conflicts of interest when seeking employment outside the Bureau.

i.  Immediately report to their CEOs, or other appropriate authorities, such as the Office of Internal Affairs or the Inspector General's Office, any violation or apparent violation of these standards.

Failure by employees to follow these regulations or this policy could result in appropriate disciplinary action, up to and including removal (see Attachment A).

9. <u>PERSONAL CONDUCT</u>.  It is essential to the orderly running of any Bureau facility that employees conduct themselves professionally.  The following are some types of behavior that cannot be tolerated in the Bureau.

a.  <u>Alcohol/Narcotics</u>.  The use of illegal drugs or narcotics or the abuse of any drug or narcotic is strictly prohibited at any time.  Use of alcoholic beverages or being under the influence of alcohol while on duty or immediately prior to

reporting for duty, is prohibited.  Employees shall be subject to disciplinary action if found to possess a .02 blood alcohol content level or greater while on duty.

   b.  <u>Sexual Relationships/Contact With Inmates</u>.  Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or the families of inmates or former inmates.  Chaplains, psychologists, and psychiatrists may continue a previously established therapeutic relationship with a former inmate in accordance with their respective codes of professional conduct and responsibility.

      (1)  An employee may not engage in, or allow another person to engage in, sexual behavior with an inmate.  Regardless of whether force is used, or threatened, there is never any such thing as "consensual" sex between staff and inmates.

      (2)  Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened.  "Sexual contact" is defined as the intentional touching of "the genitalia, anus, groin, breast, inner thigh, or buttocks."  Penetration is not required to support a conviction for sexual contact.  All allegations of sexual abuse shall be thoroughly investigated and, when appropriate, referred to authorities for prosecution.

      (3)  Employees are subject to administrative action, up to and including removal, for any inappropriate contact or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime.  Physical contact is not required to subject an employee to sanctions for sexual misconduct.

   c.  <u>Additional Conduct Issues</u>.  An employee may not offer or give to an inmate or a former inmate or any member of his or her family, or to any person known to be associated with an inmate or former inmate, any article, favor, or service, which is not authorized in the performance of the employee's duties.  Neither shall an employee accept any gift, personal service, or favor from an inmate or former inmate, or from anyone known to be associated with or related to an inmate or former inmate.  This prohibition includes becoming involved with families or associates of inmates.  If such contact occurs, it must be reported using the procedure in subsection c(5).

      (1)  An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another.

(2)   An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3)   An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4)   An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others.   Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5)   An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including employees whose relatives are inmates or former inmates) must report the contact, in writing, to the CEO as soon as practicable.   This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment.   The employee will then be instructed as to the appropriate course of action.

(6)   Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7)   Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10.   RESPONSIVENESS

a.   Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents.   Therefore, employees are required to remain fully alert and attentive during duty hours.

b.   Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

c.   Employees are to obey the orders of their superiors at all times.   In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

11.  <u>ILLEGAL ACTIVITIES</u>.  Illegal activities on the part of any employee, in addition to being unlawful, reflect on the integrity of the Bureau and betray the trust and confidence placed in it by the public.  It is expected that employees shall obey, not only the letter of the law, but also the spirit of the law while engaged in personal or official activities.  Should an employee be charged with, arrested for, or convicted of any felony or misdemeanor, that employee must immediately inform and provide a written report to the CEO.  Traffic violations resulting in fines under $150 shall be exempt from the reporting requirement.

12.  <u>INTRODUCTION OF CONTRABAND</u>.  The introduction of contraband into or upon the grounds of any federal penal or correctional institution, or taking or attempting to take therefrom, anything whatsoever without the Warden's knowledge and consent, is prohibited.  Pursuant to 28 CFR § 500.1(h), contraband is defined as any material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution.  Contraband includes, but is not limited to, the following:

- letters,
- stamps,
- money,
- tools,
- weapons,
- paper,
- food,
- implements,
- writing material,
- messages,
- instruments,
- alcoholic beverages,
- drugs,
- photographic equipment,
- computer software,
- recording devices,
- cellular phones, etc.

13.  <u>OFFICIAL INVESTIGATION</u>

   a.  Every employee is required to report to management immediately any violation or attempted violation of any law or regulation and any act or omission by any person which could result in a breach of institution security.

   b.  It is not Bureau policy to routinely search employees or their property; however, when the CEO has a reasonable suspicion to suspect that an employee is in possession of contraband items

PS 3420.09
2/5/99
Page 11

which, if introduced, could endanger the safety of staff or inmates or the security of the institution, the CEO may authorize the search of an employee or his or her personal property. Searches may also be authorized when the CEO has a reasonable suspicion that an employee is transporting contraband. Other circumstances may warrant an order by the CEO to randomly search employees or any person or their property when entering or leaving the institution.

c. During the course of an official investigation, employees are to cooperate fully by providing all pertinent information which they may have. Full cooperation requires truthfully responding to all questions and providing a signed affidavit, if requested. Any employee who fails to cooperate fully or who hinders an investigation is subject to disciplinary action, up to and including removal.

14. JUST DEBTS. Failure on the part of any employee, without good reason and in a proper and timely manner, to honor debts acknowledged by him or her to be valid or reduced to judgment by a court, or to adhere to satisfactory arrangements for the settlement thereof, may be cause for disciplinary action. Depending on the circumstances, an employee who receives a legally valid garnishment order may be subject to disciplinary action.

15. CONFIDENTIALITY. Employees of the Bureau have access to official information ranging from personal data concerning staff and inmates to information involving security. Because of the varying degrees of sensitivity of such information, it may be disclosed or released only as required in the performance of an employee's duties or upon specific authorization from someone with the authority to release official information.
The only persons authorized to release official information are:

- in the Central Office, the Director, or designee;
- in a Regional Office, the Regional Director, or designee;
- in other locations, the CEO, or designee.

The above shall not be construed as a reason to deny authorized persons access to official records and files. The Bureau has an obligation to supply official information in response to requests from organizations or individuals upon determining that such individuals are properly identified and acting in an official capacity. To ensure the proper use of official information, the following rules of conduct are established:

PS 3420.09
2/5/99
Page 12

a.  Employees shall verify the identification and authority of individuals requesting access to information prior to giving or discussing records, personnel files, or other official information.

b.  Employees may not deny authorized persons access to official information.

c.  Employees may not use, or release for use, official information for private purposes unless that information is available to the general public.

d.  Employees may not remove information from files or make copies of records or documents, except in accordance with established procedures or upon proper authorization.

e.  Employees may not make statements or release official information which could breach the security of the institution or unduly endanger any person.

f.  Former employees may be granted access only to information available to the general public and may have no greater standing than the general public, irrespective of their past employment and any associations developed in the course of such employment.

