UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA CIRCUIT

MONROE L. COLEMAN,                    )
       Plaintiff,                     )
                         )
                         )
       v.                             )       Civil Action No. 06-2255(RMC)
                         )
HARLEY LAPPIN, et al.,                )
       Defendants.                    )
——————————————————————————————)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
REQUEST FOR SUMMARY JUDGMENT

COMES NOW, MONROE L. COLEMAN, pro se, begging this Honorable Court to consider and review whether plaintiff's **First Amendment right** to Free Speech was violated, and grant his request for <u>discovery</u> based on: (1) Mrs. Kimberly Moore improper behavior on the job occurred before, during and after the filing of the disciplinary report against plaintiff which prison officials were aware of but allowed such indecorous behavior to continue without disciplining, reprimanding, or terminating Kimberly Moore, and (2) whether plaintiff's civil and constitutional rights were violated by federal bureau of prisons officials for **retaliating** against him by processing that **disciplinary** report and placing **bias** sanctions as well against plaintiff.

# RECEIVED

JUN 1 6 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Plaintiff states, he **cannot show his civil and constitutional rights violations without discovery may constitute** denial of access to the court.

The government failed to establish that release of the records could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The district court should look to the plaintiff's determination that the records, information, or/and investigative report of Mrs. Kimberly Moore is of public interest.  Meaning that the public interest in disclosure arises from the public's right to Bureau of Prisons information.  Its measure is the public benefit gained from making information freely available, and Exemption 3 or 7 does not prohibit plaintiff from such information, records, or/and investigative report(s) filed against Mrs. Kimberly Moore. See Baldrige v. Shapiro, 455 U.S. 345,355, 71 L. Ed. 2d 199, 102 S. Ct. 1103 (1982); Irons & Sears v. Dann, 196 U.S. App. D.C. 308, 606 F.2d 1215,1220 (D.C. Cir. 1979)(emphasis added); see also CIA v. Sims, 471 U.S. 159, 105 S. Ct. 1881,1887 n.11, 85 L. Ed. 2d 173 (1985).

Nonetheless, it may be proper to give deference to an agency's interpretation of what matters are covered by a statute, once the court is satisfied tht the statute is in fact an Exemption 3 or 7 withholding statute, i.e., that it meets both the threshold test and one prong of the proviso. See Church of Scientology of California v. IRS, 253 U.S. App. D.C. 85, 792 F.2d 153,167-70 (D.C. Cir. 1986)(Siberman, J., concurring), cert. granted 479 U.S. 1063, 55 U.S.L.W. 3512, 107 S. Ct. 947, 93 L. Ed. 2d 996

(1987); id. at 162-63 n.4.

Whenever there are serious civil and constitutional rights violations of a prisoner's committed by bureau of prisons officials and/or employee(s) can be viewed as public information especially when the person(s) no longer works as law enforcement due to wrong-doing conduct.

Thus, plaintiff request a _deferred_ decision pending completion of discovery and in-camera review of documents, records, reports, investigative information to determine whether a privacy interest is involved now since Mrs. Kimberly Moore is no longer employed with the bureau of prisons. The investigation has concluded, resulting in her discharged and wrongdoing obviously found. Also, as stated in BOPs' declarant "Walasinski Decl. ¶7, Mrs. Kimberly Moore is one of a "non-law enforcement vested employee and not considered federal law enforcement officials."

It is requested further that this Court consider first, whether "plaintiff's constitutional right to Freedom of Speech" was violated, second; whether plaintiff was "retaliated" against by prison officials who wrote and process the disciplinary report; third, how would a plaintiff know whether he may pursue a civil or/and constitutional rights violation committed by Mrs. Kimbery Moore and other prison officials if he is not informed of the outcome of a prison allega-tion violation, and fourth, whether any such investigations were conducted by the office of Professional Responsibility regarding Mrs. Kimberly Moore ever existed.

## Material Fact

Failure to confirm or deny disciplinary, memorandum or investi-

-3-

gative reports against <u>Moore</u> can be viewed as a tacit or posit
admission of its existence in light of her termination as an employee;
verifies the fact that Mrs. Kimberly Moore's conduct on the job
is of <u>public interest</u>, especially because her duty was to protect
the public and not indulging in <u>promiscuous acts</u> while on the
<u>job</u>. Casey v. Galli, 24 L. Ed. 168, 94 U.S. 673 at 170.  According
to the law of pleading what is not denied is conceded.  Rule 8(d),
12(h) & (g) of the federal rules of civil proceedings clarifies
that whereas the government/bureau of prisons was required to
respond to the averments, failure to deny simply is an admission;
<u>without the investigative documents plaintiff is unable to show
the truth of his allegations</u>.

