**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| | ) |
| **MONROE L. COLEMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Civil Action No. 06-2255 (RMC)** |
| | ) |
| **HARLEY LAPPIN,** *et al.*, | ) |
| | ) |
| Defendants. | ) |
_____ )

## MEMORANDUM OPINION

This matter is before the Court on Defendant's third motion for summary judgment.

For the reasons discussed below, the motion will be granted in part and denied in part without

prejudice.

### I.  BACKGROUND

In June 2006, Plaintiff submitted a request for information under the Freedom of

Information Act ("FOIA"), *see* 5 U.S.C. § 552, to the Federal Bureau of Prisons ("BOP") for the

following:

> [A]ll records and/or data contained in the files regarding BOP former
> worker Kimberly Moore, including disciplinary report filed against
> [plaintiff] by Mrs. Kimberly Moore who was terminated for indulging
> in wrongful acts as a BOP worker during 2005 or 2006, which it
> requested that any and all investigations on the named party Mrs[.]
> Kimberly Moore be released to requester.  This disciplinary report
> and the requested investigation(s) took place at Big Sandy USP which
> is located in Inez, Kentucky during the year of 2005 and/or 2006.

Defs.' Mem. of P. & A. in Support of Mot. to Dismiss or, in the Alternative[,] Mot. for Summ. J.

[Dkt. #17] ("Defs.' Mot."), Declaration of Sharon Massey ("Massey Decl."), Attach. B (Plaintiff's

FOIA Request) at 1.  The BOP released in full the two-page Incident Report, Massey Decl. ¶ 8 &

Attach. F (Incident Report No. 1351770), and the Court granted the agency's motion on that issue.

*Coleman v. Lappin*, No. 06-2255, 2007 WL 1983835, at *2 (D.D.C. July 3, 2007).  With respect to

the request for disciplinary records regarding Mrs. Moore, the BOP initially provided a Glomar

response, that is, refusing to confirm or deny the existence of responsive records.[1]  Massey Decl.,

¶ 9 & Attach. E (July 19, 2006 letter from R.W. Schott, Regional Counsel, Consolidated Legal

Center, BOP, regarding Request No. 2006-07999).  Its decision "was based upon the lack of [Mrs.

Moore's] consent, proof of death, official acknowledgment of an investigation, or overriding public

interest, even to acknowledge the existence of . . . records pertaining to [her]" because disclosure of

such records "could reasonably be expected to constitute an unwarranted invasion of [her] personal

privacy."  Massey Decl. ¶ 9.  The Court denied the BOP's motion on this issue, *see Coleman*, 2007

WL 1983835, at *3, and directed the agency to file a renewed motion.  *Id.*  On consideration of

Defendants' renewed motion for summary judgment, the Court found that "[a] Glomar response

[was] not appropriate in the absence of an evidentiary record to support a finding that BOP records

pertaining to Mrs. Moore are law enforcement records."  *Coleman v. Lappin*, 535 F. Supp. 2d 96,

98-99 (D.D.C. 2008).  The Court denied Defendant's renewed motion without prejudice.  *Id.*

   Now before the Court is Defendant's third motion for summary judgment.  The BOP

has determined that it "must abandon its [Glomar] defense, and acknowledge that records are in

existence relating to the Plaintiff's request" in order to demonstrate to the Court "the circumstances

---

[1] "[T]his 'neither confirm nor deny' response is popularly referred to as a 'Glomar response' after *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976), which concerned a FOIA request for records of the 'Glomar Explorer.'"  *Benavides v. Drug Enforcement Admin.*, 976 F.2d 751, 752 (D.C. Cir. 1992) (per curiam).

under which the requested records were compiled." Mem. of P. & A. in Support of Def.'s Renewed Mot. for Summ. J. ("Def.'s 3d Mot."), Gottleib Decl.   ¶ 5.   Instead, the BOP relies on FOIA Exemptions 2, 5, 6, 7(C), 7(E), and 7(F) to withhold records in their entirety (21 pages) or portions of records (101 pages) deemed responsive to Plaintiff's FOIA request.[2]   *See id.* ¶¶ 9, 22.