16.  GOVERNMENT PROPERTY.  Government property is to be used for authorized purposes only.

a.  Authorized Purposes.  Authorized purposes includes personal use of Government office equipment such as computers, printers, fax machines, telephones, copiers, and calculators.  Use may not involve more than merely negligible cost to the Government.

b.  Negligible Cost.  Negligible cost to the Government includes the cost of electricity, ink, and ordinary wear and tear.  Employees shall provide their own paper.

c.  Personal Use.  Personal use of Government property may take place before or after official working hours or during non-paid meal breaks, provided such use does not adversely affect the performance of official duties by the employee or the Bureau, with the following exception:

Telephones.  Employees may place a personal call on a Government telephone during official working hours if the call:

- does not adversely affect the performance of official duties by the employee or the Bureau;
- is of reasonable duration and frequency;

- could not reasonably have been made at another time; and
- is within the employee's local commuting area.

d. <u>Fitness Equipment</u>. Employees may use Government-owned fitness equipment during breaks if such equipment is intended exclusively for employee use.

e. <u>Existing Prohibitions</u>. This rule does not override already existing prohibitions on use of Government property, including those rules established by a supervisor for business reasons.

17. <u>CREDENTIALS</u>. Bureau of Prisons credentials, identification cards, Government drivers licenses, or badges may not be used to coerce, intimidate, or deceive others or to obtain any privilege or article not otherwise authorized in the performance of official duties.

a. Employees may not obtain or use identification badges issued by other sources which give the appearance of being an official Bureau or law enforcement credential.

b. Employees may not use credentials or otherwise represent themselves as Department of Justice personnel to obtain a gun permit to be used in their unofficial capacity.

c. Employees may use credentials to prove Government employment for purposes of permissible discounts offered to a broad class of Government employees.

18. <u>OUTSIDE EMPLOYMENT</u>

a. There are limitations as to the type of outside employment an employee may obtain. Employees may not:

- engage in any outside employment or activity that involves criminal matters, although the Director reserves the authority to approve uncompensated correctional work on a case-by-case basis;

- engage in any outside employment which would require the use of a firearm, except for military reserve duty; or

- testify as an expert witness in any legal proceeding, with or without compensation, in which the Bureau does not have an interest.

PS 3420.09
2/5/99
Page 14

b.  Any employee who wishes to engage in employment outside the Bureau must obtain prior written approval for each activity using BP-S543.033 or BP-S166.033.  Employment includes compensated speaking, writing, and teaching.  Outside employment, including self-employment, must not result in, or create the appearance of, a conflict of interest with official duties or tend to impair the employee's mental or physical capacity to perform official duties and responsibilities.  Written approval must be resubmitted when there is a change of duty station.

c.  Any employee who wishes to serve as an officer or director of any organization, whether it is compensated or uncompensated, must also complete an outside employment request form.  Employees who perform voluntary service involving church, employee's club, credit union, or union activities, which do not conflict with their official duties or with the mission of the Federal Bureau of Prisons, will be exempted from the requirement to request approval for these activities.

d.  An employee may not have a direct or indirect financial interest that could be affected by the performance or nonperformance of his or her Government duties and responsibilities.

e.  Certain professional employees are prohibited from engaging in the private practice of their professions.  Exceptions may be granted, however, in accordance with subsection (1). Professional employees who wish to engage in outside employment **not** within their profession should follow instructions provided in subsection (2) and should complete BP-S166.033.  For the purpose of this subsection, teaching, writing, and speaking are not considered practicing within one's profession.

(1)  <u>Employment in Certain Professions</u>.  Persons currently employed by the Bureau in the professions listed below who would like to work **within** that profession during off-duty hours must have the approval of his or her immediate supervisor, CEO, Regional Director, and the Director:

- Architect
- Attorney
- Chaplain
- Doctor
- Psychologist

The Bureau Ethics Officer shall review each request to ensure that there are no conflicts of interest.

PS 3420.09
2/5/99
Page 15

Attorneys who seek to practice law outside of the Bureau must also refer to Section 19, Rules for Attorneys.

The form entitled "Request for Approval for Outside Employment Within One's Profession" (BP-S543.033) must be completed with all appropriate signatures affixed before the employee may engage in the outside practice of his or her profession. The form requires such basic information as the name of the employee, the employee's job title, grade, institution and a brief description of the outside employment contemplated. The brief description, at a minimum, should include:

- a summary of the duties to be performed,
- the work address of the employer,
- the hours of employment, and
- any information deemed relevant to support the request.

Failure to provide the required information could result in delays in processing or a denial of the request.

(2) <u>Other Outside Employment</u>. Any other employee who wishes to engage in outside employment must obtain prior approval from his or her supervisor and CEO by initiating a Request for Approval for Outside Employment. Forms may be found on BOPDOCS.

(3) <u>Change of Outside Employment</u>. Any approval granted for outside employment is specific to the particular position referenced in the application and approval. Any employee who wishes to change outside employment, (e.g., to work for a different company, accept a different position with the same company, etc.), must submit a new request form, and receive approval before doing so.

(4) <u>One-Time Review of Outside Employment</u>. All employees who have received approval for outside employment prior to the effective date of this Program Statement must submit a new request form by December 31, 1998. Request for Outside Employment forms may be found on BOPDOCS. This requirement applies even if the employee is still in the same outside position for which approval had previously been granted. The purpose of this one-time review is to ensure compliance with the Supplemental Standards Of Ethical Conduct For Employees Of The Department Of Justice (5 CFR Part 3801).

PS 3420.09
2/5/99
Page 16

19.  RULES FOR ATTORNEYS

a.  Approval of Exceptions.  Attorneys for the Bureau may not practice law on behalf of any other person or entity, for compensation, without the written approval of the Deputy Attorney General.  Bureau attorneys, however, may perform uncompensated legal practice outside the Bureau if:

- the work does not violate 18 U.S.C. §§ 203 and 205,
- the General Counsel has approved the request, and
- the work does not involve criminal matters.

b.  Confidentiality.  Only under limited circumstances shall the attorney/client privilege of confidentiality apply to communications with a Bureau employee.

c.  Successive Government and Private Employment

(1)  A former Bureau attorney may not represent a private client in connection with a matter in which the attorney participated personally and substantially as a public officer. In such a case, the attorney's firm may continue representation in the matter only if the attorney is screened from any participation in the matter in which he or she participated in personally and is apportioned no part of the fee therefrom.