Therefore, the enclosed affidavit helps to confirm the existence
of the investigative reports of Mrs. Moore and confirmly states
it is of public interest.  And the investigation(s) conducted
by <u>BOP agency</u> will show plaintiff <u>did not lie or fabricated the
wrongdoing of Mrs. Kimberly Moore</u>.  To allow the bureau of prisons
to deny the existence of Mrs. Kimberly Moore's investigative reports
and state "it is of no public interest" is a denial to the court,
is an admission by the Bureau of Prisons officials and its employees
that "you may commit an <u>illegal sexual act(s)</u> while on the BOP
job without the court revealing the substance of the investigation
or reason(s) for termination of such person(s).

Plaintiff in his affidavit is requesting this Honorable Court
(1) admit in its decision whether his First Amendment right was
violated by Bureau of Prisons staff regarding those that participat-
ed in the Kimberly Moore's disciplinary report process, and (2)

-4-

whether those that participated in the disciplinary report process
acted with bias as well as retaliation against Monroe L. Coleman.
See Clark v. Stalder, 121 F.3d 222,230 (5th Cir. 1997); Franco
v. Kelly, 854 F.2d 584,589-90 (2d Cir. 1988); Thornburgh v. Abbott,
490 U.S. 401,407, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989); Union,
Inc., 433 U.S. 119,125, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977);
Turner v. Safley, 482 U.S. 78, 84,89-90, 107 S. Ct. 2254,2261-62,
96 L. Ed. 2d 64 (1987); Casey v. Lewis, 4 F.3d at 1520.

## VAUGHN INDEX

"Vaughn Index" is a term derived from Vaughn v. Rosen, 484
F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).
The index usually consists of a detailed affidavit or declaration,
the purpose of which is to permit the court system effectively
and efficiently to evaluate the factual nature of disputed informa-
tion. See John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989).
In the instant case, the affidavit of Monroe LaVelle Coleman serves
as the reason for trial in accord with the Vaughn Index.  Thus,
the public interest is at stake, and Exemption 7 requires a threshold
demonstration by the defendant agency that all documents in question
were "compiled for law enforcement purposes." t U.S.C. 522(b)(7).
A "criminal law enforcement agency's" invocation of "law enforcement
purposes" warrants greater deference than like claims by other
agencies. Pratt v. Webster, 673 F.2d 408,418 (D.C. Cir. 1982).
The [BOP] agency must establish that its activity is supported
by "at least a colorable claim" of fulfilling the law enforcement
duties. Id. at 421.

Plaintiff's claim is based on the exercise of his First Amendment constitutional rigth which the defendants acted with retaliation bringing a disguised disciplinary report against him thus the defendants are not entitled to Summary Judgment on Plaintiff's First Amendment and Retaliatory claims. See O'Donnell v. Barry, 331 U.S. App. D.C. 272, 148 F.3d 1126,1133 (D.C. Cir. 1998)(quoting Pickering v. Bd. of Educ., 391 U.S. 563,568, 20 L . Ed. 2d 811, 88 S. Ct. 1731 (19 68)); Clarke v. Stalder, 121 F.3d 222,230 (5th Cir. 1997) retaliatory acts by bureau of prisons officials.

First, plaintiff states he was engaged in protected speech, i.e., that he was speaking on a matter of "public concern." Tao v. Freeh, 307 U.S. App. D.C. 185, 27 F.3d 635,638 (D.C. Cir. 1994). Second, the Court must consider whether "the Bureau of Prisons in promoting the efficiency of the penal institution disciplinary and/or investigative process it performs through disruption, unfair, bias and discriminatory practice against plaintiff which his constitutional rights are not relinguished because of incarceration. Thus, the plaintiff's word was of public interest without embarrassment to Mrs. Kimberly Moore which her actions are of public interest and concern. Third, Plaintiff must show that his speech was "a substantial or motivating factor in prompting the retaliatory or punitive act of which he complains." Id. (citing Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274,287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)).  Fourth, Plaintiff's employer [Unicor] or disciplinary committee, investigator(s) of the disciplinary

-6-

report "should have an opportunity to show by a preponderance
of the evidence that it would have reached the same decision even
in the absence of the protected conduct, or Mrs. Kimberly Moore's
truthful act." O'Donnell, 148 F.3d at 1133. Based on the above
Summary Judgment should be denied. Lerner v. District of Columbia,
362 F. Supp. 2d 149 (March 4, 2005).