## II.   DISCUSSION

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).   Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Plaintiff strenuously opposes Defendant's third summary judgment motion, *see generally* Plaintiff's Opposition to Defendant's Request for Summary Judgment ("Pl.'s Opp'n"), yet focuses almost exclusively on perceived violations of his First Amendment rights, that is, having to face disciplinary charges and resulting punishment because he spoke openly of Ms. Moore's alleged inappropriate activities involving both inmates and BOP staff. *See id.* at 1, 6-7, 10-11. Rather than

---

[2]        In addition, the BOP has released 42 pages of records in their entirety.   Gottleib Decl. ¶ 8 & Attach. A (Full Release).

3

attacking the BOP's decisions to withhold information under particular FOIA exemptions, Plaintiff instead seeks discovery regarding Ms. Moore's conduct, the BOP's response to that conduct, and alleged violations of his constitutional rights stemming from Ms. Moore's conduct. *See id*. at 1. Although the BOP has abandoned its Glomar argument, Plaintiff maintains that the agency wrongfully refuses to confirm the existence of responsive records pertaining to an investigation about Ms. Moore. *See* Pl.'s Opp'n at 4-5.

Plaintiff's ultimate objective is to prove the truth of the statements he made about Mrs. Moore which led to disciplinary charges against him. *See, e.g.,* Pl.'s Opp'n at 3-5. Armed with this information, Plaintiff appears intent on attacking the disciplinary proceedings on the ground that they were pursued in retaliation for his having exercised his rights under the First Amendment to the United States Constitution. *See id.* at 1, 6-8, 13-15. These motives or personal interests are irrelevant to a FOIA action. Rather, the purpose of the FOIA is "to 'ensure an informed citizenry, vital to the functioning of a democratic society.'" *United We Stand Am., Inc. v. Internal Revenue Serv.*, 359 F.3d 595, 597 (D.C. Cir. 2004) (quoting *Nat'l Labor Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). To this end, FOIA provides for public access to government records. *See, e.g., United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754-55 (1989). FOIA requests are not proper vehicles for conducting investigations into an agency's actions. *See Flowers v. Internal Revenue Serv.*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004) (commenting that requester "cannot use FOIA discovery to conduct an investigation into the IRS' rationale for her audit"); *see also Williams v. Fed. Bureau of Investigation*, No. 90-2299, 1991 WL 163757, at *3 (D.D.C. Aug. 6, 1991) (concluding that requester was not entitled to discovery "to unearth details about the FBI's investigation" of him and his organization because an agency's

4

investigatory rationale is not the proper subject of FOIA discovery requests).

Even though Plaintiff's opposition addresses none of the substantive arguments set forth in Defendant's motion, the Court declines to treat the motion as conceded.

A. *Exemption 2*

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The phrase "personnel rules and practices" is interpreted to include not only "minor employment matters" but also "other rules and practices governing agency personnel." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc). The "information need not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Exemption 2 applies if the information that is sought meets two criteria. First, such information must be "used for predominantly internal purposes." *Crooker*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985). Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner*, 898 F.2d at 794 (citations omitted). If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983) (per curiam). "Low 2" exempt materials include such items as "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer*

*v. Webster*, 440 U.S. 964 (1979), and other "trivial administrative data such as . . . data processing notations[] and other administrative markings." *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

Of the 101 pages of records released in part, on 63 pages appear "fax numbers and extension numbers" of BOP personnel.  Gottleib Decl. ¶ 18.  Defendant redacts these fax and extension numbers as "low 2" exempt information on the ground that the numbers are "trivial . . . and are not a legitimate public interest."  *Id.*

Internal agency telephone numbers routinely are withheld under Exemption 2.  *See, e.g., Singh v. Fed. Bureau of Investigation*, 574 F. Supp. 2d 32, 44 (D.D.C. 2008) (redacting internal telephone numbers); *Antonelli v. Fed. Bureau of Prisons*, 569 F. Supp. 2d 61, 65 (D.D.C. 2008) (redacting last four digits of direct telephone numbers of agency employees); *Miller v. United States Dep't of Justice*, 562 F. Supp. 2d 82, 110 (D.D.C. 2008) (redacting internal secure telephone numbers).  The BOP's decision to withhold fax and extension numbers as "low 2" exempt information is proper.

B.  *Exemption 5*

Under Exemption 5, the BOP withholds from one page information "intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature."  Gottleib Decl. ¶ 20.  The declarant does not identify the record or page on which this information appeared, and the Court cannot readily determine whether the information properly is withheld.  Therefore, the Court will deny Defendant's motion in part without prejudice with respect to the withholding of information under Exemption 5.