(2)  A Bureau attorney who came from private practice may not participate in a matter before the Bureau in which the attorney participated personally and substantially while in private practice.  Like any Bureau employee, an attorney may not negotiate for private employment with any party involved in a Bureau matter in which the attorney is participating in personally and substantially.

d.  Other Duties.  In addition to the ethical rules attorneys must follow, the duties of a Bureau attorney are further defined by federal regulations and Bureau policy.

20.  CONFLICTS OF INTEREST.  Bureau employees should avoid situations where their official actions affect or appear to affect their private interests, financial or non-financial.

a.  Prohibitions.  Employees are prohibited from taking official action on matters that affect the financial interests of:

- The employee, a spouse, minor child, or a general partner of an employee;

- An organization where the employee is an officer,
director, trustee, partner or employee; or
- An organization the employee is negotiating with for
future employment.

b.  Waivers

(1)  The Director may grant an individual waiver if the
interest is found not to be so substantial as to affect the
employee's service to the Bureau.

(2)  Employee's holdings in mutual funds are exempt if the
employee's share is no more than one percent of the total assets
of the fund.

(3)  An employee with a conflict of interest may ask to have
himself or herself recused from the matter, sell the asset, or
resign.

(4)  An employee must seek written authorization prior to
participating in a matter which could lead a reasonable person to
question the employee's impartiality, even if there is not a
statutory conflict of interest.

(5)  Procurement officials must refer to Section 23,
Procurement Integrity.

21.  SEEKING OTHER EMPLOYMENT.  Any Bureau employee who wishes to
seek employment with persons who otherwise would be affected by
the performance or nonperformance of the employee's official
duties are required to disqualify themselves from participation
in any particular matter that will have a direct and predictable
effect on the financial interests of the person with whom he or
she is negotiating.

When an employee is not actually negotiating for employment, but
lacks impartiality in dealing with a prospective employer, the
employee should disqualify himself or herself.  A Bureau employee
who is aware of, or should be aware of, the need to disqualify
himself or herself from participation in a particular matter must
contact his or her supervisor and request, in writing, to be
removed from the matter.

22.  POST-EMPLOYMENT.  The Office of Government Ethics, in
accordance with statutes, has issued post-employment restrictions
for federal employees who leave federal service.  There is a
general restriction on the representation of parties in matters
related to their federal employment.  This regulation is not
designed to bar an individual from accepting employment with any

PS 3420.09
2/5/99
Page 18

private or public employer after his or her service at the
Bureau, but certain acts that are detrimental to public
confidence in Government are prohibited.

a.  Lifetime Prohibition.  All former Bureau employees are
prohibited from representing another party before the Government
on a particular matter involving specific parties in which they
participated personally and substantially while working for the
Government.  This prohibition does not apply to an appearance or
communication involving purely social contacts, a request for
publicly available documents, or a request for purely factual
information or the supplying of such information.  This
restriction is found at 18 U.S.C. § 207(a)(1).

b.  Two-Year Prohibition.  After leaving the Bureau, a former
employee is restricted from acting as a representative on a
particular matter for which the employee had official
responsibility, rather than personal participation.  The
restriction applies if the former employee knew, or reasonably
should have known, that the matter was pending under his or her
official responsibility during his or her last year of Government
service.  This restriction is found at 18 U.S.C. § 207(a)(2).

c.  One-Year Prohibition.  Former senior level employees are
restricted from lobbying the Bureau, on behalf of another person
on a matter in which that person seeks official action, for one
year.  This ban only applies to Executive Schedule or SES level 5
and 6 employees.  The purpose of this restriction is to allow for
a period of adjustment for incoming senior employees of an agency
and to diminish any appearance that Government decisions might be
affected by the improper influence of a former senior employee.
This restriction is found at 18 U.S.C. § 207(c).

23.  PROCUREMENT INTEGRITY.  During the conduct of a procurement,
a procurement official is prohibited from knowingly, directly or
indirectly, soliciting or accepting any promise of future
employment or business from any officer, employee,
representative, agent, or consultant of a competing contractor.
This prohibition includes engaging in any discussion of future
employment or business opportunity.  This restriction is found in
the Procurement Integrity Act, 41 U.S.C. § 423.  Any procurement
official who participates personally and substantially in a
procurement in excess of $100,000 (the simplified acquisition
threshold) and who is contacted concerning employment by a person
who is a bidder or offerer in such procurement must promptly
report the contact in writing both to the employee's supervisor
as well as to the Ethics Officer.

PS 3420.09
2/5/99
Page 19

a.  <u>Recusal To Discuss Employment</u>.  In certain instances, a procurement official may obtain permission to withdraw from further participation in a procurement to discuss future employment with a competing contractor.  An eligible procurement official may, in accordance with specific procedures in the regulations, request authorization to be recused from participation in the procurement.  A procurement official is not eligible for recusal if, during the period beginning with the issuance of a procurement solicitation and ending with the award of a contract, he or she has participated personally and substantially in the evaluation of bids or proposals, the selection of sources, or the conduct of negotiations.

An individual may not commence discussions with a competing contractor until he or she has received written approval of the recusal request from his or her supervisor.  Rejection of a recusal request is not an adverse personnel action.

b.  <u>Post-Employment Restrictions For Procurement Officials</u>. The Procurement Integrity Act places restrictions on employees involved in procurement who leave federal service.  A former procurement official cannot, for one year after his or her last personal and substantial involvement in a procurement in excess of $10,000,000 accept compensation from such contractor as an employee, officer, director, or consultant.  This does not prohibit former procurement officials from accepting compensation from any division or affiliate of a contractor that does not produce the same or similar products or services for which the employee contracted while a government employee.


                              /s/
                              Kathleen Hawk Sawyer
                              Director

<u>Standard Schedule of Disciplinary Offenses and Penalties</u>

1.  This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed.  The offenses listed are not inclusive of all offenses.

2.  Ordinarily, penalties imposed should be within the range of penalties provided for an offense.  In aggravated cases, a penalty outside the range of penalties may be imposed.  For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties.  When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3.  The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty.  The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal.  While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal.  This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons.  For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4.  Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5.  Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6.  The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