It is requested that this Honorable Court conduct an inquiry
into: a) whether the disciplinary panel was illegal and held illegal-
ly; b) was Coleman exercising his constitutional right of Freedom
of Speech; c) why Mrs. Kimberly Moore did not include "lying"
in her written report against Coleman; d) was the disciplinary
report based on retaliation/revenge; and e) whether the disciplinary
report should be dismissed from plaintiff's prison jacket.

The Supreme Court has held that "retaliation  offends the
Constitution [because] it threatens to inhibit exercise of the
protected right" and "is thus akin to an unconstitutional condition
demanded for the receipt of a government-provided benefit."
Crawford-El v. Britton, 523 U.S. 574,588 n.10, 140 L. Ed. 2d 759,
118 S. Ct. 1584 (1998)(citations omitted).  This include a right
to be free from retaliation. See Sullivan v. Little Hunting Park,
396 U.S. 229, 24 L. Ed. 2d 386, 90 S. Ct. 400 (1969)(finding that
42 U.S.C. §1982 prohibited retaliation even thought the text does
not excludes plaintiff's claims. Perry v. Sindermann, 408 U.S.
593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972)(finding that retalia-
tion is actionable despite the lack of an express bar on retalia-

-7-

tion in the statutory language of 42 U.S.C. §1983). The D.C. Circuit interpreted the Supreme Court's holding in <u>Sullivan</u> to support the proposition that a statute prohibiting discrimination should be construed to confer an "implicit...cause of action protecting people from private retaliation for refusing to violate other people's rights under §1981 or for exercising their own §1981 rights." Fair Employment Council v. BMC Mktg. Corp. 307 U.S. App. D.C. 401, 28 F.3d 1268,1280 (D.C. Cir. 1994).

A retaliation claim is actionable precisely "because retaliatory actions may tend to chill individuals' exercise of constitutional rights." American Civil Liberties Union of Md., Inc. v. Wicomico County, 999 F.3d 780,785 (4th Cir. 1993)(citing Perry v. Sindermann, 408 U.S at 597). Thus, the "test" for whether one exists "is whether the advers action taken by the defendants is likely to chill the exercise of constitutionally protected speech." McGill v. Board of Educ., 602 F.2d 774,780 (7th Cir. 1979)(citing Pickering v. Board of Educ., 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968)).

Chief Judge Posner has argued that there is a "peculiar perversity" in imposing a heightened standard in cases involving prison inmates because "it is far more difficult for a prisoner to write a detailed complaint than for a free person to do so" due to the fact that prisoners have no power to investigate their claims and gather evidence prior to obtaining discovery. Billman v. Indiana Dep't of Corrections, 56 F.3d 785,789-90 (7th Cir.

1995).  The plaintiff argues that in a case where the motive under-
lying a defendant's actions is a fact solely within the knowledge
of the defendant, a court <u>could</u> <u>not</u> <u>fairly</u> <u>grant</u> <u>defendant's</u> <u>motion</u>
<u>for</u> <u>summary</u> <u>judgment</u> <u>before</u> <u>plaintiff</u> <u>has</u> <u>been</u> <u>given</u> <u>an</u> <u>opportunity</u>
<u>to conduct discovery on this</u>. Where the plaintiff must establish
the culpability element as part of the constitutional claim, denial
of discovery on this isssue would make it <u>impossible</u> <u>to</u> <u>probe</u>
<u>certain</u> <u>cases</u> <u>and</u> <u>claims</u>.

The BOP must demonstrate the existence of a nexus "between
[its] activity" (rather than its investigation) "and its law enforce-
ment duties." However, the defendant's is not making known that
the prison investigation is shown to have been in fact conducted
for an improper purpose, which Exemption 7 may not be applicable
to the records of that investigation.

The previous courts have held that a federal claim may stand
when false charges are allegedly brought in <u>retaliation</u> for an
inmate's exercise of his substantive constitutional rights, see
Franco v. Kelly, 854 F.2d 584,589-90 (2d Cir. 1988); see also,
Thornburgh v. Abbott, 490 U.S. 401,407, 104 L. Ed. 2d 459, 109
S. Ct. 1874 (1989), "the fact of confinement and the needs of
the penal institution impose limitations on constitutional rights,
including those derived from the First Amendment, which are implicit
in incarceration." Union, Inc., 433 U.S. 119,125, 53 L. Ed. 2d
629, 97 S. Ct. 2532 (1977); i.e., Jones v. North Carolina Prisoners'.