C.  *Exemption 6*

The Court addresses here only those instances where the BOP relies on Exemption 6 alone to withhold information in records partially released to Plaintiff.  *See* Gottlieb Decl., Attach. B (*Vaughn* Index) at 39-44, 59, 61, 80-81, 83, 90, 93-94, and 101 (page numbers designated on electronic docket).  In all other instances, the BOP relies on Exemption 6 in conjunction with Exemption 7; such records will be addressed below in the discussion of Exemption 7.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C.  § 552(b)(6).  Information that applies to a particular individual meets the threshold requirement for Exemption 6 protection.  *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  Furthermore, the exemption requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'"  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see Reporters Comm. for Freedom of the Press*, 489 U.S. at 756.  The privacy interest at stake belongs to the individual, not the agency.  *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), *cert. denied*, 494 U.S. 1078 (1990).  It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.  *See Nat'l Archives and Records Admin. v, Favish*, 541 U.S. 157, 172 (2004).

Under Exemption 6, the BOP withholds the "names of BOP staff members and other

inmates that were involved in the investigation of retaliation, sexual harassment, and cruel and unusual wrongful acts against [Plaintiff]."  Gottlieb Decl. ¶ 14.  From the Court's review of the *Vaughn* index, the information withheld under Exemption 6 alone includes such items as individuals' names, titles, Social Security numbers, dates of birth, pay grades, union affiliations, and dates of duty, and the information appears on such documents as complaint forms submitted to the DOJ's Office of Professional Responsibility and the BOP's Office of Internal Affairs.

The Court concludes that the information withheld under Exemption 6 alone applies to particular individuals, and that there is no public interest to outweigh the individuals' privacy interests.  Accordingly, the BOP's decision to redact information under Exemption 6 alone is appropriate.

### D.  *Exemptions 6 and 7*

"Exemptions 6 and 7(C), though similar, are not coextensive."  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).  Generally, the language of Exemption 7(C) is broader than that of Exemption 6, and allows an agency to withhold categorically certain information in law enforcement records if its disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 55s(b)(7)(C); *Reporters Comm. for Freedom of the Press*, 489 U.S. at 756; *see also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91 (D.C. Cir. 1984) (greater emphasis on protecting personal privacy under Exemption 7(C) than under Exemption 6).  Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern*, 737 F.2d at 91-92, and Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for

8

disclosure.  *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75; *SafeCard Servs., Inc.*, 926 F.2d at 1205-06.  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).   If the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

### 1.  Law Enforcement Records

In order to withhold materials properly under Exemption 7, an agency must establish both that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,  673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).  Records compiled "in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions" are records compiled for law enforcement purposes, as distinguished from records compiled in the "customary surveillance of the performance of duties by government employees."  *Jefferson*, 284 F.3d at 177 (quoting *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1973)).  The investigation need not "lead to a criminal prosecution or other enforcement proceeding in order to satisfy the 'law enforcement purpose' criterion."  *Pratt*, 673 F.2d at 421.

Program Statement 3420.09, <u>Standards of Employee Conduct</u>, "addresses BOP staff conduct and investigations into allegations of staff misconduct, including criminal misconduct and discipline."  Mem. of P. & A. in Support of Renewed Mot. for Summ. J. [Dkt. #26], Walasinski Decl. ¶ 9; *see id.*, Attach. A (Program Statement 3420.09) at 5.  An "official investigation" as the term is defined in Program Statement 3420.09 includes an investigation conducted by the Office of the Inspector General, the Office of Professional Responsibility, or the Office of Internal Affairs. *See id.*, Attach. A at 5.  "Depending on the outcome of an official/law enforcement investigation(s), the investigation(s) may warrant criminal charges, civil fines/remedies and/or administrative charges."  Walasinski Decl. ¶ 18.  Records pertaining to an investigation "would be maintained as investigatory files and outline the facts, witnesses, law, and regulations, relied upon to either sustain or deny charges of criminal, civil or administrative misconduct."  *Id.* ¶ 21.  These records "would be maintained by either the Office of Internal Affairs . . . or the Office of Inspector General," among other offices.  *Id.* ¶ 22.