7.  Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8.  Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 1. Unexcused or unauthorized absence of 8 hours or less. | Unauthorized absence of 8 hours or less, tardiness, leaving the job without permission. | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 6 months. |
| 2. Unexcused or unauthorized absence of between 1 and 5 consecutive workdays. | Unauthorized absence of 8 to 40 hours. | 1-day to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 1 year. |
| 3. Excessive unauthorized absence. | Unauthorized absence of more than 5 consecutive workdays. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 4. Careless workmanship or negligence resulting in spoilage or waste of materials or delay in work production. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 5. Failure or delay in carrying out orders, work assignments, or instructions of superiors. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 6. Loafing, wasting time, sleeping on the job, or inattention to duty. | Potential danger to safety of persons and/or actual damage to property is considered in determining severity of the penalty, as is potential or actual adverse impact on government operation. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 7. Insubordination. | Disobedience to constituted authorities, or refusal to carry out a proper order from any supervisor or other official having responsibility for the work of the employee. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 8. Disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another, engaging in dangerous horseplay. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 9. Disrespectful conduct, use of insulting, abusive or obscene language to or about others. | Includes verbal abuse of inmates, ex-inmates, their families or friends. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 10. Reporting for duty or being under the influence of intoxicants or other drugs; unauthorized possession of intoxicants or drugs on government or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | 30-day suspension to removal. | 2 years. |
| 11. Failure to follow orders during an emergency situation. | Potential danger to safety and/or damage to property is a primary consideration in determining severity of the penalty. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 12. Failure to respond immediately to an emergency situation. | Potential danger to safety of persons and/or damage to property is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 13. Failure to observe safety precautions. | To include: (1) precautions for personal safety; (2) posted rules; (3) signs; (4) written or oral safety instructions, or failure to use protective clothing and equipment. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 14. Endangering the safety of or causing injury to staff, inmates or others through carelessness or failure to follow instructions. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 15. Giving an inmate an order which could be hazardous to health and safety. | Potential danger to safety of persons and/or actual damage to property is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 16. Unauthorized possession or use of, loss of, or damage to government property or property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 17. Willful use or authorization of use of a U.S. government owned or leased motor vehicle or aircraft for other than an official purpose. | 31 U.S.C. Section 1349 provides for a minimum 30-day suspension. | 30-day suspension to removal. | 45-day suspension to removal. | Removal. | 2 years. |
| 18. Theft or attempted theft or misappropriation of government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 19. Conversion of government funds or funds in government custody to personal use. | Includes, but is not limited to, travel advances, imprest funds, amounts received as collections and inmate funds. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 20. Malicious damage to government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 21. Gambling or unlawful betting on government-owned or leased premises. | | Official reprimand to 10-day suspension. | 10-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 22. Promotion of gambling on government-owned or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 23. Physical abuse of an inmate. | In determining the severity of the penalty, the circumstances of the incident (were the employee's actions totally unwarranted) should be given more consideration than the presence or absence of physical injury. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 24. Loss of temper in the presence of inmates, former inmates, their families or friends. | Potential of creating a disturbance is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 25. Receiving or soliciting gifts, favors, or bribes in connection with official duties. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 26. Acceptance of any gift or favor from an inmate or former inmate. | Value of gift or favor and the reasons for accepting are primary considerations in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 27. Giving or offering an unauthorized article or favor to any inmate, their families or friends. | Value of article or favor and the reasons for giving are primary considerations in determining the severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 28. Preferential treatment of inmates. | Potential or actual negative reaction of other inmates is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 29. Improper relationship with inmates, former inmates, their families or friends. | Degree of involvement is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 30. Aiding or abetting inmate violation or attempted violation of any law, rule, regulation or commission of any prohibited act. | Degree of aid and seriousness of violation is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 31. Failure to report to management any violation or attempted violation of unprofessional contacts with inmates, former inmates, their families or friends. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 32. Falsification, misstatement, exaggeration or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. | Includes, but is not limited to, the destruction of records to conceal facts, and a concealed conflict of interest in the performance of official duties. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 33. Refusal or failure to cooperate in any official U.S. government inquiry or investigation or criminal investigation, including a refusal to answer work-related questions or attempting to influence others involved in the inquiry. | Includes administrative or criminal investigation, grievance inquiry, EEO investigation, and any other administrative inquiry. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 34. Refusal to undergo a search of person or property. | | Removal. | Removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 35. Criminal, dishonest, infamous, or notoriously disgraceful conduct. | Includes conduct on or off duty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 36. Conduct which could lead others to question an employee's impartiality. | Includes, but is not limited to, a financial, sexual, or emotional relationship with a subordinate in a supervisor's chain of command. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 37. Discrimination in official action against an employee or applicant because of race, religion, sex, national origin, age, handicapping condition, sexual orientation or any reprisal action taken against an employee for filing a discrimination complaint. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 38. Use of Department of Justice identification for other than authorized purposes. | Example: Use to coerce, intimidate, or deceive (Includes ID cards, badges, and other Bureau credentials.) | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 39. Intentional violations of rules governing searches and seizures. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 40. Reckless disregard of rules governing searches and seizures. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 1 year. |
| 41. Negligent violations of rules governing searches and seizures. | | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 1 year. |
| 42. Unauthorized dissemination of official information. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 43. Use of official information for private purposes. | Potential personal gain is a primary consideration in determining severity of the penalty. | Official reprimand. | 14-day suspension to removal. | Removal. | 2 years. |
| 44. Unauthorized removal of records or documents. | Consequences of loss, or breach of security is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 45. Release of information which could breach the security of the institution. | Consequences or potential consequences is a primary consideration in determining severity of the penalty. | 3-day suspension to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 46. Improper denial of official information to an authorized official. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 47. Breach of facility security. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 48. Failure to report any breach or possible breach of facility security. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 49. Trafficking contraband. | Nature of article and degree of involvement are primary considerations in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 50. Engaging in outside employment without approval. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

Case 1:06-cv-02255-RMC     Document 39-5     Filed 05/14/2008     Page 45 of 46

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 51. Failure to honor just debts without good cause. | A just financial obligation is one acknowledged by the employee, reduced to judgment by a court or arranged by settlement. | Official reprimand. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 2 years. |
| 52. Failure to report arrest. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 53. Misconduct off the job. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| * 54. Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report. | Offense includes failure to report violation of Program Statement, government ethics regulations, EEO laws and criminal laws. In particular, supervisors or managers must report sexual harassment observed by or reported to them. No retaliation can be taken against staff or inmates who report any such violations. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years.* |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MONROE L. COLEMAN,          )
                            )
          PLAINTIFF,        )
v.                          )
                            )     Civil Action No. 06-2255(RMC)
HARLEY LAPPIN,              )
Director,                   )
Bureau of Prisons, el al.,)

**DECLARATION OF SHARON MASSEY**

1.   I, Sharon Massey, do hereby declare that I am a Legal Instruments Examiner ("LIE")assigned to the Consolidated Legal Center, ("CLC") Lexington, Kentucky of the Bureau of Prisons (BOP). I have held this position since May 10, 1998.

2.   As a Legal Instruments Examiner I have access to official files and records maintained regarding inmates presently or previously confined in an institution within the CLC Lexington of the Bureau of Prisons, including the electronic database known as SENTRY. In addition, I have access to the Freedom of Information request files maintained in the Mid-Atlantic Regional Office.