A prisoner inmate retains those First Amendment rights that

-9-

are not inconsistent with his status as a prisoner or with the
legitimate penological objectives of the corrections system.
The discriminatory enforcement, poses greater concerns with respect
to the freedom of speech protected by the Federal Constitution's
of Civil procedure.

Prison regulations that infringe a prisoner's constitutional
right are valid so long as they are "reasonably related to legiti-
mate penological interests." Turner v. Safley, 482 U.S. 78,89,
107 S. Ct. 2254,2261-62, 96 L. Ed. 2d 64 (1987); Casey v. Lewis,
4 F.3d at 1520.  The Supreme Court has identified four factors
to consdier when determining the reasonableness of a prison rule:
1) whether there is a "valid, rational connection between the
prison regulation and the legitimate governmental interest put
forward to justify it"; 2) "whether there are alternative means
of exercising the right that remain open to prison inmates"; 3)
"the impact accomodation of the asserted constitutional right
will have on guards and other inmates and on the allocation of
prison resources generally"; and 4) the "absence of ready alterna-
tives" or, in other words, whether the rule at issue is an "exagge-
rated response to prison concerns." Turner, 482 U.S. at 89-90(i.q.o.).

However, thereafter, it is alleged that Mrs. Kimberly Moore
had gotten intimately involved with a prisoner which it is believed
drugs and her personal garment were involved.  However, she was
placed under another investigation by prison officials which led
to her departure, firing, or termination from the BOP.  Around

-10-

or during that time of Mrs. Kimberly Moore investigation, plaintiff was directly threatened by bureau of prisons official not to "pursue that complaint against officer Moore cause you can be placed in segregation."

Furthermore, plaintiff objects to defendants' position, "Defendants also will partially release and withhold a number of documents pursuant to exemptions under the Freedom of Information Act. See available for public inspection and copying the information described in 5 U.S.C. §522(a)(2)(B) & (C) and otherwised comply with 5 U.S.C. §522(a)(2); see #2 and #3 of Defendants' Federal Defendants' First Motion For Extension Of Time To File Renewed Motion For Summary Judgment." Because Defendants are withdrawing their reliance on a "Glomar response," * * *. Plaintiff's Glomar Response along with discovery request need to be considered by this Court. Without such information Coleman is unable to substantiate his claim as well as the reason to remove that harassing, retaliatory, bias and cover-up disciplinary report.

Argument - Why a Genuine
Issue Exists For Trial

Defendant's action has caused plaintiff to suffer emotional distress. In Crawford-El, the Court of Appeals suggested that plaintiff's claiming First Amendment injuries must do more than simply allege that state [or BOP] actions acted unconstitutionally. The Crawford-El, court indicted that even in First Amendment cases, at least a de minimis showing of injury is required. See Crawford-El, 951 F2d at 1322. Thus, considering the defendants action caused plaintiff to psychologically suffer along with receiving retaliation from those named and unnamed defendants.

   Plaintiff humbly request to this Court his position; making known that he wants NO trouble from this Court or either

defendant. Plaintiff commenced this com-
plaint based on four factors: A) was
plaintiff retaliated against by unnamed
defendants processing/filing and lodging
a disciplinary report against plaintiff? b)
Was plaintiff's First Amendment Freedom
of Speech Right violated when he
stated to Mrs. Kimberly Moore what he
had witnessed her committing [Adultery
acts] on the bureau of prisons job with
a co-worker of the bureau of prisons who
was not her legalized husband? c) Was
Mrs. Kimberly Moore under scrutiny by
any Bureau of Prisons/Dep't of Justice
due to her inappropriate, adulterated,
illegal, or wrongful acts during her tenure
as a BOP worker; and if so, why was
a disciplinary report filed against the
plaintiff since it was a known fact she

was in violation of Bureau of Prisons policy 3420.09 which plaintiff should not had been punished for Mrs. Kimberly Moore's unlawful actions before, during, or/and after the time of the disciplinary report was filed against plaintiff. And d) if this Court will by request view the evidence before it along with the withheld information of defendants, Title 5, USCS §§ 552 (b)(5), (b)(6), (b)(7)(C), (b)(7)(F) on First whether the information shows plaintiff was retaliated against by receiving an illegal and bias disciplinary report that was used as a cover-up or protecting the wrongdoing of a white female bureau of prisons worker as well as plaintiff's constitutional right under the First Amendment was violated?