At this point, it is useful to recall certain allegations set forth in Plaintiff's Complaint. Plaintiff states that he observed Mrs. Moore engage in conduct with a fellow staff member and with another inmate "in violation of several [BOP] Procedures, policies, or regulations in Section 3420.09."  Compl. at 3.  In addition, Plaintiff alleges that Mrs. Moore "was determined to harass, use continuous fonding [sic] of plaintiff body, or determined to desist plaintiff's Unicor employment."[3]  *Id*.  He asserts that there were two investigations concerning Mrs. Moore's conduct, one of which led to her termination.  *See id.*  The BOP's declaration establishes that the allegations

---

[3]      The Court understands Plaintiff to mean that Mrs. Moore sexually harassed him and touched him inappropriately, under threat of causing him to lose his prison job.

of the Complaint as to Mrs. Moore's alleged conduct "would require an official investigation pursuant to [Program Statement 3420.09]."  Walasinski Decl. ¶ 17.

The BOP has submitted copies of the 42 pages of records released in full, the 101 pages released in part, and a brief description of the 21 pages of records withheld in full.  *See* Gottleib Decl. & Ex. A-B.  It is apparent that the responsive records include information pertaining to Plaintiff's allegations of Mrs. Moore's misconduct, complaints submitted to BOP's Office of Internal Affairs regarding claims of retaliation for Plaintiff's having reported a staff member's inappropriate relationship, and a complaint referred to the DOJ's Office of the Inspector General by the Office of Professional Responsibility regarding Plaintiff's claims of retaliation and sexual harassment, and reports of investigation.  Considering the allegations of the Complaint, Plaintiff's FOIA request, the BOP's supporting declarations and *Vaughn* Index, the Court concludes that the responsive records at issue in this case were compiled for law enforcement purposes.

### 2.  Exemptions 6, 7(C), 7(E), and 7(F)

The BOP has made a threshold showing that the responsive records were compiled for law enforcement purposes, and now it fails to establish that release of the allegedly exempt information either "(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7).  In practically all instances, the BOP relies on Exemption 7(C) in conjunction with Exemption 6, 7(E), or 7(F), or some combination of these exemptions, either to withhold records in

11

full or to redact information from the records released to Plaintiff. Particularly with respect to Exemptions 7(E) and 7(F), the declaration does not describe adequately the harms that may result if the records or portions of records were released.

For example, the BOP's declaration asserts that the records contain the "names of BOP staff members and other inmates that were involved in the investigation of retaliation, sexual harassment, and cruel and unusual wrongful acts against [Plaintiff]," Gottleib Decl. ¶ 14, and baldly states, without explanation, that release of their names "is expected to endanger the life or physical safety of those involved." *Id*. ¶ 16. Similarly, the declaration states that the BOP withholds information under Exemption 7(E), *id.* ¶ 19, yet fails to explain how disclosure of the information "would risk circumvention of BOP investigative techniques." *Id.*

The agency bears the burden of justifying its decision to withhold records or portions of records, *see* 5 U.S.C. § 552(a)(4)(B), and, to this end, its declaration must describe the information withheld and show that the information falls within the claimed exemptions. *Canning v. United States Dep't of Justice*, 848 F. Supp. 1037, 1043 (D.D.C. 1994). In this case, the BOP's supporting declaration and *Vaughn* index together do not establish that information withheld under Exemption 7(C) in conjunction with Exemption 6, 7(E), or 7(F), or some combination of these exemptions, falls within the scope of the exemptions.

## III.  CONCLUSION

The Court concludes that the BOP properly withholds information under Exemption 2 and Exemption 6 in those instances where the BOP relied on Exemption 6 alone. The Court further concludes that the records at issue were compiled for law enforcement purposes and, thus, fall within the scope of Exemption 7. Because the agency fails to establish that it properly withheld

information under Exemptions 6, 7(C), 7(E) and 7(F), or some combination of these exemptions, the

Court must deny Defendant's summary judgment motion in part, and the Court makes no ruling on

segregability at this time.   Defendant will be directed to file a renewed motion for summary

judgment addressing the remaining issues in this case, and may submit records for *in camera* review

as it deems appropriate.   An Order accompanies this Memorandum Opinion.


Date:   March 18, 2009                                        _____/s/_____

                                                             ROSEMARY M. COLLYER
                                                             United States District Judge