3.   Monroe L. Coleman, Federal Register No. 01723-016, is currently incarcerated at the United States Penitentiary, ("USP")Terre Haute, Indiana. Plaintiff was previoluy housed in the United States Penitentiary ("USP") Big Sandy, in Inez, Kentucky, from February 5, 2004, until February 16, 2006. Plaintiff was sentenced in the Superior Court for the District of

Page -1-

Columbia to a Life sentence for robbery while armed, first degree murder while armed (felony murder) and attempt to commit robbery while armed. **(See Attachment "A" for a true and accurate copy of inmate Public Information Inmate SENTRY printout)**. I have reviewed a copy of the complaint filed in this case.

**FOIA REQUEST #2006-07999.**

4.  On June 30, 2006, the Freedom of Information Division of the Federal Bureau of Prisons, Central Office received and forwarded to CLC Lexington, a Freedom of Information ("FOIA")letter from the Plaintiff dated June 21, 2006. Plaintiff's letter requested "all records and/or data contained in the files regarding BOP former worker Kimberly Moore, including disciplianry report filed against Monroe LaVelle Coleman by Mrs. Kimberly Moore who was terminated..." ". . . any and all investigations on the named party Mrs. Kimberly Moore be released to requestor." **(See Attachment "B" for a true and accurate copy of Inmate Coleman's request)**.

5.  CLC Lexington assigned this request FOIA number 2006-07999.

6.  On July 13, 2006, I e-mailed a memorandum under the Supervisory Attorney for CLC Lexington, Joseph Tang, signature to the institution ("USP Big Sandy") requesting that a complete copy of any and all documents relating to "all SIS investigative reports/documents regarding disciplinary report filed against

Page -2-

inmate Coleman by BOP employee Kimberly Moore." **(See Attachment "C" for a true and accurate copy of the request to the institution)**.

    7.  On July 13, 2006, the Supervisory Attorney for CLC Lexington, forwarded an acknowledgment letter to Inmate Coleman. **(See Attachment "D" for a true and accurate copy of the Acknowledgment Letter)**.

    8.  On July 19, 2006, CLC Lexington responded to Inmate Coleman's FOI request no. 2006-07999. Inmate Coleman was notified that there were 2 pages responsive to his request. It was determined that the 2 pages were releasable. **(See Attachment "E" for a true and accurate copy of the August 19, 2006, response)**.

    9.  The letter also informed Mr. Coleman that with regard to his request for all past disciplinary actions for a staff member, CLC Lexington/BOP was refusing to confirm or deny the existence of such records. This was based upon the lack of the individual's consent, proof of death, official acknowledgment of an investigation, or overriding public interest, even to acknowledge the existence of these records pertaining to an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. 552(b)(7)( c), also known as a <u>Glomar</u> exception. **(See Attachment "E"; for a true and accurate copy of the August 19, 2006, response)**.

10.  CLC Lexington released to two pages of records to the Plaintiff. **See Attachment F for a true and accurate copy of the released documents.**

11. CLC Lexington was not contacted by the Department of Justice's Office of Information and Privacy (OIP) concerning an appeal letter from Inmate Coleman for request no. 2006-07999.

12.  On December 29, 2006, Inmate Coleman filed this lawsuit challenging the disposition of his FOIA request.

13. All documents provided to Inmate Coleman are considered law enforcement documents due to their use in the security and orderly operation of a Bureau of Prisons' correctional facility, USP Big Sandy, Ky.

41. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___30<u>th</u>___ day of March 2007.

_Sharon Massey_

Sharon Massey, Legal Instruments Examiner
Consolidated Legal Center
Federal Bureau of Prisons
Lexington, Kentucky 40511