In all, plaintiff requests that the disci-
plinary report be removed from his prison
jacket that will desist further litigation.

The plaintiff only asks or requests whether
the FOIA information supports removal
of that disciplinary report, and if so, re-
store him to Unicor position.

Furthermore, a material fact does
exist, plaintiff states a diminutive amount
of information released via court from
the defendants to plaintiff is reasonable
to dismiss a summary judgment especially
when the failed defendants' had two or
more tries of not releasing the information
prior to a court's involvement; whether
the information sought was in whole or
in part.

Without this Court taking in-camera
those unreleased documents then plaintiff's
allegations of mistreatment, retaliation and

constitutional violation may never be
corrected or resolved. Without those
documents plaintiff is unable to pro-
vide to a jury the necessary evidence
that would permit a reasonable jury
to find in its favor those violations.
See de NOVO review by the courts.
Hayden v. Nat'l Security Agency Center
Sec. Serv., 608 F2d 1381, 1384 (D.C.
Cir. 1979), cert. denied, 446 U.S. 937
(1980).

The Memorandum of Points and Authori-
ties In Support of Defendant's Renewed
Motion For Summary Judgment page 5
paragraphs 2 and 3, * Ms. Moore concern-
ing the details of an investigation, ***,
Referral of Incident Form concerns
another inmate and issues related to
Mrs. Moore. Including investigations

of: Office of Inspector General, Office of Internal Affairs — These investigations dealt with allegations of inappropriate relationships with inmates and retaliation but this is another reason for this Court to probe further into the acts and investigation of Mrs. Moore and a co-worker Mr. Burke which this Court will find a complaint or divorce filed by Mrs. Burke relating to the final investigation or termination of Mrs. Moore.

There are hidden investigation information plaintiff may never see but this Court is allowed to review that information then make its final decision based on such finding.

The requested information of FOIA

−17−

is only relevant to whether Mrs. Kimberly Moore actions on the job were reasonable to allow the disciplinary report against Plaintiff to stand.

A material fact that any jury could see is the prejudicially, retaliatory, and bias treatment plaintiff received from those defendants to conceal Moore's adulterated behavior. Thus, eliminating a reason to persuade a jury why relief is sought when the correction is before its eyes.

Also, the public is entitled to know who Mrs. Kimberly Moore is, whether she can be trusted, reliable, or suitable for special assignments or jobs.

Therefore, Mrs. Moore termination of law-enforcement duties is or should be considered public information. Meaning,

there is nothing mentioned in case law stating Mrs. Moore's actions should remain undisclosed from the public interest. An in-camera inspection is required. Moreover, the release of exhibits by defendants are rhetoric materials possessed mostly by plaintiff which <u>do not</u> help in supporting his position of: retaliation, Freedom of Speech violation along with Moore's unlawful behavior while on the job.

## Certificate of Service

I, Monroe L. Coleman states that a true and correct copy of the instant motion(s) have been mailed on this 6th day of June, 2008, to: Alexander D. Shoaibi, AUSA, 501 3rd Street, N.W., Washington, D.C. 20530-Rm E-428.

Respectfully submitted,

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA CIRCUIT

MONROE L. COLEMAN,            )
        Plaintiff,           )
                             )
                             )
                             )
        v.                   )        Civil Action No. 06-2255(RMC)
                             )
                             )
                             )
HARLEY LAPPIN, et al.,       )
                             )
        Defendants.          )
_____  )

## A F F I D A V I T

Affiant states he is the plaintiff in the above caption and
that this affidavit shall represent his position in this matter.

Therefore, affiant request a deferred decision pending comple-
tion of plaintiff's discovery and in-camera review of documents
to determine whether a privacy interest is involved now since
employee [Mrs. Kimberly Moore] is no longer employed with the
Federal Bureau of Prisons.  Thus, the Kimberly Moore investigation
has concluded, resulting in her discharged for wrongdoing obviously
found.

Under Freedom of Information Act (FOIA) Exemption 7(C), the
requirement that each agency shall make available to the public
information does not apply to matters that are records or informa-

**RECEIVED**

JUN 1 6 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

tion compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C.S. §552(b)(7)(C). In the context of 5 U.S.C.S. §552(b)(7)(C), in assessing whether records are compliled for law enforcement purposes, the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.