Page -4-

**ATTACHMENT "A"**

```
LEXZ2              *         PUBLIC INFORMATION          *      03-16-2007
PAGE 001           *            INMATE DATA              *      10:07:55
                                AS OF 03-16-2007

REGNO..: 01723-016 NAME: COLEMAN, MONROE L

                    RESP OF: THP / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 812-244-4400     FAX: 812-244-4789
                                              RACE/SEX...: BLACK / MALE
FBI NUMBER.: 937169V7                         DOB/AGE....: 02-29-1956 / 51
PROJ REL MT: LIFE                             PAR ELIG DT: 12-22-2020
PROJ REL DT: LIFE                             PAR HEAR DT: 06-2020
------------------------- ADMIT/RELEASE HISTORY -------------------------
FCL   ASSIGNMENT  DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
THP   A-DES       DESIGNATED, AT ASSIGNED FACIL 02-15-2007 1603 CURRENT
THP   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN 02-15-2007 0909 02-15-2007 1603
THP   A-DES       DESIGNATED, AT ASSIGNED FACIL 09-17-2006 1446 02-15-2007 0909
THP   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN 09-17-2006 1258 09-17-2006 1446
THP   A-DES       DESIGNATED, AT ASSIGNED FACIL 04-12-2006 1217 09-17-2006 1258
A02   RELEASE     RELEASED FROM IN-TRANSIT FACL 04-12-2006 1217 04-12-2006 1217
A02   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-12-2006 0830 04-12-2006 1217
OKL   HLD REMOVE  HOLDOVER REMOVED              04-12-2006 0730 04-12-2006 0730
OKL   A-BOP HLD   HOLDOVER FOR INST TO INST TRF 03-27-2006 1650 04-12-2006 0730
A01   RELEASE     RELEASED FROM IN-TRANSIT FACL 03-27-2006 1750 03-27-2006 1750
A01   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 03-27-2006 1350 03-27-2006 1750
ATL   HLD REMOVE  HOLDOVER REMOVED              03-27-2006 1350 03-27-2006 1350
ATL   A-BOP HLD   HOLDOVER FOR INST TO INST TRF 02-16-2006 1903 03-27-2006 1350
B02   RELEASE     RELEASED FROM IN-TRANSIT FACL 02-16-2006 1903 02-16-2006 1903
B02   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 02-16-2006 0941 02-16-2006 1903
BSY   TRANSFER    TRANSFER                      02-16-2006 0941 02-16-2006 0941
BSY   A-DES       DESIGNATED, AT ASSIGNED FACIL 02-05-2004 1719 02-16-2006 0941
S37   RELEASE     RELEASED FROM IN-TRANSIT FACL 02-05-2004 1719 02-05-2004 1719
S37   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 02-05-2004 0902 02-05-2004 1719
ATL   TRANSFER    TRANSFER                      02-05-2004 0902 02-05-2004 0902
ATL   A-DES       DESIGNATED, AT ASSIGNED FACIL 06-17-2002 1740 02-05-2004 0902
S38   RELEASE     RELEASED FROM IN-TRANSIT FACL 06-17-2002 1740 06-17-2002 1740
S38   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 06-17-2002 0755 06-17-2002 1740
CRL   TRANSFER    TRANSFER                      06-17-2002 0755 06-17-2002 0755
CRL   A-DES       DESIGNATED, AT ASSIGNED FACIL 07-19-2001 0001 06-17-2002 0755
2-D   RELEASE     RELEASED FROM IN-TRANSIT FACL 07-19-2001 0001 07-19-2001 0001
2-D   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-16-2001 1152 07-19-2001 0001
BOP   TRANSFER    TRANSFER                      07-16-2001 1152 07-16-2001 1152
BOP   A-DCOB      ADMIT TO D.C. OFFENDER BRANCH 09-15-2000 1456 07-16-2001 1152
P90   RELEASE 09  RELEASED FROM IN-TRANSIT, SEP 09-15-2000 1456 09-15-2000 1456
P90   A-ADMIT 09  ADMITTED TO IN-TRANSIT, SEP   09-30-1990 0323 09-15-2000 1456
I-T   RELEASE     RELEASED FROM IN-TRANSIT FACL 09-30-1990 0323 09-30-1990 0323
I-T   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 08-31-1990 0333 09-30-1990 0323
A01   RELEASE     RELEASED FROM IN-TRANSIT FACL 08-31-1990 0333 08-31-1990 0333
A01   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 08-30-1990 0710 08-31-1990 0333
ATL   HLD REMOVE  HOLDOVER REMOVED              08-30-1990 0710 08-30-1990 0710


G0002        MORE PAGES TO FOLLOW . . .
```

```
LEXZ2           *          PUBLIC INFORMATION          *     03-16-2007
PAGE 002        *             INMATE DATA              *     10:07:55
                            AS OF 03-16-2007

REGNO..: 01723-016 NAME: COLEMAN, MONROE L

                  RESP OF: THP / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 812-244-4400    FAX: 812-244-4789
ATL    A-PRE       PRE-SENTENCE ADMISSION          08-29-1990 1838 08-30-1990 0710
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL   08-29-1990 1838 08-29-1990 1838
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  08-29-1990 0640 08-29-1990 1838
ERE    HLD REMOVE  HOLDOVER REMOVED                08-29-1990 0540 08-29-1990 0540
ERE    A-HLD       HOLDOVER, TEMPORARILY HOUSED    08-24-1990 1830 08-29-1990 0540
PIT    RELEASE     RELEASED FROM IN-TRANSIT FACL   08-24-1990 1930 08-24-1990 1930
PIT    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  05-08-1989 0540 08-24-1990 1930
I-T    RELEASE     RELEASED FROM IN-TRANSIT FACL   05-08-1989 0540 05-08-1989 0540
I-T    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  04-08-1989 1714 05-08-1989 0540
A02    RELEASE     RELEASED FROM IN-TRANSIT FACL   04-08-1989 1714 04-08-1989 1714
A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  04-07-1989 1102 04-08-1989 1714
PHX    HLD REMOVE  HOLDOVER REMOVED                04-07-1989 0802 04-07-1989 0802
PHX    A-HLD       HOLDOVER, TEMPORARILY HOUSED    04-06-1989 1658 04-07-1989 0802
A02    RELEASE     RELEASED FROM IN-TRANSIT FACL   04-06-1989 1958 04-06-1989 1958
A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  04-06-1989 0700 04-06-1989 1958
ERE    HLD REMOVE  HOLDOVER REMOVED                04-06-1989 0600 04-06-1989 0600
ERE    A-HLD       HOLDOVER, TEMPORARILY HOUSED    04-04-1989 1805 04-06-1989 0600
A02    RELEASE     RELEASED FROM IN-TRANSIT FACL   04-04-1989 1905 04-04-1989 1905
A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  04-04-1989 0900 04-04-1989 1905
TDG    HLD REMOVE  HOLDOVER REMOVED                04-04-1989 0800 04-04-1989 0800
TDG    A-HLD       HOLDOVER, TEMPORARILY HOUSED    03-14-1989 1730 04-04-1989 0800
OXF    EXPIRATION  EXPIRATION OF SENTENCE          11-19-1982 0750 03-14-1989 1730
OXF    A-DES       DESIGNATED, AT ASSIGNED FACIL   08-10-1982 1625 11-19-1982 0750
THA    HLD REMOVE  HOLDOVER REMOVED                08-10-1982 0645 08-10-1982 1625
THA    A-HLD       HOLDOVER, TEMPORARILY HOUSED    07-30-1982 1430 08-10-1982 0645
MIL    TRANSFER    TRANSFER                        07-30-1982 0745 07-30-1982 1430
MIL    A-DES       DESIGNATED, AT ASSIGNED FACIL   11-04-1981 1625 07-30-1982 0745
THA    TRANSFER    TRANSFER                        11-04-1981 0900 11-04-1981 1625
THA    A-DES       DESIGNATED, AT ASSIGNED FACIL   04-28-1981 1900 11-04-1981 0900
LEW    HLD REMOVE  HOLDOVER REMOVED                04-28-1981 0730 04-28-1981 1900
LEW    A-HLD       HOLDOVER, TEMPORARILY HOUSED    03-06-1981 1700 04-28-1981 0730
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
   LEXZ2           *        PUBLIC INFORMATION        *     03-16-2007
PAGE 003           *          INMATE DATA             *     10:07:55
                           AS OF 03-16-2007

REGNO..: 01723-016 NAME: COLEMAN, MONROE L

                RESP OF: THP / DESIGNATED, AT ASSIGNED FACIL
                PHONE..: 812-244-4400    FAX: 812-244-4789
THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F-1258-85C,L,M,N,H
JUDGE...........................: MENCHER
DATE SENTENCED/PROBATION IMPOSED: 01-27-1986
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-17-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

---------------------CURRENT OBLIGATION NO: 010 ---------------------
OFFENSE CODE....:  621
OFF/CHG: DC CODE: CT.C ROBBERY WHILE ARMED; CT.H 1ST DEG MURDER W/ARMED
         (FELONY MURDER); CTS.L,M,N AWI TO COMMIT ROBBERY WHILE ARMED

 SENTENCE PROCEDURE.............: DC CODE ADULT
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 MINIMUM TERM...................:     32 YEARS
 DC MANDATORY MINIMUM TERM......:     20 YEARS
 DATE OF OFFENSE................: 09-28-1983




---------------------CURRENT JUDGMENT/WARRANT NO: 020 ---------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F-5572-83C
JUDGE...........................: HUHN
DATE SENTENCED/PROBATION IMPOSED: 02-25-1986
DATE WARRANT ISSUED.............: N/A



G0002       MORE PAGES TO FOLLOW . . .
```

```
   LEXZ2           *         PUBLIC INFORMATION          *     03-16-2007
PAGE 004           *             INMATE DATA             *     10:07:55
                                AS OF 03-16-2007
```