There are two types of investigatory files that government agencies compile: (1) files in connection with government oversight of the performance of duties by it employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions. The purpose of the investigatory files is the critical factor. Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surviellance of the performance of duties by government employees. There is a two-part test whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties.

See 28 C.F.R. §0.39a(a)(2001).

See 28 C.F.R. §0.39a(d).

See 28 C.F.R. §0.39a(6).

The Justice Department [and Bureau of Prisons] cannot rely on a bare assertion to justify invocation of an exemption from disclosure under the Freedom of Information Act, especially when the regulations contemplate that Bureau of Prisons will receive as well as generate reports that may constitute investigatory records compiled in connection with government oversight of the performance of duties by its employees.

Plaintiff's case gives rise to "the Glomar Response" itself makes clear, the Bureau of Prisons cannot rely on a bare assertion to justify invocation of an exemption from disclosure, see Phillippi v. CIA, 178 U.S. App. D.C. 243, 546 F.2d 1009,1014-15 & n.12 (D.C. Cir. 1976), especially when, as here, the regulations contemplated that Bureau of Prisons will receive as well as generate reports that may constitute investigatory records comiled "in connection with government oversight of the performance of duties by its employees." Rural Housing, 498 F.2d at 81. However, this Court needs to receive reports or the allegations and investigations reports used and conducted against Moore as well as any record submitted by bureau of prisons employees regarding Moore's conduct as Federal Bureau of Prisons employee. See Beck v. Dep't of Justice, 302 U.S. App. D.C. 287, 997 F.2d 1489 (D.C. Cir. 1993), justifies plaintiff's Glomar Response.

The bureau of prisons representative has intentionally withheld other information under certain FOIA exemptions. In addition, Coleman received supplemental release of information. To date,

-3-

a total of 2 pages were released in whole or in part.  The Bureau
of Prisons representatives have    withheld from disclosure "records
or information compiled for law enforcement purposes," the disclosure
of which "could reasonably be expected to constitute an unwarranted
invasion of personal privacy." 5 U.S.C. Section 552(b)(7)(c).
However, Exemption 7(C) also requires a balancing of the personal
privacy interests at stake against the public's interest in disclo-
sure. See Stern v. Federal Bureau of Investigations, 737 F.2d
84,91 (D.C. Cir. 1984); this has yet to be done by the Bureau
of Prisons.  The Bureau of Prisons has yet to show that the public
has no interest in the requested information nor entitled to such
FOIA.

    Affiant states that the bureau of prisons has denied him
the requested information in accord with Freedom of Information
Act which he could prove that the disciplinary report filed against
him was done or an act of retaliation committed by bureau of prisons
employees.  Affiant constitutional rights were violated based
on a cover-up presented by bureau of prisons officials trying
to protect Mrs. Kimberly Moore who could no longer control her
deviant behavior.

    Therefore, affiant states that the above is true and correct
to the best of his knowledge, under or in accord with the penalty
of perjury.

Dated: 10\4\2008

_Tammy Bankston_
NOTARY PUBLIC

June 29 2015
Commission Expires

**TAMMY BANKSTON**
Notary Public, State of Indiana
Vigo County
My Commission Expires
June 29, 2015

Respectfully submitted,

Monroe LaVelle Coleman
#01723-016

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true and correct copy of the instant motion has been mailed on this _____ day of April, 2008, to the below address of defendants' attorney:

Alexander D. Shoaibi
Assistant U.S. Attorney
501 Third Street, N.W.
Rm E-4218
Washington, D.C. 20530

Respectfully submitted,

_____

Monroe L. Coleman, pro se
#01723-016
Federal Corr'l Complex
P.O. Box 33
Terre Haute, IN 47808

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONROE L. COLEMAN,                )
                                  )
          Plaintiff,              )
                                  )
      v.                          )     Civil Action No. 06-2255(RMC)
                                  )
HARLEY LAPPINS, et al.            )
Director, Bureau of Prisons.      )
                                  )
          Defendants.             )
_____     )

## ORDER

UPON CONSIDERATION of Plaintiff's motion for Discovery, this Court will consider his substantive constitutional rights regarding the First Amendment Freedom of Speech, along with protection from Retaliatory acts were committed by the named defendants.

Furthermore, this Court will review in-camera Plaintiff's Glomar response to determine whether the disciplinary report should be dismissed from his prison jacket based on the information from the Freedom of Information claim.

Dated: _____, 2008.


                              _____
                              UNITED STATES DISTRICT JUDGE