REGNO..: 01723-016 NAME: COLEMAN, MONROE L

```
                    RESP OF: THP / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 812-244-4400    FAX: 812-244-4789
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-17-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  620
OFF/CHG: 33 DCC 541(A)(1)/UNLAW POSSESSION WITD A CONTROLLED SUBSTANCE
         (HEROIN)

```
 SENTENCE PROCEDURE.............: DC CODE ADULT
 SENTENCE IMPOSED/TIME TO SERVE.:   36 YEARS
 MINIMUM TERM...................:   12 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: C/S TO 010,010
 DATE OF OFFENSE................: 11-21-1984
```

------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-13-2006 AT BSY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 020 010

G0002      MORE PAGES TO FOLLOW . . .

```
 LEXZ2          *          PUBLIC INFORMATION          *     03-16-2007
PAGE 005 OF 005 *              INMATE DATA              *     10:07:55
                            AS OF 03-16-2007

REGNO..: 01723-016 NAME: COLEMAN, MONROE L

                  RESP OF: THP / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 812-244-4400    FAX: 812-244-4789
DATE COMPUTATION BEGAN..........: 01-27-1986
AGGREGATED SENTENCE PROCEDURE...: DC CODE ADULT AGGREGATE
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED MINIMUM TERM.........:    44 YEARS
COMBINED MANDATORY MINIMUM......:    20 YEARS
EARLIEST DATE OF OFFENSE........: 09-28-1983

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    09-28-1983     09-28-1983
                                    01-03-1985     01-11-1985
                                    02-19-1985     01-26-1986

TOTAL JAIL CREDIT TIME..........: 352
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 12-22-2020
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 06-00-2020
TYPE OF HEARING.................: INITIAL

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE




S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

**ATTACHMENT "B"**

06-07999

(Ncno)

RECEIVED

JUN 3 0 2006

FOIA/PA SECTION
FEDERAL BUREAU OF PRISON

Federal Bureau of Prisons
U.S. Justice Department
301 First Street, N.W.
Washington, D.C. 2005

RE:  Freedom of Information Act
     (U.S.C. 552), Privacy Act
     (5 U.S.C. 552(6)(C)(B)(7),
     General (U.S.C. 552 A(J)(2) or
     Specific (U.S.C. 552a(K)(2) Not
     Applicable to This Request

Identification Of Requestor:                    01723-016

Name     :  Monroe LaVelle Coleman             USP
D.O.B.   :  12-29-56                            THP
F.B.I.   :
Soc. Sec. #  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

This letter will serve as undersign request pursuant to the provi-
sions of the Freedom of Information Act (5 U.S.C. 552) and the
Privacy Act (5 U.S.C. 552a (d)(1), and the applicable state statutes
governing Freedom of Information Requests if state agency request,
for full disclosure and release of all records and/or data contained
in the files regarding BOP former worker Kimberly Moore, including
disciplinary report filed against Monroe LaVelle Coleman by Mrs.
Kimberly Moore who was terminated for indulging in wrongful acts
as a BOP worker during 2005 or 2006, which it requested that any
and all investigations on the named party Mrs Kimberly Moore be
released to requester.  This disciplinary report and the requested
investigation(s) took place at Big Sandy USP which is located in
Inez, Kentucky during the year of 2005 and/or 2006.

This undersign is in need of the investigation reports and any
and/or all information, data, or reports not otherwise exempt by
statute (5 U.S.C. (66)(c)(b)(7), (5 U.S.C. a(j)(2), (k)(2), or
law; Tarlton v. Saxbe, 507 F. 2d 1116, 165 U.S. App. D.C. 293(1974);
162 U.S. App. D.C. 284(1974); Sullivan v. Murphy, 478 F. 2d 938,

156 U.S. App. 28(1973).  Your agency is advised that the investiga-
tion reports in toto are no longer accorded exempt status unless
under the specific exemption noted, and only with reference to
specific citation of authority, Paton v. LaPrade, 524 F. 2d 862,
868-69(CA 3 2975).

It is further requested that your agency provides the undersign
with a copy of specific regulations of your Department as provided
by statute (5 U.S.C 552), so that compiance with such regulations
is adhered to except as otherwise provided by law (5 U.S.C. 701
et. seq.).

Pursuant to title 5 U.S.C. (6)(1), it is noted that your agency
has ten (10) working days following receipt of this request to
provide the information and material sought.  Should any delay
occur, it is requested that your agency inform the undersign of
this delay as provided by agency regulations, and the date as to
when your agency will be able to act upon this request.

Finally, please note also that the undersign will agree to pay
any reasonable costs, or file In Forma Pauperis if he is indigent,
provided by statute or regulation of your agency for search and
copy of material requested.

                              Respectfully submitted,

                          s/_____

Date: 6-21-06

**ATTACHMENT "C"**

UNITED STATES GOVERNMENT
# MEMORANDUM
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

July 13, 2006

## MEMORANDUM FOR BEVERLY STARK, LEGAL LIAISON
## USP BIG SANDY, KY

FROM:        Joseph C. Tang, Supervisory Attorney
             Consolidated Legal Center

SUBJECT:        Request for Records

The following records have been requested by letter to this office. Please duplicate the requested records and forward them to the Consolidated Legal Center at Lexington, Kentucky, ithin ten (10) working days. Please attach a copy of this letter to the requested records before mailing. **If the total amount of pages exceed 350, please notify us first before copying.** If you have any questions, please do not hesitate to contact me at 859-255-6812 X119.

COLEMAN, Monroe, Reg. No. 01723-016 FOIA #2006-07999

All SIS investigative reports/documents regarding disciplinary report filed against inmate Coleman by BOP employee Kimberly Moore.

\*\*\* Since inmate is at THP, I will request a copy of the incident report from them. Please ask SIS for any records they may have. Thank you.\*\*\*

[Inmate requesting]

ATTACHMENT "D"



**UNITED STATES GOVERNMENT**
**Federal Bureau of Prisons**
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

July 13, 2006

Monroe Coleman
Reg. No. 01723-016
United States Penitentiary
Post Office Box 12015
Terre Haute, Indiana   47801

Re: FOIA/PA Request No. 2006-07999

Mr. Coleman:

This letter is to acknowledge your request for Federal Bureau of Prisons records has been
received in this office.  In accordance with Title 28, Code of Federal Regulations, Section 16.3,
your request has been forwarded to the Consolidated Legal Center, Lexington, Kentucky.

You requested a copy of an alleged disciplinary report regarding a former Bureau of Prisons staff
member and a copy of a disciplinary report you received while at USP Big Sandy.  FOIA
requests are processed on a "first-in first -out" basis.  You will be hearing from us in the near
future regarding the processing of your request.

Under subpart © of 28 C.F.R. § 16.3 the filing of your request is deemed to constitute an
agreement to pay all applicable fees charged under 28 C.F.R. § 16.11 up to $25.00.  Although
fees are assessed at ten cents ($0.10) per page, Title 28 C.F.R. § 16.11(c)(2) provides that the
first 100 pages are released at no charge to the requester.  The cost for staff time involved in
searching and reviewing these documents will be assessed in accordance with Title 28, CFR §
16.11(c)(1) and (d)(2).  You will be notified of any charges associated with your request.

Please address any concerns regarding this request to Consolidated Legal Center, Federal
Medical Center, 3301 Leestown Road, Lexington, Kentucky 40511-8799, and reference the
above request number.

Sincerely,

Richard W. Schott
Regional Counsel

ATTACHMENT "E"

**UNITED STATES GOVERNMENT**
**Federal Bureau of Prisons**
*Federal Medical Center*
*Consolidated Legal Center*
*3301 Leestown Road*
*Lexington, Kentucky 40511-8799*

July 19, 2006

Monroe Coleman
Reg. No. 01723-016
United States Penitentiary
Post Office Box 12015
Terre Haute, Indiana   47801

Re: FOIA/PA Request No. 2006-07999

Mr. Coleman:

This is in response to your request for Federal Bureau of Prisons Records.  You request all documentation concerning an alleged disciplinary report concerning a former Bureau of Prisons employee who worked at the United States Penitentiary Big Sandy in Inez, Kentucky.  You also request a copy of a disciplinary report you received while at USP Big Sandy.

We are refusing to confirm or deny the existence of disciplinary records regarding a staff member.  Lacking an individual's consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, even to acknowledge the existence of law enforcement records pertaining to an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  See 5 U.S.C. § 552(b)(7)©.

We are providing a copy of Incident Report #1351770 which consists of two pages.  These pages are being released to you in their entirety.

Pursuant to Title 28, Code of Federal Regulations, Section 16.8, this response may be appealed to the Attorney General by filing a written appeal within sixty days of the date of this letter.  The appeal should be addressed to the Office of Information and Privacy, United States Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, DC  20530-0001.  Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Richard W. Schott
Regional Counsel

ATTACHMENT "F"

BP-S288.052 INCIDENT REPORT FRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE                    135170 ew ~
                                              1351770          FEDERAL BUREAU OF PRISONS

1. Name Of Institution:
                                    Part I - Incident Report

| 2. Name Of Inmate Monroe C...an | 3. Register Number 01723-016 | 4. Date Of Incident 06/14/05 | 5. Time 03:15 P.M. |
| 6. Place Of Incident UNICOR FAC... | 7. Assignment UNICOR ORDLY | 8. Unit B-1 | |

9. Incident: Insolence toward staff member (312)

11. Description Of Incident (Date: 06/15/05 Time: 03:15 P.M. Staff become aware of incident)

On 06-14 05 at approximately 3:15 while conducting pat searches in UNICOR, I instructed Inmate Coleman, Registration # 01723-016, to turn around so that I could conduct a pat search. He hesitated and walked towards Foreman Tacket to be pat searched. I then gave Inmate Coleman a direct order to come over so that I could perform the pat search. He stated that he didn't want me to put my hands on him. At that point, I escorted Inmate Coleman to the office to counsel him on pat down procedures. Inmate Coleman stated in a threatening tone that he did not want my adulteress hands to be placed on him. He also stated that my han... were to dirty to touch him. He proceeded to say that he knew that Mr. Burke and myse... were seeing each other. As leaving the office he stated in front of several inmates ...d staff the commit about not wanting my adulteress hands on him. Prior to this par... ...lar event, I had all ready counseled Inmate Coleman for refusing pat down proc...dur...

| 12. Signature Of Reporting Employee | Date And Time 06/15/05 06:45 a.m | 13. Name And Title (Printed) Kimberly Moore, FWS |
| 14. Incident Rep...t ...elivered To Above Inmate By G. WAHER | 15. Date Incident Report Delivered 6-15-05 | 16. time Incident Report Delivered 1008 Am |

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident

Inmate admitted to making the statement to Ms. Moore.

18. A. It Is The Finding Of The Committee That You:
_____ Committed The Following Prohibited Act.

_____ Did Not Commit A Prohibited Act.

B. _____ The Committee Is Referring The Charge(s) To The DHO For Further Hearing.
C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 20 Calendar Days.

19. Committee Decision Is Based On The Following Information
Inmate's ou... Admission And the information provided IN the body f the Incident Report

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act) Change of Jobs
30 days loss of comm. 30 days Loss of Phone privileges to Start 6/18/2005 End 7/17/05

21. Date And Time Of Action _____ (The UDC Chairman's Signature Next To His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects The UDC Proceedings.)

_M. Roberts / M. Roberts_          _M.D. Ilian_          _____
Chairman (Typed Name/signature)    Member (Typed Name)   Member (Typed Name)

Record Copy - Cent      File Record;  Copy - DHO;  Copy - Inmate After UDC Action;  Copy -
Inmate Withi  24 H    s Of Part I Preparation
(This Form M   Be    licated Via WP)                    Replaces BP-288(52) Of Jan 88

| Pa   I]  Investigation | 22. Date And Time Investigation Began 6-15-2005/1008am |
|---|---|

23. Inmate Advis    Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Sta   Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process.  You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

The Inmate Was Advised Of The Above Right By Gary Waher, Jr. At (Date/time) 6-15-2005/1008

24. Inmate Statement And Attitude: Inmate had a good attitude. Inmate stated "Mrs. Moore's hands were filthy and he asked her if Mr. Tacker could shake me down. I didn't mean no disrespect, and I did not say nothing about her and Mr. Burke."

25. Other Facts Al   ut The Incident, Statements Of Those Persons Present At Scene, Disposition Of Ev   nce, Etc.

26. Investi  tor    omments And Conclusions
      Based on t     ritten report and inmates statement I am referring this incident
report to UDC

27. Action Taken

Forward report to UDC for sanctions

Date And Time Investigation Completed __6-15-2005/1020am__

Printed Name/signature Of Investigator Gary Waher, Jr.

_____            Activities Lieutenant
Signatur                            Title